Kevin L. Murphy (*pro hac vice*)
Nicholas R. Gregg (*pro hac vice*)
MURPHY LANDEN JONES PLLC
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY 41017
(859) 360-1123

&

Paul Z. Lewis
Nicholas J. Zaita
LEWIS DIBIASI ZAITA & HIGGINS
420 Lexington Avenue, Suite 300
New York, NY 10107
(212) 772-0943

*Attorneys for Plaintiff Angel Hernandez*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL HERNANDEZ<br><br>  PLAINTIFF,<br><br>V.<br><br>THE OFFICE OF THE COMMISSIONER OF BASEBALL AND MAJOR LEAGUE BASEBALL BLUE, INC.,<br><br>  DEFENDANTS. | CASE NO: 18-CV-09035-JPO-GWG |

# REPLY MEMORANDUM IN SUPPORT OF MOTION FOR DECLARATORY JUDGMENT

# **TABLE OF CONTENTS**

I. The Issue of Subject Matter Jurisdiction Must Be Resolved Now ................................ 1

II. MLB's Argument Ignores the Point of Declaratory Judgment: Knowing Whether Proposed Conduct Is Legally Protected *Before* You Do It ............................................ 2

    A. *MedImmune and Steffel Support the Existence of a Current Case and Controversy* ... 2

    B. *The Court Has Jurisdiction to Issue the Requested Declaratory Judgment* ................. 4

        i. *No Overt MLB Threat Is Needed to Create a Case or Controversy* ....................... 5

        ii. *The Ollie Case Is Distinguishable Both Procedurally and Factually* .................... 6

III. Angel Hernandez's Intended Public Statements Are Sufficiently Specific ................... 7

IV. The Union Agreement Has No Effect On Whether the Statements That Mr. Hernandez Intends to Make Constitute Protected Activity ........................................... 9

V. The Facts Pertinent to the Requested Declaration are Undisputed ............................. 9

VI. Conclusion .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**

*Altvater v. Freeman*, 319 U.S. 359 (1943) .................................................................................. 4

*Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006) ......................................................................... 1, 2

*Flood v. Kuhn*, 407 U.S. 258 (1972) ............................................................................................ 2

*MedImmune, Inc. v. Genentech*, *Inc.,* 549 U.S. 118 (2007) ........................................... 3, 4, 5, 6, 8

*Ollie v. University of Connecticut,* No. 18-cv-2070 (KAD), 2019 WL 441160 (D. Conn. Feb. 4,
   2019) ........................................................................................................................................ 6

*Steffel v. Thompson,* 415 U.S. 452 (1974) .................................................................................... 3

**Rules**

Fed. R. Civ. P. 12(h)(3) ................................................................................................................ 1

Local Civil Rule 56.1(c) ............................................................................................................ 10

Local Civil Rule 56.1(d) ............................................................................................................ 10

Angel Hernandez ("Hernandez"), through counsel, respectfully submits the following Reply Memorandum in Support of his Motion for Declaratory Judgment (Dkt. 51; the "Motion").

## I. The Issue of Subject Matter Jurisdiction Must Be Resolved Now

As a threshold issue, in order for Hernandez to enjoy the right to speak freely against discrimination under federal law that Hernandez seeks to apply to the facts of this case through the Motion, the Office of the Commissioner and Major League Baseball, Blue Inc. (hereinafter collectively "MLB") must be subject to that federal law. Prior to the filing of the Motion, MLB had ducked that issue by evasively pleading in its Answer: "Defendants admit that Plaintiff invokes the Court's jurisdiction under the statutes listed in paragraph 5 of the Complaint, but ***deny*** that any events or omissions took place that would give rise to or otherwise support jurisdiction in the Court." *See* Dkt. 40, ¶ 5, at p. 2 (emphasis added).

MLB continues to duck the issue in its Memorandum of Law in Opposition to Plaintiff's Motion for Declaratory Relief (Dkt. 59). Rather than confronting the issue directly, MLB now asserts in a footnote that it "has never ***challenged*** this Court's subject matter jurisdiction based on the federal questions alleged in Hernandez's Amended Complaint." Dkt. 59, page 12 of 20, at fn. 1 (emphasis added). The current posture is therefore that MLB has denied ¶ 5 of the Amended Complaint asserting that this Court has subject matter jurisdiction, but simultaneously claims never to have "challenged" it. Word games aside, that leaves the subject matter jurisdiction of this Court an open question, because subject matter jurisdiction can be raised at any time and MLB has given no assurance that it will not challenge subject matter jurisdiction in the future. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506 (2006).[1]

---

[1] Moreover, the Court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)).

1

Even if MLB could successfully characterize MLB's denial of ¶ 5 of the Amended Complaint as something less than a "challenge" to this Court's jurisdiction, there is nothing to prevent MLB from advancing a more formal challenge later. Inasmuch as MLB does not dispute the Affidavit of Angel Hernandez (Dkt. 52-3) attesting that MLB is a business engaged in interstate commerce, MLB is subject to federal legislation – including the Civil Rights Act of 1964 – enacted pursuant to the Commerce Clause of the Constitution of the United States. The federal question claims of Angel Hernandez in this case are predicated on the application of the Civil Rights Act of 1964 and the regulations implementing it. Therefore, this Court should determine (i) that MLB is a business conducted in interstate commerce (s*ee Flood v. Kuhn*, 407 U.S. 258, 282 (1972)), (ii) that MLB's conduct can be regulated by the federal government pursuant to the Commerce Clause (*id*.), (iii) that MLB is thus bound by the Civil Rights Act of 1964, and (iv) that this Court has subject matter jurisdiction to adjudicate the federal question claims of Mr. Hernandez in this case.

## II. MLB's Argument Ignores the Point of Declaratory Judgment: Knowing Whether Proposed Conduct Is Legally Protected *Before* You Do It

MLB argues that there is no justiciable case or controversy because Angel Hernandez has not yet publicly stated the things identified in his list of 27 issues.[2] That argument ignores one of the fundamental rationales for granting a declaration of rights: plaintiffs who are in doubt as to the legal effect of their proposed conduct can obtain a determination of rights *before* they "bet the farm" by pursuing one course of action over another.

### A. *MedImmune and Steffel Support the Existence of a Current Case and Controversy*

The Supreme Court of the United States articulated several principles in *MedImmune, Inc. v. Genentech*, *Inc.,* 549 U.S. 118 (2007), and *Steffel v. Thompson,* 415 U.S. 452 (1974), that are

---

[2] In accordance with the Court's Order dated March 28, 2019 (Dkt. 57), Plaintiff files as Exhibit 1 to this memorandum an unredacted version of his 27 points, which was previously filed with the Court in redacted form at Dkt. Nos. 51-7 and 52-1.

pertinent here.

*MedImmune* involved the payment of disputed fees between private parties. 549 U.S. at 121. The plaintiff in that case sought a declaration of rights that it was not required to continue to make payments of disputed fees. *Id*. at 121-122. The lower court dismissed the claim, concluding that there was no case or controversy because MedImmune was not at risk of suffering harm so long as it actually made the payments. *Id.* at 122. The Federal Circuit affirmed. *Id.*

The Supreme Court reversed in an 8-1 decision.[3] *Id.* at 137. The majority reasoned that "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat – for example, the constitutionality of a law threatened to be enforced." *Id.* at 128-29 (emphasis in original). In such cases, the "plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *Id.* at 129.

As one example of the application of that principle, the *MedImmune* majority pointed to *Steffel v. Thompson*, 415 U.S. 452 (1974), a case in which the Supreme Court of the United States "did not require the plaintiff to proceed to distribute handbills and risk actual prosecution before he could seek a declaratory judgment regarding the constitutionality of a state statute prohibiting such distribution." *MedImmune,* 549 U.S. at 129. The declaratory judgment procedure is "an alternative to pursuit of the arguably illegal activity." *Id.* (quoting from Justice Rehnquist's concurring opinion in *Steffel*). Although the plaintiff had "eliminated the imminent threat of harm by simply not doing what he claimed the right to do," that did not preclude subject-matter jurisdiction "because the threat-eliminating behavior was effectively coerced." *Id.* As the *MedImmune* majority put it, the "dilemma posed by that coercion – putting the challenger to the

---

[3] Only Justice Clarence Thomas dissented in *MedImmune*.

3

choice between abandoning his rights or risking prosecution – is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *Id.* (internal citations omitted).

The main question addressed by the majority opinion in *MedImmune* was whether the same principles extended to disputes between private parties. The answer was yes. The *MedImmune* majority found that *Altvater v. Freeman*, 319 U.S. 359 (1943), had already established that the *Steffel* rationale extended to non-governmental litigants who avoid adverse legal consequences in the context of voluntarily accepted contractual obligations between private parties. 549 U.S. at 130-132 & fn. 12. The majority opinion further noted: "Moreover, even if today's decision could be described as an 'extension of *Steffel*' to private litigation, the dissent identifies no principled reason why that extension is not appropriate." *Id.* at fn. 12.

Thus, MLB's assertion that there is no ripe case or controversy "because Hernandez has yet to engage in any activity for which he seeks judicial approval" completely misses the point. Angel Hernandez has identified what he intends to say in furtherance of what he perceives as protected activity pursuant to Title VII. MLB responds, not by confirming that protection, but by explicitly challenging it:

> Hernandez' motion is predicated on his incorrect assumption that all public speech referencing alleged discrimination is per se protected under Title VII and grants him license to publicly criticize his employer. **Hernandez is mistaken**.

Memorandum, at p. 10 of 20 (emphasis added). Applying the principles discussed in *MedImmune* and *Steffel,* Mr. Hernandez should not have to face the dilemma of risking adverse employment actions by MLB if (i) he publicly asserts his 27 points and (ii) he is "mistaken" and his statements are later determined (after the fact) not to have been protected activity under Title VII.

  B.  *The Court Has Jurisdiction to Issue the Requested Declaratory Judgment*

MLB places great reliance on its assertion that MLB has not overtly threatened Angel

4

Hernandez with any potential adverse employment action "for exercising his rights under the anti-discrimination laws." Dkt. 59, at page 12 of 20. That reliance is unwarranted.

### i. No Overt MLB Threat Is Needed to Create a Case or Controversy

MLB's argument on this point is essentially the same argument that Justice Thomas asserted in his solo dissent from the Supreme Court's 8-1 decision in *MedImmune*. Justice Thomas pointed out in his dissenting opinion that MedImmune could have continued to make the disputed payments and that "there was no threat of suit" by the patent holders to support jurisdiction. 549 U.S. at 146 (Thomas, J., dissenting). Justice Thomas continued:

> By holding that contractual obligations are sufficiently coercive to allow a party to bring a declaratory judgment action, the majority has given every patent licensee a cause of action and a free pass around Article III's requirements for challenging the validity of licensed patents. But <u>the reasoning of today's opinion applies not just to patent validity suits.</u>

*Id.* Although Justice Thomas disagreed with the majority's conclusion, he did correctly conclude that the majority's reasoning eliminates any need for an overt threat from the opposing party in order for the court to have jurisdiction to enter a declaratory judgment.

That conclusion is further bolstered by the *MedImmune* majority's response to the dissent from Justice Thomas. In a footnote, the majority suggests that the dissent "contends that *Steffel* would apply here only if respondents had threatened petitioner with a patent infringement suit *in the absence of a license agreement*, because only then would petitioner be put to the choice of selling its product or facing suit." 549 U.S. at fn. 12. "Here, the dissent argues, the license payments are 'voluntarily made.'" *Id.* But the majority overtly rejected that approach:

> If one uses the word "voluntarily" so loosely, it could be applied with equal justification (or lack thereof) to the *Steffel* plaintiff's "voluntary" refusal to distribute handbills. We find the threat of treble damages and loss of 80 percent of petitioners' business every bit as coercive as the modest penalties for misdemeanor trespass threatened in *Steffel*.

*Id.*

5

The plaintiff in *Steffel* wanted to distribute handbills opposing the war in Vietnam; Angel Hernandez wants to make public statements opposing discrimination by MLB. Like the plaintiff in *Steffel*, Angel Hernandez has refrained from making the public statements that he proposes to make, not because he doubts whether he wants to make them and is "voluntarily" holding back, but rather because he wants to know that making those statements will be protected activity rather than something that will lead to adverse consequences at the hands of MLB. As a person who faces the potential loss of his position as an MLB umpire and 100 percent of what he makes as an MLB employee (not just "80 percent" of his business), the request by Angel Hernandez for a declaration of rights in these circumstances presents a justiciable case and controversy.

### ii.     The Ollie Case Is Distinguishable Both Procedurally and Factually

MLB's Memorandum avoids any discussion of the United States Supreme Court precedents discussed above, instead relying on *Ollie v. University of Connecticut,* No. 18-cv-2070 (KAD), 2019 WL 441160 (D. Conn. Feb. 4, 2019).[4] That reliance is misplaced.

At the outset, it is important to point out that *Ollie* is not even a declaratory judgment case, so it is simply inapplicable to a case wherein a plaintiff is seeking a declaration of rights. Indeed, the *Ollie* decision distinguishes *itself* from *MedImmune* and its progeny, stating:

> As an initial matter, Ollie is *not* seeking a declaratory judgment under the Declaratory Judgment Act. He seeks equitable and preliminary injunctive relief to safeguard his claims under the CFEPA and Title VII. The *MedImmune* decision was decided entirely within the context of a declaratory judgment, and, therefore, it is unclear whether *MedImmune* has application outside of that context.

*Id.* at *7. The plaintiff in *Ollie* argued that the injunctive relief question presented in that case was "analogous," but the trial court disagreed.

Second, *Ollie* is a dispute about the most appropriate forum to resolve a controversy, rather

---

[4] Although MLB's Memorandum fails to mention it, the *Ollie* case is now on appeal to the Second Circuit Court of Appeals.

6

than about the determination of present or future substantive rights. Ollie had already asserted claims in one forum, and sought a court determination about what would happen if he tried to switch. Thus, as the trial court observed:

> the "worst case scenario" faced by Ollie is that he loses the ability to arbitrate his termination, a forum he prefers insofar as UConn bears the burden of proof there This is ultimately the basis for his argument that he is being asked to "bet the farm." However, even if this worst-case scenario was to come to pass, Ollie is not without recourse because he still has the ability to challenge his termination in another forum. In a forum other than the arbitration, Ollie would bear the burden of proof, but this situation does not approach the dire Hobson's Choice faced by the plaintiff in *MedImmune*.

*Id.* Therefore, not only the procedural posture but the underlying facts were overtly found by the Court in *Ollie* to be unlike those of *MedImmune* and its progeny.[5]

Third, the *Ollie* case discusses the significance of whether UConn had made an actual threat of any kind in the context of a request for injunctive relief. In that procedural posture, the trial court was being asked to enjoin a procedural response that had not yet been initiated or even predicted by the party to be enjoined. Angel Hernandez seeks a declaration of rights regarding his right to speak out publicly against MLB's discrimination (rather than an injunction prohibiting MLB from taking any employment actions against him based on that intended speech), so the factors that would be necessary to support an injunction are not pertinent here.[6] *Ollie* is therefore both procedurally and factually distinguishable from the current controversy.

### III. Angel Hernandez's Intended Public Statements Are Sufficiently Specific

"Basically, the question in each case is whether the facts alleged, under all the

---

[5] Even though MLB may be able to select some *dicta* soundbites from the *Ollie* opinion, the U.S. Supreme Court decisions discussed herein are dispositive in the circumstances presented by the request of Angel Hernandez for a declaratory judgment.

[6] MLB attempts to conflate the ripeness requirement for a declaration of rights with the ripeness requirement for injunctive relief, pointing to two cases that stand for the proposition that a case or controversy is required for the Court to have Article III jurisdiction in either procedural context. Nevertheless, as discussed above, the United States Supreme Court precedents pertaining to declaratory judgments establish distinct criteria applicable in that procedural context that may not be applicable when injunctive relief is granted.

7

circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (internal citations omitted).

MLB emphasizes that determinations about whether public speech regarding discrimination is protected is a fact-intensive inquiry. But MLB inaccurately asserts that the facts necessary for that determination are not yet known, and further makes an unjustified illogical leap in concluding that such a determination can only be made after the fact.

As to the necessary facts, Mr. Hernandez has supplied a list of 27 specific things that he wants to say publicly in opposition to MLB's discrimination. Thus, MLB's repeated assertions that a declaration of rights cannot be made here because no one knows what Angel Hernandez will say are simply inaccurate. In implicit recognition of that reality, MLB latches onto the phrase "including but not limited to" in the description of Mr. Hernandez's intended public statements. MLB argues in effect that, even if the Court knows all 27 points that are on his list, the "including but not limited to" language leaves the door open for other unknown statements that the Court cannot approve. In order to avoid any confusion that might otherwise be engendered by MLB's straw man argument on this point, Hernandez explicitly clarifies that he is seeking a declaration of rights only as to his protected rights to say the things that <u>are</u> on the list.[7]

---

[7] MLB also argues that it does not know "where, when, why and how" Mr. Hernandez may publicize his list of proposed issues. Memorandum, at p. 19 of 20. MLB expresses the concern that opposition to discrimination must be expressed in a manner that does not interfere with the employer's workplace or the employee's duties. *See*, *e.g.*, Dkt. 59, Page 11 of 20. But Mr. Hernandez has already addressed the when and where issues, specifying that he will not make any public statements while on the field at any baseball game in which he is serving as an umpire. *See* Affidavit of Angel Hernandez, Dkt. 52-3, ¶ 11. As to "why," Mr. Hernandez has made that clear as well: because he opposes discrimination in Major League Baseball. *Id.* at ¶¶ 7-10. In regard to "how" Mr. Hernandez intends to communicate the 27 points, his stated intention to do so outside of business hours and away from the ballparks where he is working is sufficient to satisfy any legitimate concerns that MLB might have about interference with their workplace or his duties. To allay any remaining concerns, Mr. Hernandez is happy to clarify that he intends to do so by public speaking and writing, including speaking engagements and panel discussions at locations unrelated to MLB, participating in interviews with media outlets, and by submitting or publishing written materials to and through print and online publications.

8

## IV. The Union Agreement Has No Effect On Whether the Statements That Mr. Hernandez Intends to Make Constitute Protected Activity

In conjunction with its Memorandum, MLB has placed the collective bargaining agreement between the Major League Umpires Association and MLB into the record, which includes the following provision:

> Nothing in this Agreement is intended to prevent an umpire from exercising whatever rights such umpire may have under the National Labor Relations Act or under any federal, state or local law prohibiting discrimination in employment.

Taken as a whole, MLB's Memorandum seems to seek an inference that Angel Hernandez is at no risk if he goes ahead and speaks without a declaration of rights, in light of that provision.

But, upon closer examination, neither that clause nor MLB's stated intention to abide by it provides protection to Mr. Hernandez in light of other statements in MLB's Memorandum (i) *disputing* that what he intends to say will be protected[8] and (ii) emphasizing that MLB will simply comply with its "legal obligations" (which apply *if* what Mr. Hernandez says actually is protected). As discussed above, what Mr. Hernandez intends to say is known. The legal conclusion as to whether doing so constitutes protected activity (which MLB says it will not "prevent") is what Mr. Hernandez is asking this Court to declare *before* he takes the risk of saying it publicly. Absent such a declaration, MLB's arguments based on the protections supposedly afforded to Mr. Hernandez under the "Nothing in this Agreement" clause merely sets up a circular analysis.

## V. The Facts Pertinent to the Requested Declaration are Undisputed

MLB's response to Plaintiff's statement of facts does not generate a genuine issue of material fact. MLB adds various qualifications to some of its answers, but MLB cannot dispute

---

[8] MLB does not acknowledge that *anything* Mr. Hernandez intends to say is actually protected activity. For example, MLB's Memorandum states: his speech "may not be protected under Title VII" (p. 9 of 20); and whether his points "will qualify as protected speech will be a highly fact-intensive inquiry that can be assessed only if and when Hernandez opts to discuss the items in a public forum" (pp. 9 & 10).

9

the relationship of the parties. Nor can MLB dispute what Angel Hernandez proposes to do.[9] The Motion can therefore be considered either as a motion for a declaratory judgment[10] or as a motion for partial summary judgment. Either way, the material facts are established in the record[11], and the Court can declare whether the plaintiff's intended statements are protected as a matter of law.

## VI.     Conclusion

MLB's Memorandum confirms the need for the declaratory relief that Angel Hernandez seeks. MLB repeats the mantra that it has not threatened Angel Hernandez but nevertheless puts into the record "gag" provisions of the collective bargaining agreement that obligate him not to make public statements "critical of the Commissioner of Baseball" or "inimical to the best interests of baseball." MLB acknowledges that Mr. Hernandez cannot be prevented from "exercising whatever rights" he has under federal law, but simultaneously asserts that Mr. Hernandez "is mistaken" in his belief that federal law gives him the right to "publicly criticize his employer" by making his intended statements regarding discrimination in MLB. Further, MLB refuses to admit that the Civil Rights Act of 1964 applies to it. In these circumstances, the declaratory judgment that Mr. Hernandez seeks would resolve a dispute between the parties as to whether Mr. Hernandez is "mistaken" that his intended public statements about discrimination are protected by federal law.

---

[9] For purposes of the requested declaration of rights, the Court does not need to make a determination about whether the views that Angel Hernandez wants to express are right or wrong, important or unimportant, wise or misguided. They are his views, and his intention to make those statements publicly in opposition to what Mr. Hernandez believes to be unlawful discrimination by MLB is undisputed. *See, e.g.,* Affidavit of Angel Hernandez, Dkt. 52-3.

[10] MLB asserts that a motion for declaratory judgment is procedurally improper, and that a party must bring an action for declaratory judgment. That argument has no traction here, however, because Angel Hernandez *did* bring an action for declaratory judgment in both his Complaint (Dkt. 1, at pp. 20-21 of 22) and his Amended Complaint (Dkt. 35, at p. 23 of 24). Plaintiff's Motion asks the Court to rule in his favor on that Count.

[11] Although MLB states that it "disputes" several of the paragraphs contained in Plaintiff's Statement of Material Facts (*see* Dkt. 61), MLB did not cite to any evidence that would support their contention that any of those paragraphs are actually false, which is in violation of Local Civil Rule 56.1(d) ("each statement controverting any statement of material fact *must* be followed by citation to evidence which would be admissible" under Fed. R. Civ. P. 56(c)) (emphasis added). MLB's failure to abide by Local Civil Rule 56.1(d) requires that each numbered paragraph in Plaintiff's Statement of Material Facts be deemed admitted for purposes of his Motion in the event the Motion is treated by the court as a motion for partial summary judgment. *See* Local Civil Rule 56.1(c).

10

Dated:  April 9, 2019

                                          Respectfully submitted,

                                          MURPHY LANDEN JONES PLLC

                                          By: *Kevin L. Murphy*
                                          Kevin L. Murphy (*pro hac vice*)
                                          Nicholas R. Gregg (*pro hac vice*)
                                          2400 Chamber Center Drive, Suite 200
                                          Fort Mitchell, KY 41017
                                          Tel: 859-360-1123
                                          KMurphy@MLJfirm.com
                                          NGregg@MLJfirm.com

                                          &

                                          LEWIS DIBIASI ZAITA & HIGGINS
                                          Paul Z. Lewis
                                          Nicholas J. Zaita
                                          420 Lexington Avenue, Suite 300
                                          New York, NY 10107
                                          Tel: (212) 772-0943
                                          plewis@ldzhlaw.com
                                          nzaita@ldzhlaw.com
                                          ***Attorneys for Plaintiff Angel Hernandez***

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to: Neil H. Abramson, Esq., Rachel S. Philion, Esq., and Adam M. Lupion, Esq., PROSKAUER ROSE LLP, Eleven Times Square, New York, New York 10036-8299.

Respectfully Submitted,

MURPHY LANDEN JONES PLLC

By: *Kevin L. Murphy*
Kevin L. Murphy (*pro hac vice*)
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY 41017
Tel: 859-360-1123
*Attorney for Plaintiff Angel Hernandez*