UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                          :

ANGEL HERNANDEZ,

                                                          :

          Plaintiff,

                                                          :

    -v.-

                                                          :

THE OFFICE OF THE COMMISSIONER OF       MEMORANDUM OPINION
BASEBALL, et al.,                                  :

          Defendants.         :        18 Civ. 9035 (JPO) (GWG)
---------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Angel Hernandez, an umpire employed by Major League Baseball, has sued the Commissioner of Baseball and other related defendants alleging that he has been discriminated against in a number of ways, including by defendants' failure to assign him to umpire World Series games. The Commissioner and defendant MLB Baseball Blue, Inc. (together, "MLB") move to compel Hernandez to provide testimony and documents concerning his communications with his union, the Major League Baseball Umpires Association ("MLBUA"). See Letter from Neil H. Abramson, filed May 23, 2019 (Docket # 66) ("Docket # 66"). Defendants have also subpoenaed the MLBUA seeking similar communications. See Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (annexed as Ex. A to Letter from Kevin L. Murphy, filed June 7, 2019 (Docket # 75) ("Docket # 75")). Hernandez opposes defendants' motion and seeks to quash to subpoena, asserting that the documents and deposition testimony that defendants seek are protected by a "union relations" privilege. See Letter from Kevin L. Murphy, filed May 28, 2019 (Docket # 70) ("Docket # 70"); Docket # 75. The Court rejected Hernandez's argument at the oral argument

held on June 12, 2019, and we write to explain our reasons for doing so.

I. BACKGROUND

Hernandez brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981 et seq.; the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202; Ohio Revised Code § 4112.02; the New York State Human Rights Law, N.Y. Exec. L. § 296; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, alleging that defendants discriminated against him on the basis of race, color, and/or national origin. See First Amended Complaint with Jury Demand, filed Nov. 27, 2018 (Docket # 35). Specifically, Hernandez alleges that prior to 2010 he received excellent performance reviews and was assigned to serve as an umpire in the World Series, League Championship Series, and League Division Series on multiple occasions. See id. ¶¶ 16-19, 22-30. However, his treatment by MLB changed when Joe Torre was put in charge of overseeing MLB's umpires. See id. ¶¶ 31-33. Hernandez, who is Latino, alleges that since Torre's arrival in the Office of the Commissioner of MLB in 2011, "there has been only one non-white umpire assigned to the World Series," out of 35 umpires total, and though "Hernandez is fully qualified to be assigned to a World Series . . . [he] has watched as other, less-experienced, generally white umpires have been assigned to the World Series instead of him." Id. ¶¶ 70-71. Hernandez alleges that MLB's "trend of preferential treatment of less-experienced white umpires at the expense of veteran minority umpires such as Hernandez can also be seen in Major League Baseball's pattern of promoting umpires to crew chief." Id. ¶ 75. Hernandez alleges that he "has not been promoted to crew chief despite having more experience at the time of their promotion to crew chief than nine of the ten umpires that were promoted since 2011," id. ¶ 86, and despite being "fully qualified" for the promotion and

having applied "at least four times since 2011," id. ¶¶ 87-88.[1]

In its letter motion, MLB seeks production of documents concerning Hernandez's communications with his union, MLBUA, which he has withheld on the basis of a purported "union relations privilege." See Docket # 66, at 2. Defendants also seek to have Hernandez answer questions about conversations he had with his union regarding the discrimination alleged in this case that his counsel instructed him not to answer at his deposition on the basis of the "union relations privilege." See Docket # 66, at 2-3. In his letter motion, Hernandez seeks to quash the subpoena duces tecum defendants served on MLBUA on the basis that it seeks documents protected by the "union relations privilege." See Docket # 75.

II. DISCUSSION

    A. Law Governing Privilege

Rule 26 of the Federal Rules of Civil Procedure provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); accord John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014); see Dynacore Holdings Corp. v. U.S. Philips Corp., 2002 WL 31233246, at *2 (S.D.N.Y. Oct. 4, 2002). Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

While Federal Rule of Evidence 501 provides that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision," where evidence is "relevant

---

[1] While asserting that his unfavorable treatment was based on discrimination, Hernandez also alleges that "Torre has a history of animosity towards Hernandez stemming from Torre's time as manager of the New York Yankees" dating to an incident on May 4, 2001, when Torre believed Hernandez made an incorrect call. Id. ¶¶ 34-35.

3

to both the federal and state claims[,] . . . privileges are governed by the principles of federal law." von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987) (citations omitted); accord Universal Standard Inc. v. Target Corp., 2019 WL 1983944, at *4 (S.D.N.Y. May 6, 2019); La Suisse, Societe d'Assurances Sur La Vie v. Kraus, 62 F. Supp. 3d 358, 363 n.3 (S.D.N.Y. 2014). Here, Hernandez makes claims of discrimination under both federal and state law and the claims are based on the same set of allegations. Accordingly, federal privilege law applies.[2]

Rule 501 of the Federal Rules of Evidence provides that privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." Fed. R. Evid. 501 advisory committee's note to 1974 Enactment; accord Trammel v. United States, 445 U.S. 40, 47 (1980); In re Grand Jury Subpoenas Dated Jan. 20, 1998, 995 F. Supp. 332, 334 (E.D.N.Y. 1998). In determining whether a privilege is to be recognized or applied in a particular case, courts begin "with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." United States v. Bryan, 339 U.S. 323, 331 (1950). "It is the party seeking an exception from this principle that bears the burden of establishing the existence of a privilege and its applicability to a particular case." In re Grand Jury Subpoenas, 995 F. Supp. at 334 (citing United States v. Int'l Bhd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997)). "The burden is a heavy one since privileges are neither 'lightly created nor expansively construed.'" Id. (quoting United States v. Nixon, 418 U.S. 683, 710 (1974)). Privileges are recognized "only

---

[2] To the extent that Hernandez contests the relevance of the documents and deposition testimony being sought, see Docket # 70, at 4, those objections are overruled. Evidence of any discussions Hernandez may have had with his union regarding the complaints he brings here come within Rule 401.

4

to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." Trammel, 445 U.S. at 50 (internal quotation marks and citation omitted).

As In re Grand Jury Subpoenas held, when determining whether to recognize a new privilege, courts have found four criteria to be "generally relevant":

> (1) the communication at issue must be made in confidence, (2) confidentiality must be essential to the maintenance of a full and satisfactory relationship between the parties, (3) the parties' relationship must be one that the community has decided ought to be sedulously fostered, and (4) the injury that would inure to the relationship by the disclosure of the communication must plainly outweigh the important societal interest in obtaining all the evidence necessary to ensure the correct disposal of litigation.

In re Grand Jury Subpoenas, 995 F. Supp. at 334 (citing 8 J. Wigmore, Evidence § 2285 (McNaughton Rev. 1961)).

B. Analysis

Hernandez does not point to any Second Circuit case law that recognizes a "union relations privilege" and we are aware of none. The only federal cases that recognize any form of union-related privilege, both arising outside this Circuit, relate only to communications between union members and union representatives which occurred during the course of disciplinary proceedings. See U.S. Dep't of Justice v. Fed. Labor Relations Auth., 39 F.3d 361 (D.C. Cir. 1994); Bell v. Vill. of Streamwood, 806 F. Supp. 2d 1052 (N.D. Ill. 2011). Thus, in Bell, the court recognized an employee-union representative privilege under federal common law that extends only to communications that are made: "(1) in confidence; (2) in connection with 'representative' services relating to anticipated or ongoing disciplinary proceedings; (3) between an employee and his union representative; (4) where the union representative is acting in his or

her official representative capacity." 806 F. Supp. 2d at 1052.[3] In limiting the privilege in this manner, Bell likened the employee-union representative privilege during disciplinary proceedings to that of attorney and client, noting that "[a]s with the attorney-client privilege, there is a strong interest in encouraging an employee accused of wrongdoing to communicate fully and frankly with his union representative, in order to receive accurate advice about the disciplinary process." Id. at 1056.

In U.S. Dep't of Justice v. Fed. Labor Relations Auth., the court declined to question the reasoning of a published decision issued by the Federal Labor Relations Authority, which found that there was a "privilege" protecting "'the content or substance of statements made by an employee to [his] Union representative in the course of representing the employee in a disciplinary proceeding.'" 39 F.3d at 369 (quoting U.S. Dep't of Treasury Customs Serv., Washington, D.C., 38 F.L.R.A. 1300, 1308 (1991)). Notably, the court did not reach the question of whether a federal common law privilege should be recognized because it found that any privilege applied only to situations in which management was seeking communications, and that the entity seeking the communications — the Office of the Inspector General — was not part of management.[4]

In sum, to the extent that a union relations privilege has been recognized under the

---

[3] Bell viewed its task as considering "whether federal common law should embrace" a privilege created under an Illinois statute. Id. at 1055.

[4] We find little relevance in the cases arising under state law cited by plaintiff inasmuch as they do not involve federal common law. But in any event, they are of no help because none recognize a union relations privilege outside of an administrative disciplinary proceeding or internal investigation. See Peterson v. Alaska, 280 P.3d 559 (Sup. Ct. Ala. 2012); City of Newburgh v. Newman, 70 A.D.2d 362 (3d Dep't 1979); Seelig v. Shepard, 152 Misc. 2d 699 (N.Y. Sup. Ct. 1991).

federal common law, it covers only communications made in the context of representation by a union representative during disciplinary proceedings. Thus, even if we were to accept that the protection of such communications reflects a judgment that "the community has decided" that the parties' relationship is one that "ought to be sedulously fostered," see In re Grand Jury Subpoenas, 995 F. Supp. at 334, this is true only with respect to such representation. Here, there were no disciplinary proceedings instituted against Hernandez. We thus reject Hernandez's claim of privilege — a result that is consistent with the numerous federal courts that have rejected the assertion of a "union relations privilege." See, e.g., NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots, 2017 WL 3484101, at *3-4 (S.D. Ohio Aug. 15, 2017); Curry v. Contra Costa Cty., 2013 WL 4605454, at *4 (N.D. Cal. Aug. 28, 2013); Boyer v. Rock Twp. Ambulance Dist., 2012 WL 1033007, at *3 (E.D. Mo. Mar. 27, 2012); Burwell v. City of Peoria, 2012 WL 13006042, at *4 (C.D. Ill. Feb. 22, 2012); Parra v. Bashas' Inc., 2003 WL 25781409, at *5 (D. Ariz. Oct. 2, 2003); In re Grand Jury Subpoenas, 995 F. Supp. at 337.

III. CONCLUSION

For the foregoing reasons, defendants' motion to compel (Docket # 66) is granted and Hernandez's motion to quash (Docket # 75) is denied.

SO ORDERED.

Dated: June 20, 2019
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

7