UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
ANGEL HERNANDEZ,
                                Plaintiff,

                -v-                                          18-CV-9035 (JPO)

THE OFFICE OF THE                                            OPINION AND ORDER
COMMISSIONER OF BASEBALL and
MAJOR LEAGUE BASEBALL BLUE,
INC.,
                                Defendants.
---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

      Plaintiff Angel Hernandez brings this action against Defendants The Office of the Commissioner of Major League Baseball and Major League Baseball Blue, Inc. (collectively, "Major League Baseball"), asserting claims for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); Section 1981 of Title 42 of the U.S. Code, 42 U.S.C. § 1981; the Ohio Civil Rights Act, O.R.C. § 4112.02; the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL"). (Dkt. No. 35 ("Compl.") ¶¶ 106–149.)

      Major League Baseball now moves to dismiss Hernandez's claims asserted under Ohio law. (Dkt. No. 38.) For the reasons that follow, the motion to dismiss in part is granted.

**I.    Background**

      The following facts are taken from the Amended Complaint and are assumed true for the purposes of this opinion.

      Hernandez is a professional baseball umpire and resident of Florida. (Compl. ¶ 1.) The Defendants' principal places of business are located in New York, New York. (Compl. ¶¶ 2–3.)

1

Hernandez does not allege that he is a citizen or resident of Ohio. (*See* Compl. ¶¶ 1, 9.) Neither of the Defendants is alleged to be a citizen of the State of Ohio. (*See* Compl. ¶¶ 2–3.)

In sum and substance, Hernandez alleges that since the arrival of Joe Torre in the Office of the Commissioner of Baseball in 2011, Major League Baseball has discriminated against him on the basis of race, color, or national origin. (Compl. ¶¶ 31, 66, 107.) In support, Hernandez points to changes in his performance ratings following the installment of Torre in the Office (Compl. ¶¶ 29, 39, 53, 58); Major League Baseball's failure to promote him or any non-white umpires to crew chief since 2011 (Compl. ¶¶ 85–90); and Major League Baseball's assignment of almost exclusively white umpires to World Series crews since 2011, and its failure to select Hernandez for those crews despite his qualifications (Compl. ¶¶ 68–71). According to Hernandez, by not being promoted, "he is being discriminated against in many cities around the United States, including in the city of Cincinnati, Ohio and in the City of New York, New York." (Compl. ¶ 102.)

Hernandez initiated this action on July 3, 2017 in the United States District Court for the Southern District of Ohio. (Dkt. No. 1.) In his original complaint, Hernandez asserted claims under Title VII, Section 1981, and the Ohio Civil Rights Act. (Dkt. No. 1 ¶¶ 106–135.) On September 30, 2018, the presiding judge in the Southern District of Ohio determined that that court lacked personal jurisdiction over the Defendants and, in lieu of dismissal, transferred the case to this District pursuant to 28 U.S.C. § 1406(a). (Dkt. No. 15 at 8, 10–11). Hernandez subsequently filed the operative Amended Complaint on November 27, 2018, adding new claims under the NYSHRL and the NYCHRL. (Compl. ¶¶ 136–149.)

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering such a motion, a court must accept the factual allegations in the plaintiff's complaint as true and draw all inferences in the plaintiff's favor. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006).

## III. Discussion

Major League Baseball moves to dismiss Hernandez' claims brought under the Ohio Civil Rights Act on two grounds. First, Major League Baseball argues that the Act cannot be applied extraterritorially to the employment practices alleged in the Amended Complaint. (Dkt. No. 39 at 5–7.) Second, Major League Baseball argues that Hernandez cannot seek relief under conflicting laws of different states for an alleged injury caused by the same set of discrete acts. (Dkt. No. 39 at 8–11.) Because Major League Baseball's motion can be resolved on the second issue, the Court need not address the first.

Major League Baseball takes the position that Hernandez's attempt to bring claims under both Ohio and New York state laws should be approached as a choice of law question, and one state law should be applied to the exclusion of the other. (Dkt. No. 39 at 8.) Hernandez responds that he should nonetheless be permitted to assert claims under both states' laws due to the unusual circumstances of his job. (Dkt. No. 41 at 5.) He points to the transitory nature of his job to argue that he is discriminated against—and feels the effects of that discrimination—in every state in which he works. (Dkt. No. 41 at 6–7.) From this, Hernandez concludes that he should be permitted to bring claims in both New York and Ohio and effectuate the shared

3

purpose of these states' laws: protecting employees from the discriminatory conduct of their employers. (Dkt. No. 41 at 7.)

Hernandez's argument might have force if he sought to challenge one set of allegedly unlawful employment practices under New York law and a distinct set of discriminatory conduct under Ohio law. But instead, Hernandez seeks to challenge the *same acts* under both laws: Major League Baseball's failure to promote him to crew chief and failure to assign him to World Series umpire crews. (Compl. ¶¶ 127–132, 139–140.) It is well established that where a plaintiff challenges a single course of employer conduct under the laws of two different states, such circumstances present a choice of law question. *See, e.g.*, *Shamley v. ITT Corp.*, 869 F.2d 167, 171–72 (2d Cir. 1989); *Guzman v. Macy's Retail Holdings*, No. 09 Civ. 4472, 2010 WL 1222044, at *9 (S.D.N.Y. Mar. 29, 2010); *Coraggio v. Time Inc. Magazine Co.*, No. 94 Civ. 5429, 1995 WL 242047, at *3–4 (S.D.N.Y. Apr. 26, 1995). Hernandez makes no attempt to reconcile his claims with this doctrine, nor does he cite any authority for the proposition that the Court can simply ignore a conflict between Ohio and New York law here. Accordingly, the Court approaches this issue through the choice of law framework.[1]

"A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). Moreover, where a case is transferred pursuant to 28 U.S.C. § 1406(a), the transferee court must apply the choice of law rules "of the state in which it sits." *Gerena v. Korb*, 617 F.3d

---

[1] Though it opposes the application of this framework, Hernandez's response brief makes no attempt to refute Major League Baseball's arguments regarding the proper resolution of the conflict of law inquiry. (Dkt. No. 41 at 5–7.) Through his silence on the matter, the Court could deem Hernandez to have conceded the existence of a conflict and the outcome of Major League Baseball's choice of law analysis. *See Blessinger v. City of New York*, No. 17 Civ.108, 2017 WL 3841873, at *3 (S.D.N.Y. Sept. 1, 2017). In any event, Major League Baseball's analysis is correct.

197, 204 (2d Cir. 2010). "Under New York choice of law rules, the first inquiry in a case presenting a potential choice of law issue is whether there is an actual conflict of laws on the issues presented." *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011). If a court determines that there is an actual conflict, it then "appl[ies] choice-of-law principles and resolve[s] which state's law applies." *Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 457 (S.D.N.Y. 2015).

### A. Conflict Between New York and Ohio Laws

Hernandez alleges that Major League Baseball has discriminated against him on the "basis of his race, color and/or national origin" under both the Ohio Civil Rights Act, O.R.C. § 4112.02, (Compl. ¶ 127), and the NYSHRL, N.Y. Exec. Law § 296. (Compl. ¶ 140.) The Court first assesses whether these two state laws can be applied without actual conflict.[2]

The Ohio Civil Rights Act permits plaintiffs to recover punitive damages in employment discrimination actions. *See Rice v. CertainTeed Corp.*, 704 N.E.2d 1217, 1221 (Ohio 1999). And both punitive and compensatory damages in employment discrimination actions under the Act are subject to certain statutory caps. *See Luri v. Republic Servs., Inc.*, 953 N.E.2d 859, 864, (Ohio Ct. App. 2011) (citing O.R.C. §§ 2315.18, 2315.21), *rev'd on other grounds*, 971 N.E.2d 944 (Ohio 2012). In contrast, punitive damages are not available for employment discrimination actions under the NYSHRL. *See Jackson v. Scotts Co.*, No. 08 Civ. 1064, 2008 WL 1700224, at *2 (S.D.N.Y. Mar. 27, 2008); *see also* N.Y. Exec. Law § 297(4)(c)(iv). But there is no cap on

---

[2] Major League Baseball argues that the Ohio Civil Rights Act conflicts with both the State and City's human rights laws. (Dkt. No. 39 at 9.) But under similar circumstances, other courts in this Circuit have only considered whether there was a conflict between state laws. *See Beebe v. New York Times Co.*, 666 F. Supp. 2d 321, 330 (E.D.N.Y. 2009); *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 464–65 (S.D.N.Y. 1996). The Court takes that same approach here.

compensatory damages under the NYSHRL. *See Caravantes v. 53rd St. Partners, LLC*, No. 09 Civ. 7821, 2012 WL 3631276, at *21 (S.D.N.Y. Aug. 23, 2012).

When two state "statutes differ in the remedies available to successful litigants," courts in this Circuit have determined that the statutes are in conflict. *Robins*, 923 F. Supp. at 464. Specifically, as relevant here, courts have held that state laws are in conflict if one state permits punitive damages but the other does not, *see id.*, or if one state caps available damages but the other does not limit recovery, *see Deutsch v. Novartis Pharm. Corp.*, 723 F. Supp. 2d 521, 524 (E.D.N.Y. 2010). Accordingly, because the remedies available for employment discrimination claims differ under the applicable New York and Ohio laws, those laws are in actual conflict and the Court must employ New York choice of law principles to determine which to apply.

B. **State Interest Analysis**

"New York's choice of law rules apply the state interest test in employment discrimination cases." *Guzman*, 2010 WL 1222044, at *9. "Under that test, controlling effect is given 'to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation.'" *Robins*, 923 F. Supp. at 465 (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963)). In employment discrimination cases, factors that courts consider in determining which state has the greater interest include the residency of the plaintiff, the principal place of business of the defendant, and the location of the alleged discriminatory acts. *See id.*; *Coraggio*, 1995 WL 242047, at *4.

On several occasions, courts in this District have applied the "state interest test" in employment discrimination suits in which plaintiffs asserted claims under both the New York State Human Rights Law and another state's employment discrimination laws. In *Guzman v.*

6

*Macy's Retail Holdings*, for example, the court used the "state interest" analysis to determine whether to apply New York or New Jersey law in an employment discrimination and retaliation suit. 2010 WL 1222044, at *8–9. Because the conduct at issue occurred in New York, the plaintiff was a resident of New York, and the employer was headquartered in New York, the court determined that New York was "intimately concerned with the outcome of [the] litigation" whereas New Jersey had "no interest" in its resolution. *Id.* at *9 (citation omitted). Moreover, in at least two other cases, courts have found New York to have the greater interest when the employer's principal place of business was located in New York and the alleged discriminatory acts were perpetrated in New York. *See Robins*, 923 F. Supp. at 465; *Coraggio*, 1995 WL 242047, at *4.

In this case, it is clear that New York's concern for the issues raised in the pleadings outweighs Ohio's. Both Defendants have a principal place of business in New York (Compl. ¶¶ 2–3), a factor that gives New York a strong interest in the outcome of this suit. *See Guzman*, 2010 WL 1222044, at *9; *Robins*, 923 F. Supp. at 465; *Coraggio*, 1995 WL 242047, at *4. By comparison, Ohio's interest is limited to Hernandez's allegation that by not being made "crew chief, he is being discriminated against in many cities . . . including the city of Cincinnati, Ohio." (Compl. ¶ 102; *see id.* ¶ 1 (noting that Hernandez is not a resident of Ohio).) What Hernandez means, however, is that the "effects of the Defendants' discriminatory conduct" have been felt in Ohio, as they have been in New York and numerous other states. (Dkt. No. 41 at 7.) Importantly, Hernandez does not allege that "Defendants' decision[s] to not select him for: (1) crew chief, and (2) to umpire the World Series . . . were made in Ohio." (Dkt. No. 15 at 7.) The locus of these challenged employment decisions—which is often crucial in a determination of state interest, *see Robins*, 923 F. Supp. at 465—has not been alleged here.

Thus, Ohio has no particular interest in this suit, especially compared to New York, which has a strong interest in enforcing employment law with respect to organizations headquartered within its boundaries. *Cf. Shamley*, 869 F.2d at 172. Following New York's "state interest" test, it is evident that New York has both a stronger interest in disputes involving employers operating principally within its boundaries and far more contacts to the parties involved. Therefore New York's employment discrimination law, not Ohio's, applies in this case. The claims asserted by Hernandez under the Ohio Civil Rights Act must be dismissed.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss in part is GRANTED, and Plaintiff's claims under the Ohio Civil Rights Act are hereby dismissed.

The Clerk of Court is directed to close the motion at Docket Number 38.

SO ORDERED.

Dated: July 11, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge