# Exhibit C

| | |
|---|---|
| **From:** | Fischer, Rachel S. |
| **Sent:** | Thursday, April 4, 2019 6:07 PM |
| **To:** | Kevin Murphy |
| **Cc:** | Nick Gregg; Lupion, Adam M.; Abramson, Neil H.; Philion, Rachel S. |
| **Subject:** | RE: Angel Hernandez v. MLB |
| **Attachments:** | Joint Letter to Court re Discovery - 4-4-2019 - Joint Letter to Court re Discovery - 4-4-2019.pdf; Joint Letter to Court re Discovery - 4-4-2019.DOCX |

Kevin,

Attached find an updated letter and a redline. We made the same changes to our section that were in the draft I sent to you earlier (which were not incorporated in the draft you sent at 4:49 pm), and also made some tweaks to the opening paragraph in light of your recent changes.  We consent to your filing the letter as currently drafted.   We will need to review it again, and reserve the right to make additional changes, if you make any changes.

Thanks,
Rachel

**Rachel S. Fischer**
Attorney at Law

Proskauer
Eleven Times Square
New York, NY 10036-8299
d 212.969.5076
f  212.969.2900
rfischer@proskauer.com

---

**From:** Kevin Murphy <KMurphy@mljfirm.com>
**Sent:** Thursday, April 4, 2019 4:49 PM
**To:** Fischer, Rachel S. <rfischer@proskauer.com>
**Cc:** Nick Gregg <NGregg@mljfirm.com>; Lupion, Adam M. <ALupion@proskauer.com>; Abramson, Neil H. <NAbramson@proskauer.com>; Philion, Rachel S. <rphilion@proskauer.com>
**Subject:** RE: Angel Hernandez v. MLB

Counsel,

Enclosed is a proposed draft of the joint discovery letter, which eliminates sections II and III, as well as a blackline for your review.

In regard to section II, your statement of the Defendants' position asserts:  "as Plaintiff is aware, the process of selecting umpires for these roles is done at meetings, not in writing."  After reading Defendants' position on this issue and completing our initial review of the documents you provided yesterday afternoon, we have determined that further discussion on the ESI issues may be appropriate.  Similarly, as to section III, your statement that the performance evaluations for the 2010 season "have not been produced for the simple reason that they have not been found" and that "MLB continues to search for these documents, and agrees to produce them if and when they can be located," eliminates any need to raise the issue about the 2010 evaluations with the Court at this time.

Please let me know if you consent to filing the attached draft with the Magistrate.

Kevin L. Murphy

---

**From:** Fischer, Rachel S. <rfischer@proskauer.com>
**Sent:** Wednesday, April 3, 2019 6:38 PM
**To:** Kevin Murphy <KMurphy@mljfirm.com>
**Cc:** Nick Gregg <NGregg@mljfirm.com>; Lupion, Adam M. <ALupion@proskauer.com>; Abramson, Neil H. <NAbramson@proskauer.com>; Philion, Rachel S. <rphilion@proskauer.com>
**Subject:** RE: Angel Hernandez v. MLB

Kevin,

Attached find the joint letter with Defendants' portions included, as well as a redline.  We made some minor edits on page 1 and also to the headers.  I also attach Exhibits 7 and 8 to the letter.

You have our consent to file the joint letter as it is currently drafted.  If you make any changes then we will need to review it again before it is filed.  We reserve the right to make further changes to the letter if you make any changes.

Regards,
Rachel


**Rachel S. Fischer**
Attorney at Law

Proskauer
Eleven Times Square
New York, NY 10036-8299
d 212.969.5076
f  212.969.2900
rfischer@proskauer.com

---

**From:** Kevin Murphy <KMurphy@mljfirm.com>
**Sent:** Friday, March 29, 2019 4:48 PM
**To:** Abramson, Neil H. <NAbramson@proskauer.com>; Philion, Rachel S. <rphilion@proskauer.com>; Fischer, Rachel S. <rfischer@proskauer.com>
**Cc:** Nick Gregg <NGregg@mljfirm.com>
**Subject:** Angel Hernandez v. MLB

Counsel:

Pursuant to the Court's February 5, 2019 Order, attached is Plaintiff's half of the jointly composed discovery letter.  Please let us know Defendants' positions on these issues as soon as practicable.  We want to get this to the Magistrate by Wednesday of next week.

Have a good weekend.


Kevin L. Murphy



2400 Chamber Center Drive, Suite 200
Ft. Mitchell, KY 41017
(P) 859.578.3060 | (F) 859.578.3061

The preceding information is from the law firm of Murphy Landen Jones PLLC and may be protected by attorney/client privilege. If you believe it has been sent to you in error, do not read it. Please reply to the sender that you have received the message in error, then delete the message. Do not retain a copy. Thank you.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure.
If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them.
Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

April 4, 2019

**VIA ECF**
Hon. Gabriel W. Gorenstein
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      RE:    *Angel Hernandez v. The Office Of The Commissioner Of Baseball and Major League Baseball Blue, Inc.*
             No. 18 Civ. 09035 (JPO) (GWG)

Dear Judge Gorenstein:

      Pursuant to § 2(A) of the Court's Individual Practices and the Court's February 5, 2019 Order (Dkt. No. 50), Plaintiff Angel Hernandez ("Plaintiff") and Defendants The Office of the Commissioner of Baseball and Major League Baseball Blue, Inc. (collectively, "MLB" or the "Defendants") hereby submit the following jointly composed letter. The parties met and conferred via telephone about the issues stated below (i) on February 13, 2019 during a telephone call that lasted approximately two hours and 30 minutes[1]; and (ii) during a telephone call held on February 22, 2019 that lasted approximately one hour and 30 minutes[2]. Counsel discussed additional discovery disputes during those telephone calls that have either been resolved or are subject to further discussion between the parties. The parties were unable to resolve the issues detailed in this letter during those meet-and-confers and thus, at Plaintiff's request, file this jointly composed letter, which provides each party's position as to that dispute in detail.

---

[1] Attorney Nicholas Gregg participated in this call for the Plaintiff. Attorneys Neil Abramson, Rachel Philion, and Rachel Fischer participated in this call for the Defendants. The call included discussion of the issues stated in this letter, as well as discussion of ESI issues that are not the subject of this letter.

[2] Attorneys Kevin Murphy and Nicholas Gregg participated in this call for the Plaintiff. Attorneys Neil Abramson and Rachel Philion participated in this call for the Defendants. This call also included discussion of the issues stated in this letter, as well as discussion of ESI issues that are not the subject of this letter.

## I. Defendants' confidentiality designations

### A. *Plaintiff's Requests that Defendants Withdraw Their Confidentiality Designations*

**Plaintiff's Position:**

Thus far, all Umpire Evaluation documents produced by the Defendants have been designated by them as "Confidential" or "Confidential – Attorneys Eyes Only."[3] On January 24, 2019, Plaintiff's counsel sent Defendants' counsel a letter requesting that the Defendants withdraw their "Confidential" and "Confidential – Attorneys' Eyes Only" designations on the documents the Defendants had produced thus far. *See* Exhibit 1 (January 24, 2019 letter to Defendants' counsel regarding confidentiality designations). During the meet-and-confers held on February 13, 2019 and February 22, 2019, Plaintiff's counsel reiterated that request as to the Umpire Evaluation documents, and requested that in the event the Defendants were not willing to withdraw the designations completely, the Defendants should at least "downgrade" the designations from "Confidential – Attorneys Eyes Only" to "Confidential." The Defendants refused to withdraw the designations on the Umpire Evaluation documents and also refused to "downgrade" the designations to "Confidential."

When a party challenges another party's designation of a document as "Confidential" or "Confidential – Attorneys Eyes Only" under a protective order such as the one entered in this case, the "party seeking to maintain confidential treatment for the challenged document will have the burden of establishing good cause for the continuation of that treatment." *U2 Home Entm't, Inc. v. KyLin TV, Inc.*, No. 06-CV-2770 (DLI), 2008 WL 1771913, at *2 (E.D.N.Y. Apr. 15, 2008) (citing *Lachica v. City of New York*, No. 94 CIV. 7379 (LAK), 1995 WL 77928, at *1 (S.D.N.Y. Feb. 23, 1995)). Despite Plaintiff formally challenging Defendants' "Confidential" and "Confidential – Attorneys Eyes Only" designations on January 24, 2019—and reiterating that request in later meet-and-confers—the Defendants have not done anything to meet their burden of establishing good cause for why the Umpire Evaluation documents should continue to be maintained as "Confidential" or "Confidential – Attorneys Eyes Only." Their failure to demonstrate good cause for their confidentiality designations on a document by document basis requires that those designations be removed.[4]

---

[3] The Defendants have recently begun producing emails and other communications, all of which have also been designated as "Confidential" or "Confidential – Attorneys Eyes Only." Plaintiff emphasizes that, for purposes of this Joint Letter Motion, Plaintiff's portion of the letter regarding Defendants' "Confidential" and "Confidential – Attorneys Eyes Only" designations relates *only* to the Umpire Evaluation documents discussed during the parties' meet-and-confers. Given that the Defendants continue to produce documents designated as "Confidential" or "Confidential – Attorneys Eyes Only" but have also not demonstrated good cause for maintaining the designations as to those subsequent documents, Plaintiff reserves the right to challenge those designations and bring that issue to the Court's attention at a future date if necessary, unless this Court's future Order on this petition would also cover those new documents.

[4] As noted above, Defendants' have designated every single Umpire Evaluation document they have produced, as well as emails and other documents, as "Confidential" or "Confidential – Attorneys Eyes Only," without demonstrating the good cause necessary for maintaining those designations. Such blanket designations as those made by the Defendants here have been found by courts in the Southern District of New York to "suggest bad faith." *See*, *e.g.*, *Fears v. Wilhelmina*, No. 02 CIV. 4911 (HB), 2003 WL 21737808, at *1 (S.D.N.Y. July 25, 2003).

2

Additionally, the underlying information on which the Umpire Evaluations are based is available to the public at large. Anyone in the United States with a television or internet connection can tune in to watch the baseball games that the umpires in question work. There are entire websites dedicated to the analysis of umpire performance. Major League Baseball itself even sells some of this data, such as how pitches are tracked and other balls and strikes data, to the public in the form of "Statcast." *See* Exhibit 2 (description of Statcast and Baseball Savant from Major League Baseball's website). This is another independently sufficient basis for ordering that the confidentiality designations be withdrawn.

Finally, the Defendants' "Confidential – Attorneys Eyes Only" designations are also improper.[5] The Confidentiality Order entered in this case states that "Confidential Information designated as 'Confidential – Attorneys Eyes Only' means that the Producing Party believes in good faith that the Confidential Information is particularly sensitive information and the harm resulting to the privacy of a person or entity in interest from disclosure of the Confidential Information clearly outweighs the public interest in disclosure." Dkt. No. 36, Page 5 of 11, ¶ 5. The documents that have been designated as "Confidential – Attorneys Eyes Only" by the Defendants do not contain "particularly sensitive information." Indeed, outside of the umpires' names, the documents contain no personal information or "particularly sensitive information" at all.

Moreover, this is a case of significant public importance. Discrimination in Major League Baseball (which has tens of millions of fans across the country) is a serious problem, and allowing the Defendants to continue maintaining confidentiality designations without also showing good cause only compounds that problem. The public, which has an interest in and is directly affected by Major League Baseball and its conduct, should have access to the information that evidences the Defendants' discriminatory conduct, particularly when the Defendants have made no showing of good cause for why that information should remain confidential. The "harm resulting to the privacy of a person or entity in interest from disclosure" of the documents is minimal and is far outweighed by the public's interest in the disclosure of those documents. This is yet another reason why the designations of those documents as "Confidential – Attorneys Eyes Only" are improper and should be removed by order of the Court.

Finally, Defendants' over-designation of documents as "Confidential – Attorneys Eyes Only" prejudices Plaintiff by limiting his ability to use the documents in connection with this case. Paragraph 5 of the Confidentiality Order states that information designated as "Confidential – Attorneys Eyes Only" can be "furnished, shown or disclosed" *only* to (i) counsel of record for the Parties in this Litigation, including partners, associates, co-counsel, legal assistants, secretaries or other support staff of such counsel assigned to assist such counsel, and solely for the purposes of this Litigation; (ii) court reporters; (iii) the Judge and Magistrate Judge in this Litigation; (iv) court personnel responsible for this Litigation; and (v) any other person agreed to by the parties in writing. Plaintiff's counsel is thus unable to show the documents labeled "Confidential –

---

[5] The Defendants produced additional umpire evaluation documents following the parties' February meet-and-confers. In order to avoid further delay, Plaintiff's counsel agreed with Defendants' counsel that those documents would be produced as "Confidential – Attorneys' Eyes Only," but that the "Confidential – Attorneys' Eyes Only" designations would be subject to Plaintiff's challenge pursuant to the Confidentiality Order.

Attorneys Eyes Only" to (i) Plaintiff himself, (ii) any witness at a deposition, or (iii) any expert witness retained by Plaintiff, without first seeking the Defendants' permission. This unnecessarily and prejudicially burdens Plaintiff, who is now forced to seek Defendants' permission to use in the ordinary course of litigation any one of the thousands of documents the Defendants have improperly designated as "Confidential – Attorneys Eyes Only."[6] Given the impropriety of the Defendants' sweeping "Confidential – Attorneys Eyes Only" designations, the Defendants' failure to demonstrate good cause for those designations, and the significant prejudicial effects those designations continue to have on Plaintiff, the Court should order that the "Confidential – Attorneys Eyes Only" designations be removed.[7] Time is of the essence because Plaintiff needs to begin deposing Defendants' personnel, and the discovery cutoff is rapidly approaching.

**Defendants' Position:**

The confidentiality designations that Plaintiff challenges are all proper under the Confidentiality Order in this case. The parties' Confidentiality Order provides that "Confidential information includes any information, document, or thing that the party reasonably and in good faith believes to contain confidential information within the meaning of Fed. R. Civ. P. 26(c), which includes any information agreed to be kept confidential pursuant to any collectively-bargained for agreement." (Dkt. 36, ¶1.) The Confidentiality Order further provides that Confidential Information designated as "Confidential-Attorneys Eyes Only" means that the Producing Party believes in good faith that the Confidential Information is particularly sensitive information and the harm resulting to the privacy or person or entity in interest from disclosure of the Confidential Information clearly outweighs the public interest in disclosure." (Dkt. 36, ¶ 5.)

As an initial matter, the sole category of documents Plaintiff identified as allegedly inappropriately designated – both during the meet and confer process and in their portion of the joint letter – are documents concerning or reflecting performance evaluations of other Major League Baseball umpires. Defendants produced both formal written performance evaluations and documents that contain informal assessments of umpire performance. These documents contain highly sensitive and private personal information of individuals who are not parties to this litigation, and which is entitled to protection in accordance with the terms of the parties' Confidentiality Order. Among other things, the performance evaluation documents contain descriptions of other employees' competence, physical and mental fitness to handle the rigors of the job, prospects for promotion, supervisors' subjective evaluations of employees' performance and areas for improvement, statistics concerning umpires' technical skills, and overall performance ratings for other non-party umpires.

---

[6] Meanwhile, the Defendants can continue to abuse their ability to designate their documents as "Confidential – Attorneys Eyes Only" because they are not limited in their use of those documents. The Confidentiality Order allows for them to use that information as they wish (*see* Dkt. No. 36, ¶ 19, Page 9 of 11), which only further incentivizes the Defendants to apply blanket "Confidential – Attorneys Eyes Only" designations to their documents to Plaintiff's prejudice.

[7] At the very least, the Court should order the Defendants to "downgrade" their "Confidential – Attorneys Eyes Only" designations to "Confidential" designations, which would alleviate at least some of the prejudicial effects the "Confidential – Attorneys Eyes Only" designations are having on Plaintiff.

Although Defendants dispute the relevance of much of this information to Plaintiff's claims, they have agreed to produce it, subject to the Attorneys' Eyes Only ("AEO") designation contemplated by the Confidentiality Order.  Indeed, the personal information of other non-party umpires is precisely the kind of information that merits the heightened protections of an AEO designation.  And it bears significant emphasis that Defendants have not designated (and Plaintiffs have not identified) any categories of documents as AEO other than documents reflecting or discussing the personal and sensitive evaluations of other umpires' job performance.

The volume of documents within this category is simply a function of the over-breadth of Plaintiff's discovery requests.  Specifically,  Plaintiff has sought personnel and performance evaluation documents concerning non-party umpires alleged to be his comparators for 2006 through 2018, which Defendants have agreed to produce notwithstanding its objections.  Due to the extreme privacy interests associated with this information, Defendants do not, in the normal course, share performance evaluations or other performance data of umpires with their peers.  Although employees are not privy to the performance evaluations of their peers in most workplaces, the need to protect that type of information is particularly acute in light of the working environment of Major League Baseball umpires:  MLB's 76 umpires work together in crews to officiate games on the field (as well as in MLB's Replay Operations Center), and often travel, dine and lodge together for months at a time.  The job requires considerable teamwork and cooperation in high-pressure situations on a public stage.  It cannot reasonably be disputed that sharing performance evaluations or other employee-specific data with other umpires would cause significant discomfort, professional harm, and/or embarrassment to any umpire whose performance deficiencies were exposed to his co-workers.  In these circumstances, "Confidential" designations, which would permit Plaintiff to view the performance evaluation documents of all other Major League Baseball umpires who he claims to be his comparators would be insufficient to protect the non-party umpires' privacy interests.  Performance evaluation data concerning non-parties is exactly the type of "particularly sensitive information" that requires AEO protections.

Indeed, these very concerns have prompted courts to uphold AEO designations in similar contexts.  In employment discrimination cases specifically, there is a heightened need to protect the privacy of non-parties when, like here, the plaintiff is a *current* employee who is seeking confidential employment information concerning his colleagues.  For example, in *Chen Oster v. Goldman, Sach, & Co.*, the court instructed defendants to limit production of internal complaints by employees in a gender discrimination case to the plaintiffs' counsel (and not to plaintiffs) "in order to further guard employee privacy."  293 F.R.D. 557, 566 (S.D.N.Y. 2013).  Other Second Circuit courts have similarly restricted non-party personnel documents to plaintiffs' counsel. *See, e.g., U.S. v. Mount Sinai Hosp.*, 185 F.Supp.3d 383 (S.D.N.Y. 2016) (summary of employees' interviews concerning plaintiff's allegations and non-party demand letter were properly designated AEO because they were likely to harm non-parties, some of whom were still co-workers); *Dzanis v. JPMorgan Chase & Co.*, No. 10 Civ. 3384 , 2011 WL 5979650 (S.D.N.Y. Nov. 30, 2011) (ordering disclosure of non-party personnel records "attorneys' eyes only"); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 601 (S.D.N.Y. 1986) (affirming district court's order restricting access to employee personnel files to counsel only; "[t]he order appears

to have been a proper attempt to balance the plaintiffs' desire for full disclosure of relevant information against the defendant's desire to preserve the privacy of its employees").

Plaintiff's contention that umpire evaluations are not confidential because they are based on underlying information that is "available to the public at large" should be rejected out of hand. If that were the case, Plaintiff would not have any need to proffer any discovery requests at all on this subject. He could have instead obtained the requested information from the publicly available resources he cites. This is not simply a matter of technical acumen with respect to balls and strikes as plaintiff erroneously suggests, but rather entails a high degree of subjective and often very critical reviews of umpire performance. It is truly incredible for Plaintiff to assert that the opinion of "[a]nyone in the United States" who watches baseball on television carries the same weight or sensitivity as the MLB personnel to whom umpires report. The content of umpires' performance evaluations, such as their performance rankings, the evaluator's analysis of the umpire's work, and areas in which MLB believes the umpires need to improve, are kept strictly confidential, as described above.

Plaintiff's purported belief that this case is of "significant public importance" does not, in any way, diminish the privacy rights of non-party umpires. Plaintiff does not articulate what interest the public has in disclosure of umpire evaluations, and states in the most conclusory fashion that the privacy interests of non-party umpires are minimal. Contrary to Plaintiff's bald assertion, the privacy interests and the need to maintain confidentiality as set forth above far outweigh any possible public interest in the personnel records of non-parties. The fact that this is an employment discrimination case does not change the calculus. To be sure, employment discrimination is of enormous public concern. But that misses the point. As described above, courts have not hesitated to uphold AEO designations in the employment discrimination context. Plaintiff's case is no more important simply because he happens to be a Major League Baseball umpire.

Plaintiff has not even identified any possible interest that the public may have in thousands of pages of performance evaluation documents, and his stated intent to publicly disseminate the contents of non-party performance evaluation documents provides a further reason why AEO designations are necessary.[8] At the very least, these other non-parties, and their collective bargaining representative, should be afforded notice and an opportunity to be heard if their personal and private information is at risk of dissemination as Plaintiff requests. Moreover, Plaintiff has also failed to articulate any prejudice. Although he claims that AEO designations hamper his ability to show particular documents to deponents, this is easily remediable by an agreement among the parties, after meeting and conferring, that documents marked AEO can be used for particular witnesses. (*See* Dkt. No. 36, ¶¶ 4(h), 5.) For these reasons, Defendants' AEO designations – which have been limited to one category of documents – were appropriate, and should be upheld.

In addition, although Plaintiff appears to take issue with Defendants' designation of certain documents as "Confidential," he does not identify a single document that is not entitled to

---

[8] Indeed, just two weeks ago, Plaintiff filed a motion indicating an intent to publicize information related to this litigation. (Dkt Nos. 51-52.)

6

Confidential treatment under the terms of the Confidentiality Order (except for the performance evaluations of non-parties, which should be designated Confidential and AEO, as described above). His request to de-designate should be rejected for this reason alone, because his wholesale objection to Defendants designating *any* discovery material as Confidential is at odds with the Confidentiality Order, which expressly permits such designations.

Plaintiff's assertion that Defendants must demonstrate "good cause" on a "document by document basis" should also be rejected as inconsistent with the Confidentiality Order. That Order provides as follows:

> In the event that that a Party disagrees with the designation by another Party of any document, recording or information as "Confidential" or "Confidential-Attorneys' Eyes Only" the Parties first will attempt to resolve such dispute on an informal basis before presenting the dispute to the Judge or Magistrate Judge. (Dkt. No. 36, ¶ 3).

Plaintiff has not adhered to this requirements at all. Instead, as stated above, the only category of documents he has attempted to identify is non-party performance evaluation information, which is entitled to the utmost protection under the Confidentiality Order.[9] With respect to all other categories of documents, although he appears to dispute Defendants' designations, he has not identified a single document that he claims was inappropriately designated, much less attempted to resolve any such dispute.[10]

### B. Defendants' Requests that Plaintiff Designate Documents in his Production as "Confidential"

**Plaintiff's Position:**

Following Plaintiff's January 24, 2019 request that the Defendants withdraw their "Confidential" and "Confidential – Attorneys Eyes Only" designations, Defendants' counsel sent

---

[9] As described in Plaintiff's position on the issue below, Defendants offered to produce the performance evaluation documents that Plaintiff requested, notwithstanding Defendants' objections to the relevance of those materials, if Plaintiff would agree to designate non-party umpire performance evaluations as AEO. Plaintiff rejected Defendants' proposal. Defendants nevertheless produced the performance evaluation documents in an effort to avoid a dispute and without waiving their relevance objections to those materials.

[10] In any case, Defendants have not made "blanket" confidentiality designations as Plaintiff suggests. To the contrary, among the types of documents designated as Confidential are: (i) internal discussions concerning crew chief promotions or postseason assignments; (ii) internal discussions concerning umpire crew configurations or changes; (iii) requests by non-parties for promotion to crew chief positions and internal discussions regarding same; and (iv) proprietary information concerning how MLB evaluates umpire performance and accuracy. These types of documents are not in the public domain and are kept confidential. Disclosure would cause significant discomfort, professional harm, and embarrassment to non-parties if they were produced, and also implicate MLB's proprietary commercial information. *See* Fed. R. Civ. P. 26(c)(1). Accordingly, these types of documents fall squarely within the type of Confidential material that is contemplated by the parties' agreement, and Plaintiff provides no basis to disturb that designation with respect to any document.

7

a letter to Plaintiff's counsel stating that Defendants were designating 819 pages of documents *produced by Plaintiff* as Confidential. *See* Exhibit 3 (January 28, 2019 letter to Plaintiff's counsel regarding confidentiality designations of Plaintiff's documents).[11] Plaintiff believes he is not required to treat his own documents as "Confidential" given the clear terms of the Confidentiality Order entered in this case and the nature of the documents themselves.

First and foremost, ¶ 19 of the Confidentiality Order plainly states that "[n]othing [in the Confidentiality Order] shall prevent each Party from making whatever use of its own Confidential Information that it wishes." Dkt. No. 36, Page 9 of 11. Nevertheless, the Defendants contend that they are able to designate documents produced by Plaintiff as "Confidential." If Defendants' contention were true, it would be in direct contradiction of ¶ 19 of the Confidentiality Order, as it would limit Plaintiff's ability to use his own information as he sees fit.

Moreover, ¶ 2 of the Confidentiality Order governs how a *Producing Party* can designate documents as "Confidential": "Confidential Information produced in this Litigation may be designated as 'Confidential' *by a Producing Party* at the time of production or thereafter, by: . . ." (emphasis added). Dkt. No. 36, Page 2 of 11. The same is true for documents designated "Confidential – Attorneys Eyes Only": "Confidential Information designated as 'Confidential – Attorneys Eyes Only' means that the *Producing Party* believes in good faith that the Confidential Information is particularly sensitive information . . ." (emphasis added). Dkt. No. 36, Page 5 of 11, ¶ 5. Nowhere in the Confidentiality Order does it contemplate a Producing Party's documents being designated as "Confidential" by *another party*.

The same issues that apply to the Defendants' designation of their own documents as "Confidential" also apply to the Defendants' attempted confidentiality designations of Plaintiff's documents. The Defendants have not established—or even tried to establish—good cause for designating those documents as "Confidential." Many of Plaintiff's documents that the Defendants seek to designate as "Confidential" are Plaintiff's own performance evaluations. The public at large is able to observe Plaintiff's performance every time he steps on a baseball field. Thus, the Defendants' attempted designation of Plaintiff's documents as "Confidential" is improper, especially in light of the provisions of the Confidentiality Order discussed above.

Finally, in the last meet and confer on February 22nd, Defendants indicated that they would produce the umpire evaluation documents for umpires other than the Plaintiff *only* if Plaintiff agreed to the attorneys eyes only designation, and that if Plaintiff refused to waive his rights to challenge that designation under the protective order, *no such document would be produced*. Plaintiff politely refused to be held hostage to this bad faith tactic, and said such on the call. On Monday, February 25th, Defendants relented, and agreed to produce those documents, but did so with "Confidential – Attorneys Eyes Only" designations. *See* Exhibit 4. With the benefit of actually being able to see those documents, Plaintiff's counsel can now see that the Defendants were asking Plaintiff's counsel to waive any objection to the "Confidential – Attorneys Eyes Only" designation for documents that do not qualify for that designation. Plaintiff's counsel therefore

---

[11] On February 25, 2019, Defendants withdrew their request as to three of Plaintiff's documents, a total of 16 pages, but have not withdrawn the request as to the other 800+ pages of documents produced by Plaintiff that the Defendants identified in their January 28, 2019 letter.

includes those documents in Plaintiff's request that the Court remove the "Confidential – Attorneys Eyes Only" and "Confidential" designations. Plaintiff's counsel further asks the Court for an Order prohibiting Defendants from withholding any documents from production unless Plaintiff's counsel agrees (sight unseen) not to challenge any "Confidential – Attorneys Eyes Only" or "Confidential" designations that the Defendants have decided to apply to them.

### **Defendants' Position:**

Defendants have exercised their right under the Confidentiality Order to designate as Confidential certain confidential information that Plaintiff had in his possession and that he produced in discovery. First, contrary to Plaintiff's assertions, the Confidentiality Order expressly provides that a party may designate documents produced by another party as "Confidential." Plaintiff cites only the first portion of Paragraph 2 of the Confidentiality Order and ignores completely the second part of that Paragraph. Paragraph 2 of the Confidentiality Order states: "In the case of testimony, *or other Confidential Information disclosed during the course of the Litigation*, a Party may designate such information as Confidential by stating on the record that such testimony shall be Confidential, *and/or by designating such information as Confidential in a written notice.*" (*See* Dkt. 36, ¶2 (emphasis added).) Here, Defendants provided written notice to Plaintiff that certain documents that he produced are "Confidential," as permitted by the Confidentiality Order.

Second, the documents in question are confidential and should be treated as such. MLB does not somehow forfeit the confidentiality of its own information simply because that information was in Plaintiff's possession and produced in discovery. The documents in Plaintiff's production that Defendants have marked "Confidential" include correspondence concerning game incidents, discipline notices, Plaintiff's performance evaluations (which contain non-public information regarding the criteria and metrics on which all umpires are evaluated), memos regarding post-season umpire assignments, the World Umpires' Association Collective Bargaining Agreement that contains confidential information about umpires' compensation, and other performance data. These documents are kept confidential, are not disseminated outside of the industry, and concern or reflect the manner in which MLB runs its business. *See* Fed. R. Civ. P. 26(c). The documents that Defendants have designated as "Confidential" are not in the public domain, and their confidentiality is critical to maintain the public confidence in and the integrity of the game – one of MLB's most important objectives. Defendants should be permitted to preserve the confidentiality of their internal business documents.

                                                              Respectfully submitted,

                                                               Kevin L. Murphy

                                                               MURPHY LANDEN JONES PLLC

                                                               *Attorney for Plaintiff*

                                                  &

*/s/ Neil H. Abramson*
Neil H. Abramson

PROSKAUER ROSE LLP

*Attorney for Defendants*