UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL HERNANDEZ<br><br>PLAINTIFF,<br><br>V.<br><br>THE OFFICE OF THE COMMISSIONER OF BASEBALL AND MAJOR LEAGUE BASEBALL BLUE, INC.,<br><br>DEFENDANTS. | CASE NO: 18-CV-09035-JPO-GWG<br><br>PLAINTIFF'S AMENDMENT TO HIS COMPLAINT |

Comes now the Plaintiff, Angel Hernandez ("Plaintiff"), by and through counsel, and amends his complaint, adding the additional allegations and claims:

153.    Except to the extent explicitly amended hereby, Plaintiff incorporates by reference all of the allegations of his First Amended Complaint with Jury Demand (Plaintiff's "First Amended Complaint"), filed with the Court on November 27, 2018 (Dkt. 35), as if fully set forth herein.

154.    The existing text of Paragraph 67 of Plaintiff's First Amended Complaint is deleted, and the following is substituted therefor:  From Torre's arrival in The Office of the Commissioner in 2011 until the end of the 2016 season, there were six World Series in Major League Baseball. From 2011-2013, the World Series umpire crew consisted of six umpires.  From 2014-2016, the

1

World Series umpire crew consisted of eight umpires.  The total number of World Series umpires from 2011-2016 is 42.

155.    The first sentence of Paragraph 69 of Plaintiff's First Amended Complaint is deleted, and the following is substituted therefor:  The other 40 umpires assigned to the World Series during Torre's time in The Office of the Commissioner have been non-Latino and white.

## JURISDICTION AND VENUE

156.    With this amendment and the addition of the allegations and claims enumerated herein, the Court still has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331 because this case involves issues that arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e).

157.    Jurisdiction over Hernandez's state law claims is based upon the Court's pendent jurisdiction as set forth in 28 U.S.C. § 1367(a).

158.    The Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between the Plaintiff and the defendants The Office of the Commissioner of Baseball and Major League Baseball Blue, Inc. (collectively, "Major League Baseball" or the "Defendants") and the amount in controversy exceeds $75,000 exclusive of interest and costs.

159.    Major League Baseball is subject to personal jurisdiction in this District.

160.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because, among other things, Major League Baseball is deemed to reside in this district pursuant to 28 U.S.C. § 1391(c)(2) as Major League Baseball is subject to personal jurisdiction in this district with respect to this civil action.  Venue is also proper pursuant to 42 U.S.C. § 2000e-5(f)(3).

## ADDITIONAL FACTS

161.	Since 2011, Major League Baseball's process for promoting umpires to crew chief involves several individuals who purport to provide input on what umpire(s) will be promoted to crew chief for the following season if there is an opening for a new crew chief (the "Crew Chief Promotion Process").

162.	For many years, Major League Baseball has employed numerous supervisors and observers, nearly all of whom are former umpires, to observe in person the umpires' performance on the field.  Those supervisors and observers then complete a game evaluation form, commenting upon the criteria Major League Baseball purports to use to evaluate umpires.

163.	Those evaluation forms are then forwarded to the New York offices of Major League Baseball.

164.	Instead of utilizing objective data such as supervisor evaluations, observer evaluations and other objective data, crew chief promotion decisions made via the Crew Chief Promotion Process rely overwhelmingly on subjective criteria, such as Major League Baseball's opinion on the "leadership" abilities of an umpire, or Major League Baseball's opinion on an umpire's ability to manage certain "on-field situations."

165.	Joe Torre and Peter Woodfork are the key decisionmakers in the Crew Chief Promotion Process, and their decision must be approved by the Commissioner of Baseball.

166.	The Crew Chief Promotion Process utilized by Major League Baseball since 2011 gives Major League Baseball nearly limitless authority to promote to the crew chief position whichever umpire it wants, without adequate consideration for objective data or objective criteria that would guide their decision-making process.

167. The Crew Chief Promotion Process, rife with subjectivity, permits Major League Baseball to include criteria in the Crew Chief Promotion Process that are outside the merits of an umpire's performance.

168. Major League Baseball's Crew Chief Promotion Process has resulted in *zero* minority umpires promoted to crew chief since 2011, despite the Major League umpire staff containing at least six minority umpires in 2011 and 2012, at least seven minority umpires in 2013, and at least eight minority umpires in each of 2014, 2015 and 2016.

169. In 2011, two of those minority umpires, including Plaintiff, were the number two umpires on their crew behind the crew chief. In 2012, 2013, and 2014, three of those minority umpires, including Plaintiff, were the number two umpire on their crew. In 2015 and 2016, four of those minority umpires, including Plaintiff, were the number two umpire on their crew.

170. The Crew Chief Promotion Process has resulted in a disparate impact on the promotion of minority Major League umpires, including Plaintiff and other Latino Major League umpires, to crew chief.

171. Like the Crew Chief Promotion Process, Major League Baseball's process for selecting umpires for the World Series (the "World Series Selection Process") has a disparate impact on minority Major League umpires, including Plaintiff.

172. Joe Torre and Peter Woodfork are the key decisionmakers in the World Series Selection Process, and their decision must be approved by the Commissioner of Baseball.

173. Major League Baseball's World Series Selection Process as a whole is based largely, if not entirely, on subjective criteria and the opinions of Major League Baseball's umpire executives who are involved in making those decisions.

174. As with the Crew Chief Promotion Process, the inclusion of subjective criteria in the World Series Selection Process permits Major League Baseball to rely on criteria in the World Series Selection Process that are outside the merits of an umpire's performance.

175. Major League Baseball's World Series Selection Process has resulted in only one minority umpire being selected for the World Series for the 2011-2016 seasons: Alfonso Marquez, for the 2011 World Series and the 2015 World Series.

176. All other umpires selected to the World Series for the 2011-2016 seasons have been non-Latino and white, despite the Major League umpire staff containing at least six minority umpires in 2011 and 2012, at least seven minority umpires in 2013, and at least eight minority umpires in each of 2014, 2015 and 2016.

177. The World Series Selection Process has resulted in a disparate impact on the selection of minority Major League umpires, including Plaintiff and other Latino Major League umpires, to work the World Series.

**COUNT SEVEN**
**(Discrimination in Violation of Title VII of the Civil Rights Act of 1964 – Disparate Impact)**

178. Plaintiff incorporates by reference all of the foregoing allegations, including the allegations contained in his First Amended Complaint, as if fully set forth herein.

179. By its conduct as described above, Major League Baseball, through the Crew Chief Promotion Process, has engaged in practices that have resulted in a disparate impact, such that, but not limited to, no African-American, Latino or other minority umpires have been promoted to the crew chief position since 2011, while at least ten non-Latino white umpires have been promoted to the crew chief position in that timeframe.

180. By its conduct as described above, Major League Baseball, through the World Series Selection Process, has engaged in practices that have resulted in a disparate impact, such

5

that, but not limited to, only one minority umpire (who was selected twice) has been selected to umpire the World Series in the 2011-2016 seasons, while all other umpires selected to the World Series during that timeframe were non-Latino and white.

181.   The Crew Chief Promotion Process and World Series Selection Process (together, the "Processes") are—or at least purport to be—facially-neutral practices.

182.   The promotion and other employment statistics discussed herein and in Plaintiff's First Amended Complaint demonstrate that a disparity exists as a direct result of the Processes.

183.   As a direct result of Major League Baseball's Crew Chief Promotion Process and World Series Selection Process, Plaintiff has suffered damages and injuries including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## COUNT EIGHT
### (Discrimination in Violation of the New York State Human Rights Law – Disparate Impact)

184.   Plaintiff incorporates by reference all of the foregoing allegations, including the allegations contained in his First Amended Complaint, as if fully set forth herein.

185.   By its conduct as described above, Major League Baseball, through the Crew Chief Promotion Process, has engaged in practices that have resulted in a disparate impact, such that, but not limited to, no African-American, Latino or other minority umpires have been promoted to the crew chief position since 2011, whereas at least ten white umpires have been promoted to the crew chief position in that timeframe.

186.   By its conduct as described above, Major League Baseball, through the World Series Selection Process, has engaged in practices that have resulted in a disparate impact, such

that, but not limited to, only one minority umpire (who was selected twice) has been selected to umpire the World Series in the 2011-2016 seasons, whereas all other umpires selected to the World Series during that timeframe were white.

187.　The Processes are—or at least purport to be—facially-neutral practices.

188.　As the promotion and other employment statistics discussed herein and in Plaintiff's First Amended Complaint demonstrate, a disparity exists in the selection of crew chiefs as a direct result of the Crew Chief Promotion Process and a disparity exists in the selection of umpires for the World Series as a direct result of the World Series Selection Process.

189.　As a direct result of Major League Baseball's Crew Chief Promotion Process, Plaintiff has suffered damages and injuries including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.  As a direct result of Major League Baseball's World Series Selection Process, Plaintiff has suffered damages and injuries including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## COUNT NINE
**(Discrimination in Violation of the New York City Human Rights Law – Disparate Impact)**

190.　Plaintiff incorporates by reference all of the foregoing allegations, including the allegations contained in his First Amended Complaint, as if fully set forth herein.

191.　By its conduct as described above, Major League Baseball, through the Crew Chief Promotion Process, has engaged in practices that have resulted in a disparate impact, such that, but not limited to, no African-American, Latino or other minority umpires have been promoted to the

7

crew chief position since 2011, while at least ten non-Latino white umpires have been promoted to the crew chief position in that timeframe.

192. By its conduct as described above, Major League Baseball, through the World Series Selection Process, has engaged in practices that have resulted in a disparate impact, such that, but not limited to, only one minority umpire (who was selected twice) has been selected to umpire the World Series in the 2011-2016 seasons, whereas all other umpires selected to the World Series during that timeframe were non-Latino and white.

193. The Crew Chief Promotion Process and World Series Selection Process are—or at least purport to be—facially-neutral practices.

194. As the promotion and other employment statistics discussed herein and in Plaintiff's First Amended Complaint demonstrate, a disparity exists in the selection of crew chiefs as a direct result of the Crew Chief Promotion Process and a disparity exists in the selection of umpires for the World Series as a direct result of the World Series Selection Process

195. The Processes discussed herein are practices that result in a disparate impact to the detriment of Latino Major League umpires, including Plaintiff, as well as to the detriment of African-American Major League umpires and all other minority Major League umpires.

196. As a direct result of Major League Baseball's Crew Chief Promotion Process, Plaintiff has suffered damages and injuries including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.  As a direct result of Major League Baseball's World Series Selection Process, Plaintiff has suffered damages and injuries including, but not limited to, loss of earnings and earning capacity; loss of career opportunities;

mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

**WHEREFORE**, Plaintiff prays for a judgment jointly and severally against the defendants as more fully set forth in his First Amended Complaint.

>Respectfully submitted,
>
>MURPHY LANDEN JONES PLLC
>
>By:  *Kevin L. Murphy*
>Kevin L. Murphy (*pro hac vice*)
>J. Jeffrey Landen (*pro hac vice*)
>Nicholas R. Gregg (*pro hac vice*)
>2400 Chamber Center Drive, Suite 200
>Fort Mitchell, KY 41017
>Tel: 859-360-1123
>KMurphy@MLJfirm.com
>JLanden@MLJfirm.com
>NGregg@MLJfirm.com
>
>&
>
>LEWIS DIBIASI ZAITA & HIGGINS
>Paul Z. Lewis
>Nicholas J. Zaita
>420 Lexington Avenue, Suite 300
>New York, NY 10107
>Tel: (212) 772-0943
>plewis@ldzhlaw.com
>nzaita@ldzhlaw.com
>***Attorneys for Plaintiff Angel Hernandez***

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to: Neil H. Abramson, Esq., Rachel S. Philion, Esq., and Adam M. Lupion, Esq., PROSKAUER ROSE LLP, Eleven Times Square, New York, New York 10036-8299.

    Respectfully Submitted,

    MURPHY LANDEN JONES PLLC

    By: *Kevin L. Murphy*
    Kevin L. Murphy (*pro hac vice*)
    2400 Chamber Center Drive, Suite 200
    Fort Mitchell, KY 41017
    Tel: 859-360-1123
    *Attorney for Plaintiff Angel Hernandez*