NEIL H. ABRAMSON
ADAM M. LUPION
RACHEL S. PHILION
RACHEL S. FISCHER
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for Defendants*
THE OFFICE OF THE COMMISSIONER
OF BASEBALL and MAJOR LEAGUE
BASEBALL BLUE, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL HERNANDEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>THE OFFICE OF THE COMMISSIONER OF BASEBALL and MAJOR LEAGUE BASEBALL BLUE, INC.<br><br>    Defendants. | No. 18 Civ. 9035 (JPO) (GWG) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>MOTION TO EXCLUDE DR. GREGORY W. BAXTER</u>**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1
ARGUMENT .................................................................................................................................. 2
    I.    BAXTER IS NOT QUALIFIED TO ASSESS UMPIRE PERFORMANCE. ................................................................................................2
    II.    BAXTER'S ANALYSIS IS DEVOID OF ANY SPECIALIZED EXPERTISE. .............................................................................................................4
    III.    BAXTER'S ANALYSIS IS INHERENTLY UNRELIABLE. ...............................6
    IV.    BAXTER'S REPORT IS IRRELEVANT TO THE CLAIMS IN THIS CASE. ...............................................................................................................10
CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bethea v. Equinox Fitness Club*,
    544 F. Supp. 2d 398 (S.D.N.Y. 2008), *aff'd sub nom Mass v. Equinox Fitness Club*, 354 F. App'x 556 (2d Cir. 2009) .................................................................................5

*Edmondson v. RCI Hospitality Holdings, Inc.*,
    No. 16-cv-2242 (VEC), 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ...................................6

*Garcia v. Daniel Industries, Inc.*,
    No. H-97-3475 (S.D. Tex. Nov. 6, 1998). ...............................................................................5

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) .....................................................................................5

*Lassen v. Hoyt Livery, Inc.*,
    No. 13-cv-1529 (VAB), 2016 WL 7165716 (D. Conn. Dec. 8, 2016) .....................................5

*Linde v. Arab Bank*, PLC,
    922 F. Supp. 2d 316 (E.D.N.Y. 2013) .....................................................................................5

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) .....................................................................................3

*Morris v. Goodyear Tire & Rubber Co.*,
    No. CIV-03-655-C, 2004 WL 5522851 (W.D. Okla. Dec. 17, 2004) ......................................4

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ...............................................................................................5

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016), *aff'd sub non Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) ......................................................................................................6

*Tardif v. City of N.Y.*,
    344 F. Supp. 3d 579 (S.D.N.Y. 2018) .....................................................................................7

*Triodetic Inc. v. Statue of Liberty IV, LLC*,
    582 F. App'x 39 (2d Cir. 2014) ...............................................................................................4

**OTHER AUTHORITIES**

Fed. R. Evid. 702 .......................................................................................................................3, 4, 7

2000 Amendments to Adv. Committee Notes to Fed. R. Evid. 702 ..............................................7

## PRELIMINARY STATEMENT

MLB moved to exclude Gregory Baxter, Plaintiff Angel Hernandez's so-called human resources expert, on multiple independent grounds. Plaintiff's opposition, which relies on an unreasonably relaxed and legally unsupported standard for admissibility of expert evidence, is futile because: (i) Baxter's alleged expertise has no nexus to his opinions here; (ii) his analysis requires no specialized knowledge at all and thus is improper expert testimony; (iii) his methods are hopelessly unreliable (including his failure to use a control group despite offering opinions on causation); and (iv) his analysis is irrelevant to the claims in this case. Not surprisingly, no court has permitted the type of performance evaluation expert testimony Baxter purports to offer here, let alone expert testimony with as many defects as are manifest in Baxter's analysis. Also not surprisingly, Baxter has been excluded as an expert witness in multiple jurisdictions, including this one, based on the same types of flaws that pervade his analysis here. This Court should follow suit. Baxter's analysis should be disregarded in its entirety because his opinions and conclusions are worthless as a matter of law.

First, Plaintiff simply ignores that Baxter's opinions that MLB "unfairly" denied employment opportunities to three Major League umpires despite what he perceived to be their "excellent" and "actual" on-field performance are completely divorced from the human resources expertise he purports to have. It is literally impossible for Baxter to reach these staggering conclusions in any legally meaningful manner given Baxter's express admissions that he (i) is "utterly unfamiliar" with baseball rules, (ii) lacks qualifications to assess umpire performance; and (iii) does not know the criteria for the positions he claims were unfairly denied to Plaintiff.

Next, Plaintiff concedes that all that Baxter did here was conduct a "comparison" of words and phrases contained in umpires' written performance evaluations. Plaintiff's suggestion that this

rudimentary exercise required specialized knowledge simply because Baxter reviewed what he considered to be a large number of documents is insufficient as a matter of law.

Third, Plaintiff's methods are unreliable because he employed no methodology and, critically, failed to use a comparator control group for any of his conclusions. Although Plaintiff admits that Baxter failed to use a control group, Plaintiff's lone justification for this failure – that Baxter did not opine on the "sole" cause of the effects of MLB's review process – is meaningless; in the absence of a control group, Baxter cannot identify the cause of anything – sole or otherwise.

Plaintiff's additional contentions regarding the alleged soundness of Baxter's methods and the relevance of his findings are based on a tortured analysis of, and willful blindness to, the undisputed record evidence, rendering his analysis wholly unreliable.

## ARGUMENT

### I. BAXTER IS NOT QUALIFIED TO ASSESS UMPIRE PERFORMANCE.

Plaintiff does not dispute that Baxter is "utterly unfamiliar" with the rules of baseball or that he lacks qualifications to opine on umpire performance. (*See* Dkts. 159 & 162 ("Abramson Decl."), Ex. A ("Baxter Tr.") 105:12-14.) Plaintiff baldly claims that Baxter's profound lack of baseball knowledge should not preclude his testimony here because Baxter "does not offer opinions about an umpire's on-field performance[.]" (Dkt. 180 ("Pl. Br.") at 3.) As is clear on the face of his report, this assertion is demonstrably false. Baxter's report is infected with his subjective and uninformed views about umpires' performance. Indeed, the crux of Baxter's opinion and the sole basis for its relevance is that umpires' "excellent performance was not being reported in the year-end review," "that MLB's pattern of hiding minority umpires' excellent performance had negative effects on their opportunities for career advancement," and that "[b]y creating performance reviews not reflecting actual performance, MLB officials positioned minority umpires for failure." (Pl. Br. at 12; *see also* Abramson Decl., Ex. E ("Baxter Report"),

2

at 5-7.) Baxter admittedly has no basis for distinguishing "excellent" on-field performance from the descriptions contained in the evaluations prepared by individuals that *do* have the expertise to make these distinctions. Similarly, Baxter lacks qualifications to make subjective assessments about how umpire performance should be expressed in evaluations. Baxter's use of "word salad" – a phrase he equated to mean feedback "irrelevant to performance" – is additional evidence that he far exceeded his depth. (*See* Baxter Report at 7; *see also* Dkts. 160 & 163 ("Martin Decl.") ¶ 21; Martin Decl., Ex. A ("Martin Report") ¶ 67.) To judge whether feedback is related to actual performance, he would need to understand what attributes are important to umpire performance. Yet, he admittedly does not know these performance criteria whatsoever.

Plaintiff's attempt to mask Baxter's lack of qualifications on the matters germane to his opinions by claiming that his human resources experience renders him an expert on the subject of "performance review processes, and selection and promotion processes," (Pl. Br. at 4), is unavailing under Rule 702. Even assuming Baxter was qualified in those areas, there is no nexus between that alleged expertise and his opinions here. Baxter offers no opinion on the design or process of the performance management tools that MLB uses to evaluate umpires, only that such evaluations allegedly "conceal[ed] season-long patterns of excellence[,]" "failed to address minority umpires' reported performance of important duties," and contained comments that were "irrelevant to performance." (Baxter Report at 6-7.) Plaintiff does not explain how Baxter's human resources experience allows him to make these subjective determinations that necessarily require a command of baseball that Baxter admittedly lacks. (*See* Baxter Tr. 91:22-92:1, 105:12-107:1, 122:20-123:3). *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007) (holding "[t]estimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702").

Similarly, although Plaintiff proffers Baxter as an expert in "selection and promotion processes" (Pl. Br. at 2), that expertise is irrelevant because Baxter admitted that he ***does not know*** the qualifications for the positions at issue in this case. (Baxter Tr. 91:22-92:1, 106:16-107:1). He therefore is unable to evaluate the nexus of those processes to candidate selection here.[1]

## II. BAXTER'S ANALYSIS IS DEVOID OF ANY SPECIALIZED EXPERTISE.

Plaintiff does not dispute that the tasks Baxter completed to prepare his report were limited to: (i) comparing feedback contained in umpires' year-end evaluations with words and phrases contained in observation reports for individual games, which Plaintiff calls "UERs"; (ii) noting any comment in a year-end review that Baxter believed did not have support in a UER; and (iii) characterizing feedback in year-end evaluations as either positive, negative or "word salad." Plaintiff also does not dispute that these tasks require no specialized expertise.[2] Rather, Plaintiff claims that Baxter's specialized expertise is "highlight[ed]" solely by the fact that he reviewed more than 1,100 documents. (Pl. Br. at 10-11.) But as Baxter admitted, "[y]ou could probably train most people to do" exactly that. (Baxter Tr. 220:15-221:9.) Although Baxter does not believe that "the average non-human resources manager" without that training could replicate this exercise (Baxter Tr. 221:3-5), that low bar is insufficient under Rule 702; Baxter's self-proclaimed ability to review a large number of documents does not make him an expert. *See Morris v. Goodyear Tire & Rubber Co.*, No. CIV-03-655-C, 2004 WL 5522851, at *9 (W.D. Okla. Dec. 17, 2004) (excluding expert in part and rejecting argument that the proposed expert's "expertise is his ability to review thousands of documents and determine what the [defendant] knew and when").

---

[1] Plaintiff failed to respond to MLB's argument that Baxter is qualified to opine on MLB's selection and promotion processes. Accordingly, he has waived that argument. *See, e.g.*, *Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. App'x 39, 40 (2d Cir. 2014).

[2] Nor does Plaintiff identify any specialized knowledge or skill that makes Baxter "uniquely situated" to perform these tasks as Plaintiff claims. (*See* Pl. Br. at 6-7.)

Baxter's report is simply an attempt to construct a summary of evidence in the record and should be excluded on this basis alone. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). As explained in MLB's opening brief, the simple act of comparing, summarizing or evaluating evidence in the record requires no specialized expertise. (Dkts. 158 & 161 ("MLB Br.") at 13-14.) Indeed, Baxter himself has been excluded on this basis at least twice, including in this district, a fact Plaintiff does not even attempt to explain or distinguish. *See Bethea v. Equinox Fitness Club*, 544 F. Supp. 2d 398, 399 (S.D.N.Y. 2008), *aff'd sub nom Mass v. Equinox Fitness Club*, 354 F. App'x 556 (2d Cir. 2009); Abramson Decl., Ex. J, *Garcia v. Daniel Industries, Inc.*, Memorandum & Order, at *20, No. H-97-3475 (S.D. Tex. Nov. 6, 1998).

Plaintiff does not cite any case to support his claim that merely reviewing a large number of documents is itself a specialized skill.[3] Instead, he relies on decisions where courts permitted experts to testify based on qualifications and analyses that bear no resemblance to Baxter's. *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 46 (S.D.N.Y. 2016) (expert placed facts "within a larger context of industry norms"); *Lassen v. Hoyt Livery, Inc.*, No. 13-cv-1529 (VAB), 2016 WL 7165716, at *5-6, 11 (D. Conn. Dec. 8, 2016) (finding expert's analysis would "assist the jury in the calculation of damages" where he "performed his own calculations" and used his "own judgment" to estimate hours worked in a wage-and-hour case); *Linde v. Arab Bank*, *PLC*, 922 F. Supp. 2d 316, 331-32 (E.D.N.Y. 2013) (reciting the expert's specialized knowledge with respect to the conclusions he reached in that case).

---

[3] As noted in MLB's opening brief, courts routinely exclude human resources experts on the ground that the subject matter is not so complex to be beyond the common understanding of a trier of fact. Plaintiff simply claims that those cases "are factually distinct from the circumstances here in a number of different ways" but fails to explain how that is so. (Pl. Br. at 8, n.1)

## III. BAXTER'S ANALYSIS IS INHERENTLY UNRELIABLE.

*First*, Plaintiff admits Baxter did not use a control group. Plaintiff attempts to excuse that failure based on his specious claim that Baxter did not opine that MLB's review process was the "sole cause" of the challenged employment decisions. (Pl. Br. at 11) That is both untrue and irrelevant. It is untrue because Plaintiff expressly admits that Baxter *did* conclude that the alleged errors he observed "have 'caused damage to [Plaintiff's] career advancement' and had the effect of 'denying those [minority umpires] *fair opportunities* for promotions and World Series assignments."' (Pl. Br. at 12, emphasis in original). That indisputably is a cause and effect relationship requiring a control group. *See Strougo v. Barclays PLC*, 312 F.R.D. 307, 317 (S.D.N.Y. 2016) (noting that a "control group provides the benchmark against which the treatment group is compared to determine if the event being studied *had any effect*.") (internal citation omitted, emphasis added), *aff'd sub non Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017); *Edmondson v. RCI Hospitality Holdings, Inc.*, No. 16-cv-2242 (VEC), 2020 WL 1503452, at *7 (S.D.N.Y. Mar. 30, 2020) (concluding that survey "aimed to analyze whether Defendants' advertisements *caused* consumer confusion, and is, therefore, a causal study warranting a control group") (emphasis in original). Plaintiff's distinction is irrelevant because even if not a "sole" cause, he claims it was *a* cause. Plaintiff does not cite any legal authority that remotely suggests that his failure to use a control group in these circumstances can be overlooked.

Plaintiff's *ipse dixit* that Baxter's opinion – *i.e.*, that "MLB's pattern of hiding minority umpires' excellent performance had negative effects on their opportunities for career advancement" – does not require the use of a control group, is wrong for the same reasons. (Pl. Br. at 12.) This sweeping conclusion necessarily entails a relative assessment of the performance and opportunities for advancement between minority umpires and other umpires. Without a control group, it is not possible to make this determination, and Baxter's conclusion is pure

6

conjecture. (*See* MLB Br. at 16-17; Martin Decl. ¶¶ 12-15.) Indeed, it is a basic scientific principle that the ***only*** way Baxter could have concluded that the alleged errors he identified "caused damage" to the three minority umpires' careers or denied them "fair opportunities" is if he demonstrated that those same alleged errors did ***not*** exist for other umpires. (Martin Decl. ¶ 14; Martin Report ¶¶ 48, 51.) He failed to do so, rendering his conclusion meaningless, or at a minimum, wholly unreliable.[4]

*Second*, Plaintiff concedes that Baxter failed to address obvious alternative explanations for his observations, arguing instead that he was "not required" to do so. (Pl. Br. at 13). That contention runs directly counter to Rule 702 and the law in this district. *See* 2000 Amendments to Adv. Committee Notes to Fed. R. Evid. 702; *Tardif v. City of N.Y.*, 344 F. Supp. 3d 579, 601 (S.D.N.Y. 2018). Plaintiff cites no authority to the contrary, and instead relies on a distorted view of the record to justify his willful blindness.

Baxter clings to the fiction that comments in UERs reflect umpires' "season-long patterns of excellence" without regard to any other factor. (Baxter Report at 6.) He failed to consider the effect of factors independent of the UERs on the employment outcomes he observed.[5] (*See* MLB Br. 18-20; *see also* Martin Report ¶¶ 53-63.) In his opposition brief, Plaintiff failed to provide any explanation why Baxter neglected to consider individualized circumstances for each umpire that

---

[4] Plaintiff's contention that MLB's expert, Dr. Denise Martin, is not qualified to rebut Baxter solely because she is not a human resources expert is nonsensical. Dr. Martin is an expert statistician and economist who has been qualified as an expert in the social sciences on numerous occasions; her expert opinions never have been excluded. (*See* Martin Decl. ¶ 5; Martin Report ¶¶ 5-8; Declaration of Neil H. Abramson in Support of Defendants' Reply Memorandum of Law ("Abramson Reply Decl."), Ex. A 27:15-23, 58:2-4.) That she does not hold herself out to be a human resources expert is simply irrelevant to her scientific opinion that a control group is necessary to establish a causal link. Baxter, on the other hand, is unqualified to opine on whether or when a control group is necessary because his purported expertise is limited to performance evaluations.

[5] Baxter also ignored the fact that one of these umpires, Alfonzo Marquez, was selected ***twice*** for the World Series during the six years Baxter concluded that MLB's review process negatively affected him. (MLB Br. at 2 n.3; Baxter Tr. 202:4-23, 203:19-204:9.)

7

could have explained their employment outcomes. Baxter's failure to consider alternative explanations beyond the UERs is even more troubling given the undisputed testimony from MLB executives that UERs are not given significant weight in the decision making process for crew chief selections and World Series assignments. (Abramson Reply Decl., Ex. B ("Torre Tr.") 35:18-23, 191:18-25; Ex. C ("Woodfork Tr.") 24:19-27:13, 58:9-12.) Baxter admittedly did not consider any factor that could explain the employment outcomes he observed only because doing so was outside the scope of his assignment. (Baxter Tr. 193:5-12, 200:10-201:12.)

Baxter also concluded that all feedback in year-end evaluations were "errors" that did "not reflect[] actual performance" simply because he believed that such feedback did not align with a UER generated for an individual game. (Baxter Report at 6-7.) As MLB also explained (and Plaintiff does not dispute), there are many sources of information for umpire year-end evaluations in addition to UERs, in part because UERs cover only a fraction of an umpire's games. (*See* MLB Br. at 18-19.) Baxter admitted that he did not consider any of these other sources. Plaintiff attempts to justify that failure by relying on a single snippet of testimony from Joe Torre that Plaintiff has completely misconstrued. (Pl. Br. at 14.) Indeed, Torre was clear that feedback in a year-end evaluation that was not mentioned in a UER could have been added by an employee of the Commissioner's Office, (Torre Tr. 34:22-35:10), which the umpires' collective bargaining agreement expressly allows and as a number of MLB witnesses testified was the case. (Abramson Decl., Ex. D 136:4-20; Ex. F, at DEF1285-86, Ex. G, at DEF1450; Torre Tr. 186:3-23; Woodfork Tr. 85:14-87:17.) Plaintiff's suggestion that Baxter could not have considered these additional sources of information based on what was produced during discovery completely misses the point. Based on the information he *did* review, Baxter plainly was aware that year-end evaluations are

comprised of much more than the UERs (*see* Baxter Tr. 163:13-18, 189:9-17), but dismissed all of this additional information as an alternative explanation for what he observed.

*Third*, Plaintiff's suggestion that Baxter's analysis is "easily replicable" is wholly unsupported. While the simple mechanical task of converting written reviews to a searchable format and lining those documents up side-by-side can be replicated, Baxter's analysis cannot be. His report contains no list of search terms, how Baxter deemed feedback in year-end evaluations to be sufficiently matched to a UER, or how Baxter determined whether feedback was positive, negative, or "word salad." Baxter attempted to cure these defects by papering a purported methodology nearly two months after he finalized his report, but Plaintiff curiously attempted to withhold that document and produced it only after this Court ordered its production. (Dkt. 153.) Even then, that so-called methodology is silent with respect to Baxter's criteria for matching feedback in year-end evaluations to UERs, contains a partial list of words that he considered to be positive, and contains no words or search terms that he considered to be negative or how he concluded that feedback was "word salad." (Abramson Decl., Ex. H.) Plaintiff does not dispute these points and instead claims that Baxter testified generally regarding his understanding of these terms. (Pl. Br. at 20-21.) Although Baxter's testimony described what he did in only the most general and vague terms, without specifics of what he actually did, it would be impossible for anyone to test the validity of his results. (*See* Martin Decl. ¶ 20; Abramson Decl., Ex. B 73:8-19, 143:15-144:4.) This is not merely a "disagreement" with Baxter's methodology as Plaintiff erroneously suggests. (Pl. Br. at 21-22.) There is no discernible methodology at all, rendering his analysis entirely unreliable.

*Fourth*, in tacit recognition that Baxter lacks any apparent methodology, Plaintiff makes the belated assertion that Baxter relied on "semantic similarity" analysis. (Pl. Br. at 23.) The

9

problem with this post-hoc rationalization, however, is that Baxter admitted at deposition he did not rely on any technique recognized in academic literature and instead concocted this exercise for purposes of this case.[6]  (MLB Br. at 7; Baxter Tr. 16:23-17:10, 17:22-18:5, 123:4-124:8.)

## IV. BAXTER'S REPORT IS IRRELEVANT TO THE CLAIMS IN THIS CASE.

Plaintiff claims that Baxter's analysis is relevant because "MLB decisionmakers like Torre and Woodfork do not review the UERs." (Pl. Br. at 24.)  As noted above, MLB does not place significant weight on UERs for purposes of crew chief and World Series decisions ***for any umpire***, an undisputed fact that Baxter ignored.  In any event, Baxter's analysis is completely irrelevant to Plaintiff's intentional discrimination claims because Baxter disavows opining on MLB's intent.  And because Baxter did not consider a single review for a non-minority umpire, whatever flaws he claims to have observed in the reviews of three minority umpires is irrelevant to pretext.  (*See* MLB Br. at 25; *see also* Martin Report ¶¶ 51-52.)  Plaintiff also fails to explain how Baxter's analysis relates to the so-called employment practice on which his disparate impact claim is based (MLB's reliance on factors such as leadership or situation management), but even if he did, it is impossible for Baxter to opine on the impact on minority umpires or causation for the reasons described above.  *See supra* at 6-7.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in MLB's Motion to Exclude and the accompanying exhibits, the Court should exclude Baxter's Report in its entirety and preclude him from testifying in this matter.

---

[6] Plaintiff also failed to respond to the fact that Baxter admittedly changed his methods part-way through his analysis without recording when or where he changed tacks, further undermining the reliability of his conclusions.  (MLB Br. at 23.)

Dated: New York, New York
June 26, 2020

                                PROSKAUER ROSE LLP

By:   /s/ *Neil H. Abramson*
       Neil H. Abramson, Esq.
       Adam M. Lupion, Esq.
       Rachel S. Philion, Esq.
       Rachel S. Fischer, Esq.

       Eleven Times Square
       New York, New York 10036-8299
       Phone: 212.969.3000
       Fax: 212.969.2900
       nabramson@proskauer.com
       alupion@proskauer.com
       rphilion@proskauer.com
       rfischer@proskauer.com

       *Attorneys for Defendants*
       THE OFFICE OF THE
       COMMISSIONER
       OF BASEBALL AND MAJOR
       LEAGUE BASEBALL BLUE, INC.