

2400 Chamber Center Dr.
Suite 200
P.O. Box 17534
Ft. Mitchell, KY 41017-0534
859.360.1123 | 859.578.3061 (Fax)

Kevin L. Murphy
Direct: 859-578-3060
KMurphy@MLJfirm.com                                                                                                  June 26, 2020

**VIA ECF**
Hon. J. Paul Oetken
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2101
New York, New York 10007

        RE:    *Angel Hernandez v. The Office Of The Commissioner Of Baseball and Major League Baseball Blue, Inc.* - No. 18 Civ. 09035 (JPO) (GWG)

Dear Judge Oetken:

      Pursuant to the Court's Order (Dkt. 150), Plaintiff Angel Hernandez ("Plaintiff"), by and through counsel, submits this response to the motion filed by The Office of the Commissioner of Baseball and MLB Baseball Blue, Inc. (collectively, "MLB") regarding MLB's proposed sealing of "certain materials filed in connection with the parties' cross-motions for summary judgment and MLB's Motion to Exclude Dr. Gregory W. Baxter" (Dkt. 154) (the "*Lugosch* Application"). MLB fails to rebut the presumptions of access to those documents and its *Lugosch* Application should be denied.

      "There is a long-established common law right of public access to judicial documents—documents filed with a court that are relevant to the performance of the judicial function and useful in the judicial process." *Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 620–21 (S.D.N.Y. 2011) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)) (internal quotations omitted). "It is also well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain documents." *Id.* (citing *Lugosch*, 435 F.3d at 120) (internal quotations omitted). There is a particularly "strong public interest in access to the public record in employment discrimination cases . . ." *Abdel-Razeq v. Alvarez & Marsal, Inc.*, No. 14 CIV. 5601 HBP, 2015 WL 7017431, at *7 (S.D.N.Y. Nov. 12, 2015). "The burden of demonstrating that such documents should be sealed rests on the party seeking such action . . ." *Lytle*, 810 F. Supp. 2d at 621.

      The documents that MLB seeks to seal here are, as a matter of law, judicial documents to which strong presumptions of access apply. *Lugosch*, 435 F.3d at 119-120; *Lytle*, 810 F. Supp. 2d at 621; *Oliver v. New York State Police*, No. 115CV00444BKSDJS, 2020 WL 1227141, at *2 (N.D.N.Y. Mar. 13, 2020). MLB does not dispute this in its *Lugosch* Application. Therefore, the main issue before the Court is whether MLB has overcome the presumptions of access.

**A.     MLB has not met its burden of overcoming the common law and First Amendment presumptions of public access as to its sealing of third-party umpire performance evaluations and documents relating to the performance of third-party umpires.**

In its *Lugosch* Application, MLB sweepingly "requests to seal material concerning or reflecting nonparty employment records, including evaluations of the performance of nonparty umpires . . ." Dkt. 154, Page 2 of 6. The primary type of documents that fall under this broad category identified by MLB in its *Lugosch* Application is the performance evaluations of other umpires.[1] Rather than request that Plaintiff merely redact the identities of those third-party umpires whose evaluations and "similar evaluative commentary" are the subject of MLB's *Lugosch* Application, MLB requests that the Court seal the vast majority of them in their entirety. MLB's request should be denied.

   *i.     MLB has failed to meet its burden of rebutting the common law presumption of public access.*

Because MLB does not dispute that the documents at issue are judicial documents to which a strong presumption of public access attaches (*see*, *e.g.*, *Lugosch*, 435 F.3d at 119, 126; *Lytle*, 810 F. Supp. 2d at 621), MLB seeks to rebut the resulting presumptions. MLB asserts that the "privacy interests of nonparty umpires," MLB's own supposed "significant interest" in shielding umpires from hypothetical "additional criticisms from Players, managers, coaches and other Club officials," and MLB's fear of an undermining of the "public confidence in MLB's product" are competing considerations sufficient to maintain those judicial documents under seal despite the strong presumption of public access that attaches to those documents.

In determining whether privacy interests of third parties justify the continued sealing of judicial documents, courts in the Second Circuit conduct a three-part analysis. First, "a court 'should consider the degree to which the subject matter is traditionally considered private rather than public." *Lytle*, 810 F. Supp. 2d at 622 (citing *United States v. Amodeo*, 71 F.3d 1044, 1061 (2d Cir. 1995) ("*Amodeo II*")). "Second, a court should consider '[t]he nature and degree of injury" that would result from granting that access. *Id.* (citing *Amodeo II*, 71 F.3d at 1051). "Finally, a court should consider the reliability of the information. . . . Raw, unverified information should not be as readily disclosed as matters that are verified." *Id.* (citing *Amodeo II*, 71 F.3d at 1051). Each of these considerations weighs in favor of denying MLB's *Lugosch* Application.

      a. <u>MLB's privacy claims are insufficient to overcome the presumption of public access.</u>

As to the first factor, one would be hard pressed to find something more public than the

---

[1] MLB does include *some* specific documents in the category of "Non-party Umpires' Employment Records." *See* Dkt. 156-1, Page 2 of 2. But there are *other* documents that MLB wishes to maintain in fully or partially redacted form that were not categorized by MLB into any one of the individual categories it identifies in its *Lugosch* Application. That lack of specificity in MLB's *Lugosch* Application to seal provides an independently sufficient basis for denying it. Moreover, MLB's lack of specificity renders it speculative for Plaintiff (and the Court) to determine exactly what documents MLB asserts fall into which of the three broad categories MLB identifies, and Plaintiff is accordingly unable to address those documents with greater specificity than MLB's own vague assertions permit. Nevertheless, for purposes of this letter, Plaintiff assumes that all third-party umpire evaluations fall into the broad category of "Nonparty Umpires' Employment Records" (*see* Dkt. 154, Page 2 of 6). MLB should not be permitted to attempt to make any new assertions or more specific arguments in a reply letter, so MLB's failure to do so in its application is dispositive. If MLB seeks leave in its reply to identify with particularity additional documents in the category "Nonparty Umpires' Employment Records," (i) that request should be rejected and (ii) if granted, Plaintiff should be permitted to file a sur-reply addressing any additional specific assertions.

performance of Major League umpires. A Major League umpire's performance, as reflected in the performance evaluations and other documents MLB seeks to seal, is observable not only by those attending games, but also by anyone with cable or the internet. Moreover, the information MLB seeks to seal on a wholesale basis is not the type of information the *Amodeo II* and *Lytle* courts contemplated may be sealed: "financial records of a wholly owned business, family affairs, illnesses, [or] embarrassing conduct with no public ramifications."[2] *Amodeo II*, 71 F.3d at 1061; *Lytle*, 810 F. Supp. 2d at 622.

MLB's blanket statements that umpire performance evaluations are kept confidential by MLB itself does not justify sealing those documents on a wholesale basis. In *Lytle*, the party seeking to seal documents made a similar argument that documents involving non-party employees were kept confidential "as a matter of corporate policy." *Lytle*, 810 F. Supp. 2d at 625. The *Lytle* court found that argument unconvincing and held that it "does not render the information traditionally considered private under *Amodeo II*." *Id*. The Court should follow in the *Lytle* court's footsteps and find MLB's similar argument unavailing.

> b. Embarrassment and adverse publicity do not constitute injury sufficient to overcome the presumption of public access.

The second factor—the "nature and degree of injury"—also weighs in favor of denying MLB's *Lugosch* Application. MLB asserts that unsealing the umpire performance evaluations and similar documents could potentially upset "the work environment of Major League umpires" because publicly sharing that information would allegedly "cause significant discomfort, professional harm, and/or embarrassment." Dkt. 154, Page 3 of 6. But "generalized assertions" of "embarrassment and disruption" are "insufficient to overcome the presumption of public access." *Lytle*, 810 F. Supp. 2d at 628; *see also E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 CIV. 655 LTS MHD, 2012 WL 691545, at *3 (S.D.N.Y. Mar. 2, 2012) ("the party seeking to keep documents under seal 'must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test'" (internal citations omitted)). MLB's blanket assertions about the embarrassment and disruption unsealing the performance evaluations would hypothetically cause are insufficient to overcome the strong presumption of public access inherent in those documents.

MLB also asserts that MLB itself "has a significant interest" in maintaining these performance evaluations under seal because, MLB contends, the unsealing of those documents "will subject umpires to additional criticisms from Players, managers, coaches and other Club officials," and supposedly could "undermine the public confidence in MLB's product." Dkt. 154, Page 3 of 6. "'Generalized concern[s] of adverse publicity' do not outweigh the presumption of access." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018). MLB has therefore failed to show what particular injury, if any, it would suffer as a result of unsealing the documents at issue.

> c. MLB does not contend the information it seeks to seal is unreliable.

Finally, the third *Amodeo II* factor likewise weighs in favor of giving the public access to the

---

[2] The documents at issue here also do not include personal identifying information such as social security numbers, addresses, or telephone numbers. To the extent MLB believes that any performance evaluations contain any such information, it can identify those instances for Plaintiff's benefit and Plaintiff will be willing to redact that information, which would be required by rule in any event.

3

documents at issue because MLB does not contend the information it seeks to seal is unreliable. The documents at issue are documents relating to the performance of third-party umpires, including those umpires' performance evaluations, that were produced by MLB in discovery in this case. Particularly as to the performance evaluations themselves, MLB has already certified that those documents are "true and correct" copies of "business record[s] maintained by Defendants." *See* Dkt. 176-1, Page 688-690 of 733. MLB could not logically assail the reliability of the documents that MLB has created in the course of its business and then produced through discovery in this litigation.

### d. Applying the *Amodeo II* factors, MLB's *Lugosch* Application must be denied.

As the *Lytle* court concluded, "the weight to be accorded the presumption of public access to each of the pieces of information in the summary judgment filings that [the defendant] seeks to seal 'is of the highest.'" *Lytle*, 810 F. Supp. 2d at 624 (citing *Lugosch*, 435 F.3d at 123). Moreover, "most of the cases in which courts have concluded that the privacy interests of individuals were sufficient to overcome the presumption of access involve illness or sensitive personal financial information." *Id.* at 629 (collecting cases). The circumstances presented in those types of cases are simply not present here. For the foregoing reasons, MLB has failed to satisfy its burden of rebutting the common law presumption of public access to these documents, and MLB's *Lugosch* Application should therefore be denied.

### ii. *MLB also fails to rebut the First Amendment presumption to public access, which would require that any redactions (even if needed) must be narrowly tailored.*

Because MLB has failed to rebut the less burdensome common law presumption of public access, the Court need not reach the issue of whether MLB also failed to meet its burden of rebutting the more stringent First Amendment presumption of public access. Even if the Court were required to do so, the result would be the same, as MLB has also failed to meet its burden of rebutting the First Amendment presumption of public access. As discussed above, MLB does not dispute that the documents at issue are judicial documents. The First Amendment presumption of public access thus applies and "can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Lugosch*, 435 F.3d at 126; *see also Oliver*, 2020 WL 1227141 at *2.

MLB's *Lugosch* Application does not provide anything that would support any such findings. Moreover, MLB's *Lugosch* Application is not "narrowly tailored"—MLB explicitly seeks the wholesale sealing of thousands of pages of documents on the alleged basis that redacted versions of the documents "would not sufficiently protect third party privacy interests." Dkt. 154, Page 4 of 6. MLB's argument in this regard is undermined by the fact that MLB itself, in an exhibit to the Declaration of Matthew McKendry that accompanied MLB's *Lugosch* Application, disclosed the identities of many of the third-party umpires whose identities they now seek to seal. *Compare* Dkt. 139, Page 13-18 of 28 (Plaintiff's Memorandum in Support of Partial Summary Judgment redacting names of third-party umpires) *to* Dkt. 156-2, Page 16-21 of 160 (MLB's proposed redactions to that memorandum which leave unredacted and thus reveal the identities of the third-party umpires that Plaintiff had previously redacted). Thus, through MLB's own filings, MLB itself has revealed the identities of the third-party umpires whose performance evaluations are the subject of its *Lugosch* Application. This renders moot any argument MLB advances about safeguarding the identity of the umpires whose performance evaluations are at issue. *See Lytle*, 810 F. Supp. 2d at 626 (finding that "any injury the employees may

suffer by release of the information is insufficient to rebut the strong presumption of access" due in large part to the fact that the names of the relevant third parties were already part of the public record in that case); *see also Olson v. Major League Baseball*, No. 20-CV-632 (JSR), 2020 WL 3127313, at *4 (S.D.N.Y. June 12, 2020) (Judge Rakoff rejecting a similar argument advanced by MLB because MLB had itself publicized the very information it sought to maintain under seal).

In light of the failure of MLB to rebut the First Amendment presumption of public access, the Court can and should reject MLB's *Lugosch* Application altogether. In the alternative, if any relief is granted, the Court should order narrowly-tailored redactions such as the redaction of (i) the identifying information at the tops of the performance evaluations, and (ii) the date and teams of the game for which any particular performance evaluation was provided. Such redactions would be more than sufficient to address any alleged privacy interests of third-party umpires, while simultaneously providing the public access to those limitedly redacted documents. Indeed, some of the cases cited by MLB in its *Lugosch* Application have reached similar conclusions. *See, e.g., Thompson v. Spota*, No. CV142473JMAAKT, 2018 WL 4039316, at *3 (E.D.N.Y. Aug. 23, 2018).

**B.      Plaintiff does not object to a limited subset of redactions.**

MLB also seeks to maintain under seal (i) information regarding compensation paid to umpires, (ii) medical and personal contact information, and (iii) MLB's private business information. As to the first two categories of information, Plaintiff has no objection.

Plaintiff does object to maintaining under seal the "private business information" asserted by MLB inasmuch as MLB has failed to define that category with specificity.[3] MLB does not specify with particularity the documents it alleges otherwise fall within the category of "private business information." Nor does MLB support its motion with specific justifications as to why any such "private business information" – even if it had been specified – should be sealed. Moreover, given that MLB claims an anti-trust exemption, MLB has no competitors from whom any alleged "private business information" would need to be concealed. If MLB seeks leave in its reply to identify with particularity additional documents in the category "private business information," (i) that request should be rejected and (ii) if granted, Plaintiff should be permitted to file a sur-reply addressing any additional specific assertions.

---

[3] The only piece of information that Plaintiff knows for a fact falls under the category of "private business information" is the single document listed under that category by MLB in Exhibit A to the Declaration of Matthew McKendry. *See* Dkt. 155-1, Page 2 of 2. Plaintiff does not object to the limited redaction proposed by MLB as to Exhibit 34 (Dkt. 142-35). Simply for clarification, however, Plaintiff does not consent to the redactions identified by MLB in that Exhibit A. Plaintiff redacted those documents not because he consented to those redactions, but because the Court's procedures required Plaintiff to do so. Those redactions are *not* agreed, and MLB was required to justify them. MLB has not done so.

        Respectfully submitted,

        */s/ Kevin L. Murphy*
        Kevin L. Murphy

        MURPHY LANDEN JONES PLLC

        Attorney for Plaintiff

cc:    All Counsel of Record (via ECF)