# EXHIBIT B

Kevin L. Murphy (*pro hac vice*)
J. Jeffrey Landen (*pro hac vice*)
Nicholas R. Gregg (*pro hac vice*)
MURPHY LANDEN JONES PLLC
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY 41017
(859) 360-1123

&

Nicholas J. Zaita
LEWIS DIBIASI ZAITA & HIGGINS
420 Lexington Avenue, Suite 300
New York, NY 10107
(212) 772-0943

*Attorneys for Plaintiff Angel Hernandez*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL HERNANDEZ<br><br>        PLAINTIFF,<br><br>V.<br><br>THE OFFICE OF THE COMMISSIONER OF BASEBALL AND MAJOR LEAGUE BASEBALL BLUE, INC.,<br><br>        DEFENDANTS. | CASE NO: 18-CV-09035-JPO-GWG |

## PLAINTIFF'S COUNTERSTATEMENT TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiff Angel Hernandez ("Plaintiff") hereby responds and submits this Counterstatement to Defendants' Statement of Material Facts submitted in support of The Office of the Commissioner of Baseball and Major League Baseball Blue, Inc.'s (collectively, "MLB") Motion for Summary Judgment.

I.      **MLB'S UMPIRING ORGANIZATION**

      **ANSWER:**   To the extent MLB intends for its headers to be assertions of purported material fact for which a response is required, Plaintiff disputes those headers as being unsupported by any evidence and for the reasons stated in the individually numbered paragraphs following each header.

      1.      Angel Hernandez ("Plaintiff" or "Hernandez") began employment as a full-time Major League umpire in 1993.  (Pl. Tr. [1] 11:10-12.)

      **ANSWER:**   Undisputed.

      2.      Major League umpires are responsible for ensuring that every Major League Baseball game is played in accordance with the Official Baseball Rules, and for maintaining discipline and order on the playing field during the game.  (McKendry Decl.[2] Ex. A at DEF1089.)

      **ANSWER:**   Undisputed, though it is unclear that the portion of McKendry Dep. Ex. A at DEF1089 to which MLB cites is in reference to all Major League umpires as opposed to only those umpires that officiate "league championship game[s]."

      3.      Pursuant to an Assignment and Assumption Agreement dated December 31, 2007 and a Service Agreement dated January 1, 2008, Major League Baseball Blue, Inc. ("MLB Blue")

---

[1] The deposition transcript excerpts cited herein are attached to the Declaration of Neil H. Abramson ("Abramson Decl."), filed herewith, as follows: Abramson Decl. Ex. A, Deposition Transcript of Angel Hernandez Day 1 ("Pl. Tr."); Abramson Decl. Ex. B, Deposition Transcript of Angel Hernandez Day 2 ("Pl. Tr. Day 2"); Abramson Decl. Ex. C, Deposition Transcript of Joe Torre ("Torre Tr."); Abramson Decl. Ex. D, Deposition Transcript of Peter Woodfork ("Woodfork Tr."); Abramson Decl. Ex. E, Deposition Transcript of Matthew McKendry ("McKendry Tr."); Abramson Decl. Ex. F, Deposition Transcript of Robert Manfred ("Manfred Tr."); Abramson Decl. Ex. G, Deposition Transcript of Edward Montague ("Montague Tr."); Abramson Decl. Ex. H, Deposition Transcript of ████████████████; Abramson Decl. Ex. I, Deposition Transcript of Denise Martin, Ph.D. ("Martin Tr."); and Abramson Decl. Ex. J, Deposition Transcript of Randy Marsh ("Marsh Tr.").

**RESPONSE:**     Undisputed to the extent any response to this footnote is required.

[2] "McKendry Decl." refers to the Declaration of Matthew McKendry, filed herewith.

**RESPONSE:**     Undisputed to the extent any response to this footnote is required.

is the entity that currently employs all Major League umpires, including Hernandez.  (Pl. Ex. 12, Dkt. 142-13 at DEF1360; Pl. Ex. 13, Dkt. 142-14 at DEF1207.)

> **ANSWER:**    Undisputed.

4.    MLB Blue provides the services of Major League umpires to the Office of the Commissioner of Baseball to officiate baseball games between the 30 Major League Clubs through a services agreement.  (Declaration of Peter Woodfork, Dkt. 8-2 ("Woodfork S.D. Ohio Decl.") ¶ 18.)

> **ANSWER:**    Undisputed that Peter Woodfork's Declaration at Dkt. 8-2, ¶ 18, states that "[t]hrough a services agreement, MLB Blue provides the services of MLB umpires to the Office of the Commissioner of Baseball to officiate games between the 30 Major League Clubs."

5.    The terms and conditions of employment for all full-time Major League umpires are governed by the collective bargaining agreement (the "Basic Agreement") between the Office of the Commissioner of Baseball and the World Umpires Association (subsequently renamed the Major League Baseball Umpires Association), the labor union that represents all full-time Major League umpires.  The 2010 Basic Agreement had a term of January 1, 2010 through December 31, 2014, and the 2015 Basic Agreement had a term of January 1, 2015 through December 31, 2019.  (Pl. Ex. 12, Dkt. 142-13 at DEF1351; Pl. Ex. 13, Dkt. 142-14 at DEF1198.)

> **ANSWER:**    Undisputed, though neither of the documents to which MLB cites in support of ¶ 5 of its Statement of Material Facts ("SMF") provides evidentiary support for the first sentence of ¶ 5.

6.    Between 2011 and 2013, there were 68 full-time Major League umpires.  (Pl. Ex. 13, Dkt. 142-14 at DEF1209; McKendry Decl. ¶ 3.)

**ANSWER:** Disputed. Dkt. 142-14 at DEF1209 states that "[t]he size of the umpiring staff shall be determined by the Office of the Commissioner, but in no event shall the staff be less than sixty-eight (68) full time umpires during the term of this Agreement." *See also* Declaration of Joe West ("West Dec."), attached to Plaintiff's Reply Memorandum as Exhibit 2, ¶ 34.

7.    Between 2014 and the present, there have been 76 full-time Major League umpires. (Pl. Ex. 12, Dkt. 142-13 at DEF1362; McKendry Decl. ¶ 4.)

**ANSWER:** Disputed. Dkt. 142-13 at DEF1362 states that "[t]he size of the umpiring staff shall be determined by the Office of the Commissioner, but in no event shall the staff be less than seventy-six (76) full-time umpires during the term of this Agreement." *See also* West Dec., ¶ 35.

8.    In March 2011, MLB hired Joe Torre as Executive Vice President of Baseball Operations.   (Torre Decl.[3] ¶¶ 1, 8; Torre Tr. 18:13-19:15; Declaration of Joe Torre, Dkt. 12-1 ("Torre S.D. Ohio Decl.") ¶ 1.)

**ANSWER:** Undisputed that MLB hired Joe Torre ("Torre") in 2011. Disputed as to what Torre's title was at the time of his hiring. Paragraph 8 of Torre's Declaration (Dkt. 177 ("Torre's Declaration")) states that "[f]rom March 2011 to December 2014, [his] title was Executive Vice President of Baseball Operations." Torre stated in his deposition that his title at the time was "Chief Executive Officer of Baseball Operations." Dkt. 168-1, Torre Dep., Page 134 of 733, 19:4-8.

9.    In 2015, MLB changed Torre's title to Chief Baseball Officer, and he remained in

---

[3] "Torre Decl." refers to the Declaration of Joe Torre, filed herewith.

**RESPONSE:**    Undisputed to the extent any response to this footnote is required.

that role through December 2019.  His duties and responsibilities for umpires remained the same. (Torre Decl. ¶¶ 9, 10; Torre Tr. 19:16-20:13; First Amended Complaint, Dkt. 35 ¶ 33.)

      **ANSWER:**    Undisputed.

10.    Since January 2020, Torre has served as Special Assistant to the Commissioner of Baseball.  (Torre Decl. ¶ 12.)

      **ANSWER:**    Undisputed that ¶ 12 of Torre's Declaration states that "[s]ince January 2020, [he has] served as Special Assistant to the Commissioner of Baseball."

11.    In those roles, Torre made the final decisions with respect to umpire-related employment decisions, including umpire crew chief appointments and assignments to work Special Events, including but not limited to the World Series.  (Torre Decl. ¶ 10; Torre Tr. 20:5-14, 22:3-12; Manfred Tr. 29:22-30:4; McKendry Tr. 185:11-17; Torre S.D. Ohio Decl. ¶ 6.)

      **ANSWER:**    Undisputed to the extent that ¶ 10 of Torre's Declaration states that "[i]n [his] roles as Executive Vice President of Baseball Operations and Chief Baseball Officer, [he] was responsible for making the final decisions as to umpire-related employment decisions, including umpire crew chief appointments and assignments to work Special Events, including but not limited to the World Series."  Disputed that the deposition testimony supports everything contained in ¶ 10 of Torre's Declaration.  *See* Torre Dep., Dkt. 168-1, Page 135 of 733, 20:5-13 (stating that Torre still has "responsibility for discipline, umpires, managers" after his duties were changed "about a year" before his deposition was taken on June 19, 2019); Manfred Dep., Dkt. 168-1, Pages 443-444 of 733, 29:22-30:4 (confirming only that Torre is the "ultimate decision-maker" as to crew chief promotion and World Series assignment decisions); McKendry Dep., Dkt. 168-1, Page 367 of 733, 185:11-17 (testifying only that Torre and Woodfork were the ones who ultimately

made the decision to promote Mark Wegner to crew chief for the 2018 season); Torre S.D.
Ohio Dec., ¶ 6 (declaring only that "[i]n [his] role as Chief Baseball Officer at the Office
of the Commissioner, [he is] responsible for making the final decisions as to umpire crew
chief appointments and World Series assignments").

12.     Before working for MLB, Torre was a Major League baseball player and field
manager.  Torre played Major League baseball for 17 years.  During his playing career, Torre was
a nine-time All-Star and the 1971 National League Most Valuable Player.  Torre also served as a
field manager for a number of Major League Clubs between 1977 and 2010, including the New
York Mets (1977-1981), Atlanta Braves (1982-1984), St. Louis Cardinals (1990-1995), New York
Yankees (1996-2007), and Los Angeles Dodgers (2008-2010).  (Torre Decl. ¶¶ 3-4; Torre Tr.
17:20-18:12.)

    **ANSWER:**   Undisputed but immaterial and irrelevant.  Torre's career as a baseball
    player has no relation to or impact on Plaintiff's disparate treatment and disparate impact
    claims asserted against MLB, particularly because Torre's career as a baseball player gave
    him no experience in umpiring baseball games or evaluating the performance of Major
    League umpires.

13.     While Torre was field manager for the New York Yankees, the Club won the World
Series four times (1996, 1998, 1999, and 2000), and he was named American League Manager of
the Year twice (1996 and 1998).  He won 2,326 games as a field manager, fifth-most in the history
of Major League Baseball, and is one of only five field managers in the history of Major League
Baseball to win at least four World Series titles.  Torre was inducted into the National Baseball
Hall of Fame in July 2014.  (Torre Decl. ¶¶ 4-7.)

    **ANSWER:**  Undisputed but immaterial and irrelevant.  Torre's career as a "field manager"

for Major League Baseball clubs has no relation to or impact on Plaintiff's disparate treatment and disparate impact claims asserted against MLB, particularly because Torre's career as a "field manager" for Major League Baseball clubs gave him no experience in umpiring baseball games or evaluating the performance of Major League umpires.

14.     In March 2011, MLB hired Peter Woodfork as Senior Vice President of Baseball Operations.  (Woodfork Decl.[4] ¶ 1; Woodfork Tr. 20:5-14, Woodfork S.D. Ohio Decl. ¶ 1.)

**ANSWER:**     Undisputed that MLB hired Woodfork in 2011.  Disputed as to Woodfork's title at MLB upon his hiring.  Paragraph 1 of Woodfork's Declaration (Dkt. 172 ("Woodfork's Declaration")) states that his title is "Senior Vice President of On-Field Operations."  In his deposition, at 20:5-14, Woodfork testified that his title was "Senior Vice President Baseball Operations."  In his S.D. Ohio declaration, Woodfork stated that his title was "Senior Vice President of Baseball Operations."  Dkt. 8-2 ("Woodfork's S.D. Ohio Declaration"), ¶ 1.

15.     In April 2018, MLB changed Woodfork's title to Senior Vice President of On-Field Operations, and his duties and responsibilities with respect to Major League umpires remained largely the same.  (Woodfork Decl. ¶ 3; Woodfork Tr. 20:17-21:2.)

**ANSWER:**     Undisputed that ¶ 3 of Woodfork's Declaration states that "[i]n April 2018, [his] title changed from Senior Vice President of Baseball Operations to Vice President of On-Field Operations.  [His] duties and responsibilities with respect to Major League umpires remained the same as they had under [his] prior title."  Disputed that Woodfork's deposition testimony supports that Woodfork's duties remained the same.  *See* Dkt. 168-1,

---

[4] "Woodfork Decl." refers to the Declaration of Peter Woodfork, filed herewith.

**RESPONSE:**     Undisputed to the extent any response is required to this footnote.

Pages 237-238 of 733, 20:17-21:2).

16.     From March 2011 through December 2019, Woodfork reported directly to Torre. (Woodfork Decl. ¶ 5; Torre Tr. 20:21-21:4; Woodfork Tr. 21:3-4.)

**ANSWER:**     Undisputed.

17.             Since March 2011, Woodfork has been the second-most senior executive responsible for Major League umpires and, in collaboration with Torre, has been integrally involved in appointing umpires to crew chief positions and selecting umpires to work Special Events, including World Series games.  (Torre Decl. ¶¶ 8, 9, 11; Woodfork Decl. ¶ 4; McKendry Tr. 185:11-17, Torre S.D. Ohio Decl. ¶ 8.)

**ANSWER:**     Undisputed that ¶ 11 of Torre's Declaration, ¶ 4 of Woodfork's Declaration, and ¶ 8 of Torre's prior declaration (Dkt. 12-1 ("Torre's S.D. Ohio Declaration") contain language similar to that found in ¶ 17 of MLB's SMF.  Disputed that the remainder of the evidence to which MLB cites supports ¶ 17 of its SMF.  Paragraphs 8 and 9 of Torre's Declaration relate only to Torre's job titles from 2011-2014 (¶ 8) and 2015-2020 (¶ 9).  The excerpt of McKendry's deposition to which MLB cites in support of ¶ 17 of its SMF relates only to who made the decision to promote Mark Wegner to crew chief for the 2018 season. McKendry Dep., Dkt. 168-1, Page 367 of 733, 185:11-17.  Disputed to the extent that ¶ 17 of MLB's SMF suggests that anyone besides Torre made the final decision on crew chief promotion and World Series assignment decisions.  *See* Plaintiff's Answer to ¶ 11 of MLB's SMF, *supra*.

18.     Prior to joining MLB in 2011, Woodfork held front-office positions with the Boston Red Sox and Arizona Diamondbacks baseball Clubs.  (Woodfork Tr. 16:19-18:14.)

**ANSWER:**     Undisputed but immaterial and irrelevant.  Woodfork's "front-office

positions" for two baseball clubs has no relation to or impact on Plaintiff's disparate treatment and disparate impact claims asserted against MLB, particularly because Woodfork's "front-office positions" gave him no experience in umpiring baseball games or evaluating the performance of Major League umpires.

19.    In addition to Torre and Woodfork, MLB's Umpiring Department (the "MLB Umpiring Department") includes Directors who report directly to Woodfork. (McKendry Tr. 53:5-54:11.)

**ANSWER:**    Undisputed.

20.    MLB employs Umpire Supervisors who report directly to Woodfork. Umpire Supervisors are assigned to supervise umpire crews. Umpire Supervisors complete field evaluation reports for umpires for individual games that they observe in-person ("Field Evaluation Forms"). (McKendry Tr. 123:25-125:8, 157:11-15; Torre Decl. ¶ 18.)

**ANSWER:**    Undisputed that McKendry testified in his deposition that supervisors observe the performance of umpires and submit reports for each game they attend. Dkt. 168-1, McKendry Dep., Pages 347-349 of 733, 123:25-125:8. Undisputed that McKendry also testified that there are no other evaluations of umpire performance other than Year-End Evaluations, Mid-Year Evaluations and "individual field evaluations"/"Field Evaluation Forms" (what Plaintiff refers to as "UERs"). *Id*. at Page 363 of 733, 157:11-15. Undisputed that ¶ 18 of Torre's Declaration states in part that "Field Evaluation Forms [(UERs)] are individual game reports completed by Field Observers and Supervisors who evaluate umpires' on-field performance during live games that they observe in person." Disputed as to the assertions in ¶ 20 of MLB's SMF and ¶ 18 of Torre's Declaration that UERs are submitted only for games that supervisors or observers "observe in-person." Ed

Montague, one of Plaintiff's former umpire supervisors, testified that he does not always observe umpires "in person" and that he can also "use the videos." Deposition of Ed Montague, attached hereto as Exhibit 1, 15:4-16. Moreover, the CBA between MLB and the umpires' union states that Field Observers are "to observe the performance of the umpire at the ballpark, MLB.tv, or videotape." Dkt. 142-13, Page 94 of 148; *see also id*. ("Field Observers will review games in person, via MLB.tv or video-tape").

21.     MLB also engages Umpire Field Observers, who observe the on-field performance of umpires during live games and complete Field Evaluation Forms for those games they observe in-person. (McKendry Tr. 125:9-126:10.)

> **ANSWER:**     Undisputed that McKendry testified that field observers "are charged with going to a ball game, and, observing the umpires' work on the field, and completing those Field Evaluation forms on their performance." McKendry Dep., Dkt. 168-1, Page 349 of 733, 125:9-19. Disputed as to the assertions in ¶ 20 of MLB's SMF and ¶ 18 of Torre's Declaration that UERs are submitted only for games that supervisors or observers "observe in-person." Ed Montague, one of Plaintiff's former umpire supervisors, testified that he does not always observe umpires "in person" and that he can also "use the videos." Deposition of Ed Montague, attached hereto as Exhibit 1, 15:4-16. Moreover, the CBA between MLB and the umpires' union states that Field Observers are "to observe the performance of the umpire at the ballpark, MLB.tv, or videotape." Dkt. 142-13, Page 94 of 148; *see also id*. ("Field Observers will review games in person, via MLB.tv or video-tape").

## II.   PLAINTIFF'S PREVIOUS INTERACTIONS WITH TORRE

22.     In 2001, when Torre was Manager for the New York Yankees, Torre criticized a

call that Hernandez made during a Yankees game.  (Torre Tr. 60:10-61:15; Pl. Tr. 13:1-14:2, 14:24-15:19; *see also* Abramson Decl. Ex. K.)

> **ANSWER:**    Undisputed that Torre commented to the media after a Yankees game in which Plaintiff called a balk on a Yankees pitcher that Plaintiff "seems to see something nobody else does" and that "you'd like to have [Plaintiff] sit down and watch the video, something I'm sure he doesn't do, and then have him describe to people what a balk is and why it's a balk.  I am sure [Plaintiff] would look like a fool at that point in time."  Dkt. 168-1, page 631 of 733.

23.     Torre subsequently apologized to Hernandez for his comments.  (Pl. Tr. 18:5-19:15.)

> **ANSWER:**    Undisputed.

24.     Torre's comments were not in any way related to Hernandez's race, color, or national origin.  (Pl. Tr. 24:6-13, 28:21-25.)

> **ANSWER:**    Disputed.  MLB's only evidentiary support for ¶ 24 of its SMF is Plaintiff's deposition testimony.  Nowhere in his deposition did Plaintiff say that Torre's comments were "not in any way related to Hernandez's race, color, or national origin."  *See* Dkt. 168-1, Hernandez Dep., 13:1-14:2, 14:24-15:19.  In the very portions of Plaintiff's deposition to which MLB cites in support of ¶ 24 of its SMF, Plaintiff stated only that he did not know if those comments in 2001 were because of his race or color and that Torre did not make any comments directly to Plaintiff during the period 2001-2011 that Plaintiff felt were based on Plaintiff's national origin.  *Id*. at 24:6-13, 28:21-25.  Moreover, at the time of Plaintiff's deposition in April of 2019, Plaintiff's counsel had not yet deposed a single MLB employee, so Plaintiff had—and could not possibly have had—knowledge of their

testimony.  *See*, *e.g.*, Dkt. 168-1, Page 2 of 733 (Plaintiff's deposition dated April 26, 2019); *id.* at Page 131 of 733 (Torre's deposition dated June 19, 2019); *id.* at Page 233 of 733 (Woodfork's deposition dated June 21, 2019); *id.* at Page 340 of 733 (McKendry's deposition dated May 6, 2019); *id.* at Page 437 of 733 (Robert Manfred's deposition dated July 24, 2019); *id.* at Page 475 of 733 (Montague's deposition dated May 9, 2019).

25.    Torre has not said anything to Hernandez since the 2001 incident that led Hernandez to believe that Torre's comments were in any way motivated by Hernandez's race, color, or national origin.  (Pl. Tr. 27:17-29:14.)

**ANSWER:**    Undisputed that Torre has not said any such thing directly to Plaintiff. Disputed that this in any way supports MLB's Motion for Summary Judgment.  *See* Plaintiff's Answer to ¶ 24 of MLB's SMF, *supra*.

26.    Neither Torre nor anyone else employed by MLB ever made any comments to Hernandez that he believed to be related to his race, color or national origin.  (Pl. Tr. 28:21-29:18.)

**ANSWER:**    Undisputed that Torre or other MLB employees have not made any such comments directly to Plaintiff.  Disputed that this in any way supports MLB's Motion for Summary Judgment.  *See* Plaintiff's Answer to ¶ 24 of MLB's SMF, *supra*.

27.    According to Hernandez, Torre continues to harbor animosity towards him because of the 2001 incident.  (Pl. Tr. 158:14-25.)

**ANSWER:**    Disputed and unsupported by evidence in the record.  MLB's only evidentiary support for ¶ 27 of its SMF is 12 lines from Plaintiff's deposition transcript. Lines 14-19 of that deposition excerpt relate to a call made by Plaintiff in Cleveland in 2013, following which Torre refused to support Plaintiff as he had supported non-minority umpires in similar circumstances.  *See*, *e.g.*, Dkt. 168-1, Hernandez Dep., 148:6-150:14,

152:7-158:19.  That testimony has no relation to the 2001 "incident" whatsoever.  When asked whether Plaintiff thought Torre "was trying to hurt [him]" in an effort to "get back at" Plaintiff for the 2001 "incident," Plaintiff responded "[y]ou'd have to ask [Torre]" and, when asked if Plaintiff had a "feeling" that was the case, Plaintiff testified "[g]ood chance of that."  *Id*. at 158:20-25.  Nothing in that limited excerpt supports MLB's assertion in ¶ 27 of its SMF that "[a]ccording to Hernandez, Torre continues to harbor animosity towards him because of the 2001 incident."

28.     Hernandez first filed a charge with the EEOC on May 11, 2017.  (Pl. Tr. 30:17-31:13; Abramson Decl. Ex. L.)

**ANSWER:**     Undisputed that the EEOC received Plaintiff's May 9, 2017 charge on May 11, 2017.

**III.     MLB'S EVALUATION OF MLB UMPIRES**

29.     The Basic Agreement states that "[e]ach umpire will receive a mid-season and end of season evaluation.  Umpires will be evaluated in each of the components of the evaluation system based on the reports submitted by the Supervisors and Field Observers, observations of the Directors of Umpiring and their superiors, and for Plate Judgment, information generated by the ZE System."  (Pl. Ex. 12, Dkt. 142-13 at DEF1450; Pl. Ex. 13, Dkt. 142-14 at DEF1285-86; *see also* McKendry Tr. 136:4-6, 153:17-20.)

**ANSWER:**     Undisputed that Dkt. 142-13 at DEF1450 reads as follows: "Each umpire will receive a mid-season and end of season evaluation.  Umpires will be evaluated in each of the components of the evaluation system based on the reports submitted by the Supervisors and Field Observers, observations of the Directors of Umpiring and their superiors, and for Plate Judgment, information generated by the ZE system."  Disputed that

the rest of the evidence to which MLB cites in support of ¶ 29 of its SMF supports ¶ 29.
Dkt. 142-14, Pages 88-89 of 153 reads as follows: "Each umpire will receive a mid-season
and end of season evaluation from the Vice President of Umpiring.  Umpires will be
evaluated in each of the components of the evaluation system based on the reports
submitted by the Supervisors and Field Observers, observations of the Vice President of
Umpiring and his staff, and for Plate Judgment, information generated by the ZE system."
The portions of McKendry's deposition to which MLB cites relate only to McKendry's
testimony that there is a mid-year evaluation of each umpire and the process in 2018 for
creating Mid-Year evaluations was "very similar" to the process for creating Year-End
Evaluations.

30.     Mid-year and year-end evaluations rate each umpire as "Exceeds Standard," "Meets
Standard," or "Does Not Meet Standard" on a variety of components, including focus, hustle,
demeanor, appearance, mobility, adherence to MLB procedures, ejections and situation handling,
plate judgment, base judgment, and fulfillment of administrative duties.  Mid-year and year-end
evaluations contain evaluative comments from the Office of the Commissioner.  (Pl. Ex. 12, Dkt.
142-13 at DEF1446-1450; Pl. Ex. 13, Dkt. 142-14 at DEF1281-86.)

**ANSWER:**     Undisputed that Mid-Year Evaluations and Year-End Evaluations rate each
umpire as "Exceeds Standard," "Meets Standard," or "Does Not Meet" Standard on a
variety of components.  Dispute that the list of components contained in ¶ 30 of MLB's
SMF constitutes a full list of components upon which Major League umpires have been
evaluated during the period 2011-2016, or that the components for each of those years have
always been the same.  The list of components, as found in the CBA, for the period 2010-
2014 are as follows:  (1) Focus, (2) Hustle/Mobility, (3) Professionalism, (4) MLB

Procedures, (5) Rules and Interpretations, (6) Ejections and Situation Management, (7) Application of Pace of Game Procedures, (8) Style and Form of Calls, (9) Four-Umpire Mechanics, (10) Submitting Umpire Reports, (11) Fulfillment of Office Responsibilities, (12) Plate Judgment, (13) Field Judgment, and (14) Replay Judgment.  Dkt. 142-13, Pages 96-100 of 148.  The list of components, as found in the CBA, for the period 2015-2019 are as follows:  (1) Focus, (2) Hustle, (3) Demeanor, (4) Appearance, (5) Mobility, (6) Fraternization, (7) MLB Procedures, (8) Official Baseball Rules and Interpretations, (9) Situation Management, (10) Style and Form of Calls, (11) Four-Umpire Mechanics, (12) Reactions to Development of Plays, (13) Ejections and Situation Handling, (14) Submitting Umpire Reports, (15) Communication with Office, (16) Application of Pace of Game Procedures, (17) Plate Judgment, and (18) Base Judgment.  Dkt. 142-14, Pages 84-88 of 153.  Disputed that Mid-Year Evaluations and Year-End Evaluations contain only evaluative comments from the Office of the Commissioner.  The Year-End Evaluations are supposed to "set forth a summary" of the UERs that are completed by umpire supervisors and observers, with only "evaluative comments from the Office of the Commissioner." Dkt. 142-13, Page 100 of 148; *see also* Dkt. 142-14, Pages 88-89 of 153.

31.     The mid-year and year-end evaluations are a performance management tool intended to motivate umpires to work on certain deficiencies and to recognize areas of strength. (Torre Decl. ¶ 17.)

**ANSWER:**   Undisputed that Torre's Declaration characterizes the Mid-Year Evaluations and Year-End Evaluations as "performance management tool[s] intended to motivate umpires to work on certain deficiencies and to recognize areas of strength." Disputed to the extent that that ¶ 31 of MLB's SMF or its and Torre's characterizations of

Mid-Year Evaluations and Year-End Evaluations are not supported by any other evidence in the record.

32.     Torre reviewed and approved mid-year and year-end performance evaluations. (Torre Decl. ¶ 17; Torre Tr. 33:9-34:9, 74:14-75:5.)

> **ANSWER:**   Undisputed that Torre states in ¶ 18 of his Declaration that "Field Evaluation Forms are individual game reports completed by Field Observers and Supervisors who evaluate umpires' on-field performance during live games that they observe in person." Disputed that the Field Observers or Supervisors were required to view games in person in order to issue UERs/Field Evaluation Forms. *See* Plaintiff's Answers to ¶¶ 24-26 of MLB's SMF, *supra*. Disputed that the excerpts of Torre's deposition to which MLB cites in support of ¶ 32 of its SMF actually support ¶ 32 or the contention that Torre reviewed those documents. The first excerpt relates only to whether Torre changed the contents of Year-End Evaluations. Torre Dep., Dkt. 168-1, Pages 144-145 of 733, 33:9-34:9. The second excerpt confirms only that Torre read the evaluations, as opposed to "reviewed and approved" them. *Id*. at 74:14-75:5. Moreover, ¶ 32 of MLB's SMF is immaterial because it does not specify when or in connection with what decisions, if any, Torre reviewed the Mid-Year and Year-End Evaluations.

33.     In completing mid-year and year-end evaluations, the MLB Umpiring Department considered factors including, but not limited to, observations of Torre, Woodfork, Umpire Directors and Supervisors; information generated by the ZE system; interactions with the MLB Umpiring Department; information relayed during weekly conference calls discussing umpire performance among the MLB Umpiring Department; interactions between umpires; Field Evaluation Forms; performance as a replay official; accuracy judging runners on the bases;

incidents involving the umpire such as ejections and confrontations with players, managers and coaches; durability; and umpires' handling of administrative duties. (Pl. Ex. 12, Dkt. 142-13 at DEF1450; Pl. Ex. 13, Dkt. 142-143 at DEF1285-86; McKendry Tr. 136:21-137:5; Woodfork Tr. 85:14-87:17.)

> **ANSWER:**   Undisputed that McKendry and Woodfork each testified that some, but not all, of the factors listed in ¶ 33 of MLB's SMF were considered in connection with Mid-Year Evaluations.  Disputed as to whether those factors were also considered for Year-End Evaluations and further disputed to the extent McKendry's and Woodfork's testimony contradict each other.   McKendry testified that "ZE reports, SURE results, field evaluations, incident evaluation reports[,  ] the umpire's functioning as a replay official [and] the umpire's handling of administrative duties" was a "pretty comprehensive" list of the factors considered in generating Mid-Year Evaluations.  McKendry Dep., Dkt. 168-1, Pages 352-353 of 733, 136:21-137:5.   Woodfork testified as to the conference calls purportedly held between umpire supervisors and other unspecified individuals, as well as information from the ZE system and information regarding situation management in responding to a series of questions regarding "who had the right to provide comments that would go into a midyear."  Woodfork Dep., Dkt. 168-1, Page 260-262 of 733.  Neither of the excerpts from McKendry's or Woodfork's deposition relate to Year-End Evaluations. As to Year-End Evaluations, the CBA—the only other evidence to which MLB cites in support of ¶ 33 of its SMF—states only that "[u]mpires will be evaluated in each of the components of the evaluation system based on the reports submitted by the Supervisors and Field Observers, observations of the Directors of umpiring and their superiors, and for Plate Judgment, information generated by the ZE system." Dkt. 142-13, Page 100 of 148;

*see also* Dkt. 142-14, Pages 88-89 of 153 ("Umpires will be evaluated in each of the components of the evaluation system based on the reports submitted by the Supervisors and Field Observers, observations of the Vice President of Umpiring and his staff, and for Plate Judgment, information generated by the ZE System").  Moreover, the Year-End Evaluations are supposed to "set forth a summary" of the UERs that are completed by umpire supervisors and observers, with only "evaluative comments from the Office of the Commissioner," which further contradicts MLB's assertions in ¶ 33 of its SMF. Dkt. 142-13, Page 100 of 148; *see also* Dkt. 142-14, Pages 88-89 of 153.  Disputed to the extent ¶ 33 of MLB's SMF suggests that day-to-day interactions between umpires and MLB's Umpiring Department were numerous.  West Dec., ¶ 36.

34.     Field Evaluation Forms are submitted by Umpire Supervisors and Field Observers for each game that they observe in person.  (Pl. Ex. 12, Dkt. 142-13 at DEF1446-48; Pl. Ex. 13, Dkt. 142-14 at DEF1289; McKendry Tr. 122:15-124:14.)

**ANSWER:**     Undisputed that Field Evaluation Forms (UERs) are submitted by Umpire Supervisors and Field Observers for each game they observe.  Disputed that those games are required to be viewed in person.  *See* Plaintiff's Answers to ¶¶ 24-26 of MLB's SMF, *supra*.

35.     For each category on the Field Evaluation Form, an umpire may receive a grade of either:  (i) Exceeds Standards ("E"); (ii) Meets Standards ("M"); or (iii) Does Not Meet Standards ("DNM").  (Pl. Ex. 12, Dkt. 142-13 at DEF1445; Pl. Ex. 13, Dkt. 142-14 at DEF1281.)

**ANSWER**:     Undisputed.

36.     Pursuant to the terms of the Basic Agreement, Field Evaluation Forms are limited to the following categories:  (i) Effort and Professionalism; (ii) Game and Situation Management;

and (iii) Field Proficiency. The forms do not contain any recommendations for promotion to crew chief or selection for the post-season. (Torre Decl. ¶ 18; Pl. Ex. 12, Dkt. 142-13 at DEF1446-47; Pl. Ex. 13, Dkt. 142-14 at DEF1281-1283.)

> **ANSWER:** Disputed. MLB fails to list the actual categories on which umpires are evaluated. The three categories listed by MLB are only broad categories for which no "Exceeds Standard," "Meets Standard" or "Does Not Meet Standard" rating can even be given. Instead, umpires are evaluated and given ratings on various factors that fall under those broad categories. Under the category of "Effort and Professionalism" are "Focus," "Hustle/Mobility" and "Professionalism." *See*, *e.g.*, Dkt 141-27. Under the category of "Game & Situation Management" are "MLB Procedures," "Official Baseball Rules and Interpretations," "Ejections and Situation Management" and "Application of Pace of Game Procedures." *Id*. Under the category of "Field Proficiency" are "Style and Form of Calls" and "Four-Umpire Mechanics." *Id*. Finally, there is an opportunity for the supervisor or observer to include comments on an umpire's performance in the game observed, either under any one of the following discrete factors or under the category "Supervisor's Overall Comments." *Id*.

37. The Basic Agreement states that "Field Observers shall not be concerned with, or report on, factors beyond the criteria listed on the required forms, and shall not solicit opinions or comments regarding umpires from any other person." (Pl. Ex. 12, Dkt. 142-13 at DEF1444; Pl. Ex. 13, Dkt. 142-14 at DEF1279.)

> **ANSWER:** Undisputed.

38. Pursuant to the terms of the Basic Agreement, Field Observers who complete these reports are precluded from commenting on factors beyond those identified on the form, and also

must avoid any personal interaction with the umpires.  Field Evaluation Forms are targeted to merely help Umpire Supervisors identify whether an umpire is experiencing a trend of being deficient in fundamental umpiring competencies that should warrant consideration of a corrective action plan.  (Torre Decl. ¶ 18; Pl. Ex. 12, Dkt. 142-13 at DEF001444-45, 1450-51; *see also* Pl. Ex. 13, Dkt. 142-14 at DEF1280-81, 1286-87.)

**ANSWER:**   Undisputed as to the first sentence of ¶ 38 of MLB's SMF.  Disputed as to the remainder of ¶ 38 of MLB's SMF.  Though ¶ 18 of Torre's Declaration echoes the second sentence of ¶ 38 of MLB's SMF, it is contradicted by the evidence in the record.  Field Evaluation Forms/UERs are not targeted "to merely help" Umpire Supervisors.  They form the basis on which Mid-Year Evaluations and Year-End Evaluations are supposed to be founded.  Dkt. 142-13, Page 100 of 148; *see also* Dkt. 142-14, Pages 88-89 of 153.  Torre himself testified, in contradiction of his Declaration and ¶ 38 of MLB's SMF, that the Year-End Evaluations "come from" the UERs.  Dkt. 141-12, Torre Dep., 132:15-24.  Both Torre and Marsh testified that there should not be any comments in the Year-End Evaluations that are not found in the UERs issued for that same year.  Dkt. 141-12, Torre Dep., 34:10-21; Dkt. 141-3, Marsh Dep., 46:7-11.  The Field Evaluation Reports/UERs thus do far more than "merely help" Umpire Supervisors—they are supposed to be the foundation for the Year-End Evaluations.  As discussed in Plaintiff's filings with this Court, however, that is not the case.

39.   Since 2012, during the regular season approximately 50% of games are observed in person by an Umpire Supervisor or a Field Observer.  No Field Evaluation Forms are generated for games that are not observed in-person.  (McKendry Decl. ¶ 7.)

**ANSWER:**   Undisputed that ¶ 7 of McKendry's Declaration states that "[s]ince 2012,

during the regular season approximately 50% of games are observed in person by an Umpire Supervisor or a Field Observer, who will submit a Field Evaluation Form concerning the observation of the umpires' on-field performance during the individual game." Disputed as to the second sentence of ¶ 39 of MLB's SMF. *See* Plaintiff's Answers to ¶¶ 24-26 of MLB's SMF, *supra*.

40.     Through a combination of in person review and videotape review (including MLB.tv), the Commissioner's Office reviews all the games worked by each umpire, including games that are not observed in person. As a result, the Commissioner's office reviews performance during games for which there may be no Field Evaluation Form. (McKendry Decl. ¶ 8; Pl. Ex. 12, Dkt. 142-13 at DEF1445; *see also* Pl. Ex. 13, Dkt. 142-14 at DEF1280.)

**ANSWER:**     Disputed that ¶ 8 of McKendry's declaration supports ¶ 40 of MLB's SMF. Undisputed that the 2015-2019 CBA states that "[t]hrough a combination of in person review and videotape review (including MLB.tv), the Commissioner's Office will review all the games worked by each umpire." Dkt. 142-13, Page 95 of 148. Undisputed that the 2010-2014 CBA states that "[t]hrough a combination of in person review and videotape review, the Commissioner's Office will review all the games worked by each umpire." Dkt. 142-14, Page 93 of 153. Disputed as to the second sentence of ¶ 40 of MLB's SMF, disputed as to whether MLB ever did any such review, and disputed as to whether any review resulted in any evaluation or similar commentary of an umpire's performance. MLB produced no document or other evidence in this litigation—and cites to none in support of ¶ 40 of its SMF—that any such review took place, that any such review resulted in any evaluation or similar commentary of an umpire's performance, or that any such review culminated in comments included in any umpire's Mid-Year Evaluation or Year-

End Evaluation.  Moreover, MLB produced no evidence as to how such reviews were conducted, what impact those reviews had on an umpire's Mid-Year Evaluation or Year-End Evaluation, or whether such reviews had any effect on its promotion or postseason selection decisions.  As such, not only is ¶ 40 of MLB's SMF unsupported by any evidence in the record, it is irrelevant and immaterial to MLB's Motion for Summary Judgment.

41.     Feedback about umpire performance in games that are not observed in person is addressed in mid-year and year-end evaluations.  (McKendry Decl. ¶ 8; Woodfork Tr. 57:14-58:12; Pl. Ex. 12, Dkt. 142-13 at DEF1445; *see also* Pl. Ex. 13, Dkt. 142-14 at DEF1280.)

**ANSWER:**   Undisputed that ¶ 8 of McKendry's Declaration states that "[f]eedback about umpire performance in games that are not observed in person is addressed in mid-year and year-end evaluations."  Disputed that the excerpt of Woodfork's deposition to which MLB cites supports ¶ 41 of its SMF.  That excerpt addresses only that the ZE and SURE systems are tools that MLB now utilizes that supervisors and observers do not have instantaneous access to when they are observing games.  Woodfork Dep., Dkt. 168-1, Pages 253-254 of 733, 57:14-58:12.  The CBA excerpts to which MLB cites in support of ¶ 41 of its SMF likewise do not support the assertions found in that paragraph—those excerpts state only that "the Commissioner's Office will review all the games worked by each umpire."  Finally, Plaintiff incorporates herein by reference his Answer to ¶ 40 of MLB's SMF, *supra*.

## IV.   MLB CREW CHIEFS

42.     Each umpire is assigned to a four-person umpire crew, with one umpire designated as the crew chief.  (Pl. Tr. 34:21-35:8.)

**ANSWER:**   Undisputed.

43.     The crew chief oversees and is ultimately responsible for managing the umpire crew.  The crew chief is the leader of the crew, is the final decision-maker as to all on-field issues, and ensures his crew's compliance with all of MLB's rules and policies.  Additional crew chief responsibilities include: (i) maintaining communication with the head groundskeeper; (ii) deciding whether a game must be delayed or forfeited; (iii) discussing all matters with the media; (iv) encouraging, initiating, and leading crew discussion of situations, plays and rules; (v) ensuring each umpire timely checks his MLB email; (vi) ensuring each umpire timely files all required reports; (vii) and reporting any suspected non-compliance with MLB baseball rules and regulations to the Office of the Commissioner.  (Pl. Ex. 12, Dkt. 142-13 at DEF1364; Pl. Ex. 13, Dkt. 142-14 at DEF1211; McKendry Decl. Ex. A at DEF1093; McKendry Decl. Ex. B at DEF2557-58; Pl. Tr. 34:21-35:8, 36:23-25.)

> **ANSWER:**     Undisputed as to the first sentence of ¶ 43 of MLB's SMF.  Disputed that the "responsibilities" listed in the remainder of ¶ 43 constitute all of a crew chief's actual responsibilities.  *See* Dkt. 171-1, Pages 7-8 of 33.

44.     Between 2011 and 2013, there were 17 permanent crew chief positions each season. (McKendry Decl. ¶ 5.)

> **ANSWER:**     Undisputed that ¶ 5 of McKendry's Declaration states that "[b]etween 2011 and 2013, there were 17 permanent crew chiefs each season."

45.     Between 2014 and the present, there have been 19 permanent crew chief positions each season.  (McKendry Decl. ¶ 6.)

> **ANSWER:**     Undisputed that ¶ 6 of McKendry's Declaration states that "[s]ince 2014, there have been 19 permanent crew chiefs each season."

46.     On or before January 15 of each year in which a crew chief position becomes

available, MLB appoints an umpire to act as the crew chief for each of the crews formed for the regular season, which MLB calls the "championship season." (Pl. Ex. 12, Dkt. 142-13 at DEF1363; Pl. Ex. 13, Dkt. 142-14 at DEF1210.)

**ANSWER:** Undisputed.

47. From 2011 through 2018 crew chief positions became available in the following seasons: 2011 (two open positions), 2013 (three open positions), 2014 (two open positions), 2015 (two open positions), 2017 (three open positions), and 2018 (one open position). There were no crew chief openings for the 2012, 2016, or 2019 seasons. (McKendry Decl. ¶ 9.)

**ANSWER:** Undisputed that ¶ 9 of McKendry's Declaration states that "[f]rom 2011 through 2018 crew chief positions became available in the following seasons: 2011 (two open positions), 2013 (three open positions), 2014 (two open positions), 2015 (two open positions), 2017 (three open positions), and 2018 (one open position). There were no crew chief openings for the 2012, 2016 or 2019 seasons."

48. The first crew chief appointments that Torre made, in collaboration with Woodfork, after they joined MLB in March 2011, were for the 2013 season, as there were no crew chief openings for the 2012 season. (Torre Decl. ¶ 35; Torre Tr. 144:16-145:17; Woodfork Tr. 222:20-25; Woodfork S.D. Ohio Decl. ¶ 1; Torre S.D. Ohio Decl. ¶ 1.)

**ANSWER:** Undisputed.

49. Between 2013 and 2018, Torre, in collaboration with Woodfork, determined which umpire(s) to promote to crew chief. (Torre Decl. ¶¶ 8-10; Woodfork Tr. 23:16-24; McKendry Tr. 185:11-17.)

**ANSWER:** Disputed to the extent that ¶ 49 of MLB's SMF suggests that Woodfork made crew chief promotion decisions along with Torre. As Torre himself states in ¶ 10 of

his Declaration, he alone "was responsible for making the final decisions" regarding crew chief promotions and World Series assignments.  Moreover, those decisions were made based only on Torre's, and not Woodfork's, "judgment."  *See*, *e.g.*, Dkt. 169, Pages 13-21 of 23, ¶¶ 43-50; Dkt. 165, Pages 43-44 of 61.

50.     From 2013 through 2018, Torre was the final decision maker as to crew chief promotions.  (Torre Tr. 195:10-12; Woodfork Tr. 23:16-24; Manfred Tr. 29:22-24.)

**ANSWER:**     Disputed to the extent it suggests that anyone else besides Torre was given authority to make these decisions.  *See* Plaintiff's Answer to ¶ 49 of MLB's SMF, *supra*.

51.     Hernandez applied for crew chief positions in 2011, 2013, 2014, 2017 and 2018. Hernandez did not apply for the two available crew chief positions in 2015.  (McKendry Decl. ¶ 11; Pl. Tr. 69:20-25.)

**ANSWER:**     Undisputed.

52.     Other than the fact**s** that Hernandez is Hispanic and of Cuban national origin and he was not selected for crew chief in the years he applied, he is not aware of any specific facts that his not being selected for a crew chief position in the years he applied was related to his race, color, or national origin.  (Pl. Tr. 33:5-34:6.)

**ANSWER:**     Disputed.  Plaintiff's Motion for Partial Summary Judgment and his Reply Memorandum in Support of his Motion for Partial Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment ("Plaintiff's Reply Memorandum"), with which this Counter-Statement is contemporaneously filed, are replete with facts that support his claims that he was repeatedly rejected by MLB and Torre for promotions to crew chief and World Series assignment due to Plaintiff's race, color or national origin. *See* Dkt. 139, 142, and Plaintiff's Reply Memorandum.  Moreover, ¶ 52 is unsupported by

evidence in the record.  Plaintiff testified in his deposition that he was not "aware of" any additional facts.  But Plaintiff's lack of knowledge at his deposition is not surprising, as MLB has designated thousands of pages of documents, including anything that could even remotely constitute a "performance evaluation" of a third-party umpire, as "CONFIDENTIAL – ATTORNEYS EYES ONLY."  *See*, *e.g.*, Dkt. 154, Dkt. 183. Pursuant to the Confidentiality Order entered by the Court, Plaintiff himself is thereby barred from viewing those documents. Dkt. 36, Page 5 of 11, ¶ 5.  MLB's over-designation of documents as "CONFIDENTIAL – ATTORNEYS EYES ONLY" has resulted in Plaintiff himself not being aware of some of the very evidence upon which his Motion for Partial Summary Judgment, MLB's Motion, and Plaintiff's opposition to MLB's Motion are based.  Moreover, at the time Plaintiff was deposed in April of 2019, Plaintiff's counsel had not yet deposed a single MLB employee. *See* Plaintiff's Answer to ¶ 24 of MLB's SMF, *supra*.  Finally, subsequent to Plaintiff's deposition in April of 2019, MLB produced over 9,000 pages of documents in discovery.

## V.   WORLD SERIES UMPIRES

53.   The MLB postseason consists of Wild Card games, the Division Series, the American League Championship Series ("ALCS"), the National League Championship Series ("NLCS"), and the World Series.  Each Series is considered a "Special Event."  (Pl. Tr. 89:22-90:10; Pl. Ex. 12, Dkt. 142-13 at DEF1410-1411; Pl. Ex. 13, Dkt. 142-14 at DEF1250-51.)

**ANSWER:**   Undisputed.

54.   The World Series is the annual MLB championship series in Major League Baseball and the most critical Special Event of the baseball calendar.  It is a best-of-seven game series.  (Torre Decl. ¶ 13.)

**ANSWER:**     Undisputed.

55.     Other Major League Baseball Special Events include the All-Star game and international games.  (McKendry Decl. ¶ 12; Pl. Ex. 12, Dkt. 142-13 at 1412-13; Pl. Ex. 13, Dkt. 142-14 at DEF1251-52; Pl. Tr. 98:2-4, 99:4-7.)

**ANSWER:**     Undisputed.

56.     Absent injury, the same umpiring crew works all games in the World Series.  From 2011 through 2013, six umpires worked each World Series:  one crew chief and five other umpires.  (Pl. Ex. 13, Dkt. 142-14 at DEF 1251; Torre Tr. 29:14-18; Woodfork Tr. 233:14-18.)

**ANSWER:**     Undisputed.

57.     Since 2014, eight umpires have worked each World Series: one crew chief and six other umpires on the field (two of whom rotate partway through the series) and one umpire who serves as Replay Assistant for the duration of the World Series.  (Pl. Ex. 12, Dkt. 142-13 at DEF 1411; Woodfork Tr. 233:14-234:13; Torre Tr. 29:14-30:8.)

**ANSWER:**     Undisputed.

58.     From 2011 through 2019, Torre, in collaboration with Woodfork, decided which umpires to select for postseason games.  Torre was the final decision maker as to postseason assignments.  (Woodfork Tr. 22:6-23:15; Torre Tr. 28:6-11; Manfred Tr. 29:25-30:4.)

**ANSWER:**     Disputed to the extent that ¶ 58 of MLB's SMF suggests that Woodfork or anyone else made crew chief promotion decisions along with Torre.  As Torre himself states in ¶ 10 of his Declaration, he alone "was responsible for making the final decisions" regarding crew chief promotions and World Series assignments.  Moreover, those decisions were made based only on Torre's, and not Woodfork's or anyone else's, judgment.  *See*, *e.g.*, Dkt. 169, Pages 5, 10 of 23, ¶¶ 19, 33; Dkt. 165, Pages 19, 21 of 61; Torre Dep., Dkt.

161-8, Page 140 of 733, 28:6-9 (Q: "Since 2011 who has been ultimately responsible to select umpires for the World Series?", A: "I am the final word.").

59.     In order to be eligible to umpire in the World Series, an umpire must have worked in that year's American League or National League Division Series.  (Torre Decl. ¶ 27; Woodfork Tr. 68:3-6, 145:22-146:2.)

   **ANSWER:**   Undisputed that in order to be eligible for the World Series, an umpire must have worked in that year's American League or National League Division Series.  Disputed that MLB and Torre had any legitimate, non-discriminatory reason for not putting Plaintiff in the American League or National League Division Series, and subsequently into the World Series, in any season between 2011-2016.  *See* Dkt. 139, 142, and Plaintiff's Reply Memorandum.

60.     The Basic Agreement provides that "[p]rior to the announcement of a decision to have the same umpire or umpires work consecutive World Series," MLB shall meet and confer with the umpires' union.  Since 2011, no Major League umpire worked in consecutive World Series.  (Pl. Ex. 12, Dkt. 142-13 at DEF1497; Pl. Ex. 13, Dkt. 142-14 at DEF1346; Woodfork Tr. 68:10-16; McKendry Decl. ¶ 14.)

   **ANSWER:**   Disputed inasmuch as the procedure of meeting and conferring with the umpires' union is provided for not in the Basic Agreement but in letters (one of which is undated) reflecting agreements between MLB and the umpires' union.  *See* Dkt. 142-13, Page 147 of 148; Dkt. 142-14, Page 149 of 153.  Disputed that MLB suggests that it is somehow permitted to engage in discriminatory conduct in regards to World Series assignments.  *See*, *e.g.*, West Decl., ¶ 37.

61.     Torre selected Hernandez to umpire Division Series in 2011, 2012, 2015, 2017, and

2018.  (McKendry Decl. ¶ 13; Pl. Tr. 236:15-19; Pl. Ex. 9, Dkt. 142-10 at DEF7654.)

>    **ANSWER:**   Undisputed.   Disputed that MLB and Torre had any legitimate, non-discriminatory reason for not putting Plaintiff in the World Series in any of those seasons. *See* Dkt. 139, 142, and Plaintiff's Reply Memorandum; West Dec., ¶¶ 37-38.

>    62.   Torre selected Hernandez to umpire the National League Championship Series in 2016.  (McKendry Decl. 13; Pl. Ex. 9, Dkt. 142-10 at DEF7654.)

>    **ANSWER:**   Undisputed.   Disputed that MLB and Torre had any legitimate, non-discriminatory basis for not putting Plaintiff in the American League or National League Division Series, and subsequently into the World Series, for the 2016 season.  *See* Dkt. 139, 142, and Plaintiff's Reply Memorandum.  Indeed, MLB contemplated assigning Plaintiff to the 2016 Division Series, as opposed to the 2016 League Championship Series, but ultimately chose not to do so for unexplained reasons.  *See* Dkt. 142-67, Page 1 of 2.

>    63.   In 2016, Torre selected Hernandez as one of two Major League umpires to umpire a historic international exhibition game between the Tampa Bay Rays and Cuba's national baseball team in Havana, Cuba.  Hernandez viewed this assignment as a positive event in his life.  (Pl. Tr. 99:23-100:15; McKendry Decl. ¶ 13.)

>    **ANSWER:**   Undisputed as to the first sentence of ¶ 63 of MLB's SMF.  Undisputed as to the second sentence of ¶ 63 inasmuch as Plaintiff testified he was "happy to go" and acknowledged that it was "enjoyable" and "fun."  Hernandez Dep., Dkt. 168-1, Pages 32-33 of 733, 99:23-100:15.  Disputed to the extent that ¶ 63 of MLB's SMF contradicts and/or is inconsistent with the evidence in the record.  *See*, *e.g.*, *id.*

>    64.   In 2017, Torre selected Hernandez to umpire the MLB All-Star Game in Miami, Florida, Hernandez's home state.  (Pl. Tr. 98:18-21; McKendry Decl. ¶ 13.)

**ANSWER:**    Undisputed.

## VI. HERNANDEZ'S PERFORMANCE IN AREAS TORRE CONSIDERED MOST IMPORTANT FOR PERMANENT CREW CHIEFS AND THE WORLD SERIES

65.    Pursuant to the Basic Agreement, MLB has discretion to rely on those factors it deems appropriate in making crew chief decisions.  (Pl. Ex. 12, Dkt. 142-13 at DEF1363-64, 1409; Pl. Ex. 13, Dkt. 142-14, at DEF1210-11, 1249-50.)

**ANSWER:**    Undisputed that the CBA so states.  Disputed that MLB's practice of relying only on Torre's opinion as to subjective criteria such as "leadership ability" and "situation management skills" is a practice or policy that has not created a disparate impact and that is consistent with business necessity.  *See* Plaintiff's Reply Memorandum, pp. 39-50. Disputed that MLB's exercising of its discretion permitted it to engage in unlawful discriminatory conduct in connection with crew chief promotion decisions.  *See, e.g.*, West Dec., ¶ 39.

66.    The criteria MLB relies upon for making crew chief selection are not identical to those it uses to evaluate umpire performance.  Success of an umpire, in the view of MLB, is a necessary but insufficient requirement for promotion to crew chief.  MLB considers a variety of factors in making crew chief appointments, including but not limited to:

- Leadership skills -- including situation management, maintaining an appropriate pace-of-game, on-field presence, demonstrating the requisite managerial skills necessary to lead a crew on and off the field, the ability to form and maintain strong interpersonal relationships with other umpires, ability to maintain composure and regain focus if an officiating error is made, personal accountability, demeanor, effective communication skills with the Office, Club personnel and players, hustle, focus, and integrity;

- Overall quality of performance, including strike zone accuracy, made/missed calls, ability to properly enforce the Replay Regulations and Procedures on the field and as a Replay Official, how much or how often the umpire exceeds/does not meet expectations, allowing fans to keep their focus on the field, and agility and position accuracy in getting the appropriate angle on calls;

- Fulfillment of duties and responsibilities, including attendance and the umpire's adherence to the Four-Umpire System, as well as other mandates of the Major League Baseball Umpire Manual, the Official Playing Rules, Replay Regulations, and the Basic Agreement;

- Initiative, including whether the umpire takes the initiative to train and mentor junior umpires; and

- Success in the role of interim crew chief.

(Torre Decl. ¶¶ 14, 16, 29, 33-34; Pl. Ex. 14, Dkt. 142-15 at Response #4; Pl. Ex. 15, Dkt. 142-16; Pl. Ex. 16, Dkt. 142-17; Torre Tr. 82:10-19, 139:18-140:7, 142:18-143:2; Woodfork Tr. 25:4-14, 27:7-29:25; *see also* McKendry Tr. 218:22-219:5.)

**ANSWER:**    Undisputed that MLB's Answer to Plaintiff's Interrogatory No. 4 (Dkt. 142-16) lists these factors as being relied upon by MLB in making crew chief promotion decisions.  Disputed that these are the only factors listed in MLB's Answer to Plaintiff's Interrogatory No. 4.  Interrogatory No. 4 also states that "[i]n making crew chief selections, the Office of the Commissioner considers the umpire's performance in the most recent season as well as the length and consistency of his career contributions" and that "[i]n addition, the Office of the Commissioner may consider seniority when exercising its appointment discretion, but seniority does not control the Office of the Commissioner's appointment decisions."  Dkt. 142-15, Pages 5-6 of 10.  Disputed that MLB, Torre or any other MLB employee actually relied on all, or even a majority, of these factors in making crew chief promotion decisions.  The deposition testimony of MLB officials—and MLB's own Motion—establishes that MLB does not consider many of the criteria listed in its sworn interrogatory answers and in its letters to crew chief candidates who were denied the position.  Torre testified that the most important aspect of an umpire's job was not his ability, but was instead "[h]aving the skills to handle situations."  Dkt. 141-12, Torre Dep., 82:10-19; *see also* Torre Dep., Dkt. 168-1, Page 161 of 733, 82:18-19 ("skills to handle situations"); *id*. at Pages 177-178 of 733, 139:20-140:7 ("leadership ability," "need to be

an educator" and being "a role model for the younger umpires"); *id*. at Pages 179-180 of

733, 139:18-140:7 ("consistency"); Woodfork Dep., Dkt. 168-1, Page 242 of 733, 25:4-14

("leadership skills"); *id*. at Pages 244-246 of 733, 27:7-29:25 ("leadership," "consistency,"

"accountability," "umpire being there working," "experience").   Nothing disclosed in

discovery, including in Torre's own deposition testimony, suggests that Torre considered

factors other than "leadership," "consistency," "accountability" and "experience" in

making crew chief promotion decisions.  Any assertion that Torre considers anything other

than the factors identified in his and Woodfork's deposition contradicts MLB's current

assertions and Torre's own Declaration, which should therefore be rejected.  *See Vos v.*

*Lee*, No. 07-CV-804 (RLM), 2009 WL 10640615, at *7 (E.D.N.Y. Dec. 23, 2009).

67.     These factors are legitimate factors to consider for the selection of a permanent

crew chief.  (Pl. Tr. 54:24-55:7, 70:25-71:9; Pl. Tr. Day 2 160:5-11; Torre Decl. ¶¶ 14, 16, 33-34.)

**ANSWER:**     Undisputed that the factors listed in MLB's Answer to Plaintiff's

Interrogatory No. 4 would be legitimate factors to consider for the selection of a permanent

crew chief had they all been considered and been considered equally.  Disputed that MLB,

Torre or any other MLB employee actually considered all of those factors and/or

considered them equally in making crew chief promotion decisions.  *See* Plaintiff's Answer

to ¶ 66 of MLB's SMF, *supra*.

68.     Hernandez does not know the criteria MLB decision-makers applied in making

crew chief promotion decisions.  (Pl. Tr. 38:20-39:4.)

**ANSWER:**     Undisputed that Plaintiff, at the time of his deposition, did not know which

criteria MLB actually applied in making crew chief promotion decisions.  Disputed as to

the remainder of ¶ 68 of MLB's SMF and disputed that this lack of knowledge is material,

relevant or otherwise supports MLB's Motion for Summary Judgment.  As discussed in Plaintiff's Answer to ¶ 24 of MLB's SMF, *supra*, Plaintiff's deposition was taken before any MLB employee was deposed by Plaintiff's counsel.  Moreover, and as discussed in Plaintiff's Answer to ¶ 52 of MLB's SMF, *supra*, a substantial number of the documents produced by MLB in discovery in this litigation were designated by MLB as "CONFIDENTIAL – ATTORNEYS EYES ONLY," thereby precluding Plaintiff from viewing them.

69.     In making permanent crew chief selections, the factors that Torre considered most important were the consistent display of leadership skills referenced in Paragraph 66.  Torre also believed these skills are important attributes for crew chiefs in order to set a positive example for the rest of the crew.  (Torre Decl. ¶ 15; Torre Tr. 82:10-19, 139:18-140:7, 142:18-143:2; Woodfork Tr. 25:4-14, 27:7-29:25.)

**ANSWER:**     Disputed that Torre "considered most important" the criteria listed under "leadership skills" in ¶ 14 of Torre's Declaration.  The deposition excerpts to which MLB cites in support of ¶ 69 of MLB's SMF do not support its current assertion that all of the criteria listed under "leadership skills" in ¶ 14 of Torre's Declaration were actually considered by Torre.  *See* Torre Dep., Dkt. 168-1, Page 161 of 733, 82:18-19 ("skills to handle situations"); *id*. at Pages 177-178 of 733, 139:20-140:7 ("leadership ability," "need to be an educator" and being "a role model for the younger umpires"); *id*. at Pages 179-180 of 733, 139:18-140:7 ("consistency"); Woodfork Dep., Dkt. 168-1, Page 242 of 733, 25:4-14 ("leadership skills"); *id*. at Pages 244-246 of 733, 27:7-29:25 ("leadership," "consistency," "accountability," "umpire being there working," "experience").  Any assertion that Torre considers anything other than the factors identified in his and

Woodfork's deposition contradicts MLB's current assertions and Torre's own Declaration, which should therefore be rejected. *See Vos*, 2009 WL 10640615 at *7; Plaintiff's Answer to ¶ 66 of MLB's SMF, *supra*.

70.    The Basic Agreement provides that seniority does not control crew chief selections, and MLB did not rely on an umpire's seniority as a controlling factor in exercising its discretion to make crew chief appointments.  (Pl. Ex. 12, Dkt. 142-13 at DEF1363; Pl. Ex. 13, Dkt. 142-14 at DEF1210; Torre Tr. 156:17-25; McKendry Tr. 218:3-11.)

**ANSWER:**    Undisputed that the CBA provides in part that seniority does not control crew chief selections.  Disputed that that is all the CBA provides for regarding the role of seniority in crew chief promotion decisions.  The CBA states in full that "[w]hile the Office of the Commissioner may consider seniority along with other factors that it may deem appropriate when exercising its appointment discretion, seniority shall not control in the Office of the Commissioner's choice of crew chief."  Undisputed that MLB did not rely on an umpire's seniority as a *controlling* factor in making crew chief promotion decisions. Disputed to the extent ¶ 70 of MLB's SMF suggests that MLB, Torre or any other MLB employee did not consider seniority at all in making crew chief promotion decisions.  There is evidence in the record confirming that seniority was an important factor for MLB umpire executives.  *See* Dkt. 142-109, page 1 of 2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Marsh Dep., 239:8-240:23; Dkt. 141-11, Page 2 of 2 (listing 2017 crew chief candidates by seniority, with Plaintiff being the most senior by four years, and identifying a protocol for "determining seniority if service time is the same"); West Dec., ¶ 40.

71.     MLB has exclusive discretion in the selection of umpires for all Special Events, including the MLB postseason, and MLB did not rely on an umpire's seniority as a controlling factor in exercising its discretion to make postseason selections, including selecting umpires for the World Series.  (Pl. Ex. 12, Dkt. 142-13 at DEF1410; Pl. Ex. 13, Dkt. 142-14 at DEF1250-51; Torre Tr. 153:23-154:15; Woodfork Tr. 191:2-15.)

**ANSWER:**     Undisputed that the CBA states that "[t]he Office of the Commissioner shall have absolute and exclusive discretion in the assignment of umpires to work Special Events."  Dkt. 142-13, Page 60 of 148; Dkt. 14-214, Page 53 of 153.  Disputed to the extent ¶ 71 of MLB's SMF suggests that MLB never considered an umpire's seniority as a controlling factor in exercising its discretion to make postseason selections, including selecting umpires for the World Series.  MLB's 2013 Umpiring Department Overview document states that "Special Events [sic] Assignments Often Go to the Most Senior Umpires."  Dkt. 156, Exhibit G, at DEF 015082.  That same document also confirms that MLB considered, at least as of 2013, "seniority" to be one of "a number of criteria [that were] taken into account when choosing the umpires for special events."  *Id*.  Torre's deposition testimony further demonstrates that MLB, at least at one point, considered seniority in making postseason assignment decisions.  *See* Torre Dep., Dkt. 168-1, Page 183 of 733, 153:23-154:15 (Torre testifying that "special events [sic] assignments often go to the most senior umpires" is "not true now"); *see also* Woodfork Dep., Dkt. 168-1, Page 286 of 733, 191:2-15 (testifying that in 2014, MLB was "able to become more objective," but failing to explain how or whether such a transition to becoming "more objective" included a deemphasizing of seniority as a factor in postseason assignment decisions).  Torre also testified that he considered seniority at least in part in making postseason

assignment decisions. *See* Torre Dep., Dkt. 168-1, Page 143 of 733, 31:12-13.

72.     Due to the significance of the World Series to Major League Baseball, Torre emphasized selection of umpires who displayed the highest levels of performance that season and throughout their careers. (Torre Decl. ¶ 16; Woodfork Decl. ¶ 6; Torre Tr. 31:7-13; Woodfork Tr. 44:4-11, 67:21-68:25, 213:4-6; Manfred Tr. 33:11-16.)

> **ANSWER:**     Disputed.  Torre testified only that he considered an umpire's "combination experience and performance for the year" in making World Series assignment decisions. Torre Dep., Dkt. 168-1, Page 143 of 733, 31:7-11.  Torre confirmed in his deposition that "experience include[d] seniority." *Id*. at 31:12-13.  Woodfork testified that MLB assigned to the World Series the umpires that MLB felt would "perform the best" and were "the most deserved based on their performance and what they're [sic] done to date," as well as that MLB considered "performance, both, in the current season and past performance and consistency in the umpires."  Woodfork Dep., Dkt. 168-1, page 252 of 733, 44:4-11.  To the extent Torre's or Woodfork's Declarations contradict their deposition testimony, the Declarations and any assertions made by MLB premised on those declarations should be rejected.  *See Vos*, 2009 WL 10640615 at *7; Plaintiff's Answers to ¶¶ 66, 69 of MLB's SMF, *supra*.  Disputed that Torre always selected for the World Series umpires who displayed the highest levels of performance that season and throughout their careers. *See* West Dec., ¶ 41.

73.     In evaluating an umpire's performance for selection to the World Series, Torre gave particular consideration to umpires who demonstrated the ability to manage on-field situations under intense pressure; took responsibility for their on-field decisions; maintained composure and regained focus immediately if an officiating error was made; and applied and conveyed the Official

Rules of Baseball correctly and clearly.  Of these considerations, maintaining a high level of focus on the field, being able to quickly refocus if an incorrect call is made, and keeping focus on the game and players rather than on the actions of the umpires during a game are, in Torre's view, particularly critical.  (Torre Decl. ¶¶ 16, 20; Torre Tr. 82:10-19; *see also* McKendry Tr. 265:8-266:18.)

> **ANSWER:**     Disputed.  Torre testified only that he considered an umpire's "combination experience and performance for the year" in making World Series assignment decisions. Torre Dep., Dkt. 168-1, Page 143 of 733, 31:7-11.  Torre confirmed in his deposition that "experience include[d] seniority."  *Id*. at 31:12-13.  To the extent Torre's declaration contradicts his deposition testimony, the declaration and any assertions made by MLB premised on that declaration should be ignored.  *See Vos*, 2009 WL 10640615 at *7; Plaintiff's Answers to ¶¶ 66, 69, 72 of MLB's SMF, *supra*.  The excerpt of McKendry's deposition to which MLB cites in support of ¶ 73 of its SMF consists only of McKendry's, who was not a decisionmaker, opinion as to why Plaintiff was less qualified than those assigned to the World Series over him and does not at all discuss Torre's views on what factors Torre considered in making those assignment decisions (and, as discussed above, Torre identified in his deposition which factors he actually considered).  *See* McKendry Dep., Dkt. 168-1, Pages 389-390 of 733, 265:8-266:18.

74.     Torre did not place significant weight on Field Evaluation Forms for purposes of crew chief decisions and World Series selections because they are completed only for individual games that are observed in-person, are strictly limited to predetermined criteria concerning on-field performance in that individual game, and do not contain specific competencies of leadership ability or ability to perform in high pressure games, which Torre considered extremely important

for World Series assignments and permanent crew chiefs.  (Torre Decl. ¶ 18; Woodfork Decl. ¶ 6; Torre Tr. 35:18-23, 191:18-25; Woodfork Tr. 24:19-27:3, 58:9-12; *see also* Manfred Tr. 73:8-25.)

**ANSWER:**    Undisputed that Torre has never seen the Field Evaluation Forms/UERs. Undisputed that, because Torre has never seen the UERs, Torre could not possibly have placed significant weight on them.  Disputed that Torre's failure to review the UERs in favor of instead relying on his opinion of subjective criteria such as "leadership ability" and/or reviewing inaccurate Mid-Year Evaluations and Year-End Evaluations is a practice or policy that is consistent with business necessity and does not result in a disparate impact. *See* Plaintiff's Reply Memorandum, pp. 39-50.  Disputed that UERs are completed for games that are only observed in person.  *See*, *e.g.*, Plaintiff's Answers to ¶¶ 20, 21, 34 of MLB's SMF, *supra*.  Disputed to the extent ¶ 74 of MLB's SMF and Torre's Declaration suggests that Torre considered any criteria for World Series assignments other than those specifically identified in his deposition.  *See* Plaintiff's Answers to ¶¶ 72, 73 of MLB's SMF, *supra*.  To the extent Torre's declaration contradicts his deposition testimony, the declaration and any assertions made by MLB premised on that declaration should be rejected.  *See Vos*, 2009 WL 10640615 at *7.

75.    All umpires at the Major League level are technically proficient in making accurate calls and, in Torre's view, there is not a meaningful disparity between high performing and low performing umpires across those metrics.  (Torre Decl. ¶ 34; Torre Tr. 43:5-20; Montague Tr. 18:17-19:2.)

**ANSWER:**    Undisputed that ¶ 34 of Torre's Declaration states that "all Major League umpires are technically proficient."  Disputed as to the remainder of ¶ 75 of MLB's SMF, which is unsupported by the evidence in the record.  Paragraph 34 of Torre's Declaration

relates to Torre's subjective opinion on "the requisite managerial skills" for crew chiefs and does not mention at all "Torre's view" on the existence of any "meaningful disparity between high performing and low performing umpires."  The excerpt of Torre's deposition to which MLB cites in support of ¶ 75 of its SMF reveals only that Torre "want[s] to believe" that all umpires "try hard" and that "the vast majority of umpires" have at least 95% on their ZE scores; that excerpt does not address (i) whether all umpires at the Major League level are technically proficient in making accurate calls, or (ii) "Torre's view" on the existence of any "meaningful disparity between high performing and low performing umpires."  Torre Dep., Dkt. 168-1, Page 151 of 733, 43:13-16.  The excerpt of Montague's deposition to which MLB cites in support of ¶ 75 of its SMF reveals only Ed Montague's, one of Plaintiff's former supervisors, opinion that "[p]ercentage wise," there is "not much" that "separates the major league umpires in calling balls and strikes" and that SURE scores "are high."  Montague Dep., Dkt. 168-1, Page 475 of 733, 18:17-19:2.  Nothing in Montague's deposition testimony relates in any way to "Torre's view" on the existence of any "meaningful disparity between high performing and low performing umpires."

76.     Hernandez is not an above average umpire on a statistical basis and has often been below average in "ZE Rank," which measures his rank among umpires in accurately calling balls and strikes, and SURE rankings (measuring correct calls on the bases compared to other umpires). (Torre Tr. 166:3-6; McKendry Tr. 206:5-22; Woodfork Tr. 189:11-190:11; Pl. Ex. 94, Dkt. 142-96.)

**ANSWER:**   Disputed.   Torre testified in his deposition that Plaintiff is "very good, there's no question, he's very good" on a "statistical basis."  Torre Dep., Dkt. 168-1, Page 189 of 733, 166:3-15.  McKendry testified only to his opinion that Plaintiff "is a middle of

the road umpire" regarding SURE and ZE numbers.  McKendry Dep., Dkt. 168-1, Page 375 of 733, 206:12-19.  Woodfork testified only that he would not agree that Plaintiff "is above average" in the categories of (i) seniority, (ii) special event experience, and (iii) supervisor evaluations that include assessment of leadership skills, overall quality of performance, and fulfillment of duties and responsibilities.  Woodfork Dep., Dkt. 168-1, Page 284 of 733, 189:11-19; Dkt. 156, Exhibit G, at DEF 015082.  Woodfork also testified as to his subjective opinion that Plaintiff's "performance on the field at times can be above average and [he] think[s] it can be below average at times as well."  Woodfork Dep., Dkt. 168-1, Page 285 of 733, 190:8-11.  Moreover, the spreadsheet in the record at Dkt. 142-96 shows that Plaintiff was frequently average or above average in both ZE and SURE rank. Finally, ¶ 76 of MLB's SMF is immaterial and irrelevant to the extent it does not compare Plaintiff's ZE and SURE rank to the non-minority umpires who were promoted to crew chief or assigned to the World Series over him.  If MLB's opinion is that Plaintiff's ZE and SURE ranks were "not above average," it surely must reach the same conclusion as to many of those non-minority umpires.  Dkt. 142-96.

77.    In Torre's professional judgment, Hernandez has not consistently demonstrated the high level in those areas of performance he believed to be most important for a permanent crew chief position.  (Torre Decl. ¶¶ 19-42; Woodfork Decl. ¶ 7; Torre Tr. 82:20-86:3, 130:22-131:11, 139:18-140:18; Woodfork Tr. 94:21-95:21, 112:24-113:11; *see also* McKendry Tr. 206:5-207:3, 210:10-211:19, 228:4-21.)

**ANSWER:**    Undisputed that Torre now asserts that, in only the exercise of his "professional judgment," he determined that Plaintiff has not consistently demonstrated a high level of performance in the subjective criteria of "leadership ability" and "situation

management" skills.  Disputed that Torre's judgment is consistent with the evidence in the

record, including Plaintiff's own performance evaluations, which demonstrate Plaintiff's

proficiency in those areas.  *See* Plaintiff's Reply Memorandum, pp. 13-16, which is

incorporated into this Answer by reference.  Disputed to the extent that ¶ 77 of MLB's

SMF suggests that the non-minority umpires Torre repeatedly promoted to crew chief or

assigned to the World Series over Plaintiff did "consistently demonstrate" high levels of

performance in those areas.  *See* Plaintiff's Reply Memorandum, pp. 27-30, which is

incorporated into this answer by reference.  Disputed to the extent that MLB's assertion

regarding Torre's "professional judgment" and the limited, subjective factors he now

asserts he considers contradict the evidence in the record, including MLB's sworn

interrogatory answers. *See* Dkt. 142-15, MLB's Answer to Plaintiff's Interrogatory No. 4;

Plaintiff's Answer to ¶ 66 of MLB's SMF, *supra*.  Disputed to the extent that MLB asserts

that its reliance solely on Torre's "professional judgment" is consistent with business

necessity and did not result in a disparate impact.  *See* Plaintiff's Reply Memorandum, pp.

39-50, which is incorporated into this answer by reference.

78.    In Torre's professional judgment, Hernandez has not consistently demonstrated the

high level in those areas of performance he believed to be most important for World Series

assignments.  (Torre Decl. ¶¶ 19-20; Woodfork Decl. ¶ 7; Torre Tr. 82:20-86:3, 130:22-131:11;

Woodfork Tr. 94:21-95:21; *see also* McKendry Tr. 210:10-211:19, 228:4-21.)

**ANSWER:**   Undisputed that Torre now asserts that, in only the exercise of his

"professional judgment," he determined that Plaintiff has not consistently demonstrated a

high level of performance in the subjective criteria of "leadership ability" and "situation

management" skills.  Disputed that Torre's judgment is consistent with the evidence in

the record, including Plaintiff's own performance evaluations, which demonstrate Plaintiff's proficiency in those areas.  *See* Plaintiff's Reply Memorandum, pp. 13-16, which is incorporated into this Answer by reference.  Disputed to the extent that MLB's assertion regarding Torre's "professional judgment" and the limited, subjective factors he now asserts he considers contradict the evidence in the record, including his own deposition testimony.  *See* Torre Dep., Dkt. 168-1, Page 143 of 733, 31:7-11; Plaintiff's Answer to ¶ 72 of MLB's SMF, *supra*.  Disputed to the extent that MLB asserts that its reliance solely on Torre's "professional judgment" is consistent with business necessity and did not result in a disparate impact.  *See* Plaintiff's Reply Memorandum, pp. 39-50, which is incorporated into this answer by reference.

**A.     Hernandez's Lack of Accountability and Inability to Move Past His Mistakes Are Qualities MLB Considers Inconsistent with On-Field Leadership.**

79.     In Torre's judgment, certain incidents in particular underscored Hernandez's unsuitability for a permanent crew chief role and World Series assignments.  Torre believes that good leaders accept responsibility for actions, hold themselves accountable for their successes and their failures, and seek to learn from the past rather than dwell and shift blame to others.  In his view, Hernandez repeatedly has been unable or unwilling to take responsibility for his mistakes and, as a result, has been unable to move past those mistakes so that he can remain 100 percent focused on what is taking place on the field.  (Torre Decl. ¶¶ 21, 37; Torre Tr. 139:20-140:7, 142:23-143:2; Woodfork Tr. 27:7-29:25, 112:24-113:11; *see also* McKendry Tr. 227:18-228:21.)

**ANSWER:**     Disputed and unsupported by the evidence.  Paragraphs 21 and 37 of Torre's Declaration gives only one example of what Torre baselessly asserts is a "repeated" pattern of Plaintiff's alleged inability "to move past" his mistakes and remain "focused on what is taking place on the field."  That one example is the Cleveland "incident" that is further

discussed in Plaintiff's Answer to ¶ 80 of MLB's SMF, *infra*.  *See also* Plaintiff's Reply

Memorandum, pp. 14-15, which is incorporated into this Answer by reference.  As

discussed in Plaintiff's Answer to ¶ 80 of MLB's SMF, Torre's characterization of the

Cleveland "incident" is inaccurate.  Disputed to the extent that the single purported

example identified in ¶¶ 21 and 37 of Torre's Declaration, even if accurately characterized,

evidences a "repeated" pattern of Plaintiff's alleged inability "to move past" his mistakes

and remain "focused on what is taking place on the field."  Disputed to the extent that

Torre's "belief" as to Plaintiff's alleged inability "to move past" his mistakes and remain

"focused on what is taking place on the field" is contradicted by evidence in the record,

including Plaintiff's own performance evaluations.   *See*, *e.g.*, Plaintiff's Reply

Memorandum, pp. 13-14, which are incorporated into this Answer by reference.  Disputed

to the extent that MLB contends that the other evidence it cites to in support of ¶ 79 of its

SMF actually supports ¶ 79.  Disputed that Torre's "belief" or opinion as to that single

"example" constitutes legitimate, non-discriminatory reasons for not promoting Plaintiff

to crew chief or assigning him to the World Series.  *See generally* Plaintiff's Reply

Memorandum, pp. 3-39, which are incorporated into this Answer by reference.

80.     Most notably, according to Torre, Hernandez has for years been preoccupied with

an incorrect call he made on May 8, 2013 in Cleveland, during a game between the Cleveland

Indians and Oakland A's.  (Torre Decl. ¶ 21; Torre Tr. 83:9-84:17, 85:23-86:3; Marsh Tr. 253:8-

18, 276:14-277:3; Abramson Decl. Exs. M, N.)

**ANSWER:**     Undisputed that a call was made during a May 8, 2013 game in Cleveland

between the Cleveland Indians and the Oakland A's.  Disputed as to the remainder of ¶ 80

of MLB's SMF.  Disputed that the call during that May 8, 2013 that is the purported basis

of Torre's belief was incorrect. *See* Declaration of Angel Hernandez ("Hernandez Dec."), attached hereto as Exhibit 2; Dkt. 141-37. As Plaintiff stated in his deposition, "[i]t wasn't called. I left it in play. So I never made a ruling." Hernandez Dep., Dkt. 168-1, Pages 35-36 of 733, 148:6-149:5. This was because MLB procedures at the time required that when it was unclear on the field whether the hit was a home run or not, to leave the ball in play (thereby letting the play complete itself) as opposed to calling it a home run (thereby ending the play). *See* Hernandez Dep., Dkt. 168-1, Page 36 of 733, 149:17-20 (MLB "never wanted [umpires] to err on killing [the play], because [then the umpires would] have to decide where to put the runners. It'd create more of a problem"); Hernandez Dec., ¶ 1. As stated in the email shown in Dkt. 141-37, it was unclear whether the batted ball had gone over the boundary (thereby constituting a home run) or not (thereby constituting a live ball) and Plaintiff therefore left it in play in accordance with MLB's rules and procedures at the time. *Id*.; Hernandez Dec., ¶ 1; Hernandez Dep., Dkt. 168-1, Page 36 of 733, 149:17-20. Plaintiff and his crew then went to review the play on replay, per a request from one of the team's managers. Dkt. 141-37; Hernandez Dec., ¶ 2. Per MLB's replay procedures at the time of this May 8, 2013 game, Plaintiff and his crew were limited to viewing the replay on small monitors that were not high-definition. Dkt. 141-37; Dkt. 141-38; Hernandez Dec., ¶ 2. Plaintiff was given only two camera angles during his replay review despite his repeated requests that multiple angles be shown. Dkt. 141-37; Hernandez Dec., ¶¶ 2-3. The crew together determined that "neither of the angles" were conclusive, thereby leaving them with no choice but to uphold the original ruling on the field that the it was a live ball as opposed to a home run. Dkt. 141-37; Hernandez Dec., ¶ 3. Indeed, the crew did not know that the ball was actually a home run until they saw a replay of that play on the "very

clear HD feed in the locker room" after the game was completed. Dkt. 141-37; Hernandez Dec., ¶ 5.  As Plaintiff told the media following the game, "I can only tell you what we saw.  We can only go by what we saw.  The policy in place tells us to stay with the ruling on the field if it's inconclusive.  That's what I had; inconclusive."  Dkt. 141-37.  Both the original ruling that the ball was live and the subsequent ruling that, because the replay angles as viewed on the lower resolution monitors were inconclusive, the original ruling must stand, were in accordance with MLB's rules and procedures at the time.  Dkt. 141-37; Hernandez Dec., ¶¶ 2-4.   Plaintiff's issue with the Cleveland "incident" is not MLB's (inaccurate) assertion that Plaintiff made an incorrect call, but instead that MLB refused to support or protect him as it had previously done with non-minority umpires.  *See* Dkt. 141-42, Dkt. 141-43.  Disputed that Plaintiff "has been preoccupied" with that "incident" and that Plaintiff's alleged "preoccupation" affected his performance on the field.  *See*, *e.g.*, Hernandez Dep., Dkt. 168-1, Page 41 of 733, 157:13-16 (Plaintiff raised the issue with MLB only "[m]aybe a couple times"); Plaintiff's Reply Memorandum, pp. 13-14, which are incorporated into this Answer by reference.  Disputed that ¶ 21 of Torre's Declaration accurately characterizes the call that was made by Plaintiff and his crew during that game.  Dkt. 141-37; Hernandez Dec., ¶¶ 1-5.  Disputed to the extent that nothing about the Cleveland "incident" provides any legitimate, non-discriminatory reason for not promoting Plaintiff to crew chief or assigning him to the World Series.  *See generally* Plaintiff's Reply Memorandum, pp. 3-39. Disputed to the extent Torre's assertion that the Cleveland "incident" was grounds for his repeated refusals to promote Plaintiff to crew chief.  Marsh Dep., 128:15-19, attached to Plaintiff's Reply Memorandum as Exhibit 1.  Disputed to the extent that anything involving this "incident" is relevant, material or that it otherwise

supports MLB's Motion for Summary Judgment.

81.     Hernandez was an interim crew chief during that May 8, 2013 game.  (Pl. Tr. 148:6-8.)

**ANSWER:**    Undisputed.

82.     An Oakland A's player hit a long fly ball, which Hernandez ruled a double on the field.  (Pl. Tr. 149:1-2, 149:17-150:3; Pl. Ex. 36, Dkt. 142-37.)

**ANSWER:**    Undisputed that an Oakland A's player hit a long fly ball.  Disputed that Plaintiff "ruled a double on the field."  Plaintiff did not make an on-field ruling as to whether the hit was a double or a home run; Plaintiff simply left the ball in play in accordance with MLB's rules and procedures at the time. *See* Hernandez Dec., ¶ 1. Plaintiff also incorporates herein by reference his answer to ¶ 80 of MLB's SMF, *supra*.

83.     The umpires were asked to review video of the call to determine whether the ball cleared the fence and should be ruled a home run instead of a double.  (Pl. Tr. 148:12-13.)

**ANSWER:**    Undisputed that the umpires were asked to review a video of the play in accordance with MLB's replay procedures at the time.  Disputed to the extent ¶ 83 of MLB's SMF suggests that Plaintiff ruled a double on the field as opposed to simply keeping the ball live in accordance with MLB's rules and procedures at the time.  Hernandez Dec., ¶ 1.  Plaintiff also incorporates into this answer by reference his answers to ¶¶ 80 and 82 of MLB's SMF, *supra*.

84.     Replay review in 2013 was limited to boundary calls for home runs; expanded replay did not come into effect until 2014.  (Woodfork Tr. 98:13-22; McKendry Tr. 55:7-12.)

**ANSWER:**    Undisputed.

85.     The hit was, in fact, a home run, but Hernandez did not change the original incorrect

call after he reviewed instant replay video of the play.  Had Hernandez correctly ruled the hit a home run, the outcome of the game would have been different.  (Pl. Tr. 149:1-2, 150:10-13, 152:9-23; Torre Tr. 83:9-20.)

> **ANSWER:**     Undisputed that the hit was a home run.  Undisputed that if the hit had been determined to be a home run the outcome of the game would be different.  Disputed that the actual or hypothetical outcome of the game is material, relevant or that it otherwise supports MLB's Motion for Summary Judgment.  Disputed that Plaintiff's original decision was incorrect.  Plaintiff's decision to leave the ball in play was consistent with MLB's rules and procedures at the time.  Dkt. 141-37; Hernandez Dec., ¶ 1.  Disputed that Plaintiff was even able to change his purported "incorrect call" to the purported "correct call" because, pursuant to MLB's rules and procedures at the time, Plaintiff's original decision could only be overturned if the replay review offered conclusive evidence that the original decision was incorrect.  Hernandez Dec., ¶¶ 1-4.  The direct evidence in the record establishes that the replay videos, which provided only two angles (despite Plaintiff's multiple requests for different angles) on lower resolution monitors, were inconclusive, thereby leaving Plaintiff with no choice but to uphold his original decision that the ball was live.  Dkt. 141-37; Dkt. 141-38; Hernandez Dec., ¶ 2-4.  Plaintiff also incorporates into this answer his answers to ¶¶ 80, 82, 83 and 84 of MLB's SMF, *supra*.

86.     Hernandez has refused to admit that the call he made was incorrect and instead blamed the quality of the video equipment.  (Torre Decl. ¶ 21; Pl. Tr. 148:17-25, 152:19-20, 153:23-154:13, 157:13-18; Torre Tr. 83:18-84:17.)

> **ANSWER:**     Disputed.  Plaintiff admitted after that May 8, 2013 game that the hit was a home run based on the "very clear HD feed in the locker room" Plaintiff and the other

umpires on his crew viewed after the game.  Dkt. 141-37; Hernandez Dec., ¶ 5.  But for the reasons discussed in Plaintiff's Answers to ¶¶ 80 and 82-85 of MLB's SMF, which are incorporated herein by reference, neither Plaintiff's original decision nor his and his crew's call to uphold that original decision due to inconclusive replay video was "incorrect" because those decisions were made in accordance with MLB's rules and procedures at the time.  Plaintiff's refusal to admit that the call he made during that May 8, 2013 was "incorrect" is thus well-founded because that call was made in accordance with MLB's rules and procedures at the time and could not therefore be deemed to be "incorrect."

87.    MLB repeatedly addressed Hernandez's inability to accept and move on from mistakes and attempted to refocus him over the years.  For example, in Hernandez's 2013 year-end performance evaluation, MLB advised him to "[c]ontinue to work on presenting a positive and professional demeanor on the field.  If an issue does arise, do your best to solve it and move on.  Try not to harp on the same issue as it can take away from the rest of your umpiring."  (Torre Decl. ¶¶ 22-26; Torre Decl. Ex. A at DEF1536; *see also* Abramson Decl. Ex. N; Marsh Tr. 276:14-277:3.)

**ANSWER:**    Undisputed that the excerpt of Plaintiff's 2013 Year-End Evaluation contained in ¶ 87 of MLB's SMF is accurately quoted.  Undisputed that MLB consistently and baselessly harped on Plaintiff's purported "inability to accept and move on from mistakes."  Disputed that Plaintiff actually evidenced an "inability to accept and move on from mistakes and attempted to refocus him over the years."  *See* Plaintiff's Reply Memorandum, pp. 13-14.  Disputed that any such "inability," even if it existed, affected Plaintiff's performance as a Major League umpire.  *Id*. at pp. 12-15.  Disputed that Plaintiff's alleged "inability" affected his performance as an umpire in any way.  *Id*.

Disputed that Plaintiff's alleged "inability" provided any legitimate, non-discriminatory reason for Torre's repeated refusals to promote Plaintiff to crew chief or assign him to the World Series. *See generally id*. at pp. 3-39.

88.     MLB informed Hernandez that his struggle to accept responsibility for past incidents and move forward has hindered his candidacy for a crew chief position by addressing the issue in both Hernandez's 2014 mid-year and year-end evaluations.  (Torre Decl. ¶ 23; Torre Decl. Ex. B at DEF1540, Ex. C at DEF1548.)

**ANSWER:**    Undisputed that Hernandez's 2014 Mid-Year and Year-End Evaluations contained comments from MLB regarding Plaintiff's purported lack of focus.  Disputed that there was any legitimate basis for these comments.   *See* Plaintiff's Reply Memorandum, pp. 13-14; *see also* Plaintiff's Answers to ¶ 87 of MLB's SMF, *supra*, and ¶¶ 89-90 of MLB's SMF, *infra*, which are incorporated herein by reference.  Disputed that any such "struggle," even if it existed, affected Plaintiff's performance as a Major League umpire.  *Id*. at pp. 12-15.

89.     Hernandez's 2014 mid-year evaluation stated that Hernandez's desire for added responsibility "would only come to fruition with your ability to remain focused on the present and things that you can control."  (Torre Decl. ¶ 23; Torre Decl. Ex. B at DEF1540.)

**ANSWER:**    Undisputed that the excerpt from Plaintiff's 2014 Mid-Year Evaluation contained in ¶ 89 of MLB's SMF is accurately quoted.  Disputed that there was any legitimate basis for this comment. *See* Plaintiff's Answers to ¶¶ 87-88 of MLB's SMF, *supra*, and ¶ 90 of MLB's SMF, *infra*, which are incorporated herein by reference.  Disputed to the extent that there is ample evidence in the record that Plaintiff did, in fact, "remain focused on the present and things that [he] can control."  Plaintiff's Reply

Memorandum, pp. 13-14.

90.     At year-end in 2014, MLB communicated to Hernandez concerning his interest in a crew chief position that "[y]ou need to continue to take steps forward in your communication and your accountability before this can happen.  As you discussed with Mr. Torre as well as written in your past evaluations, you need to be accountable to yourself and let things from the past go. You continue to harp on matters that happened many years ago; this behavior is not healthy and not what we expect from a crew chief or any umpire.  You need to learn from the past and then move forward."  (Torre Decl. ¶ 23; Torre Decl. Ex. C at DEF1548.)

>   **ANSWER:**    Undisputed that the excerpt from Plaintiff's 2014 Year-End Evaluation contained in ¶ 89 of MLB's SMF is accurately quoted.  Disputed that there was any legitimate basis for this comment. *See* Plaintiff's Answers to ¶¶ 87-89 of MLB's SMF, *supra*, which are incorporated herein by reference.  Disputed to the extent that there is ample evidence in the record that Plaintiff did, in fact, "remain focused on the present and things that [he] can control."  Plaintiff's Reply Memorandum, pp. 13-14.

91.     Based on Torre's concerns about Hernandez's struggle to move on from past incidents, in January 2015, Torre met with Hernandez during the annual umpire meeting and urged Hernandez to ███████████████████████████████████████████████ ████████████████████  (Torre Decl. ¶ 24; Abramson Decl. Ex. M; Marsh Tr. 253:8-18; *see also* ████████████████████████

>   **ANSWER:**    Undisputed that Torre and Marsh met with Plaintiff at the annual umpire meeting and ████████████████████████████████████████ ███.  Disputed that the January 2015 meeting and anything said therein is material or relevant or that it otherwise supports MLB's Motion for Summary Judgment.

92.     Hernandez dismissed Torre's recommendation.  (Torre Decl. ¶ 24; Abramson Decl. Ex. M; Marsh Tr. 253:8-18.)

>    **ANSWER:**    Disputed that Plaintiff "dismissed" Torre's recommendation. ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████

93.     During this January 2015 meeting, Hernandez continued to bring up the Cleveland incident and told Torre that he should have publicly clarified that Hernandez did not miss the call. In Torre's judgment, however, Hernandez did miss the call.  Torre told Hernandez that regardless he needed to put past incidents behind him and move forward to be considered for a future crew chief role.  (Torre Decl. ¶ 24; Abramson Decl. Ex. M; Marsh Tr. 253:8-18.)

>    **ANSWER:**    Undisputed that Plaintiff brought up the Cleveland "incident" in that January 2015 meeting and told Torre that Plaintiff did not think Torre ever came out and clarified that Plaintiff did not miss the play.  Disputed that Torre's judgment regarding that play is accurate or supported by the evidence.  *See*, *e.g.*, Plaintiff's Answers to ¶¶ 80, 82-86 of MLB's SMF, *infra*.

94.     Hernandez's 2016 year-end evaluation again addressed his tendency to lose focus after making a mistake.  Specifically, MLB advised him to "[r]emain focused throughout the end of each play.  You seem to miss calls in bunches, like your four missed calls in the second half all coming within a two-week period in September.  It is vital that you can overcome any issues on the field and move to the next play.  Try not to dwell too much on past performance." (Torre Decl. ¶ 25; Torre Decl. Ex. D at DEF1564.)

>    **ANSWER:**    Undisputed that the excerpt of Plaintiff's 2016 Year-End Evaluation is

accurately quoted. Disputed that the alleged "four missed calls in the second half" were due to a lack of focus based on Plaintiff's alleged "tendency to lose focus after making a mistake," as there is no evidence in the record (and MLB cites to none) that would support that assertion. Disputed that Plaintiff has a "tendency to lose focus after making a mistake." Plaintiff's Reply Memorandum, pp. 13-14.

95.     In 2017, Torre explained to Hernandez in the letter informing him of the reasons that he was not selected as crew chief that "[i]n order to enhance your candidacy for a crew chief position, we would like to see you…continue to improve your situation management, and display an ability to refocus and move forward after missed calls or receiving constructive feedback from the Office." (Torre Decl. ¶ 26; Torre Decl. Ex. E.)

**ANSWER:**     Undisputed that the excerpt of Torre's March 27, 2017 letter to Plaintiff is accurately quoted. The portion of Torre's March 27, 2017 letter to Plaintiff to which MLB cites in support of ¶ 95 of its SMF also included the following comment: "The Office of the Commissioner's decision not to select [Plaintiff] as a Crew Chief in 2017 has more to do with the performance of the three umpires selected than it does with any specific performance issues or required abilities that [Plaintiff] lack[s] as a Major League umpire. [Plaintiff] share[s] many of the same qualities and abilities with the selected umpires that the Office of the Commissioner relied on in its selection process, including our passion and dedication." Disputed that Torre's proffered reasons for not promoting Plaintiff to crew chief for the 2017 season have any evidentiary support, are actually legitimate and non-discriminatory, or that they otherwise support MLB's Motion for Summary Judgment. *See* Plaintiff's Reply Memorandum, pp. 3-39.

96.     In Torre's assessment, Hernandez's inability to put the Cleveland incident behind

52

him and his continued insistence that others were at fault for his wrong decision is emblematic of what has made him unsuitable for World Series assignments and a permanent crew chief role. Torre's concern was not the bad call itself, but Hernandez's refusal for years to accept responsibility for, and move on from, this incident, which is the exact opposite of the type of leadership, personal accountability, and focus he sought of umpires to work the World Series and of permanent crew chiefs.  (Torre Decl. ¶ 22; Torre Tr. 104:3-8; Woodfork Decl. ¶ 7; Woodfork Tr. 112:24-113:11.)

> **ANSWER:**    Disputed.  Disputed that Plaintiff has displayed an "inability to put the Cleveland incident behind him" or that he has displayed a "continued insistence that others were at fault for his wrong decision."  *See* Plaintiff's Answers to ¶¶ 80, 82-86 of MLB's SMF, *supra*.  Disputed that Plaintiff is "unsuitable for World Series assignments and a permanent crew chief role."  Plaintiff's Reply Memorandum, pp. 3-39.  Disputed that Plaintiff's call in the May 8, 2013 Cleveland game was "bad."  *See* Plaintiff's Answers to ¶¶ 80, 82-86 of MLB's SMF, *supra*.  Disputed that Plaintiff has demonstrated a "refusal for years to accept responsibility for, and move on from," that incident.  *Id*.; Plaintiff's Reply Memorandum, pp. 3-39.  Disputed that there is any evidence that actually supports the contentions found in ¶ 96 of MLB's SMF.  Disputed that MLB's reliance solely on "Torre's assessment" or judgment of subjective criteria such as "leadership" is consistent with business necessity and did not result in a disparate impact.  Plaintiff's Reply Memorandum, pp. 39-50.

97.    Torre identified Jerry Meals as an example of an umpire who, in contrast to Hernandez, demonstrated the ability to admit a mistake after Meals's missed call during a game in 2011 when there was no instant replay at all to review close calls.  (Torre Tr. 103:21-104:19; *see*

*also* McKendry Tr. 135:18-21.)

> **ANSWER:**   Undisputed that Torre treated Meals differently after Meals' missed call than Torre treated Plaintiff after the May 8, 2013 Cleveland game.  Disputed that there was any legitimate, non-discriminatory reason for doing so, as Plaintiff also admitted that the ball was a home run after he reviewed the play on the HD televisions after the May 8, 2013 Cleveland game.  *See* Dkt. 141-37; Plaintiff's Answers to ¶¶ 80, 82-86 of MLB's SMF, *supra*.

98.     In Torre's view, Hernandez's continued inability to recover from a mistake was evidenced most dramatically during the 2018 American League Division Series.  (Torre Decl. ¶¶ 27-28.)

> **ANSWER:**   Disputed.  Disputed that Plaintiff has a "continued inability to recover from a mistake."  *See*, *e.g.*, Plaintiff's Answer to ¶ 94 of MLB's SMF, *supra*.  Disputed that anything that happened during the 2018 American League Division Series is material or relevant or that it otherwise supports MLB's Motion.  What happened in 2018 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017, because the 2018 American League Division Series had not yet even occurred.  *See* Dkt. 1; *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1129 (9th Cir. 2000).

99.     Torre selected Hernandez for the Division Series in 2018 with the intention to provide him with an opportunity to umpire in the 2018 World Series.  (Torre Decl. ¶ 27.)

> **ANSWER:**   Undisputed.  Plaintiff also incorporates by reference herein his Answer to ¶ 98 of MLB's SMF.

100.    Based on Hernandez's performance in that series, Torre concluded that Hernandez did not capitalize on that opportunity and did not rise to the occasion.  (Torre Decl. ¶ 28.)

**ANSWER:**    Undisputed that Torre states in his declaration that he reached this conclusion.  Disputed that there was any legitimate, non-discriminatory basis for doing so.  *See* Plaintiff's Answers to ¶ 98 of MLB's SMF, *supra*.  Disputed that anything that happened during the 2018 American League Division Series is material or relevant or that it otherwise supports MLB's Motion.  What happened in 2018 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017, because the 2018 American League Division Series had not yet even occurred.  *See* Dkt. 1; *Chuang*, 225 F.3d at 1129.

101.    In Game 3 of the Division Series between the New York Yankees and Boston Red Sox – a high-profile series in that round because of the media markets involved and nature of the historic rivalry between those teams – three of Hernandez's calls were overturned via instant replay in the first four innings alone.  (Torre Decl. ¶ 28; Pl. Tr. 236:20-25.)

**ANSWER:**    Undisputed that Game 3 of the 2018 Division Series was between the New York Yankees and the Boston Red Sox.  Disputed as to MLB's characterization of that series, which is irrelevant.  Undisputed that Plaintiff had three calls overturned via instant replay.  Disputed that Plaintiff's performance in a 2018 game is material or relevant or that it otherwise supports MLB's Motion.  What happened in 2018 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017, because the 2018 American League Division Series had not yet even occurred.  *See* Dkt.

1; *Chuang*, 225 F.3d at 1129.  Plaintiff also incorporates by reference his Answers to ¶¶ 98-100 of MLB's SMF, *supra*.

102.     This was the first time since the advent of expanded instant replay in 2014 that an umpire had three calls overturned in a postseason game.  (Torre Decl. ¶ 28; Pl. Tr. 237:1-5.)

**ANSWER:**     Undisputed that no other umpire had three calls overturned in a postseason game since 2014.  Disputed that Plaintiff's performance in a 2018 game is material or relevant or that it otherwise supports MLB's Motion.  What happened in 2018 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017, because the 2018 American League Division Series had not yet even occurred.  *See* Dkt. 1; *Chuang*, 225 F.3d at 1129.  Plaintiff also incorporates by reference his Answers to ¶¶ 98-101 of MLB's SMF, *supra*.

103.     Torre considered an umpire's performance in the Division Series in deciding which umpires to assign to the World Series.  (Torre Decl. ¶ 27; McKendry Tr. 295:21-296:3.)

**ANSWER:**     Disputed.   Torre's Declaration contradicts his deposition testimony, wherein he testified only that he considered an umpire's "combination experience and performance for the year" in making World Series assignment decisions.  Torre Dep., Dkt. 168-1, Page 143 of 733, 31:7-11.  Torre confirmed in his deposition that "experience include[d] seniority."  *Id*. at 31:12-13.  To the extent Torre now contends that an umpire's performance in the Division Series is included in an umpire's "performance for the year," Torre was also required to consider the umpire's performance in every other game that season.  To the extent Torre's Declaration and ¶ 103 of MLB's SMF contradict Torre's prior deposition testimony, any arguments premised on them should be rejected.  *See Vos*,

2009 WL 10640615 at *7.

104.     Based on his performance in Game 3 of the American League Division Series, Torre was not confident in Hernandez's ability to perform effectively on an even more intense stage, and for this reason did not consider him for the World Series that season.  (Torre Decl. ¶ 28.)

> **ANSWER:**     Undisputed that Torre so states in his Declaration.  Disputed that Plaintiff's performance in a 2018 game is material or relevant or that it otherwise supports MLB's Motion.  What happened in 2018 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017, because the 2018 American League Division Series had not yet even occurred.  *See* Dkt. 1; *Chuang*, 225 F.3d at 1129. Plaintiff also incorporates by reference his Answers to ¶¶ 98-102 of MLB's SMF, *supra*.

### B.     Hernandez Has Been Unable to Successfully Handle Difficult On-field Situations on a Consistent Basis.

105.     According to Torre, defusing on-field situations involving players and managers while displaying a calm and professional demeanor is even more critical during the World Series than it is in the regular season.  It is also an essential skill for a permanent crew chief.  In Torre's judgment, Hernandez has not demonstrated these skills on a consistent basis.  (Torre Decl. ¶ 29; Torre Tr. 82:10-83:2, 139:18-140:7; Woodfork Tr. 29:19-25, 94:21-95:5; *see also* McKendry Tr. 227:18-228:3.)

> **ANSWER:**     Disputed to the extent ¶ 105 of MLB's SMF and ¶ 29 of Torre's Declaration contradict and/or are inconsistent with the evidence in the record.   Torre testified only that he considered an umpire's "combination experience and performance for the year" in making World Series assignment decisions.  Torre Dep., Dkt. 168-1, Page 143 of 733, 31:7-

11.  Torre confirmed in his deposition that "experience include[d] seniority." *Id*. at 31:12-13.  Moreover, MLB listed in its Answer to Plaintiff's Interrogatory No. 4 the actual criteria it was supposed to rely on in making crew chief promotion decisions.  *See* Dkt. 142-15, MLB's Answer to Plaintiff's Interrogatory No. 4.  Any assertion that Torre considers anything other than the factors identified in his deposition contradicts MLB's current assertions and Torre's own Declaration and should therefore be rejected.  *See Vos*, 2009 WL 10640615 at *7.  Disputed to the extent ¶ 105 is not supported by the evidence to which MLB cites in support.  Disputed to the extent that Torre's judgment contradicts the evidence in the record, which demonstrates that Plaintiff did, in fact, consistently demonstrate "situation management" skills on a consistent basis.  Plaintiff's Reply Memorandum, pp. 15-16.

106.  In 2013, Hernandez ejected a Club field manager after an incident in which Hernandez changed his own call. (Torre Decl. ¶ 29; Torre Decl. Ex. A at DEF1532.)

**ANSWER:**  Undisputed that Plaintiff's 2013 Year-End Evaluation states that Plaintiff changed his own call, which led to an argument from a manager.  Undisputed that the manager's argument led to his ejection.  Disputed that this single ejection demonstrates what MLB contends is Plaintiff's purported failure to demonstrate "situation management" skills.  *See* Plaintiff's Reply Memorandum, pp. 15-16.  Disputed that this single ejection provides the basis for any legitimate, non-discriminatory reason for not promoting Plaintiff to crew chief or assigning him to the World Series.  *See generally* Plaintiff's Reply Memorandum, pp. 3-39.

107.  MLB wrote in Hernandez's 2013 year-end evaluation that Hernandez's own actions created this on-field situation and escalated the situation to an ejection that could have been

avoided and handled better.  (Torre Decl. ¶ 29; Torre Decl. Ex. A at DEF1532.)

> **ANSWER:**   Undisputed to the extent that MLB noted in Plaintiff's 2013 Year-End
> Evaluation that his "decision to change [his] own call created a difficult situation and an
> ejection that was going to be difficult to avoid."  Dkt. 177-1, Page 5 of 87.  Disputed to the
> extent that ¶ 107 of MLB's SMF contradicts and/or is inconsistent with Plaintiff's 2013
> Year-End Evaluation.  Disputed that this single ejection demonstrates what MLB contends
> is Plaintiff's purported failure to demonstrate "situation management" skills.  *See*
> Plaintiff's Reply Memorandum, pp. 15-16.  Disputed that this single ejection provides the
> basis for any legitimate, non-discriminatory reason for not promoting Plaintiff to crew chief
> or assigning him to the World Series.  *See generally* Plaintiff's Reply Memorandum, pp.
> 3-39.  Plaintiff also incorporates by reference his Answer to ¶ 106 of MLB's SMF, *supra*.

108.    In 2014, MLB concluded that Hernandez's communications skills resulted in
another on-field disturbance, resulting in an unnecessary delay of game.  Hernandez's 2014 year-
end evaluation stated that MLB cannot have situations like the one that occurred in June of that
season when, MLB determined, he failed to communicate with the chief of his crew regarding a
potential rain delay and instead he called for the tarp to cover the field, which resulted in confusion
on the field and a delay of the game.  (Torre Decl. ¶ 23; Torre Decl. Ex. C at DEF1544; McKendry
Decl. Ex. B at DEF 2557-58; *see also* McKendry Tr. 209:8-210:9.)

> **ANSWER:**   Disputed.   MLB's characterization of this "on-field disturbance" is
> inaccurate.  As Plaintiff testified in his deposition, he did not "fail to communicate with
> the crew chief" nor did he call "for the tarp to cover the field."  Rather, the crew chief for
> that game pulled the players from the field, and Plaintiff "echoed" the crew chief's motions
> in waving the teams off the field.  Hernandez Dep., 192:16-193:22, attached hereto as

Exhibit 3.  Plaintiff testified that MLB's characterization of that "incident" in Plaintiff's 2014 Year-End Evaluation was neither "accurate" nor "correct." *Id*.  Disputed that this single event, even if it had happened as MLB described in Plaintiff's 2014 Year-End Evaluation, demonstrates what MLB contends is Plaintiff's purported failure to demonstrate "situation management" skills.  *See* Plaintiff's Reply Memorandum, pp. 15-16.  Disputed that this single "incident" provides the basis for any legitimate, non-discriminatory reason for not promoting Plaintiff to crew chief or assigning him to the World Series.  *See generally* Plaintiff's Reply Memorandum, pp. 3-39.

109.    In Torre's experience, an umpire's ability to handle difficult situations is also evidenced by his body language. (Torre Tr. 86:8-16.)

**ANSWER:**    Undisputed that Torre testified that, generally speaking, "body language sometimes speaks volumes on handling situations" regarding how the media or fans perceive an umpire.  Disputed to the extent ¶ 109 of MLB's SMF is inconsistent with that testimony, which is the only evidentiary support cited to by MLB in support of ¶ 109.  Disputed to the extent that anything involving Plaintiff's "body language" has any relation to Plaintiff's "situation management" skills.  Disputed to the extent that ¶ 109 of MLB's SMF suggests that anything involving Plaintiff's "body language" is a legitimate, non-discriminatory reason for not promoting Plaintiff to crew chief or assigning him to the World Series.  *See generally* Plaintiff's Reply Memorandum, pp. 3-39.  Disputed to the extent that ¶ 109 suggests that none of the non-minority umpires promoted to crew chief over Plaintiff ever had any body language issues.  *See, e.g.*, Dkt. 142-60, Page 33 of 47; Dkt. 142-85, Page 23 of 46.

110.    In 2014, Torre observed that Hernandez reacted negatively to an instant replay

review overturning a call he made, and threw his headset on the field after he had been reversed. (Torre Decl. ¶ 30; *see also* Torre Tr. 85:17-22.)

> **ANSWER:**    Undisputed that Torre asserts in ¶ 30 of his Declaration that Plaintiff did so. Disputed that the excerpt of Torre's deposition to which MLB cites in support of ¶ 110 of its SMF actually supports ¶ 110.  Disputed to the extent that ¶ 110 of MLB's SMF suggests that anything involving Plaintiff's "body language" is a legitimate, non-discriminatory reason for not promoting Plaintiff to crew chief or assigning him to the World Series.  *See generally* Plaintiff's Reply Memorandum, pp. 3-39.  Disputed to the extent that Torre's characterization of that "incident" is inaccurate, as Plaintiff did not "throw his headset on the field."  Hernandez Dec., ¶ 18.  Plaintiff also incorporates by reference his answer to ¶ 109 of MLB's SMF, *supra*.

111.    This incident was particularly troubling to Torre because 2014 was the first year of expanded replay review and MLB needed all umpires to demonstrate that they embraced this change.  (Torre Decl. ¶ 30.)

> **ANSWER:**    Undisputed that ¶ 30 of Torre's Declaration so states.  Disputed that there is any evidence in the record to support ¶ 30 of Torre's Declaration.  Disputed to the extent that ¶ 111 of MLB's SMF suggests that anything involving Plaintiff's "body language" is a legitimate, non-discriminatory reason for not promoting Plaintiff to crew chief or assigning him to the World Series.  *See generally* Plaintiff's Reply Memorandum, pp. 3-39.  Plaintiff also incorporates by reference his answer to ¶¶ 109-110 of MLB's SMF, *supra*.

112.    MLB advised Hernandez in his 2014 year-end review that "[t]hese negative moments of bad body language had a very harmful effect on all of your very positive work."  (Torre

Decl. ¶ 30; Torre Decl. Ex. C at DEF1540.)

> **ANSWER:**   Undisputed that ¶ 30 of Torre's Declaration so states.   Disputed that the quoted purported excerpt of Plaintiff's 2014 Year-End Evaluation to which MLB cites contains the language attributed to it in ¶ 112 of MLB's SMF.   Disputed that there were "negative moments of bad body language" on the part of Plaintiff in 2014.   Even assuming that MLB's characterization of the 2014 "incident" regarding replay is accurate, it constitutes only one "moment" and not multiple "moments," and there is no other evidence in the record that there was any other supposedly "negative moment" regarding body language. Disputed to the extent that ¶ 112 of MLB's SMF suggests that anything involving Plaintiff's "body language" is a legitimate, non-discriminatory reason for not promoting Plaintiff to crew chief or assigning him to the World Series.   *See generally* Plaintiff's Reply Memorandum, pp. 3-39.   Plaintiff also incorporates by reference his answer to ¶¶ 109-111 of MLB's SMF, *supra*.

113.    In 2015, Hernandez ejected two different Club field managers following on-field arguments, without issuing a warning to either manager.   (Torre Decl. ¶ 31; Torre Decl. Ex. F at 1554.)

> **ANSWER:**   Undisputed that Plaintiff's 2015 Year-End Evaluation discusses two ejections involving check swings when neither ejection was preceded by a warning. Disputed to the extent that ¶ 113 suggests that none of the non-minority umpires promoted to crew chief over Plaintiff ever had ejections that were given without warnings being issued.  *See*, *e.g.*, Dkt. 142-59, Page 6 of 21; Dkt. 142-71, Page 12 of 47; Dkt. 142-85, Page 14 of 46; Dkt. 142-85, Pages 38, 40 of 46; Dkt. 142-85, Pages 43-44 of 46.   Disputed to the extent that MLB suggests in ¶ 113 of its SMF that giving warnings before ejections is

required.  West Dec., ¶ 42.  Disputed to the extent that ¶ 113 of MLB's SMF suggests that these two ejections constitute legitimate, non-discriminatory reasons for not promoting Plaintiff to crew chief or assigning him to the World Series.  *See generally* Plaintiff's Reply Memorandum, pp. 3-39.

114.    In his year-end evaluation, MLB encouraged Hernandez to think about ways to defuse, rather than accelerate, on-field situations such as these, including by "[i]ssuing a simple warning . . . [w]hich might be enough to keep them in the game" before moving to ejections. (Torre Decl. ¶ 31; Torre Decl. Ex. F at 1554.)

> **ANSWER:**    Undisputed that the excerpt of Plaintiff's 2015 Year-End Evaluation contained in ¶ 114 of MLB's SMF is accurately quoted.  Disputed to the extent that ¶ 114 suggests that none of the non-minority umpires promoted to crew chief over Plaintiff ever had ejections that were given without warnings being issued.  *See*, *e.g.*, Dkt. 142-59, Page 6 of 21; Dkt. 142-71, Page 12 of 47; Dkt. 142-85, Page 14 of 46; Dkt. 142-85, Pages 38, 40 of 46; Dkt. 142-85, Pages 43-44 of 46.  Disputed to the extent that ¶ 114 of MLB's SMF suggests that these two ejections constitute legitimate, non-discriminatory reasons for not promoting Plaintiff to crew chief or assigning him to the World Series.  *See generally* Plaintiff's Reply Memorandum, pp. 3-39.

115.    Although Torre recognized that Hernandez made efforts to improve his on-field demeanor, he found that he would slip back into an overly confrontational style that, in Torre's view, was counter-productive.  (Torre Decl. ¶ 32.)

> **ANSWER:**    Undisputed that Torre recognized that Plaintiff made efforts to improve his on-field demeanor.  Disputed that Plaintiff would "slip back into an overly confrontational style."  Disputed that Plaintiff ever previously had a style that MLB deemed to be "overly

confrontational." Indeed, before Torre's arrival in MLB's front office in 2011, MLB did

not take issue with Plaintiff's "situation management" skills and his handling of ejections.

*See*, *e.g.*, Dkt. 141-21, Page 5 of 33 (Exceeds rating for "prevent[ing] a possible ejection

by explaining the play"); *id*. at Page 8 of 33 ("Ejection of Paul LoDuca for slamming ball

to ground in disgust of call at the plate. The self-control evidenced by Umpire Hernandez

in light of the emotion of the situation was most appropriate and professional"); Dkt. 141-

22, Page 24 of 48 ("Exceeds Standard" rating for giving warnings and preventing potential

ejections); *id*. at Page 34 of 48 ("Exceeds Standard" rating for ejection "authoritively

handled with solid professional demeanor and control" by Plaintiff after player directed

abusive language to him and player had to be restrained). Disputed to the extent that

Torre's "view" of Plaintiff's "situation management" is contradicted by and/or inconsistent

with the evidence in the record. Dkt. 141-21, Pages 5, 8 of 33; Dkt. 141-22, Pages 24, 34

of 48; Plaintiff's Reply Memorandum, pp. 15-16.

116.    In July 2017, for example, Torre observed video of Toronto Blue Jays pitcher J.A.

Happ walking off the mound after thinking he had thrown a third strike to a batter to end the inning,

which Hernandez called a ball. (Torre Decl. ¶ 32; Abramson Decl. Ex. O at DEF1572.)

**ANSWER:**    Undisputed that Torre's Declaration so states. Disputed that this incident,

is relevant or material or that it otherwise supports MLB's Motion because (i) it happened

after Plaintiff filed his Complaint on July 3, 2017, and (ii) because it happened during the

2017 season, well after MLB had made decisions regarding who to promote to crew chief

for the 2017 season. *See* Dkt. 1; *Chuang*, 225 F.3d at 1129. Disputed that this is evidence

of a "confrontational" attitude on the part of Plaintiff, or that it otherwise demonstrates a

lack of "situation management" skills. Plaintiff's Reply Memorandum, pp. 15-16.

Disputed to the extent that ¶ 116 of MLB's SMF suggests that anything involving this July 2017 incident with Happ constitutes legitimate, non-discriminatory reasons for not promoting Plaintiff to crew chief or assigning him to the World Series.  *See generally* Plaintiff's Reply Memorandum, pp. 3-39.

117.    Torre observed that as Happ was walking off the mound, Hernandez took his mask off, put his hands on his hips, walked out from behind the plate, and confronted Happ about his movement off the mound.  (Torre Decl. ¶ 32; Abramson Decl. Ex. O at DEF1572; Pl. Tr. 215:16-22.)

**ANSWER:**    Undisputed that Torre's Declaration asserts that he so observed.  Disputed that Torre's characterization of this incident, as found in Torre's Declaration, is accurate. *See* Hernandez Dep., 215:8-217:19, attached hereto as Exhibit 3.  Disputed that Plaintiff taking his mask off is confrontational or otherwise a sign of "poor body language."  *Id*. Plaintiff testified that he always takes his mask off in those incidents so the players can hear him better and understand what he is saying.  *Id*.  Plaintiff testified that the substance of his conversation with Happ consisted of giving Happ a chance to stay in the game and to get back on the mound, which Happ "abided by."  *Id*.  Plaintiff testified that he was commended on the way he handled the situation by his crew chief.  *Id*.  Plaintiff also incorporates herein by reference his Answer to ¶ 116 of MLB's SMF, *supra*.

118.    Torre had concerns about this incident, and believed it important to speak with Hernandez about his conduct and to get his account of the situation.  (Torre Decl. ¶ 32.)

**ANSWER:**    Undisputed that Torre's Declaration states that Torre had such concerns. Disputed that Torre's concerns were well-founded or had any legitimate basis in fact. Indeed, Plaintiff testified that he was commended on the way he handled the situation by

his crew chief.  Hernandez Dep., 215:8-217:9.  Plaintiff also incorporates herein by reference his Answer to ¶¶ 116-117 of MLB's SMF, *supra*.

119.    During Torre's and Hernandez's conversation, Torre told Hernandez that Hernandez was confrontational with the pitcher.  (Torre Decl. ¶ 32.)

**ANSWER:**    Undisputed that Torre told Plaintiff that Torre believed Plaintiff was confrontational with the pitcher.  Disputed that Torre's belief was well-founded or had any legitimate basis in fact.  Indeed, Plaintiff testified that he was commended on the way he handled the situation by his crew chief.  Hernandez Dep., 215:8-217:9.  Plaintiff also incorporates herein by reference his Answer to ¶¶ 116-118 of MLB's SMF, *supra*.

120.    Torre asked Hernandez whether Hernandez said "What do you want?" to Happ, and Hernandez told Torre that he did.  (Torre Decl. ¶ 32.)

**ANSWER:**    Undisputed that Plaintiff confirmed that he said to Happ "what do you want?"  Plaintiff also incorporates herein by reference his Answer to ¶¶ 116-119 of MLB's SMF, *supra*.

121.    Hernandez acknowledged to Torre that his body language could have been better and that he had been trying to improve his on-field demeanor.  Aware of Hernandez's repeated inability to accept constructive criticism, Torre commended him on his efforts to improve and encouraged Hernandez to continue to work hard on that.  (Torre Decl. ¶ 32.)

**ANSWER:**    Disputed that ¶ 32 of Torre's Declaration supports the assertion in the first sentence of ¶ 121 of MLB's SMF that Plaintiff acknowledged to Torre that Plaintiff's body language could have been better.  Nowhere in ¶ 32 of Torre's Declaration does it mention any such acknowledgement on the part of Plaintiff.  Undisputed that ¶ 32 of Torre's Declaration states that Plaintiff acknowledged to Torre that Plaintiff had been trying to

improve his on-field demeanor—improvements that were noted in his performance evaluations over the previous years. *See* Plaintiff's Reply Memorandum, pp. 15-16. Undisputed that Torre's commendation of Plaintiff's efforts to improve were apparently based on Torre's purported "awareness" of Plaintiff's alleged "inability to accept constructive criticism." Disputed that Torre's "awareness" of that alleged "inability" was well-founded or had any legitimate basis in fact. Indeed, Plaintiff's performance evaluations note on several occasions Plaintiff's receptiveness to constructive criticism and suggestions from his superiors. Dkt 141-25, Page 11-12 of 18 (noting that, in response to a suggestion that Plaintiff "make an effort to get set earlier for your force plays at first base," Plaintiff "made positive adjustments"); Dkt. 141-26, Page 24 of 45 (Plaintiff "did take the advice of the supervisors and made a slight adjustment that appeared to put [him] back on track"); *id*. at Page 41 of 45 ("While working in replay, your interaction with Replay Operations Center staff was always on a positive, respectful level. You readily accepted constructive feedback and criticism if warranted. Additionally, you reminded other umpires to conduct themselves professionally when necessary"). Plaintiff also incorporates herein by reference his Answer to ¶¶ 116-119 of MLB's SMF, *supra*.

**C.   Hernandez Has Struggled as An Interim Crew Chief in Multiple Seasons.**

122.   When a permanent crew chief is not able to work because of vacation, injury, illness or some other reason, MLB selects umpires to serve as "interim" or "acting" crew chiefs. (McKendry Tr. 203:16-20.)

**ANSWER:**   Undisputed.

123.   MLB provides umpires with opportunities to serve as an interim crew chief in part to evaluate the quality of the umpire's performance in the crew chief role. (McKendry Tr. 204:20-

205:2; Woodfork Tr. 61:24-62:9, 70:8-22.)

**ANSWER:**   Undisputed.

124.   In Torre's view, the quality of an umpire's performance while serving as an interim crew chief is an important indicator of an umpire's ability to perform in a more critical, visible role and in a leadership capacity, and more important than the number of games in an interim crew chief assignment.   (Torre Decl. ¶ 33; Torre Tr. 142:12-21; Woodfork Tr. 61:24-62:9; *see also* McKendry Tr. 215:9-14, 221:5-8.)

**ANSWER:**   Undisputed that Torre asserts this to be his "view."

125.   Based on his performance as an interim crew chief, Torre concluded that Hernandez has not demonstrated that he was ready for promotion to a permanent leadership position or to umpire in a more critical and visible role.   (Torre Decl. ¶¶ 36-42.)

**ANSWER:**   Disputed that Torre's "conclusion" as to Plaintiff's performance as an interim crew chief is accurate or has any legitimate basis in fact.   Plaintiff was consistently praised for his performance in his role as interim crew chief for the 2012 season.   *See*, *e.g.*, Dkt. 141-28, Page 41 of 139 ("Angel is doing a good job filling in for Rapuano as crew chief.   He keeps the crew light in the clubhouse and they do things together outside of the game.   He is always enthusiastic and good to be around"); *id*. at Page 63 of 139 ("Angel has done a great job, since he took over as crew chief for Rapuano.   He is constantly discussing umpiring in the locker room and seems to be taking on the job with conviction & pride.   Works very well with the young umpires"); *id*. at Page 79 of 139 ("Angel is doing a very good job as crew chief.   He goes out of his way to interact with the crew on and off the field"); *id*. at Page 90 of 139 ("Angel continues to excel in his role as crew chief"); *id*. at Page 126 of 139 ("Since Angel has taken over crew chief responsibilities, he has done

an excellent job.  It's like watching a different umpire, with the way he handles himself on the field in such a professional manner.  He has a great passion for the game and loves to discuss the job of umpiring with his crewmates.  He takes great pride in his work and is an excellent role model for the young umpires"); *id*. at Page 128 of 139 ("It was a pleasure to watch Angel work throughout these five games both in Oakland and San Francisco.  He continues to do a great job as crew chief.  Very passionate about the job and loves to talk about the game with his crew.  I really enjoyed watching Angel work and the job that he did this year").  MLB also commented in Plaintiff's 2012 Year-End Evaluation that "for the greater part of the [2012] season, [Plaintiff] did a commendable job of operating within the guidelines laid out in the policies distributed to umpires," and that the individual "incident" discussed in ¶ 126 of MLB's SMF was "isolated."  *See* Dkt. 141-26, Page 11 of 45.  MLB further noted in Plaintiff's 2012 Year-End Evaluation that Plaintiff "filled in for most of the year as a crew chief and should be proud of a lot of [his] work.  [Plaintiff] made great strides in [his] demeanor and situation handling on the field."  *Id*.  MLB also told Plaintiff in that evaluation that, despite the "incident" discussed in ¶ 126 of MLB's SMF, Plaintiff had put himself "in a better position to take a leadership role whenever that time may come."  *Id*.  Furthermore, Plaintiff was a "finalist" for the 2013 crew chief position despite that "incident."  *See* Dkt. 142-112.  Despite this praise, which came both from Plaintiff's umpire supervisors and observers as well as MLB itself in Plaintiff's 2012 Year-End Evaluation, Torre improperly chose not to give Plaintiff prolonged interim crew chief assignments prior to the filing of Plaintiff's Complaint in July of 2017.  *See* Plaintiff's Answer to ¶ 131 of MLB's SMF, *infra*.

126.    For instance, in September 2012, while acting as interim crew chief, Hernandez

asked Cincinnati Reds Pitcher Homer Bailey to autograph eleven baseballs for himself and other members of the crew following a game in which Bailey pitched a no-hitter. (Torre Decl. ¶ 36; Torre Decl. Ex. G; Pl. Tr. 173:5-174:16, 176:24-177:6-8.)

> **ANSWER:**   Undisputed that Plaintiff asked Cincinnati Reds Pitcher Homer Bailey to autograph baseballs as a "memento" for a crewmate who called a no-hitter thrown by that same pitcher. *See* Hernandez Dep., Pages 44-45 of 733, 173:21-174:16. Disputed that this "incident," which MLB itself admitted in Plaintiff's 2012 Year-End Evaluation was "isolated," constitutes a legitimate, non-discriminatory reason for failing to promote Plaintiff to crew chief or assign him to the World Series. *See* Dkt. 141-26, Page 11 of 45; Dkt. 142-112. This is especially so because non-minority umpires, many of whom were already crew chiefs, engaged in this conduct yet were not removed from that position. Hernandez Dep., Dkt. 168-1, Pages 44-45 of 733, 173:21-174:16; *see also* Declaration of Richie Garcia, attached to Plaintiff's Reply Memorandum as Exhibit 1, ¶¶ 5, 7. Marsh himself engaged in this conduct yet was not removed as crew chief and was, in fact, later given a position as an umpire executive in MLB's front office. Marsh Dep., Dkt. 141-3, 86:6-89:18. Plaintiff also incorporates by reference herein his Answer to ¶ 125 of MLB's SMF.

127.   Hernandez's conduct violated provisions of the Basic Agreement and Umpire Manual, which state, among other things, that umpires cannot directly or indirectly ask players for autographs, must be cautious about casual fraternization with Club employees for the purposes of avoiding appearances of impropriety, and must avoid the appearance of a conflict of interest and/or undue influence. (Torre Decl. ¶ 36; Torre Decl. Ex. G; Pl. Tr. 176:24-177:5; Pl. Ex. 13, Dkt. 142-14 at DEF1227-28, 31; McKendry Decl. Ex. B. at DEF 2557.)

**ANSWER:**   Undisputed that MLB determined that Plaintiff's "conduct" in regards to the "incident" discussed in ¶ 126 of MLB's SMF violated provisions of the CBA and the Umpire Manual.  Plaintiff also incorporates by reference herein his Answers to ¶¶ 125-126 of MLB's SMF.

128.   Torre concluded that Hernandez's actions were even worse because Hernandez was serving in a leadership role and he understood that his actions violated MLB rules.  (Torre Decl. ¶ 36; Pl. Tr. 175:14-176:4.)

**ANSWER:**   Undisputed that Torre now asserts for the first time in his Declaration his conclusion that Plaintiff's actions regarding the "incident" discussed in ¶ 126 of MLB's SMF were purportedly "even worse" because of the circumstances surrounding that "incident."  Disputed that Torre has ever said so or thought so previously, as evidenced by the lack of citation to Torre's or any other MLB's employee's deposition testimony. Disputed that there is any legitimate basis for reaching that conclusion, regardless of when that conclusion was reached.  Plaintiff also incorporates by reference herein his Answers to ¶¶ 125-126 of MLB's SMF.

129.   Torre advised Hernandez that his actions were unprofessional and demonstrated extremely poor judgment, and were particularly egregious because, as interim crew chief, he was supposed to set a positive example for the rest of his crew.  (Torre Decl. ¶ 36; Torre Decl. Ex. G; Pl. Tr. 176:24-177:14.)

**ANSWER:**   Undisputed that Torre so advised Plaintiff.  Disputed that there was any legitimate basis for reaching that conclusion.  Plaintiff also incorporates by reference herein his Answers to ¶¶ 125-126, 128 of MLB's SMF.

130.   Hernandez was interim crew chief during the May 8, 2013 game in Cleveland in

which he made an incorrect call and refused to accept responsibility for it.  (Torre Decl. ¶ 37; Pl. Ex. 36, Dkt. 142-37; Pl. Tr. 148:15-17.)

> **ANSWER:**    Undisputed that Plaintiff was interim crew chief during the May 8, 2013 game in Cleveland.  Disputed that the call he made was "incorrect" inasmuch as the decision to not kill the play and the subsequent decision to not overturn the play were consistent with MLB's rules and procedures at the time.  Hernandez Dec., ¶¶ 1, 4.  Plaintiff incorporates by reference herein his Answers to ¶¶ 80, 82-86 of MLB's SMF.

131.    As a result of Hernandez's performance as an interim crew chief in 2012 and 2013, as well as the other performance issues, Torre did not ask Hernandez to serve as an interim crew chief for more than one week in each of the 2014-17 seasons.  On those occasions, Hernandez was asked to fill in on a very limited basis while the crew chief on his crew was unavailable.  (Torre Decl. ¶ 38.)

> **ANSWER:**    Undisputed that Torre now asserts for the first time in his declaration that Torre's decision not to ask Plaintiff to serve as an interim crew chief for more than one week in each of the 2014-2017 seasons was purportedly a result of Plaintiff's performance as an interim crew chief in 2012 and 2013.  Disputed that Torre has ever said so or thought so previously, as evidenced by the lack of citation to Torre's or any other MLB's employees' deposition testimony. Disputed that there is any legitimate basis for reaching that conclusion, regardless of when that conclusion was reached.  Plaintiff was praised throughout the 2012 season for his work as an interim crew chief.  *See* Plaintiff's Answer to ¶ 125 of MLB's SMF.  Plaintiff also incorporates by reference herein his Answers to ¶¶ 80, 82-86 and 130.  Disputed that Torre's baseless decision to limit the number of interim crew chief games Plaintiff would receive constitutes a legitimate, non-discriminatory

reason for repeatedly failing to promote Plaintiff to crew chief or assign him to the World Series.  *See* Plaintiff's Reply Memorandum, pp. 3-39.

132.    In 2018, Torre gave Hernandez the opportunity to serve as an interim crew chief for nearly one full month of the season.  Hernandez's performance that season merited a post-season assignment to the American League Division Series, with an eye towards placing him in the World Series.  There were no crew chief openings at the end of 2018 for the 2019 season, and Torre did not consider him for the World Series in 2018 based on his performance in the Division Series discussed above.  (Torre Decl. ¶ 39.)

> **ANSWER:**    Undisputed that in 2018 Plaintiff served as an interim crew chief for nearly one full month of the season and performed well in that role.  Undisputed that Plaintiff's performance that season merited a post-season assignment to the American League Division Series.  Undisputed that Torre now asserts that assignment was given "with an eye towards placing [Plaintiff] in the World Series."  Undisputed that there were no crew chief openings at the end of 2018 for the 2019 season.  Undisputed that Torre now asserts that he did not consider Plaintiff for the World Series in 2018 based on his performance in the Division Series.  Disputed that anything that happened during the 2018 American League Division Series is material or relevant or that it otherwise supports MLB's Motion. What happened in 2018 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017, because the 2018 American League Division Series had not yet even occurred.  *See* Dkt. 1; *Chuang*, 225 F.3d at 1129.  Plaintiff also incorporates by reference herein his Answers to ¶¶ 98-104 of MLB's SMF.

133.    In 2019, Torre provided Hernandez with another opportunity to serve as an interim

crew chief.  (Torre Decl. ¶ 40.)

> **ANSWER:**   Undisputed that Torre provided Plaintiff with an opportunity to serve as an
> interim crew chief in 2019.  Disputed that anything that happened during the 2019 season
> is material or relevant or that it otherwise supports MLB's Motion.  What happened in 2019
> could not have possibly had an impact on MLB's and Torre's repeated decisions to not
> promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his
> Complaint on July 3, 2017, because the 2019 season had not yet even occurred.  *See* Dkt.
> 1; *Chuang*, 225 F.3d at 1129.

134.    During a game between the Boston Red Sox and Tampa Bay Rays in July 2019
when Hernandez was the interim crew chief, he misapplied a rule involving the effect of the
substitution of players on the lineup – a rule reinforced with Hernandez by his supervisor
immediately prior to that series.  Hernandez compounded his error by not communicating clearly
with the Club Field Managers or his crew members, which ultimately led to a 14-minute delay of
game and the Red Sox playing the rest of the game under "protest," which, under the rules, could
have resulted in the game being replayed from the point of the disputed ruling.  (Torre Decl. ¶ 40;
Torre Decl. Ex. H.)

> **ANSWER:**   Undisputed that Plaintiff was the interim crew chief for the July 2019 game
> between the Boston Red Sox and the Tampa Bay Rays.  Disputed that MLB's and Torre's
> characterizations of this July 2019 game are accurate.  *See* Hernandez Dec., ¶¶ 7-17.
> Disputed that anything that happened during the 2019 season is material or relevant or that
> it otherwise supports MLB's Motion.  What happened in 2019 could not have possibly had
> an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief
> or assign him to the World Series prior to the filing of his Complaint on July 3, 2017,

because the 2019 season had not yet even occurred.  *See* Dkt. 1; *Chuang*, 225 F.3d at 1129.

135.    In Torre's judgment, this incident further illustrated Hernandez's struggle to maintain control and de-escalate tense on field situations.  (Torre Decl. ¶ 40.)

**ANSWER:**    Undisputed that Torre now asserts that this was his "judgment."  Disputed that Torre's "judgment" has any legitimate basis in fact.  Disputed that Plaintiff has a "struggle to maintain control and de-escalate tense on field situations."  Dkt. 141-21, Pages 5, 8 of 33; Dkt. 141-22, Pages 24, 34 of 48; Plaintiff's Reply Memorandum, pp. 15-16; Plaintiff's Answers to ¶¶ 105, 115 of MLB's SMF.  Disputed that MLB's and Torre's characterizations of this July 2019 game are accurate.  *See* Hernandez Dec., ¶¶ 7-17.  Disputed that anything that happened during the 2019 season is material or relevant or that it otherwise supports MLB's Motion.  What happened in 2019 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017, because the 2019 season had not yet even occurred.  *See* Dkt. 1; *Chuang*, 225 F.3d at 1129.

136.    Following the game, MLB commenced an investigation into the Red Sox-Rays on-field incident.  (Torre Decl. ¶ 42; Torre Decl. Ex. H.)

**ANSWER:**    Undisputed that MLB commenced an "investigation" into the "Red Sox-Rays on-field incident" weeks after that "incident" occurred.  Disputed that MLB's and Torre's characterizations of this July 2019 game are accurate.  *See* Hernandez Dec., ¶¶ 7-17.  Disputed that anything that happened during the 2019 season is material or relevant or that it otherwise supports MLB's Motion.  What happened in 2019 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017,

because the 2019 season had not yet even occurred.  *See* Dkt. 1; *Chuang*, 225 F.3d at 1129.

137.    As part of MLB's investigation of that incident, MLB interviewed the umpires involved via separate telephone interviews that were intended to be confidential.  (Torre Decl. ¶ 41; Torre Decl. Ex. H; Pl. Tr. Day 2 140:19-141:25.)

> **ANSWER:**    Undisputed that as part of MLB's investigation of that "incident" MLB interviewed some of the umpires involved.  Disputed that the telephone interviews were "separate" inasmuch as they were conducted on the same telephone call accessed with the same telephone number.  *See* Hernandez Dec., ¶¶ 14-15.  Disputed that MLB's and Torre's characterizations of this telephone call are accurate.  *See* Hernandez Dec., ¶¶ 7-17. Disputed that anything that happened during the 2019 season is material or relevant or that it otherwise supports MLB's Motion.  What happened in 2019 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017, because the 2019 season had not yet even occurred.  *See* Dkt. 1; *Chuang*, 225 F.3d at 1129.

138.    During that investigation, MLB concluded that Hernandez intentionally and deceptively eavesdropped on a confidential conversation with another umpire on the crew for that game in order to hear what that umpire would say concerning the on-field incident, and when MLB asked Hernandez about it, he provided completely implausible and not credible explanations for his conduct.  (Torre Decl. ¶ 41; Torre Decl. Ex. H; Pl. Tr. Day 2 142:9-11.)

> **ANSWER:**    Undisputed that MLB reached the conclusions so stated.  Disputed that those conclusions have any legitimate basis in fact.  Disputed that Plaintiff "intentionally and deceptively eavesdropped" on MLB's conversation with the other umpire.  Disputed that Plaintiff's reasons for so doing—including that he was never "instructed to get off"

the call by MLB and that Plaintiff thought MLB "would come back" to him to question him further (Hernandez Dep., 143:1-10, attached hereto as Exhibit 4)—were "completely implausible and not credible explanations." *See* Hernandez Dec., ¶¶ 7-17. Disputed that anything that happened during the 2019 season is material or relevant or that it otherwise supports MLB's Motion. What happened in 2019 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017, because the 2019 season had not yet even occurred. *See* Dkt. 1; *Chuang*, 225 F.3d at 1129.

139.    On August 23, 2019, Torre sent Hernandez a letter detailing MLB's investigation and conclusions concerning his misapplication of the rules during the July 24, 2019 game and his misconduct in the investigation that followed. Torre removed Hernandez as interim crew chief from that point forward in the 2019 season. (Torre Decl. ¶ 42; Torre Decl. Ex. H.)

**ANSWER:**    Undisputed that MLB sent Plaintiff a letter and subsequently removed Plaintiff as interim crew chief. Disputed that there was any legitimate, non-discriminatory basis for doing so. *See* Plaintiff's Answers to ¶¶ 134-138, *supra*. Disputed that anything that happened during the 2019 season is material or relevant or that it otherwise supports MLB's Motion. What happened in 2019 could not have possibly had an impact on MLB's and Torre's repeated decisions to not promote Plaintiff to crew chief or assign him to the World Series prior to the filing of his Complaint on July 3, 2017, because the 2019 season had not yet even occurred. *See* Dkt. 1; *Chuang*, 225 F.3d at 1129.

## VII. QUALIFICATIONS OF UMPIRES THAT TORRE PROMOTED TO CREW CHIEF

140.    Torre promoted umpires to permanent crew chiefs who, in his judgment, demonstrated consistency in leadership, the ability to manage on-field situations, a calm and

professional demeanor, and communicated effectively with other umpires, the Office, Club personnel, and players. Additionally, Torre selected umpires who he concluded successfully handled the additional responsibilities and increased visibility associated with the interim crew chief role, including performing well as an interim crew chief in the season immediately preceding their promotions, demonstrating that they were ready to assume the role on a full-time basis. (Torre Decl. ¶¶ 35, 43-51; Torre Tr. 139:18-140:18; Woodfork Tr. 24:5-18, 61:17-19; McKendry Tr. 219:12-18.)

> **ANSWER:** Disputed. Disputed to the extent that Torre's Declaration and ¶ 140 of MLB's SMF assert that Torre considered any factors other than those identified in his deposition. *See* Plaintiff's Answers to ¶¶ 66-67 of MLB's SMF. Any assertion that Torre considers anything other than the factors identified in his deposition contradicts MLB's current assertions and Torre's own Declaration, which should therefore be rejected. *See Vos*, 2009 WL 10640615 at *7; Plaintiff's Answer to ¶ 66 of MLB's SMF, *supra*. Disputed that Plaintiff did not have superior qualifications to those non-minority umpires that were promoted to crew chief over him. *See generally* Plaintiff's Reply Memorandum, pp. 3-39. Disputed that the non-minority umpires who were promoted to crew chief over Plaintiff actually displayed the factors listed in ¶ 140 of MLB's SMF. *See id*. at pp. 20-21, 27-30. Plaintiff also incorporates herein by reference his Answers to ¶¶ 66, 67, 69, 77 and 109 of MLB's SMF.

141. Torre believes that the umpires he promoted to crew chief did not have the same issues with personal accountability and ability to remain composed and refocus after errors as Hernandez. (Torre Decl. ¶ 35.)

> **ANSWER:** Disputed and unsupported by the evidence. Neither ¶ 35 of Torre's

Declaration nor ¶ 141 of MLB's SMF are supported by any evidence, such as any performance evaluation, that would support Torre's purported "belief" that the non-minority umpires promoted to crew chief over Plaintiff did not have issues with personal accountability and/or "the ability to remain composed and refocus after errors."  Disputed that Plaintiff had any "issues" in those areas.  *See* Plaintiff's Answer to ¶¶ 79, 87 of MLB's SMF, *supra*; Plaintiff's Reply Memorandum, pp. 13-14.

142.    Hernandez has no personal knowledge of the qualifications of other umpires promoted to crew chief and selected to umpire in the World Series.  (Pl. Tr. 58:6-22, 91:17-20.)

**ANSWER:**    Undisputed but immaterial and irrelevant.    Plaintiff testified in his deposition that he did not have the "data" regarding the performances of the non-minority umpires promoted to crew chief or assigned to the World Series over him and it was therefore impossible for him to make a comparison of his qualifications to the qualifications of those non-minority umpires.  *See* Hernandez Dep., Dkt. 168-1, Page 25 of 733, 58:6-22.  But Plaintiff's lack of knowledge at his deposition is not surprising, as MLB has designated thousands of pages of documents, including anything that could even remotely constitute a "performance evaluation" of a third-party umpire, as "CONFIDENTIAL – ATTORNEYS EYES ONLY."  *See*, *e.g.*, Dkt. 154, Dkt. 183.  Pursuant to the Confidentiality Order entered by the Court, Plaintiff himself is thereby barred from viewing those documents.  Dkt. 36, Page 5 of 11, ¶ 5.  MLB's over-designation of documents as "CONFIDENTIAL – ATTORNEYS EYES ONLY" has resulted in Plaintiff himself not being aware of some of the very evidence upon which his Motion for Partial Summary Judgment, MLB's Motion, and Plaintiff's opposition to MLB's Motion are based.  Moreover, at the time Plaintiff was deposed in April of 2019, Plaintiff's counsel

had not yet deposed a single MLB employee.  Plaintiff also incorporates by reference

herein his Answers to ¶¶ 24 and 52 of MLB's SMF.

143.    Torre selected Ted Barrett, Fieldin Culbreth, and Jim Joyce as crew chiefs for the

2013 season.  (Pl. Ex. 110, Dkt. 142-112.)

**ANSWER:**    Undisputed.

144.    In Torre's judgment, Barrett consistently demonstrated exceptional leadership

ability and an excellent disposition in on- and off the field interactions with MLB, his peers, and

Club personnel and players.  (Torre Decl. ¶ 43; Torre Tr. 43:21-25.)

**ANSWER:**    Undisputed.  Plaintiff does not contend in his Motion for Partial Summary

Judgment that the promotion of Ted Barrett to crew chief over Plaintiff is a basis for his

claims.

145.    ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████

**ANSWER:**    Undisputed.  Plaintiff does not contend in his Motion for Partial Summary

Judgment that the promotion of Ted Barrett to crew chief over Plaintiff is a basis for his

claims.

146.    ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

**ANSWER:**    Undisputed.  Plaintiff does not contend in his Motion for Partial Summary

Judgment that the promotion of Ted Barrett to crew chief over Plaintiff is a basis for his

claims.

147.    ███████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████

**ANSWER:**    Undisputed.  Plaintiff does not contend in his Motion for Partial Summary

Judgment that the promotion of Ted Barrett to crew chief over Plaintiff is a basis for his

claims.

148.    In Torre's judgment, Culbreth's demeanor on the field allowed him to defuse on-

field incidents and maintain control of games, and his interpersonal skills positively contributed to

the cohesiveness of his crew.  (Torre Decl. ¶ 44.)

**ANSWER:**    Undisputed that Torre now asserts this to be his "judgment" of Culbreth's

"demeanor" and "interpersonal skills."  Disputed to the extent that ¶ 148 of MLB's SMF

suggests that Plaintiff did not have these same skills or that Plaintiff's skills in that area did

not exceed Culbreth's.  Dkt. 142-122, Page 16 of 21; Plaintiff's Reply Memorandum, pp.

15-16.  Disputed to the extent ¶ 148 of MLB's SMF suggests that there were legitimate,

non-discriminatory reasons for promoting Culbreth to crew chief over Plaintiff. *See id*. at pp. 3-39.

149.     MLB commended Culbreth's demeanor and situation-handling in the years leading up to his appointment, particularly while filling in as an interim crew chief. (Torre Decl. ¶ 44.)

**ANSWER:**     Undisputed that Culbreth's Mid-Year and Year-End Evaluations from 2011-2012 contain comments regarding MLB's view of Culbreth's "demeanor and situation-handling." Disputed to the extent that ¶ 149 of MLB's SMF suggests that Plaintiff did not have these same skills or that Plaintiff's skills in that area did not exceed Culbreth's. Plaintiff's Reply Memorandum, pp. 7-8, 15-16. Disputed to the extent ¶ 149 of MLB's SMF suggests that there were legitimate, non-discriminatory reasons for promoting Culbreth to crew chief over Plaintiff. *See id*. at pp. 3-39.

150.     ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

**ANSWER:**     Undisputed that the excerpts of Culbreth's 2011 Mid-Year Evaluation to which MLB cites in support of ¶ 150 of its SMF are accurately quoted. Disputed to the extent that the characterization of Culbreth's 2011 Mid-Year Evaluation second sentence of ¶ 150 is inconsistent with what is actually stated in that Mid-Year Evaluation. *See* Dkt. 177-1, Page 78 of 87. Disputed to the extent MLB contends the comment contained in the second sentence of ¶ 150 of MLB's SMF is also found in Culbreth's 2011 Year-End Evaluation. *See* Dkt. 177-1, Page 84 of 87. Plaintiff also incorporates by reference herein

his Answer to ¶ 149 of MLB's SMF, *supra*.

151. ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

**ANSWER:**   Undisputed that the excerpt of Culbreth's 2011 Year-End Evaluation is accurately quoted. ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ Plaintiff also incorporates by reference herein his Answers to ¶¶ 149-150 of MLB's SMF, *supra*.

152. ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████

**ANSWER:**   Undisputed that the excerpts of Culbreth's 2012 Mid-Year Evaluation are accurately quoted.  Plaintiff also incorporates by reference herein his Answers to ¶¶ 149-151 of MLB's SMF, *supra*.

153. ██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

**ANSWER:**   Undisputed that the excerpts of Culbreth's 2012 Year-End Evaluation are accurately quoted.   Disputed that those excerpts accurately reflect the substance of Culbreth's 2012 Year-End Evaluation inasmuch as they omit other comments. ██

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████  Plaintiff also incorporates by reference herein his Answers to ¶¶ 149-151 of MLB's SMF, *supra*.

154.   Prior to Joyce's appointment to crew chief in 2013, he served as an interim crew chief for 132 games during the 2012 season.  (Torre Decl. ¶ 45.)

**ANSWER:**   Undisputed that ¶ 45 of Torre's Declaration so states.  Disputed that ¶ 45 of Torre's Declaration is supported by other evidence in the record.

155.   In Torre's judgment, Joyce was adept at situation handling and excelled as an interim crew chief the year prior to his appointment.  (Torre Decl. ¶ 45.)

**ANSWER:**   Undisputed that Torre now asserts his judgment to be that Joyce was "adept at situation handling" and "excelled as an interim crew chief" in the year prior to his appointment.   Disputed to the extent that ¶ 155 of MLB's SMF suggests that Plaintiff did not have these same skills or that Plaintiff's skills in that area did not exceed Joyce's.  Plaintiff's Reply Memorandum, pp. 7-8, 15-16.  Disputed to the extent ¶ 155 of MLB's

SMF suggests that there were legitimate, non-discriminatory reasons for promoting Joyce to crew chief over Plaintiff.  *See id.* at pp. 3-39.

156.   ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

**ANSWER:**   Undisputed that the excerpts of Joyce's 2012 Mid-Year Evaluation are accurately quoted.  Plaintiff also incorporates by reference his Answer to ¶ 155 of MLB's SMF, *supra*.

157.   ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

**ANSWER:**   Undisputed that the excerpt of Joyce's 2012 Year-End Evaluation is accurately quoted. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████. Plaintiff also incorporates by reference his Answer to ¶ 155 of MLB's SMF, *supra*.

158.   Torre selected Bill Miller and Jeff Nelson as crew chiefs for the 2014 season.

(Torre Decl. ¶¶ 46-47; McKendry Decl. ¶ 21.)

**ANSWER:**   Undisputed.

159.    Prior to Nelson's appointment to crew chief in 2014, he served as an interim crew chief for 33 games during the 2013 season.  (Torre Decl. ¶ 46.)

**ANSWER:**   Undisputed that ¶ 46 of Torre's Declaration so states.  Disputed that ¶ 46 of Torre's Declaration is supported by other evidence in the record.

160.    In Torre's judgment, Nelson had strong situation handling and interpersonal skills, particularly while serving in an interim crew chief role in the years leading up to his appointment. (Torre Decl. ¶ 46.)

**ANSWER:**   Undisputed that Torre now asserts his "judgment" to be that Nelson was had "strong situation handling and interpersonal skills," including when Nelson was serving as an interim crew chief.  Disputed to the extent that ¶ 160 of MLB's SMF suggests that Plaintiff did not have these same skills or that Plaintiff's skills in that area did not exceed Nelson's.  Plaintiff's Reply Memorandum, pp. 7-8, 15-16.  Disputed to the extent ¶ 160 of MLB's SMF suggests that there were legitimate, non-discriminatory reasons for promoting Nelson to crew chief over Plaintiff.  *See id*. at pp. 3-39; *see also* Dkt. 142-109, Page 1 of 2 ███████████████████████████████████

███████████████████████████████████

███████████████████████████████

161.    ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████as

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

**ANSWER:**     Undisputed that the excerpts of Nelson's 2011 Year-End Evaluation are accurately quoted.  Plaintiff also incorporates by reference his Answer to ¶ 160 of MLB's SMF, *supra*.

162.     ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

**ANSWER:**     Undisputed that the excerpts of Nelson's 2012 Mid-Year Evaluation and Year-End Evaluation are accurately quoted.  Plaintiff also incorporates by reference his Answer to ¶ 160 of MLB's SMF, *supra*.

163.     ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

**ANSWER:**     Undisputed that the excerpts of Nelson's 2013 Mid-Year Evaluation are accurately quoted.  Plaintiff also incorporates by reference his Answer to ¶ 160 of MLB's SMF, *supra*.

164.     In Torre's judgment, Miller remained composed during tense situations, had strong

situation-handling skills, and a firm command of the rules that was an asset to other crew members in the years leading up to his appointment to crew chief.  (Torre Decl. ¶ 47.)

> **ANSWER:**    Undisputed that Torre now asserts that his "judgment" was that Miller remained composed, had strong-situation handling skills, and a firm command of the rules. Disputed to the extent these assertions are contradicted by other evidence in the record. *See*, *e.g.*, Dkt. 142-109, Page 1 of 2 ████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ███████████████████████████████████. Disputed to the extent that ¶ 164 of MLB's SMF suggests that Plaintiff did not have these same skills or that Plaintiff's skills in that area did not exceed Miller's.  Plaintiff's Reply Memorandum, pp. 7-8, 15-16.  Disputed to the extent ¶ 164 of MLB's SMF suggests that there were legitimate, non-discriminatory reasons for promoting Miller to crew chief over Plaintiff. *See id*. at pp. 3-39.

165.   ██████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████

> **ANSWER:**    Undisputed that the excerpts of Miller's 2012 Mid-Year Evaluations are accurately quoted.  Plaintiff also incorporates by reference his Answer to ¶ 164 of MLB's SMF, *supra*.

166.   ██████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

**ANSWER:**   Undisputed that the excerpt of Miller's 2012 Year-End Evaluation is accurately quoted.  Plaintiff also incorporates by reference his Answer to ¶ 164 of MLB's SMF, *supra*.

167.   ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

**ANSWER:**   Undisputed that the excerpts of Miller's 2013 Year-End Evaluation are accurately quoted.  Disputed that those excerpts accurately reflect the substance of Miller's 2013 Year-End Evaluation inasmuch as they omit other comments.  ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████   Plaintiff also incorporates by reference his Answer to ¶ 164 of MLB's SMF, *supra*.

168.   Torre selected Paul Emmel, Mike Everitt, and Sam Holbrook as crew chiefs for the 2017 season.  (Torre Decl. ¶¶ 48-50; Pl. Ex. 52, Dkt. 142-53.)

**ANSWER:**   Undisputed that those three non-minority umpires were promoted to crew chief for the 2017 season.  Disputed that it was proper to promote Everitt.  It is unclear that

89

Everitt ever applied in writing as required by the CBA.  Torre testified only that he applied
"at some point later on" after he originally told MLB "one off season" that he would like
to be a crew chief but did not think he was ready.  Torre Dep., Dkt. 141-12, Pages 59-60
of 74, 184:19-185:14.  Instead, Torre testified only that he removed Everitt's interim crew
chief tag.  *Id*. at 189:20-190:11.

169.    Prior to Emmel's appointment to crew chief, he served as an interim crew chief for
25 games during the 2016 season.  (Torre Decl. ¶ 48.)

**ANSWER:**    Undisputed that ¶ 48 of Torre's Declaration so states.  Disputed that ¶ 48 of
Torre's Declaration is supported by other evidence in the record.

170.    In Torre's judgment, Emmel's ability to read and react to situations made him a
strong crew chief candidate, and he exemplified those qualities while serving as interim crew chief.
(Torre Decl. ¶ 48.)

**ANSWER:**    Undisputed that Torre now asserts it was his "judgment" that Emmel had
the ability to read and react to situations and that that alleged ability purportedly made him
a strong crew chief candidate.  Disputed to the extent that ¶ 48 of Torre's Declaration and
¶ 170 of MLB's SMF is contradicted by other evidence in the record, including Emmel's
own performance evaluations.  *See* Plaintiff's Reply Memorandum, pp. 27-28; Dkt. 142-
59, Page 6 of 21; Dkt. 142-60, Page 11 of 47; Dkt. 142-62, Page 4 of 78 ███████████

███████████████████████████████████████████████████

████████████████████ (*see* Dkt. 142-59, Page 6 of 21)); Dkt. 142-60, Page 23 of
47; Dkt. 142-60, Page 33 of 47; Dkt. 142-50, Page 2 of 2. Disputed to the extent that ¶ 170
of MLB's SMF suggests that Plaintiff did not have these same skills or that Plaintiff's skills
in that area did not exceed Emmel's.  Plaintiff's Reply Memorandum, pp. 7-8, 15-16.

Disputed to the extent ¶ 170 of MLB's SMF suggests that there were legitimate, non-discriminatory reasons for promoting Emmel to crew chief over Plaintiff.  *See id*. at pp. 3-39.

171.   ████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████

**ANSWER:**   ████████████████████████████████████████████

████████████████████████████████████████   *See* Dkt. 177-3,

Page 3 of 96.  Undisputed that the excerpts of Emmel's 2014 Year-End Evaluation are accurately quoted.  ██████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████   ██████████████   ██████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████   *See* Plaintiff's Answer to ¶ 108 of

MLB's SMF.  Plaintiff also incorporates by reference his Answer to ¶ 170 of MLB's SMF,

*supra*.

172.   ████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

**ANSWER:**    Undisputed that the excerpts of Emmel's 2015 Year-End Evaluation are accurately quoted.  Plaintiff also incorporates by reference his Answers to ¶¶ 170-171 of MLB's SMF, *supra*.

173.    ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████

**ANSWER:**    Undisputed that the excerpts of Emmel's 2016 Mid-Year Evaluation are accurately quoted.  Plaintiff also incorporates by reference his Answers to ¶¶ 170-171 of MLB's SMF, *supra*.

174.    ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████

**ANSWER:**    ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████. Disputed to the extent that the characterization of Emmel's 2016 Year-End Evaluation found in ¶ 174 of MLB's SMF is inconsistent with Emmel's 2016 Year-End Evaluation itself.  Undisputed

that the excerpts of Emmel's 2016 Year-End Evaluation are accurately quoted. Plaintiff also incorporates by reference his Answers to ¶¶ 170-171 of MLB's SMF, *supra*.

175.    Prior to Everitt's appointment to crew chief, he served as an interim crew chief for 123 games during the 2016 season. (Torre Decl. ¶ 49.)

> **ANSWER:**    Undisputed that ¶ 49 of Torre's Declaration so states. Disputed that ¶ 49 of Torre's Declaration is supported by other evidence in the record.

176.    In Torre's judgment, Everitt displayed a composed and professional demeanor on and off the field that earned the respect of his peers, Club personnel, and players, and he mentored less experienced umpires. (Torre Decl. ¶ 49.)

> **ANSWER:**    Undisputed that Torre now asserts it was his "judgment" that Everitt displayed a composed and professional demeanor on and off the field. Disputed to the extent that ¶ 49 of Torre's Declaration and ¶ 176 of MLB's SMF is contradicted by other evidence in the record, including Everitt's own performance evaluations. *See* Plaintiff's Reply Memorandum, p. 28; Dkt. 142-71, Page 12 of 47; Dkt. 142-71, Page 16 of 47; Dkt. 142-71, Page 38 of 47. Disputed to the extent that ¶ 170 of MLB's SMF suggests that Plaintiff did not have these same skills or that Plaintiff's skills in that area did not exceed Everitt's. Plaintiff's Reply Memorandum, pp. 7-8, 15-16. Disputed to the extent ¶ 170 of MLB's SMF suggests that there were legitimate, non-discriminatory reasons for promoting Everitt to crew chief over Plaintiff. *See id*. at pp. 3-39.

177.    On multiple occasions during the 2016 season, MLB asked Everitt to join other crews to fill staffing gaps. This created demands on his travel schedule and required him to work collaboratively with a wide cross-section of umpires, all while serving as an interim crew chief with multiple crews. Torre determined that Everitt excelled under those circumstances. (Torre

Decl. ¶ 49.)

**ANSWER:**    Undisputed that Everitt joined other crews to fill staffing gaps.  The remainder of ¶ 177 of MLB's SMF is disputed to the extent it is not supported by any evidence in the record other than Torre's Declaration.  Plaintiff also incorporates by reference his Answer to ¶ 176 of MLB's SMF, *supra*.

178. ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

**ANSWER:**    Undisputed that the excerpt of Everitt's 2012 Year-End Evaluation is accurately quoted. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████ Plaintiff also incorporates by reference his Answer to ¶ 176 of MLB's SMF, *supra*.

179. ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████

**ANSWER:**    Undisputed that the excerpts of Everitt's 2013 Year-End Evaluation are

accurately quoted.  Plaintiff also incorporates by reference his answer to ¶ 176 of MLB's

SMF, *supra*.

180.    ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

**ANSWER:**    Undisputed that the excerpts of Everitt's 2016 Year-End Evaluation are

accurately quoted.  Plaintiff also incorporates by reference his answer to ¶ 176 of MLB's

SMF, *supra*.

181.    In Torre's judgment, Holbrook had demonstrated the ability to deescalate difficult

on-field situations, maintain a calm demeanor on the field, and he had a strong command of the

rules.  Holbrook has served on a joint committee of MLB and the umpires' union on training,

which assists the parties in vetting rule changes and rules interpretations.  When given interim

crew chief responsibilities, Torre determined that Holbrook excelled in the role.  (Torre Decl. ¶

50.)

**ANSWER:**    Undisputed that Torre now asserts it was his "judgment" that Holbrook

demonstrated the ability to deescalate difficult on-field situations, maintain a calm

demeanor on the field, and had a strong command of the rules.  Disputed to the extent that

¶ 50 of Torre's Declaration and ¶ 176 of MLB's SMF is contradicted by other evidence in

the record, including Holbrook's own performance evaluations.  *See* Plaintiff's Reply

Memorandum, p. 28-29; Dkt. 142-85, page 14 of 46; Dkt. 142-85, Page 16 of 46; Dkt. 142-

85, Page 23 of 46; Dkt. 142-85, Page 27 of 46; Dkt. 142-85, Pages 38, 40 of 46; Dkt. 142-85, Pages 43-44 of 46.  Disputed to the extent that ¶ 181 of MLB's SMF suggests that Plaintiff did not have these same skills or that Plaintiff's skills in that area did not exceed Holbrook's.  Plaintiff's Reply Memorandum, pp. 7-8, 15-16.  Disputed to the extent ¶ 181 of MLB's SMF suggests that there were legitimate, non-discriminatory reasons for promoting Holbrook to crew chief over Plaintiff.  *See id.* at pp. 3-39.  Undisputed that Torre's Declaration states that Holbrook has served on a joint committee of MLB and the umpires' union on training, which assists the parties in vetting rule changes and rules interpretations.  Disputed that ¶ 50 of Torre's Declaration is supported by other evidence in the record.

182.  ████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

**ANSWER:**  ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Plaintiff also incorporates by reference his answer to ¶ 181 of MLB's SMF, *supra*.

183.   ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████

**ANSWER:**    Undisputed that the excerpts of Holbrook's 2016 Year-End Evaluation are

accurately quoted.  Disputed to the extent MLB's characterization of Holbrook's 2016

Year-End Evaluation is inconsistent with that evaluation.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████   Dkt. 142-85,

Pages 43-44 of 46.  Plaintiff also incorporates by reference his answer to ¶ 181 of MLB's

SMF, *supra*.

184.    Torre selected Mark Wegner as crew chief for the 2018 season.  (Torre Decl. ¶51;
McKendry Tr. 165:4-8, 168:10-13; Torre Tr. 194:17-19.)

> **ANSWER:**    Undisputed but immaterial and irrelevant.   Immaterial and irrelevant
> because Plaintiff's claims are premised on crew chief promotion decisions made prior to
> the filing of his initial complaint on July 3, 2017, and Mark Wegner was not promoted to
> crew chief until the 2017 season had been completed.  MLB's conduct vis-à-vis Mark
> Wegner is thus immaterial to MLB's Motion for Summary Judgment.

185.    Prior to Mark Wegner's appointment to a crew chief position in 2018, he served as
an interim crew chief for 31 games during the 2017 season.  (Torre Decl. ¶ 51.)

> **ANSWER:**    Undisputed but immaterial and irrelevant.   Immaterial and irrelevant
> because Plaintiff's claims are premised on crew chief promotion decisions made prior to
> the filing of his initial complaint on July 3, 2017, and Mark Wegner was not promoted to
> crew chief until the 2017 season had been completed.  MLB's conduct vis-à-vis Mark
> Wegner is thus immaterial to MLB's Motion for Summary Judgment.

186.    In Torre's judgment, in the years prior to Wegner's appointment to a permanent
crew chief role, Wegner's calm demeanor and positive attitude helped to maintain control of
difficult situations that arose in games.  In the season prior to his promotion to crew chief, Wegner
moved crews to fill in as interim crew chief where there was a need, and Torre determined that he
demonstrated the ability to step in and manage various groups of umpires while maintaining a high
level of performance on the field.  Wegner also moved crews frequently when not serving in an
interim crew chief role to help strengthen crews short on experienced umpires, and had a positive
impact on those crews both on and off the field. (Torre Decl. ¶ 51; *see also* McKendry Tr. 176:5-
16.)

**ANSWER:**   Undisputed that ¶ 51 of Torre's Declaration so states but it is immaterial and irrelevant.  Immaterial and irrelevant because Plaintiff's claims are premised on crew chief promotion decisions made prior to the filing of his initial complaint on July 3, 2017, and Mark Wegner was not promoted to crew chief until the 2017 season had been completed.  MLB's conduct vis-à-vis Mark Wegner is thus immaterial to MLB's Motion for Summary Judgment.  Disputed to the extent that some or all of ¶ 51 of Torre's Declaration is not supported by other evidence in the record.

187.   ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

**ANSWER:**   Undisputed that the excerpt of Wegner's 2013 Mid-Year Evaluation is accurately quoted but it is immaterial and irrelevant. Immaterial and irrelevant because Plaintiff's claims are premised on crew chief promotion decisions made prior to the filing of his initial complaint on July 3, 2017, and Mark Wegner was not promoted to crew chief until the 2017 season had been completed.  MLB's conduct vis-à-vis Mark Wegner is thus immaterial and irrelevant to MLB's Motion for Summary Judgment.

188.   ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

**ANSWER:** Undisputed that the excerpt of Wegner's 2014 Year-End Evaluation is accurately quoted but it is immaterial and irrelevant. Immaterial and irrelevant because Plaintiff's claims are premised on crew chief promotion decisions made prior to the filing of his initial complaint on July 3, 2017, and Mark Wegner was not promoted to crew chief until the 2017 season had been completed.  MLB's conduct vis-à-vis Mark Wegner is thus immaterial and irrelevant to MLB's Motion for Summary Judgment.

189. ███████████████████████████████████████████
███████████████████████████████████

**ANSWER:** Undisputed that Torre's Declaration so states but it is immaterial and irrelevant. Immaterial and irrelevant because Plaintiff's claims are premised on crew chief promotion decisions made prior to the filing of his initial complaint on July 3, 2017, and Mark Wegner was not promoted to crew chief until the 2017 season had been completed. MLB's conduct vis-à-vis Mark Wegner is thus immaterial and irrelevant to MLB's Motion for Summary Judgment.

190. ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████

**ANSWER:** Undisputed that the excerpts of Wegner's evaluations are accurately quoted

but it is immaterial and irrelevant. Immaterial and irrelevant because Plaintiff's claims are premised on crew chief promotion decisions made prior to the filing of his initial complaint on July 3, 2017, and Mark Wegner was not promoted to crew chief until the 2017 season had been completed.  MLB's conduct vis-à-vis Mark Wegner is thus immaterial and irrelevant to MLB's Motion for Summary Judgment.

## VIII.   SENIORITY HAS NOT BEEN A CONTROLLING FACTOR IN CREW CHIEF APPOINTMENTS OR WORLD SERIES ASSIGNMENTS

191.    Torre has promoted to the crew chief position umpires with less seniority than other Caucasian applicants in multiple seasons. (McKendry Decl. ¶¶ 19-23; Torre Decl. ¶ 10.)

**ANSWER:**    Undisputed but immaterial inasmuch as none of ¶ 191 of MLB's SMF, ¶¶ 19-23 of McKendry's Declaration or ¶ 10 of Torre's Declaration provide any purported explanation as to why any of those non-minority umpires were not promoted to crew chief. Disputed to the extent that MLB contends that ¶ 192 of its SMF supports its Motion for Summary Judgment.  *See generally* Plaintiff's Reply Memorandum.

192.    Ted Barrett had 16 years of Major League service at the time of his appointment to crew chief in 2013.  Larry Vanover, who is Caucasian, and also applied for crew chief that year, had 20 years of Major League service in 2013.  (McKendry Decl. ¶ 20.)

**ANSWER:**    Undisputed that ¶ 20 of McKendry's Declaration so states. Disputed to the extent it suggests that Larry Vanover was never promoted to crew chief.  Disputed to the extent that MLB contends that ¶ 192 of its SMF supports its Motion for Summary Judgment.  *See generally* Plaintiff's Reply Memorandum.

193.    Miller had 15 years of Major League service and Nelson had 16 years of Major League service at the time of their respective appointments to crew chief in 2014.  Bob Davidson, who had 25 years of Major League service in 2014, Larry Vanover, who had 21 years of Major

League service in 2014, and Jerry Meals, who had 17 years of Major League service – all of whom are Caucasian – also applied for crew chief that year and were not selected.  (McKendry Decl. ¶ 21.)

> **ANSWER:**  Undisputed that ¶ 21 of McKendry's Declaration so states.  Disputed to the extent it suggests that Larry Vanover or Jerry Meals was never promoted to crew chief. Disputed to the extent that MLB contends that ¶ 193 of its SMF supports its Motion for Summary Judgment.  *See generally* Plaintiff's Reply Memorandum.

194.    Bob Davidson was never appointed to crew chief during his 28-year career. (McKendry Decl. ¶ 22.)

> **ANSWER:**  Undisputed that ¶ 22 of McKendry's Declaration so states but it is immaterial inasmuch as ¶ 22 of McKendry's Declaration does not provide any purported explanation as to why that non-minority umpire was not promoted to crew chief.

195.    At the time of their appointments to crew chief in 2017, Everitt had 18 years of Major League service, Emmel had 17.5 years of Major League service, and Holbrook had 16.5 years of Major League service.  (McKendry Decl. ¶ 23.)

> **ANSWER:**  Undisputed.

196.    Twelve Caucasian umpires who applied for the 2017 crew chief openings but were not selected had more seniority than at least one of Everitt, Emmel, and/or Holbrook at the time of their promotions: Mark Carlson  (17.5 years of Major League service time as of 2017); Eric Cooper (18 years of Major League service time as of 2017); Phil Cuzzi (18 years of Major League service time as of 2017); Greg Gibson (18 years of Major League service time as of 2017); Marvin Hudson (17.5 years of Major League service time as of 2017); Ron Kulpa (18 years of Major League service time as of 2017); Brian O'Nora (20 years of Major League service time as of 2017); Tony

Randazzo (17.5 years of Major League service time as of 2017); Jim Reynolds (17.5 years of Major League service time as of 2017); Bill Welke (17.5 years of Major League service time as of 2017); Hunter Wendelstedt (18 years of Major League service time as of 2017); and Mark Wegner (18 years of Major League service time as of 2017)  (McKendry Decl. ¶ 23.)

> **ANSWER:**   Undisputed that ¶ 23 of McKendry's Declaration so states but it is immaterial inasmuch as ¶ 23 of McKendry's Declaration does not provide any purported explanation as to why any of those non-minority umpires were not promoted to crew chief.

197.   Tom Hallion is a Caucasian umpire with 26 years of Major League service. Torre has never selected Hallion for the World Series.  (McKendry Decl. ¶ 24.)

> **ANSWER:**   Undisputed that ¶ 24 of McKendry's Declaration so states but it is immaterial inasmuch as ¶ 24 of McKendry's Declaration does not provide any purported explanation as to why Hallion has not been assigned to a World Series.

198.   In addition, Bruce Dreckman, Andy Fletcher, and Marty Foster are Caucasian Major League umpires who have never been selected for a World Series assignment.  At the end of the 2019 season, Dreckman and Fletcher each had 19.5 years of Major League service, and Foster had 20 years of Major League service.  (McKendry Decl. ¶ 25.)

> **ANSWER:**   Undisputed that ¶ 24 of McKendry's Declaration so states but it is immaterial inasmuch as ¶ 24 of McKendry's Declaration does not provide any purported explanation as to why Dreckman, Fletcher or Foster have not been assigned to a World Series.

## IX.   THE STATISTICAL SIGNIFICANCE OF MLB'S CREW CHIEF AND WORLD SERIES DECISIONS

199.   When performing a statistical analysis of the likelihood of an observed outcome, the outcome is "statistically significant" if the p-value, or probability, of that outcome occurring

randomly are less than or equal to five percent, or at most less than or equal to ten percent.  (Martin Decl. ¶¶ 14-15; Martin Decl. Ex. A at ¶ 29.)

> **ANSWER:**    Undisputed that Dr. Martin so states in her Declaration.  Disputed to the extent that ¶ 199 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 199 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue and the presence of the "inexorable zero."  *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).  Disputed to the extent that MLB suggests that ¶ 199 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47.

**A.    Crew Chief and World Series Decisions for 2011.**

200.    For the 2011 season, there were two crew chief openings and eleven applicants, consisting of Hernandez, one African-American applicant, and nine non-minority applicants. (McKendry Decl. Ex. C at DEF23971.)

> **ANSWER:**    Disputed to the extent that ¶ 200 of MLB's SMF is unsupported by the evidence.  DEF 23971, to which MLB cites in support of ¶ 200 of its SMF, lists only those who "expressed interest in crew chief position."  Dkt. 179-1, Page 11 of 33.  It is unclear and not established by evidence in the record that that is a complete list of every umpire who submitted written requests for the crew chief position for the 2011 season.  Disputed to the extent that MLB suggests that ¶ 200 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47.  Disputed to the extent that those

candidates whom MLB considered for selection to crew chief were not necessarily limited to those umpires who applied at the spontaneous initiative of the applicant. *See, e.g.,* West Dec. at ¶ 44.

201.    MLB selected Mike Winters and Ed Rapuano as crew chiefs for the 2011 season. (Pl. Ex. 16, Dkt. 142-17.)

**ANSWER:**    Undisputed except to the extent that MLB suggests that ¶ 201 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47.

202.    The probability of selecting two non-minority umpires from the applicant pool in 2011 was 62.2%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the promotion rates of minority and non-minority umpires.  (Martin Decl. ¶ 17(a); Martin Decl. Ex. A at ¶¶ 29-30, Ex. C, Ex. D.1; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

**ANSWER:**    Undisputed that Dr. Martin so states in her Declaration.  Disputed to the extent that ¶ 202 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 202 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue and the presence of the "inexorable zero."  *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).  Disputed to the extent that MLB suggests that ¶ 202 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47. Disputed because those umpires whom MLB considered for

selection to crew chief were not necessarily limited to umpires who applied at the spontaneous initiative of the applicant. *See, e.g.,* West Dec. at ¶ 44.  Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record.  *See, e.g.,* West Dec., at ¶¶ 34 & 35 (contradicts inaccurate assumptions about the number of umpires in the pool of crew chief candidates); *id.* at ¶ 48 (departures of umpires not factored into opinion).  Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

203.    MLB selected Ted Barrett, Gary Cederstrom, Greg Gibson, Ron Kulpa, Jerry Layne, and Alfonso Marquez to umpire the 2011 World Series.  (Torre Tr. 31:17-22; McKendry Decl. ¶ 15.)

**ANSWER:**    Undisputed.

204.    Alfonso Marquez is Hispanic.  (Pl. Tr. 44:4-5; Plaintiff's Statement of Material Fact, Dkt. 142-1 ¶ 126.)

**ANSWER:**    Undisputed.

205.    The probability of selecting one minority and five non-minority umpires for the 2011 World Series from the pool of eligible full-time umpires is between 87.3% and 91.6%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the selection rates of minority and non-minority umpires.  (Martin Decl. ¶ 21(a); Martin Decl. Ex. A at ¶¶ 29, 32-33 & Exs. E.1, E.9, & E.17; Martin Tr. 24:14-26:25,

28:15-21, 39:7-15.)

**ANSWER:**   Undisputed that Dr. Martin so states in her Declaration.  Disputed to the extent that Dr. Martin's statistics are inaccurate inasmuch as they include in the total of 68 umpires Bill Hohn, who did not umpire a single game that year.  *See* Dkt. 142-98, Page 2 of 18; Dkt. 170-1, Pages 72, 80 and 88 of 100.  Disputed inasmuch as Dr. Martin used the incorrect sample size of 68 total umpires as opposed to only the limited subset of umpires who were selected for a Division Series that season, which is the only group of umpires capable of being selected to a World Series that year.  *See* Dkt. 142-98, Page 2 of 18; Dkt. 170-1, Pages 72, 80 and 88 of 100; ¶ 59 of MLB's SMF.  Disputed to the extent that ¶ 205 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 205 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue.  *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).  Disputed to the extent that MLB suggests that ¶ 207 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47. Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record.  *See, e.g.,* West Dec., at ¶¶ 34, 35 & 38 (contradict inaccurate assumptions about the number of full-time umpires eligible for selection to work in the World Series); *id.* at ¶ 48 (departures of umpires not factored into opinion).  Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal

Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

**B.      World Series Decision For 2012.**

206.      MLB selected Gerry Davis, Dan Iassogna, Fieldin Culbreth, Brian O'Nora, Brian Gorman, and Joe West to umpire the 2012 World Series.  (McKendry Decl. Ex. D.)

**ANSWER:**      Undisputed.

207.      The probability of selecting six non-minority umpires for the 2012 World Series from the pool of eligible full-time umpires is between 54.1% and 59%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the selection rates of minority and non-minority umpires.  (Martin Decl. ¶ 21(b); Martin Decl. Ex. A at ¶¶ 29, 32-33 & Exs. E.2, E.10, & E.18; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

**ANSWER:**      Undisputed that Dr. Martin so states in her Declaration.  Disputed to the extent that Dr. Martin's statistics are inaccurate inasmuch as they include in the total of 68 umpires Bruce Dreckman and John Hirschbeck, who did not umpire a single game that year, and Ed Rapuano and Hunter Wendelstedt, who umpired only 37 and 47 games that year, respectively.  *See* Dkt. 142-98, Pages 3-4 of 18; Dkt. 170-1, Pages 73, 81 and 89 of 100.  Disputed inasmuch as Dr. Martin used the incorrect sample size of 68 total umpires as opposed to only the limited subset of umpires who were selected for a Division Series that season, which is the only group of umpires capable of being selected to a World Series that year.  *See* Dkt. 142-98, Pages 3-4 of 18; Dkt. 170-1, Pages 73, 81 and 89 of 100; ¶ 59 of MLB's SMF.  Disputed to the extent that ¶ 207 of MLB's SMF constitutes not an

assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation. Disputed because ¶ 207 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue and the presence of the "inexorable zero."  *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15). Disputed to the extent that MLB suggests that ¶ 207 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47. Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record.  *See, e.g.,* West Dec., at ¶¶ 34, 35 & 38 (contradict inaccurate assumptions about the number of full-time umpires eligible for selection to work in the World Series); *id.* at ¶ 48 (departures of umpires not factored into opinion).  Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

**C.**     **Crew Chief and World Series Decisions For 2013.**

208.    For the 2013 season, there were three crew chief openings and fourteen applicants, consisting of Hernandez and thirteen non-minority applicants.  (Pl. Ex. 105, Dkt. 142-107; McKendry Decl. Ex. E.)

**ANSWER:**    Undisputed.

209.    The probability of selecting three non-minority umpires from this applicant pool

was 78.6%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the promotion rates of minority and non-minority umpires.  (Martin Decl. ¶ 17(b); Martin Decl. Ex. A at ¶¶ 29, 31 & Ex. D.2; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

> **ANSWER:**     Undisputed that Dr. Martin so states in her Declaration.  Disputed to the extent that ¶ 209 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 209 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue and the presence of the "inexorable zero."  *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).  Disputed to the extent that MLB suggests that ¶ 209 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47. Disputed because those umpires whom MLB considered for selection to crew chief were not necessarily limited to umpires who applied at the spontaneous initiative of the applicant.  *See, e.g.,* West Dec. at ¶44.  Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record.  *See, e.g.,*  West Dec., at ¶¶ 34 & 35 (contradicts inaccurate assumptions about the number of umpires in the pool of crew chief candidates); *id.* at ¶ 48 (departures of umpires not factored into opinion).  Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr.

Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr.

Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

210.    MLB selected John Hirschbeck, Mark Wegner, Dana DeMuth, Paul Emmel, Bill

Miller, and Jim Joyce to umpire the 2013 World Series.  (McKendry Decl Ex. F.)

**ANSWER:**    Undisputed.

211.    The probability of selecting six non-minority umpires for the 2013 World Series

from the pool of eligible full-time umpires is between 40.8% and 45.7%, which is statistically

insignificant by a wide margin because the probability of the observed outcomes would need to be

below five percent, or at most below ten percent, to be considered a statistically significant

difference between the selection rates of minority and non-minority umpires. (Martin Decl. ¶ 21(c);

Martin Decl. Ex. A at ¶¶ 29, 32-33 & Exs. E.3, E.11, & E.19; Martin Tr. 24:14-26:25, 28:15-21,

39:7-15.)

**ANSWER:**    Undisputed that Dr. Martin so states in her Declaration.  Disputed inasmuch

as Dr. Martin used the incorrect sample size of 68 total umpires as opposed to only the

limited subset of umpires who were selected for a Division Series that season, which is the

only group of umpires capable of being selected to a World Series that year.  *See* Dkt. 142-

98, Pages 5-6 of 18; Dkt. 170-1, Pages 74, 82 and 90 of 100; ¶ 59 of MLB's SMF.  Disputed

to the extent that ¶ 211 of MLB's SMF constitutes not an assertion of a purported material

fact, but instead proffers a legal conclusion contained in and/or derived from the report of

an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 211 of

MLB's SMF is inapplicable to the circumstances currently before the Court on the parties'

cross-motions due to, among other things, the very small sample sizes at issue.  *See*

Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr.

28:16-21, 39:7-15).  Disputed to the extent that MLB suggests that ¶ 211 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47. Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record.  *See, e.g.,* West Dec., at ¶¶ 34, 35 & 38 (contradict inaccurate assumptions about the number of full-time umpires eligible for selection to work in the World Series); *id.* at ¶ 48 (departures of umpires not factored into opinion).  Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

**D.    Crew Chief and World Series Decisions For 2014.**

212.    For the 2014 season, there were two crew chief openings and nineteen applicants, consisting of Hernandez, one other Hispanic applicant, one African-American applicant, and sixteen non-minority applicants.  (McKendry Decl. Ex. G.)

**ANSWER:**    Undisputed.

213.    The probability of selecting two non-minority umpires from this applicant pool was 70.2%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the promotion rates of minority and non-minority umpires.  (Martin Decl. ¶ 17(c); Martin Decl. Ex. A at ¶¶ 29, 31 & Ex. D.3; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

**ANSWER:**    Undisputed that Dr. Martin so states in her Declaration.  Disputed to the

extent that ¶ 213 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 213 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue and the presence of the "inexorable zero."  *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).  Disputed to the extent that MLB suggests that ¶ 213 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47. Disputed because those umpires whom MLB considered for selection to crew chief were not necessarily limited to umpires who applied at the spontaneous initiative of the applicant.  *See, e.g.,* West Dec. at ¶ 44.  Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record.  *See, e.g.,* West Dec., at ¶¶ 34 & 35 (contradicts inaccurate assumptions about the number of umpires in the pool of crew chief candidates); *id.* at ¶ 48 (departures of umpires not factored into opinion).  Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

214.    MLB selected Jerry Meals, Eric Cooper, Jim Reynolds, Ted Barrett, Hunter Wendelstedt, Jeff Kellogg, and Jeff Nelson to umpire on the field for the 2014 World Series, and Brian O'Nora as the Replay Assistant.  (McKendry Decl. Ex. H.)

    **ANSWER:**    Undisputed.

215.    The probability of selecting eight non-minority umpires for the 2014 World Series from the pool of eligible full-time umpires is between 28.0% and 39.2%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the selection rates of minority and non-minority umpires.  (Martin Decl. ¶ 21(d); Martin Decl. Ex. A at ¶¶ 29, 32-33 & Exs. E.4, E.12, & E.20; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

**ANSWER:**    Undisputed that Dr. Martin so states in her Declaration.  Disputed to the extent that Dr. Martin's statistics are inaccurate inasmuch as they include in the total of 76 umpires Bruce Dreckman, Sam Holbrook and Tom McClelland, who did not umpire a single game that year, and Sam Holbrook, who umpired only 6 games that year.  *See* Dkt. 142-98, Pages 7-8 of 18; Dkt. 170-1, Pages 75, 83 and 91 of 100.  Disputed inasmuch as Dr. Martin used the incorrect sample size of 76 total umpires as opposed to only the limited subset of umpires who were selected for a Division Series that season, which is the only group of umpires capable of being selected to a World Series that year.  *See* Dkt. 142-98, Pages 7-84 of 18; Dkt. 170-1, Pages 75, 83 and 91 of 100; ¶ 59 of MLB's SMF.  Disputed to the extent that the spreadsheet on which Dr. Martin relies in creating the statistic found in her report at Dkt. 170-1, Page 75 of 100 shows that only 74 umpires umpired games in the in 2014, as opposed to the 76 identified in Dr. Martin's report.  *See* Dkt. 142-96, Pages 7-8 of 18; Dkt. 170-1, Page 75 of 100.   Disputed to the extent that ¶ 215 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 215 of MLB's SMF is inapplicable to the

circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue. *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15). Disputed to the extent that MLB suggests that ¶ 215 of its SMF supports its Motion for Summary Judgment. Plaintiff's Reply Memorandum, pp. 43-47. Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record. *See, e.g.,* West Dec., at ¶¶ 34, 35 & 38 (contradict inaccurate assumptions about the number of full-time umpires eligible for selection to work in the World Series); *id.* at ¶ 48 (departures of umpires not factored into opinion). Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter. Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

**E.     World Series Decision For 2015.**

216.    MLB selected Gary Cederstrom, Bill Welke, Mike Everitt, Mark Carlson, Mike Winters, Jim Wolf, and Alfonso Marquez to umpire on the field for the 2015 World Series, and Ron Kulpa as the Replay Assistant. (Torre Tr. 45:23-46:5; McKendry Decl. ¶ 16.)

**ANSWER:**    Undisputed.

217.    The probability of selecting one minority and seven non-minority umpires for the 2015 World Series from the pool of eligible full-time umpires is between 75.5% and 80.3%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the selection rates of minority and non-minority umpires. (Martin

Decl. ¶ 21(e); Martin Decl. Ex. A at ¶¶ 29, 32-33 & Exs. E.5, E.13, & E.21; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

> **ANSWER:**   Undisputed that Dr. Martin so states in her Declaration.   Disputed to the extent that Dr. Martin's statistics are inaccurate inasmuch as they include in the total of 76 umpires Jerry Layne, who umpired only 43.5 games that year.   *See* Dkt. 142-98, Pages 9-10 of 18; Dkt. 170-1, Pages 76, 84 and 92 of 100.   Disputed inasmuch as Dr. Martin used the incorrect sample size of 76 total umpires as opposed to only the limited subset of umpires who were selected for a Division Series that season, which is the only group of umpires capable of being selected to a World Series that year.   *See* Dkt. 142-98, Pages 9-10 of 18; Dkt. 170-1, Pages 76, 84 and 92 of 100; ¶ 59 of MLB's SMF.   Disputed to the extent that ¶ 217 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.   Disputed because ¶ 217 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue.   *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).   Disputed to the extent that MLB suggests that ¶ 217 of its SMF supports its Motion for Summary Judgment.   Plaintiff's Reply Memorandum, pp. 43-47.   Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record.   *See, e.g.,* West Dec., at ¶¶ 34, 35 & 38 (contradict inaccurate assumptions about the number of full-time umpires eligible for selection to work in the World Series); *id.* at ¶ 48 (departures of umpires not factored into

opinion).  Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

**F.      World Series Decision For 2016.**

218.    MLB selected Joe West, John Hirschbeck, Larry Vanover, Marvin Hudson, Tony Randazzo, Sam Holbrook, and Chris Guccione to umpire on the field for the 2016 World Series, and Todd Tichenor as the Replay Assistant.  (Martin Decl. Ex. I.)

**ANSWER:**   Undisputed.

219.    The probability of selecting eight non-minority umpires for the 2016 World Series from the pool of eligible full-time umpires is between 39.2% and 46.2%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the selection rates of minority and non-minority umpires.  (Martin Decl. ¶ 21(f); Martin Decl. Ex. A at ¶¶ 29, 32-33 & Exs. E.6, E.14, & E.22; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

**ANSWER:**   Undisputed that Dr. Martin so states in her Declaration.  Disputed to the extent that Dr. Martin's statistics are inaccurate inasmuch as they include in the total of 76 umpires Bruce Dreckman, who did not umpire a single game that year.  *See* Dkt. 142-98, Pages 11-12 of 18; Dkt. 170-1, Pages 77, 85 and 93 of 100.  Disputed inasmuch as Dr. Martin used the incorrect sample size of 76 total umpires as opposed to only the limited subset of umpires who were selected for a Division Series that season, which is the only group of umpires capable of being selected to a World Series that year.  *See* Dkt. 142-98,

Pages 9-10 of 18; Dkt. 170-1, Pages 76, 84 and 92 of 100; ¶ 59 of MLB's SMF.  Disputed

to the extent that the spreadsheet on which Dr. Martin relies in creating the statistic found

in her report at Dkt. 170-1, Page 77 of 100 shows that only 75 umpires umpired games in

the in 2014, as opposed to the 76 identified in Dr. Martin's report.  *See* Dkt. 142-96, Pages

11-12 of 18; Dkt. 170-1, Page 77 of 100.  Disputed to the extent that ¶ 219 of MLB's SMF

constitutes not an assertion of a purported material fact, but instead proffers a legal

conclusion contained in and/or derived from the report of an expert retained by MLB for

purposes of this litigation.  Disputed because ¶ 219 of MLB's SMF is inapplicable to the

circumstances currently before the Court on the parties' cross-motions due to, among other

things, the very small sample sizes at issue.  *See* Plaintiff's Reply Memorandum, pp. 43-

47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).  Disputed to the extent

that MLB suggests that ¶ 219 of its SMF supports its Motion for Summary Judgment.

Plaintiff's Reply Memorandum, pp. 43-47.  Disputed to the extent that MLB relies on

inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect

and incomplete data, and numerous baseless assumptions that are not supported by actual

evidence in the record.  *See, e.g.,* West Dec., at ¶¶ 34, 35 & 38 (contradict inaccurate

assumptions about the number of full-time umpires eligible for selection to work in the

World Series); *id.* at ¶ 48 (departures of umpires not factored into opinion).  Disputed

because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal

Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of

Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

**G.     Crew Chief and World Series Decision For 2017**

220.     For the 2017 season, there were three crew chief openings and nineteen applicants,

consisting of Hernandez, one other Hispanic applicant, one African-American applicant, and sixteen non-minority applicants.  (McKendry Decl. Ex. J.)

    **ANSWER:**   Undisputed.

221.    The probability of selecting three non-minority umpires from this applicant pool was 59.7%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the promotion rates of minority and non-minority umpires.  (Martin Decl. ¶ 17(d); Martin Decl. Ex. A at ¶¶ 29, 31 & Ex. D.4; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

    **ANSWER:**    Undisputed that Dr. Martin so states in her Declaration.  Disputed to the extent that ¶ 221 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 221 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue and the presence of the "inexorable zero."  *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).  Disputed to the extent that MLB suggests that ¶ 221 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47. Disputed because those umpires whom MLB considered for selection to crew chief were not necessarily limited to umpires who applied at the spontaneous initiative of the applicant.  *See, e.g.,* West Dec. at ¶ 44.  Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are

not supported by actual evidence in the record.  *See, e.g.,* West Dec., at ¶¶ 34 & 35 (contradicts inaccurate assumptions about the number of umpires in the pool of crew chief candidates); *id.* at ¶ 48 (departures of umpires not factored into opinion).  Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

222.    MLB selected Phil Cuzzi, Paul Nauert, Gerry Davis, Laz Diaz, Bill Miller, Dan Iassogna, and Mark Wegner to umpire on the field for the 2017 World Series, and Tripp Gibson as the Replay Assistant.  (Abramson Decl. Ex. P.)

**ANSWER:**    Undisputed.

223.    The probability of selecting one minority umpire and seven non-minority umpires for the 2017 World Series from the pool of eligible full-time umpires that applied is between 62% and 71.8%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the selection rates of minority and non-minority umpires.  (Martin Decl. ¶ 21(g); Martin Decl Ex. A at ¶¶ 29, 32-33 & Exs. E.7, E.15, & E.23; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

**ANSWER:**    Undisputed that Dr. Martin so states in her Declaration.  Disputed to the extent that ¶ 223 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 223 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue.  *See* Plaintiff's

Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).  Disputed to the extent that MLB suggests that ¶ 223 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47.  Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record.  *See, e.g.*, West Dec., at ¶¶ 34, 35 & 38 (contradict inaccurate assumptions about the number of full-time umpires eligible for selection to work in the World Series); *id.* at ¶ 48 (departures of umpires not factored into opinion).  Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

**H.    Crew Chief and World Series Decisions For 2018**

224.    For the 2018 season there was one crew chief opening and fourteen applicants, consisting of Hernandez, one additional Hispanic applicant, one African-American applicant, and eleven non-minority applicants.  (McKendry Decl. Ex. L.)

**ANSWER:**    Undisputed but immaterial and irrelevant.   Immaterial and irrelevant because Plaintiff's claims are premised on crew chief promotion decisions made prior to the filing of his initial complaint on July 3, 2017, and a decision on promoting an umpire to crew chief for the 2018 season was not made until after the 2017 season had been completed.  MLB's conduct vis-à-vis its 2018 promotion decisions are thus immaterial to MLB's Motion for Summary Judgment.

225.    The probability of selecting one non-minority umpire from this applicant pool was

78.6%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the promotion rates of minority and non-minority umpires.  (Martin Decl. ¶ 17(e); Martin Decl. Ex. A at ¶¶ 29, 31 & Ex. D.5; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

> **ANSWER:**   Undisputed that Dr. Martin so states in her Declaration.  Disputed to the extent that ¶ 225 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 225 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue and the presence of the "inexorable zero."  *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).  Disputed to the extent that MLB suggests that ¶ 225 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47.  Plaintiff also incorporates by reference herein his Answer to ¶ 224 of MLB's SMF, *supra*.  Disputed because those umpires whom MLB considered for selection to crew chief were not necessarily limited to umpires who applied at the spontaneous initiative of the applicant.  *See, e.g.,* West Dec. at ¶ 44.  Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record.  *See, e.g.,* West Dec., at ¶¶ 34 & 35 (contradicts inaccurate assumptions about the number of umpires in the pool of crew chief candidates); *id.* at ¶ 48 (departures of umpires not factored into opinion).  Disputed because,

though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

226.   MLB selected Ted Barrett, Fieldin Culbreth, Kerwin Danley, Chad Fairchild, Jeff Nelson, Jim Reynolds, and Tim Timmons to umpire on the field for the 2018 World Series, and Chris Conroy as the Replay Assistant.  (McKendry Decl. Ex. L.)

**ANSWER:**   Undisputed but immaterial and irrelevant.   Immaterial and irrelevant because Plaintiff's claims are premised on World Series assignment decisions made prior to the filing of his initial complaint on July 3, 2017, and a decision on selecting umpires for the 2018 World Series was not made until the 2018 season had largely been completed.  MLB's conduct vis-à-vis its 2018 World Series assignment decisions are thus immaterial to MLB's Motion for Summary Judgment.

227.   Kerwin Danley is African-American.  (Pl. Tr. 44:2-3; Plaintiff's Statement of Material Fact, Dkt. 142-1 ¶ 83.)

**ANSWER:**   Undisputed.

228.   The probability of selecting one minority umpire and seven non-minority umpires for the 2018 World Series from the pool of eligible full-time umpires is between 68.9% and 71.8%, which is statistically insignificant by a wide margin because the probability of the observed outcomes would need to be below five percent, or at most below ten percent, to be considered a statistically significant difference between the selection rates of minority and non-minority umpires.  (Martin Decl. ¶ 21(h); Martin Decl. Ex. A at ¶¶ 29, 32-33 & Exs. E.8, E.16, & E.24; Martin Tr. 24:14-26:25, 28:15-21, 39:7-15.)

**ANSWER:**   Undisputed that Dr. Martin so states in her Declaration.  Disputed to the

extent that ¶ 228 of MLB's SMF constitutes not an assertion of a purported material fact, but instead proffers a legal conclusion contained in and/or derived from the report of an expert retained by MLB for purposes of this litigation.  Disputed because ¶ 228 of MLB's SMF is inapplicable to the circumstances currently before the Court on the parties' cross-motions due to, among other things, the very small sample sizes at issue.  *See* Plaintiff's Reply Memorandum, pp. 43-47; Dkt. 173, Page 37 of 61 (citing to Martin Tr. 28:16-21, 39:7-15).  Disputed to the extent that MLB suggests that ¶ 228 of its SMF supports its Motion for Summary Judgment.  Plaintiff's Reply Memorandum, pp. 43-47.  Plaintiff also incorporates by reference his Answer to ¶ 226 of MLB's SMF, *supra*.  Immaterial and irrelevant because Plaintiff's claims are premised on World Series assignment decisions made prior to the filing of his initial complaint on July 3, 2017, and a decision on selecting umpires for the 2018 World Series was not made until the 2018 season had largely been completed.  MLB's conduct vis-à-vis its 2018 World Series assignment decisions are thus immaterial to MLB's Motion for Summary Judgment.  Disputed to the extent that MLB relies on inadmissible opinions of Dr. Denise Martin that are premised on disputed facts, incorrect and incomplete data, and numerous baseless assumptions that are not supported by actual evidence in the record.  See, e.g., West Dec., at ¶¶ 34, 35 & 38 (contradict inaccurate assumptions about the number of full-time umpires eligible for selection to work in the World Series); id. at ¶ 48 (departures of umpires not factored into opinion).  Disputed because, though Dr. Martin's opinions were provided in what was styled a "Rebuttal Report", Dr. Martin lacks the Human Resources expertise to rebut the opinions of Plaintiff's expert Dr. Gregory Baxter.  Martin Tr., Dkt. 180-3, Page 1 of 1, 58:18-22.

## I.     World Series Decisions For 2019

229.     MLB selected Lance Barksdale, Gary Cederstrom, Doug Eddings, Sam Holbrook, James Hoye, Alan Porter, and Jim Wolf to umpire on the field for the 2019 World Series, and Jerry Meals as the Replay Assistant.  (McKendry Decl. ¶ 17.)

> **ANSWER:**   Undisputed but immaterial and irrelevant.   Immaterial and irrelevant because Plaintiff's claims are premised on World Series assignment decisions made prior to the filing of his initial complaint on July 3, 2017, and a decision on selecting umpires for the 2019 World Series was not made until the 2019 season had largely been completed. MLB's conduct vis-à-vis its 2019 World Series assignment decisions are thus immaterial to MLB's Motion for Summary Judgment.

230.     Alan Porter is African-American.  (McKendry Decl. ¶ 18.)

> **ANSWER:**   Undisputed.

Dated: July 17, 2020

Respectfully submitted,

MURPHY LANDEN JONES PLLC

By: *Kevin L. Murphy*
Kevin L. Murphy (*pro hac vice*)
J. Jeffrey Landen (*pro hac vice*)
Nicholas R. Gregg (*pro hac vice*)
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY 41017
Tel: 859-360-1123
KMurphy@MLJfirm.com
JLanden@MLJfirm.com
NGregg@MLJfirm.com

&

LEWIS DIBIASI ZAITA & HIGGINS
Nicholas J. Zaita
420 Lexington Avenue, Suite 300
New York, NY 10107
Tel: (212) 772-0943
nzaita@ldzhlaw.com
**_Attorneys for Plaintiff Angel Hernandez_**