NEIL H. ABRAMSON
ADAM M. LUPION
RACHEL S. PHILION
RACHEL S. FISCHER
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for Defendants*
THE OFFICE OF THE COMMISSIONER
OF BASEBALL and MAJOR LEAGUE
BASEBALL BLUE, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL HERNANDEZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE OFFICE OF THE COMMISSIONER OF BASEBALL and MAJOR LEAGUE BASEBALL BLUE, INC.<br><br>                    Defendants. | No. 18 Civ. 9035 (JPO) (GWG) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.    PLAINTIFF FAILED TO RAISE A TRIABLE ISSUE OF FACT ON HIS
DISPARATE TREATMENT CLAIMS. ...................................................................2

    A.    Plaintiff Has Not A Raised Triable Issue On His Prima Facie Case. .....................3

        1.    Plaintiff Failed To Establish That He Is Qualified To Be A
Permanent Crew Chief Or Umpire In The World Series. ...........................3

        2.    Plaintiff Failed To Establish An Inference Of Discrimination. ...................7

            a.    Plaintiff's Claims That He Was More Qualified Has No
Support. .........................................................................................8

            b.    The Absence of Minority Crew Chiefs Is Insufficient As A
Matter Of Law To Satisfy His Prima Facie Case. ...........................9

    B.    Even If Plaintiff Could Establish A Prima Facie Case, He Failed To Raise
A Triable Issue That MLB's Decisions Were A Pretext For Discrimination
Because He Has Not Met His Burden On Either Element Of The Pretext
Test. ...................................................................................................................11

        1.    Plaintiff Fails To Raise A Disputed Issue As To Falsity. ..........................12

        2.    There Is No Evidence That Discrimination Was The Real Reason. ..........15

            a.    Plaintiff Failed To Establish That Torre Acted With
Discriminatory Animus. ................................................................16

            b.    Plaintiff's Criticisms Of MLB's Evaluations Fail To
Demonstrate That Discrimination Was The Real Reason. .............17

            c.    Plaintiff's Reliance On Marsh's Testimony And A 2013
PowerPoint Fail To Establish That Torre Was Motivated
By Discrimination. ........................................................................19

II.    PLAINTIFF FAILED TO RAISE A TRIABLE ISSUE ON DISPARATE
IMPACT. ...........................................................................................................20

    A.    Plaintiff Failed To Present Evidence Of A Statically Significant Disparity ..........21

    B.    Plaintiff Failed To Isolate A Specific Policy Or Practice. .....................................22

    C.    Plaintiff Failed To Show A Causal Connection. ....................................................23

    D.    MLB Has Demonstrated Business Necessity. .......................................................24

    E.    Plaintiff Failed To Show An Alternative Policy Or Practice. ................................24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ahmad v. White Plains City Sch. Dist.*,
No. 18-cv-3416 (KMK), 2019 WL 3202747 (S.D.N.Y. July 16, 2019)...................................8

*Arnold v. Sessions*,
No. 18-cv-553 (KAW), 2018 WL 6728008 (N.D. Cal. Dec. 21, 2018) ................................23

*Augustine v. Cornell Univ.*,
No. 14-cv-7807 (JPO), 2018 WL 1474402 (S.D.N.Y. Mar. 26, 2018), *aff'd
sub nom, Brown v. Cornell Univ.*, 758 F. App'x 226 (2d Cir. 2019) ....................................20

*Baguer v. Spanish Broad. Sys., Inc.*,
No. 04-cv-8393 (RJS), 2010 WL 2813632 (S.D.N.Y. July 12, 2010), *aff'd*,
423 F. App'x 102 (2d Cir. 2011) ....................................................................................15

*Bailey v. Synthes*,
295 F. Supp. 2d 344 (S.D.N.Y. 2003)................................................................................16

*Banks v. City of Albany*,
953 F. Supp. 28 (N.D.N.Y. 1997)......................................................................................23

*Bermudez v. City of N.Y.*,
783 F. Supp. 2d 560 (S.D.N.Y. 2011)................................................................................25

*Brenner v. City of N.Y. Dep't of Educ.*,
132 F. Supp. 3d 407 (E.D.N.Y. 2015), *aff'd*, 659 F. App'x 52 (2d Cir. 2016)......................15

*Brophy v. Chao*,
No. 17-cv-9527 (CS), 2020 WL 4040742 (S.D.N.Y. July 16, 2020) ....................................14

*Brown v. Time, Inc.*,
No. 95-cv-10081 (MBN), 1997 WL 231143 (S.D.N.Y. May 7, 1997) ...................................5

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001)..............................................................................................11

*Campbell v. Nat'l Fuel Gas Distrib. Corp.*,
723 F. App'x 74 (2d Cir. 2018) ........................................................................................11

*Capaci v. Katz & Besthoff, Inc.*,
711 F.2d 647 (5th Cir. 1983) ..........................................................................................10

*Capruso v. Hartford Fin. Servs. Grp., Inc.*,
No. 01-cv-4250 (RLC), 2003 WL 1872653 (S.D.N.Y. Apr. 10, 2003)..................................22

*Chuang v. Univ. of Cal. Davis, Bd. of Trs.*,
    225 F.3d 1115 (9th Cir. 2000) ...................................................................7

*Coppin v. N.Y.C. Hous. Auth.*,
    No. 14-cv-7032 (KPF), 2016 WL 3190253 (S.D.N.Y. June 7, 2016) ....................13

*Darity v. MEGA Life & Health Ins. Co.*,
    541 F. Supp. 2d 1360 (N.D. Ga. 2008) ...........................................................10

*Davis v. Landscape Forms, Inc.*,
    No. 13-cv-1346, 2015 WL 13173236 (W.D. Mich. Apr. 17, 2015), *aff'd*, 640
    F. App'x 445 (6th Cir. 2016) ......................................................................11

*Deleon v. Putnam Valley Bd. of Educ.*,
    No. 03-cv-10274 (CM), 2006 WL 236744 (S.D.N.Y. Jan. 26, 2006) ....................22

*Doe v. Anonymous Inc.*,
    No. 18-cv-10924 (PAC), 2019 WL 2616904 (S.D.N.Y. June 25, 2019)..................25

*E.E.O.C. v. Andrew Corp.*,
    No. 81-c-4359, 1989 WL 32884 (N.D. Ill. Apr. 3, 1989) ...................................10

*E.E.O.C. v. Nat'l Broad. Co., Inc.*,
    753 F. Supp. 452 (S.D.N.Y. 1990), *aff'd sub nom*, *E.E.O.C. v. NBC*, 940 F.2d
    648 (2d Cir. 1991)....................................................................................10

*E.E.O.C. v. Sephora USA, LLC*,
    419 F. Supp. 2d 408 (S.D.N.Y. 2005)............................................................24

*Eatman v. United Parcel Serv.*,
    194 F. Supp. 2d 256 (S.D.N.Y. 2002)............................................................21

*Fleming v. MaxMara USA, Inc.*,
    371 F. App'x 115 (2d Cir. 2010) ..................................................................12

*Fontecchio v. ABC Corp.*,
    No. 12-cv-6998 (CS), 2015 WL 327838 (S.D.N.Y. Jan. 23, 2015)........................13

*Fraser v. MTA Long Island R.R.*,
    295 F. Supp. 3d 230 (E.D.N.Y. 2018) ...........................................................13

*Gelin v. Geithner*,
    No. 06-cv-10176 (KMK), 2009 WL 804144 (S.D.N.Y. Mar. 26, 2009), *aff'd*,
    376 F. App'x 127 (2d Cir. 2010) ...................................................................8

*Grant v. Bethlehem Steel Corp.*,
    635 F.2d 1007 (2d Cir. 1980)......................................................................10

*Griffin v. TNT Int'l Express*,
No. 05-cv-10475 (PKC), 2008 WL 697680 (S.D.N.Y. Mar. 12, 2008) ...............................16

*Harding v. Wachovia Cap. Mkts. LLC*,
No. 10–cv-3496 (JPO), 2012 WL 4471543 (S.D.N.Y. Sept. 21, 2012), *aff'd*,
541 F. App'x 9 (2d Cir. 2013) ........................................................................................11

*Hongyan Lu v. Chase Inv. Servs. Corp.*,
412 F. App'x 413 (2d Cir. 2011) ......................................................................................3

*Hussey v. N.Y. State Dep't of Law/Office of Att'y Gen.*,
933 F. Supp. 2d 399 (E.D.N.Y. 2013) ..............................................................................8

*Jackson v. Univ. of New Haven*,
228 F. Supp. 2d 156 (D. Conn. 2002).............................................................................21

*Jimenez v. City of N.Y.*,
605 F. Supp. 2d 485 (S.D.N.Y. 2009)..............................................................................17

*Johnson v. N.Y.C. Dep't of Educ.*,
39 F. Supp. 3d 314 (E.D.N.Y. 2014), *aff'd*, 633 F. App'x 42 (2d Cir. 2016)....................8, 19

*Kearney v. Cnty. of Rockland ex rel. Vanderhoef*,
185 F. App'x 68 (2d Cir. 2006) ......................................................................................14

*Kruger v. Virgin Atl. Airways, Ltd.*,
976 F. Supp. 2d 290 (E.D.N.Y. 2013), *aff'd*, 578 F. App'x 51 (2d Cir. 2014)........................4

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
No. 19-cv-3257 (JPO), 2020 WL 4038350 (S.D.N.Y. July 17, 2020) ...................................19

*Lopez v. City of Lawrence, Mass.*,
823 F.3d 102 (1st Cir. 2016)..........................................................................................25

*M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*,
689 F.3d 263 (2d Cir. 2012)...........................................................................................24

*Macias v. Barrier Free Living, Inc.*,
No. 16-cv-1735 (ER), 2018 WL 1603566 (S.D.N.Y. Mar. 28, 2018) ......................................3

*Martin v. Coinmach Corp.*,
No. 15-cv-8137 (AJN) (SN), 2016 WL 6996182 (S.D.N.Y. Nov. 29, 2016)..........................23

*Martinez v. Conn. Dep't of Corr.*,
125 F. Supp. 3d 397 (D. Conn. 2015)..............................................................................21

*McPherson v. N.Y.C. Dep't of Educ.*,
457 F.3d 211 (2d Cir. 2006)...........................................................................................15

iv

*Morrison v. United Parcel Serv., Inc.,*
No. 17-cv-2885, 2019 WL 109401 (S.D.N.Y. Jan. 4, 2019) .....................................3

*Nguyen v. Dep't of Corr. & Cmty. Servs.,*
169 F. Supp. 3d 375 (S.D.N.Y. 2016)...................................................................20

*O'Leary v. N.Y. State Unified Court Sys.,*
No. 05-cv-6722 (HB), 2007 WL 2244483 (S.D.N.Y. Aug. 6, 2007) ............................5, 8, 25

*Ogodor v. City of N.Y.,*
No. 98-cv-5353 (LAK) (RLE), 2001 WL 210192 (S.D.N.Y. Feb. 26, 2001),
*report and recommendation adopted*, ECF No. 29 (S.D.N.Y. Mar. 14, 2001) .....................24

*Oluyomi v. Napolitano,*
811 F. Supp. 2d 926 (S.D.N.Y. 2011), *aff'd*, 481 F. App'x 693 (2d Cir. 2012)......................13

*Rios v. Buffalo & Fort Erie Pub. Bridge Auth.,*
No. 04-cv-375A, 2007 WL 4991189 (W.D.N.Y. Sept. 7, 2007), *report &*
*recommendation adopted* 2008 WL 657121 (W.D.N.Y. Mar. 7, 2008), *aff'd*,
326 F. App'x 612 (2d Cir. 2009) ...........................................................................8

*Rodriguez v. Beechmont Bus Serv., Inc.,*
173 F. Supp. 2d 139 (S.D.N.Y. 2001).....................................................................23

*Sareen v. Port Auth. of N.Y. & N.J.,*
No. 12-cv-2823 (PAE), 2013 WL 6588435 (S.D.N.Y. Dec. 16, 2013), *aff'd*,
592 F. App'x 34 (2d Cir. 2015) .............................................................................8

*Sattar v. Johnson,*
129 F. Supp. 3d 123 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 1 (2d Cir. 2016).........................11

*Shah v. MTA New York City Transit Authority,*
No. 12-cv-4276 (ERK) (RLM), 2015 WL 4139293 (E.D.N.Y. July 9, 2015).......................17

*Shaw v. McHugh,*
No. 12-cv-6834 (CS), 2015 WL 1400069 (S.D.N.Y. Mar. 26, 2015), *aff'd*, 641
F. App'x 95 (2d Cir. 2016) ..................................................................................19

*Sweeney v. U.S. Postal Serv.,*
No. 08-cv-4417 (ARL), 2013 WL 5744490 (E.D.N.Y. Oct. 23, 2013)................................22

*Tapia v. TWC Admin. LLC,*
No. 17-cv-431 (KMK), 2018 WL 5016608 (S.D.N.Y. Oct. 16, 2018)..................................7

*Teasdale v. City of N.Y.,*
No 08-cv-1684 (KAM), 2013 WL 5300699 (E.D.N.Y. Sept. 18, 2013), *aff'd*,
574 F. App'x 50 (2d Cir. 2014) .............................................................................21

*Tucker v. N.Y.C.*,
376 F. App'x 100 (2d Cir. 2010) ...........................................................................13

*United States v. City of New York*,
713 F. Supp. 2d 300 (S.D.N.Y. 2010)..............................................................10, 23

*United States v. City of Yonkers*,
609 F. Supp. 1281 (S.D.N.Y. 1984)....................................................................21

*Victory v. Hewlett-Packard Co.*,
34 F. Supp. 2d 809 (E.D.N.Y. 1999) ...................................................................22

*Waisome v. Port Authority of New York & New Jersey*,
948 F.2d 1370 (2d Cir. 1991)..............................................................................21

*Watson v. Fort Worth Bank & Tr.*,
487 U.S. 977 (1988)......................................................................................24, 25

*Woods v. Von Maur, Inc.*,
837 F. Supp. 2d 857 (N.D. Ill. 2011) ...................................................................10

*Woodson v. Pfizer, Inc.*,
34 F. App'x 490 (7th Cir. 2002) ..........................................................................10

*Young v. Pitney Bowes, Inc.*,
No. 03-cv-1161 (PCD), 2006 WL 726685 (D. Conn. Mar. 21, 2006)...................16

## OTHER AUTHORITIES

Fed. R. Civ. P. 56..................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff's response to MLB's motion for summary judgment ignores the fundamental legal requirement that he must raise a triable issue of fact that the decision-maker was motivated by discriminatory animus. Plaintiff has not identified any evidence that Joe Torre – the undisputed decision-maker – was motivated by *any* discriminatory animus in *any* decision. Indeed, Plaintiff has not only failed to provide any evidence to support that motivation, he has stated under oath that Torre's decisions were motivated by animosity over a play call Plaintiff made in 2001 when Torre managed the New York Yankees. Plaintiff then confirmed again under oath that the 2001 incident was not related to his race or national origin, and that neither Torre ***nor anyone else*** at MLB ever made comments to him (nor is he aware of any comments about him) regarding any protected characteristic. It would turn the salutary purpose of Fed. R. Civ. P. 56 squarely on its head if a plaintiff can survive summary judgment after swearing that the decision-maker was motivated by *non*-discriminatory reasons. MLB is aware of no such case.

Instead of evidence of unlawful animus, Plaintiff relies on his disagreements with Torre about which qualifications were important for the crew chief and World Series positions and whether Plaintiff was better qualified for those positions than what Torre believed. There is no assertion that Torre's stated reasons for his employment decisions were false, much less discriminatory, only that Torre's decisions were wrong. But the law of this Circuit is well-established: a plaintiff cannot avoid summary judgment by disagreeing with his employer's sincerely held beliefs about the necessary qualifications or his performance based on those qualifications. If it were otherwise, any disappointed employee could get to a jury based on his subjective beliefs of his own performance – and that clearly is not the law.

Plaintiff's disagreements with Torre are particularly insufficient because the sole evidence he proffers as to his qualifications for crew chief and World Series assignments are his seniority

1

and Field Evaluation Forms from a smattering of individual games. But Plaintiff does not dispute that Torre and others considered those factors inconsequential for those positions for **all** umpires. Hernandez purposefully ignores the qualifications Torre actually considered, including Hernandez's poor leadership and situation management skills, as evidenced most vividly by his repeated failures when serving as an interim crew chief. In these circumstances, Plaintiff cannot even satisfy the low threshold for a prima facie case, let alone show that MLB's articulated reasons were a pretext for discrimination.

Plaintiff's disparate impact claims fare no better. The *sine qua non* of a disparate impact claim is a showing of statistical significance and here Plaintiff admittedly has made no showing. Plaintiff's suggestion that he is relieved of this essential element because of the small sample size has it backwards. As MLB demonstrated through **unrefuted** expert evidence – based on statistical tests specifically designed for small sample sizes – it is impossible for Plaintiff to demonstrate any statistically significant disparity. Plaintiff's reliance on the theory of the "inexorable zero" is wrong as a matter of law because that theory is not a proxy for a showing of statistical significance and every court to have addressed the issue has found the inexorable zero to be probative of nothing in small sample sizes. Moreover, Plaintiff still has not alleged any facts to satisfy causation.

## ARGUMENT

## I. PLAINTIFF FAILED TO RAISE A TRIABLE ISSUE OF FACT ON HIS DISPARATE TREATMENT CLAIMS.

The Court could easily bypass all of Plaintiff's misplaced efforts to raise a disputed issue of fact as to his prima facie case and turn directly to the dispositive issue of pretext because there is absolutely no evidence that any of Torre's stated reasons were false or a pretext for

discrimination.  However, the Court need not even get to pretext because the record is so clear that Plaintiff failed to raise a triable issue on his prima facie case.[1]

### A.  Plaintiff Has Not A Raised Triable Issue On His Prima Facie Case.

#### 1.  Plaintiff Failed To Establish That He Is Qualified To Be A Permanent Crew Chief Or Umpire In The World Series.

The undisputed record evidence established that Torre determined, in his professional judgment, that Hernandez was deficient in the factors Torre considered to be most important for crew chief and World Series assignments, including Hernandez's poor leadership and situation management skills, inability to defuse on-field conflict, lack of accountability, and inability to move past mistakes in order to refocus on the game.  (Dkt. 189 ("Counterstatement") ¶¶ 77-78.)

Plaintiff's attempt to raise a disputed issue of fact regarding the qualification element of his prima face case is unavailing.  First, Plaintiff's claim that several of the qualifications that Torre relied on – specifically, "leadership ability, including situation management and demonstrating the requisite managerial skills necessary to lead a crew on and off the field" – were newly created for this motion contradicts the undisputed record.  (Dkt. 187 ("Pl. Br.") at 6.)  The qualities of "[l]eadership skills, including situation management," were communicated to Plaintiff multiple times beginning in 2011 (see Pl. Ex. 16, Dkt. 142-17; Pl. Ex. 15, Dkt. 142-16), literally were the first factors MLB identified in its sworn interrogatory answers, as is clear on the face of Plaintiff's own brief, (Pl. Br. at 5), and were the exact same qualifications MLB deponents identified in their testimony even as described in Plaintiff's brief.  (Pl. Br. at 6.)[2]  Second,

---

[1] Plaintiff's suggestion that summary judgment is inappropriate in employment discrimination cases is wrong.  (Pl. Br. at 2.)  *See Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 415 (2d Cir. 2011); *Morrison v. United Parcel Serv., Inc.,* No. 17-cv-2885, 2019 WL 109401, at *5 (S.D.N.Y. Jan. 4, 2019); *Macias v. Barrier Free Living, Inc.*, No. 16-cv-1735 (ER), 2018 WL 1603566, at *5 (S.D.N.Y. Mar. 28, 2018).

[2] Likewise, Torre's statement regarding the importance of "manag[ing] on-field situations under intense pressure" (Pl. Br. at 9) fully comports with his testimony.  (Torre Tr. 82:10-19.)  Marsh's understanding of the qualifications (Pl. Br. at 9) is irrelevant because he undisputedly was not a decision-maker.  (Counterstatement ¶¶ 50, 58.)

Plaintiff's claim that these qualifications contradict Torre's testimony is wrong. Every factor Torre identified in his declaration bearing on Plaintiff's qualifications – leadership, accountability, refocusing, ability to manage on-field situations under intense pressure – fully aligns with Torre's testimony. Torre testified that Plaintiff lacked these specific qualifications:

> The leadership ability, you're responsible for yourself and others on your crew. Need to be an educator, which means you have to eliminate the really self-consumed attitude. You've got to be a role model for the younger umpires when they come in. You've got to be willing or you've got to be able to just turn the page because you're going to have failures, I don't care what position you're in, you've got to be able to dismiss them and move on, and I don't – I just don't feel that Angel is there.

(Torre Tr. 139:20-40:18; *see also* Torre Tr. at 84:11-86:3.)[3]

Even assuming Torre's declaration contains additional details regarding certain events, that is not a "contradiction" that can raise a triable issue where, as here, Plaintiff's counsel did not pursue lines of questioning to closure. *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 309-10 (E.D.N.Y. 2013), *aff'd*, 578 F. App'x 51 (2d Cir. 2014).

Third, Plaintiff's claim that he has the requisite qualifications for the positions at issue cannot be squared with the record. Plaintiff clings to his own irrelevant belief that the contents of Field Evaluation Forms (which he calls Umpire Evaluation Reports, or "UERs") render him qualified for crew chief and World Series assignments. (Pl. Br. at 7-8.) But the undisputed evidence is that these forms are afforded minimal weight in the crew chief and World Series decision-making process for *all* umpires because MLB executives consider them to be merely snapshots of individual games that do not measure the specific competencies pertinent for those

---

[3] The deposition transcript excerpts cited herein are attached to the Declaration of Neil H. Abramson, Dkt. 176 ("Abramson Decl."), as follows: Abramson Decl. Ex. A, Hernandez Transcript, Day 1 ("Pl. Tr."); Abramson Decl. Ex. B, Hernandez Transcript, Day 2 ("Pl. Tr. Day 2"); Abramson Decl. Ex. C, Torre Transcript ("Torre Tr."); Abramson Decl. Ex. D, Peter Woodfork Transcript ("Woodfork Tr."); Abramson Decl. Ex. F, Robert Manfred Transcript ("Manfred Tr."); Abramson Decl. Ex. I, Denise Martin, Ph.D. Transcript ("Martin Tr."); Abramson Decl. Ex. J, Randy Marsh Transcript ("Marsh Tr.").

positions. (Counterstatement ¶ 74; Torre Tr. 35:18-23, 191:18-25; Woodfork Tr. 26:10-27:13.) As MLB established, the principal purpose of Field Evaluation Forms is to determine when an umpire experiences a trend of deficient performance that should warrant consideration of a corrective action plan. (Torre Decl. ¶ 18; Pl. Ex. 12, Dkt. 142-13, at DEF1444-45, 1450-51.) Plaintiff does not cite any record evidence that contradicts this undisputed fact. (Counterstatement ¶ 38) And his subjective belief that these forms should be given more weight is insufficient as a matter of law to raise a triable issue with regard to his qualifications for the positions he seeks. *O'Leary v. N.Y. State Unified Court Sys.*, No. 05-cv-6722 (HB), 2007 WL 2244483, at *7 (S.D.N.Y. Aug. 6, 2007).

Even if there was a nexus between the Field Evaluation Forms and the qualities that Torre considered to be most important for crew chief and World Series assignments, Plaintiff relies exclusively on comments from 2012 to support his claim that he was an effective leader. (Pl. Br. at 7-8.) Thus, every single comment he cites preceded all of his demonstrable failures in leadership positions on which Torre relied, starting with the September 29, 2012 Homer Bailey incident when Plaintiff admittedly ***knowingly*** violated MLB rules by asking Bailey for an autograph when he was ***serving as an interim crew chief***. (Counterstatement ¶¶ 126-129.)[4]

Plaintiff cites no evidence of his leadership ability after the 2012 incident because none exists. In addition to the Bailey incident, Hernandez does not dispute Torre's view that he was lacking in leadership skills because of his inability to move past his blown call during a game in Cleveland in 2013 (when he was again serving as an interim crew chief), and that Torre deemed Hernandez's continued insistence on arguing about his handling of the call instead of moving past

---

[4] Plaintiff does not allege that he was singled out for discipline among the crew he "led" that game, but instead claims that other umpires engaged in similar conduct decades ago (Pl. Br. at 11). Those incidents are irrelevant because Torre had no responsibility for umpires until 2011 and had nothing to do with those decisions. (Torre Decl. ¶ 1.) *Brown v. Time, Inc.*, No. 95-cv-10081 (MBN), 1997 WL 231143, at *12 (S.D.N.Y. May 7, 1997).

it to be a persistent distraction to his ability to focus on the game in front of him and a terrible example for others on his crew. (Counterstatement ¶¶ 87-93.)[5]

Plaintiff's response to Torre's criticism is again to argue that his handling of the call in 2013 had been correct, and to blame the replay procedures and the quality of the video equipment, which actually confirms MLB's criticism of his inability to accept responsibility for and move past the error. (Counterstatement ¶¶ 80, 85-86.) Plaintiff then ignores the record when he states that "MLB . . . provided absolutely no evidence" that the Cleveland incident affected his performance and that its criticisms were "purely conclusory" (Pl. Br. at 12, n.7.) Torre explained that the Cleveland incident "was by no small measure an important part of" why Torre did not believe Hernandez was qualified to be a crew chief. (Reply Declaration of Neil H. Abramson, Ex. A 141:5-9, filed herewith; *see also* Torre Decl., Ex. A at DEF1536, Ex. B at DEF1540, Ex. C at DEF1548; Abramson Decl., Ex. M.) Hernandez, who purports to be qualified to lead a crew, was still unable to demonstrate composure in front of Torre. Indeed, he was "sobbing . . . uncontrollably," when Torre met with him years after the Cleveland incident. (Marsh Tr. 196:7-11; *see also* Torre Tr. 84:20-85:22; Abramson Decl., Ex. M, Ex. N.)[6] The suggestion that MLB was supposed to ignore this behavior in determining who should lead a crew of MLB umpires (a position requiring near-instantaneous decisions and a need to put the last call behind you so you can focus on the next) is nonsensical and certainly not legally supportable.

Hernandez does not dispute the fact that MLB repeatedly addressed this issue with him in the years following the Cleveland incident. (Counterstatement ¶¶ 87-93.) With respect to all of

---

[5] Plaintiff's claim that "MLB had previously supported non-minority umpires in similar circumstances" (Pl. Br. at 12) is not supported by the record. The only other incident Plaintiff identified was entirely dissimilar for the reasons discussed in MLB's opening brief, and Plaintiff never responded. (Dkt. 173 ("MLB Br.") at 30-31.)

[6] Plaintiff's suggestion that Marsh had no concerns with Plaintiff "after" Cleveland misrepresents Marsh's testimony. (Pl. Br. at 12) Marsh said no such thing; Marsh confirmed that plaintiff later "broke down about this incident." (Marsh Tr. 277:18-25.) In any event, Marsh indisputably was not a decision-maker. (Counterstatement ¶¶ 50, 58.)

the other incidents in the ensuing years between 2013 and 2017 on which Torre relied, Plaintiff simply disagrees with Torre's assessment of those incidents and the weight he attributed to them in reaching his conclusions that Hernandez was not qualified.[7] (*See* Counterstatement ¶¶ 98-104, 106-108, 110-120, 133-139.) That is insufficient to raise a triable issue of fact. *Tapia v. TWC Admin. LLC*, No. 17-cv-431 (KMK), 2018 WL 5016608, at *8-9 (S.D.N.Y. Oct. 16, 2018).

Plaintiff's deficiencies continued in 2018 and 2019, including his debacle during the 2018 Division Series, his gross mismanagement of the playing rules as an interim crew chief in July 2019 and his subsequent eavesdropping on MLB's confidential discussion with another umpire. Plaintiff cites no authority to support his claim that these incidents can be disregarded simply because they post-date the ***initial*** Complaint, particularly when they reflect his profound unsuitability for the positions he seeks ***today***.[8]

### 2. Plaintiff Failed To Establish An Inference Of Discrimination.

This case is unusual in that Plaintiff affirmatively pled – and reaffirmed in his testimony – the decision-maker's non-discriminatory motivation: Torre's grudge over a call Hernandez made during a game in 2001 when Torre was managing the New York Yankees. Plaintiff then confirmed that neither Torre nor anyone else has ever commented about Plaintiff's race or national origin, and that he is not aware of any evidence supporting the conclusion that Torre's decisions were motivated by something other than hostility stemming from the 2001 call. Case after case has held there can be no inference of discrimination when the plaintiff has supplied the non-discriminatory

---

[7] Plaintiff's reliance on cherry-picked examples from his evaluations do not support his qualifications for crew chief or the World Series. Notably, Plaintiff points to examples where MLB identified that he had ***improved*** in handling certain situations, not that he had exhibited strength in that skill. Plaintiff also points to irrelevant Field Evaluation Forms concerning his focus generally, while ignoring his specific flaw of his inability to ***re***focus following a mistake. (*See* Pl. Br. at 14-16; MLB Br. at 10-11, 20-21.)

[8] *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115 (9th Cir. 2000), is inapposite because that case involved an employer's post-complaint hiring of minority employees in an attempt to prove that it did not discriminate against the plaintiff there. Here, there is no claim that MLB purposefully created evidence to rebut a discriminatory motive; these events all involve Plaintiff's malfeasance.

motivation.  *See*, *e.g.*, *Ahmad v. White Plains City Sch. Dist.*, No. 18-cv-3416 (KMK), 2019 WL 3202747, at *6 (S.D.N.Y. July 16, 2019); *Hussey v. N.Y. State Dep't of Law/Office of Att'y Gen.*, 933 F. Supp. 2d 399, 407-08 (E.D.N.Y. 2013); *Rios v. Buffalo & Fort Erie Pub. Bridge Auth.*, No. 04-cv-375A, 2007 WL 4991189, at *8 (W.D.N.Y. Sept. 7, 2007), *report & recommendation adopted* 2008 WL 657121 (W.D.N.Y. Mar. 7, 2008), *aff'd*, 326 F. App'x 612 (2d Cir. 2009).

Plaintiff's threshold argument that there is an inference of discrimination simply because MLB filled the sought-after positions with white umpires ignores that courts in similar circumstances require more than that bare fact to find an inference of discrimination.[9]  Moreover, even under this theory, there can be no inference because the undisputed record evidence is that Torre selected a member of Plaintiff's protected class on multiple occasions for the very position Hernandez claims he was wrongly denied.  (Counterstatement ¶¶ 203-204, 216.)  *See Johnson v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 314, 323-24 (E.D.N.Y. 2014), *aff'd*, 633 F. App'x 42 (2d Cir. 2016); *O'Leary*, 2007 WL 2244483, at *7 n.19.

While Plaintiff also alleges in the most conclusory fashion that MLB has a "diversity" issue, none of those allegations relate to the motivation of the decision-maker with respect to the decisions at issue here.  Instead, Plaintiff argues (i) he was more deserving of promotion than his peers; and (ii) the absence of minority crew chiefs and World Series umpires satisfies his burden. The first argument has no evidentiary support and the second is insufficient as a matter of law.

### a.  Plaintiff's Claims That He Was More Qualified Has No Support.

Plaintiff's claims that he was more qualified than umpires promoted to crew chief and selected to the World Series are predicated entirely on his subjective beliefs as to what the

---

[9] *See*, *e.g.*, *Sareen v. Port Auth. of N.Y. & N.J.*, No. 12-cv-2823 (PAE), 2013 WL 6588435, at *9 (S.D.N.Y. Dec. 16, 2013), *aff'd*, 592 F. App'x 34 (2d Cir. 2015); *Gelin v. Geithner*, No. 06-cv-10176 (KMK), 2009 WL 804144, at *18 (S.D.N.Y. Mar. 26, 2009), *aff'd*, 376 F. App'x 127 (2d Cir. 2010).

appropriate measure of performance **should be** instead of what those qualifications **actually were**. Thus, Plaintiff cites only to his Field Evaluation Forms and seniority, (Pl. Br. at 20-22), ignoring the undisputed evidence that these were not utilized for promotion precisely because they do not measure the skills deemed important for those positions. *See supra* at 4-5.

Even if Field Evaluation Forms were relevant, Plaintiff relies only on the cumulative raw number of "exceeds" ratings without any analysis regarding how those ratings correspond to the necessary qualifications for crew chiefs and World Series umpires, or whether the mere handful of additional "exceeds" ratings he cites that were derived from hundreds of forms over the span of multiple seasons is even statistically meaningful. (Pl. Br. at 20, 25) The comparison also is irrelevant because he did not remedy his failure to show that he is similarly situated to anyone. (*See* MLB Br. at 28.) In short, these forms are meaningless to all crew chief and World Series decisions, which Plaintiff does not dispute. (Counterstatement ¶ 74.)

Plaintiff's contention that he was more qualified based on his seniority is wrong for the same reasons. (Pl. Br. at 21-22.) Plaintiff agrees that the undisputed decision-maker did not consider seniority to be a controlling factor for any umpires because MLB's goal is to promote the best leaders to crew chiefs – not the most senior umpires. (Counterstatement ¶¶ 70-71, 191-198; Torre Tr. 153:23-154:15, 156:17-25.)[10]

> b. *The Absence of Minority Crew Chiefs Is Insufficient As A Matter Of Law To Satisfy His Prima Facie Case.*

Faced with the absence of any evidence of discriminatory animus, Plaintiff retreats to relying on bottom line numbers, namely the so-called "inexorable zero," to fill that void. (Pl. Br. at 19, 46.) There are four fundamental flaws with this argument. First, bottom line numbers are

---

[10] Plaintiff relies exclusively on Marsh's testimony, which is not to the contrary. (Pl. Br. at 22.) Plaintiff admits Marsh is not a decision-maker, (Counterstatement ¶¶ 50, 58), and ignores the undisputed record evidence from the decision-maker himself regarding the insignificance of seniority. (Torre Tr. 153:23-154:15, 156:17-25.)

not probative of discriminatory intent when drawn from small samples without statistical context. (MLB Br. at 26-27.) Plaintiff not only fails to dispute that well-settled proposition, he now expressly admits that the sample sizes here for promotion and selection opportunities are small. (Pl. Br. at 19, n.8; Pl. Br. at 43.) In these circumstances, the so-called "inexorable zero" is legally meaningless. *See E.E.O.C. v. Nat'l Broad. Co., Inc.*, 753 F. Supp. 452, 466-67 (S.D.N.Y. 1990), *aff'd sub nom*, *E.E.O.C. v. NBC*, 940 F.2d 648 (2d Cir. 1991); *see also Woodson v. Pfizer, Inc.*, 34 F. App'x 490, 493 (7th Cir. 2002); *Darity v. MEGA Life & Health Ins. Co.*, 541 F. Supp. 2d 1360, 1373 (N.D. Ga. 2008); *Woods v. Von Maur, Inc.*, 837 F. Supp. 2d 857, 864 (N.D. Ill. 2011).[11]

Second, the unrefuted statistical evidence – based on tests **specifically designed for small sample sizes** – confirms that the number of minorities selected for crew chief and World Series assignments does not permit any inference of discrimination. As MLB's expert explained, the statistical evidence shows that the promotion and selection rates for minority and non-minority umpires were the same and just as likely to occur by chance alone. (Dkt. 178 ("Martin Decl.") ¶ 16; Martin Decl., Ex. A ("Martin Report") ¶¶ 30-33.) Indeed, the absence of anything close to a statistically significant disparity renders it impossible to infer discriminatory intent. (Martin Tr. 26:16-25, 28:15-21, 39:7-15.)[12] Plaintiff offers no evidence to the contrary.

---

[11] Courts have held that the "inexorable zero" applies only to "a statistically large enough workforce" and that "statistical evidence [is] of no value in proving an employment discrimination claim" in small samples. *Woodson,* 34 F. App'x at 492–93. Thus, the authority on which Plaintiff relies is completely inapposite because all cases involved exponentially larger samples than those at issue here. *See E.E.O.C. v. Andrew Corp.*, No. 81-c-4359, 1989 WL 32884, at *14 (N.D. Ill. Apr. 3, 1989) (150 office and clerical workers over five-year period); *Capaci v. Katz & Besthoff, Inc*., 711 F.2d 647, 662 (5th Cir. 1983) (hundreds of male manager trainees over seven-and-a-half years); *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1019 (2d Cir. 1980) (126 foreman positions). And in *United States v. City of New York*, 713 F. Supp. 2d 300, 317-18 (S.D.N.Y. 2010), the court expressly acknowledged that the labor pool from which no women were **hired** was drawn from the country's largest city, a far cry from the limited number of umpires eligible to be **promoted.**

[12] Plaintiff makes the bizarre claim that the inability to draw any inference actually supports his case. (Pl. Br. at 43.) But MLB does not have the burden to prove the absence of discrimination. To the contrary, the burden always is Plaintiff's, and it undisputedly is impossible for him to satisfy his burden with statistics. As discussed *infra* at 22 n.21, although Plaintiff claims that the samples are even smaller than what Dr. Martin analyzed, he does not offer any evidence, statistical or otherwise, how that would have affected her conclusions.

Third, Plaintiff cannot rely on the "inexorable zero" theory to establish an inference of discrimination because he has already confirmed the decision-maker's non-discriminatory motivation. With respect to the Plaintiff, there is nothing left to infer.

Fourth, the "inexorable zero" theory is inapplicable because the number of minority World Series umpires is greater than zero. *Davis v. Landscape Forms, Inc.*, No. 13-cv-1346, 2015 WL 13173236, at *9 (W.D. Mich. Apr. 17, 2015), *aff'd*, 640 F. App'x 445 (6th Cir. 2016).

## B. Even If Plaintiff Could Establish A Prima Facie Case, He Failed To Raise A Triable Issue That MLB's Decisions Were A Pretext For Discrimination Because He Has Not Met His Burden On Either Element Of The Pretext Test.

Plaintiff's heightened burden at the pretext stage requires him to show that the "reasons proffered by [MLB] were false, ***and*** that more likely than not discrimination was the real reason for the employment action." *Campbell v. Nat'l Fuel Gas Distrib. Corp.*, 723 F. App'x 74, 75 (2d Cir. 2018) (internal citation omitted) (emphasis added); *Harding v. Wachovia Cap. Mkts. LLC*, No. 10–cv-3496 (JPO), 2012 WL 4471543, at *5 (S.D.N.Y. Sept. 21, 2012), *aff'd*, 541 F. App'x 9 (2d Cir. 2013). Hernandez has the burden at this stage to show that his "credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Sattar v. Johnson*, 129 F. Supp. 3d 123, 139 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 1 (2d Cir. 2016), *citing Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001).

Hernandez barely pays lip service to this exacting standard. He intentionally ignores the criteria that Torre considered, ***failing to cite one iota of record evidence*** as support for disputing Torre's judgment that other umpires were more qualified based on the qualifications that actually applied, while tacitly conceding that there is no record evidence to support a finding that he is "so

superior" based on those qualifications. (Counterstatement ¶¶ 140-41, 144, 148-49, 155, 160, 164, 170, 176, 181; Pl. Br. at 25.) That defect alone compels dismissal of his claims.

He focuses instead in his brief on entirely different factors to support his self-serving claim that he is more qualified than his comparators. Indeed, his entire opposition boils down to his belief that MLB made the wrong decisions. That belief is insufficient as a matter of law to survive summary judgment, because even if MLB made the wrong decisions, the record is totally devoid of evidence that MLB's stated reasons were false. More critically, ***Plaintiff proffers no argument whatsoever*** that discrimination was the real reason for MLB's decisions and there is no evidence in the record to suggest that it was.

### 1. Plaintiff Fails To Raise A Disputed Issue As To Falsity.

The overwhelming record evidence establishes that, in Torre's professional judgment, Hernandez did not possess the qualifications Torre deemed most important for permanent crew chiefs and World Series umpires. Only if Torre's assessment "is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual." *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010).

Plaintiff does not dispute the genuineness of Torre's belief that the most critical traits for crew chiefs and World Series umpires (*e.g.*, leadership, ability to handle and defuse difficult situations under intense pressure, refocusing after errors) were Hernandez's most obvious weaknesses and that other umpires were better suited for those positions. (Counterstatement ¶¶ 77-78, 141.) Plaintiff's attempt to deal with this most central element of his claim is reduced to one mere footnote, pinning his opposition on the notion that Torre's judgment is "subjective" and therefore not "legitimate." (Pl. Br. at 25, n.12.) This naked assertion should bring a hard stop to the pretext inquiry and extinguish Plaintiff's claims altogether because case after case has held that "there is nothing unlawful about an employer's basing its hiring decisions on subjective criteria,"

including but not limited to "leadership skills." *Fontecchio v. ABC Corp.*, No. 12-cv-6998 (CS), 2015 WL 327838, at *9-10 (S.D.N.Y. Jan. 23, 2015) (internal citation omitted); *see also Tucker v. N.Y.C.*, 376 F. App'x 100, 102 (2d Cir. 2010); *Coppin v. N.Y.C. Hous. Auth.*, No. 14-cv-7032 (KPF), 2016 WL 3190253, at *7-8 (S.D.N.Y. June 7, 2016).

Plaintiff's brief tellingly fails to respond to the importance Torre placed on his repeated failures in the interim crew chief role when he was given the opportunity to serve in a leadership capacity and in a more critical, visible role. (MLB Br. at 12-15.) Rather than disputing the veracity of Torre's judgment, the crux of Plaintiff's opposition focuses on his subjective belief that he was more qualified than other umpires based on the criteria ***he believes*** should have applied.

Specifically, Hernandez attempts to support his inflated view of his performance by citing his seniority and the number of "exceeds" ratings on Field Evaluation Forms. (Pl. Br. at 25.) According to Hernandez, MLB should be obligated to base crew chief and World Series decisions on those factors because he believes they are the best indicators of an umpire's performance. (*Id.*) But those are not the relevant considerations for those positions. (MLB Br. at 7-9, 35-36.) Hernandez does not even acknowledge MLB's arguments and simply continues to trumpet his belief that seniority and Field Evaluation Forms ***should*** carry the day. That subjective belief is insufficient as a matter of law to raise a triable issue that MLB's reasons were false. *Oluyomi v. Napolitano*, 811 F. Supp. 2d 926, 943 (S.D.N.Y. 2011), *aff'd*, 481 F. App'x 693 (2d Cir. 2012).

Plaintiff's belief is especially irrelevant because he fails to allege, much less establish, that Torre's explanation for why he did not select Hernandez based on the factors he actually did consider had even a kernel of untruth. He claims only that Torre's judgment was not "accurate." (*See* Counterstatement ¶¶ 79, 125.) That also is insufficient to establish pretext. *Fraser v. MTA Long Island R.R.*, 295 F. Supp. 3d 230, 262-63 (E.D.N.Y. 2018).

Plaintiff's pointing to a handful of comments in his comparators' year-end evaluations fails to demonstrate that Torre's stated reasons were false, because the undisputed record evidence is that Torre relied on the same factors in making all crew chief and World Series decisions. (Counterstatement ¶¶ 66, 69, 72-73, 140-41.) Indeed, Plaintiff fails to point to a single comment in any other umpires' evaluation that speaks to the leadership, accountability, and resilience issues that has been the principal impediment to Plaintiff's career advancement; the comments he identifies are limited to isolated in-game management issues. *See Brophy v. Chao*, No. 17-cv-9527 (CS), 2020 WL 4040742, at *12-13 (S.D.N.Y. July 16, 2020) (plaintiff ignored how his performance compared to other candidates based on the employer's stated reason for its decision).

Moreover, the fact that other umpires may have had similar in-game incidents as Plaintiff falls far short of demonstrating that Plaintiff's qualifications were "so superior" to theirs, particularly given the glaring absence of any negative comment concerning other umpires' leadership skills.[13] *See Kearney v. Cnty. of Rockland ex rel. Vanderhoef*, 185 F. App'x 68, 69-70 (2d Cir. 2006); *Brophy*, 2020 WL 4040742, at *13. MLB never suggested that these umpires had "no issues", (Pl. Br. at 30), only that Torre determined that each umpire was better suited than Hernandez to lead a crew and work the World Series, including based on their respective performances in the interim crew chief role. (MLB Br. at 33; Torre Tr. 140:14-18.) Plaintiff admittedly has not disputed that fact. (Pl. Br. at 31, Counterstatement ¶ 142.)[14]

---

[13] In addition to the conspicuous absence of any criticisms pertaining to leadership, most of the comments concerning other umpires' were from earlier in their respective careers, several years before their promotions, and the comments became far less critical as their careers progressed. ██████████████████████████████████████ ██████████████████████████████████ In any case, none of these isolated incidents reflect the repeated pattern of performance issues that has beset Hernandez.

[14] Plaintiff admits that he does not know the qualifications of other umpires and now belatedly attempts to hide behind MLB's confidentiality designations when he never challenged those specific designations with the Court. (Pl. Br. at 31.) *See also* infra at 16.

Instead, Plaintiff makes the baseless claim that MLB moved the goal posts in its motion by focusing on leadership skills and situation management while de-emphasizing seniority. (Pl. Br. at 32-33.) As discussed above, the notion that MLB pivoted from seniority to "leadership" and "situation management" for purposes of this motion is based on a tortured and fictional interpretation of the record. *See supra* at 3-4.

In a desperate attempt to raise a factual dispute as to the genuineness of Torre's stated reasons, Plaintiff purports to rely on the opinions of other umpires regarding his performance. (Pl. Br. at 33.) Their opinions are legally irrelevant and cannot call into question the veracity of MLB's decisions. *Brenner v. City of N.Y. Dep't of Educ.*, 132 F. Supp. 3d 407, 419 (E.D.N.Y. 2015), *aff'd*, 659 F. App'x 52 (2d Cir. 2016); *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-cv-8393 (RJS), 2010 WL 2813632, at *8 (S.D.N.Y. July 12, 2010), *aff'd*, 423 F. App'x 102 (2d Cir. 2011). They are also factually irrelevant insofar as the declarants do not even purport to have personal knowledge of Plaintiff's performance as an umpire after 2011, nor could they.[15] (Pl. Br. at 33, citing Dkt. 187-1 & Dkt. 187-2.)

### 2. There Is No Evidence That Discrimination Was The Real Reason.

Falsity alone, even if established, is not sufficient; the employer's real motivation must be discriminatory. *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006). Conspicuously absent from Plaintiff's brief is any argument whatsoever that Torre's beliefs were a mask for unlawful discrimination; he claims only that Torre's decisions were wrong. That startling omission compels dismissal of his claims. Not only did Plaintiff fail to even gesture to

---

[15] Indeed, Richard Garcia has not even worked for MLB in any capacity since 2010, and Joe West has not worked with Angel Hernandez on the same umpire crew for any season since 2011. (*See* Reply Declaration of Matthew McKendry, filed herewith, ¶¶ 3-4.)

this requisite showing, Plaintiff himself supplied a ***non***-discriminatory motivation, and the record otherwise is devoid of any facts that suggest Torre really had unlawful motives.

### a. Plaintiff Failed To Establish That Torre Acted With Discriminatory Animus.

As Plaintiff pled in all three iterations of his Complaint, "Torre has a history of animosity towards Hernandez stemming from Torre's time as manager of the New York Yankees" related to a disputed call. (Dkt. 1 ¶¶ 34-37; Dkt. 35 ¶¶ 34-37; Dkt. 123 ¶ 153.) Plaintiff then expressly admitted in his deposition that he lacks any evidence that Torre's alleged dislike was motivated by unlawful discrimination. (Pl. Tr. 24:6-13, 28:21-29:18.) Now, he attempts to plug that gaping hole in his case by blaming an alleged lack of access to documents during discovery as the reason for his failure to adduce any evidence of discrimination. (Pl. Br. at 35.) That is nonsensical. To be sure, if Plaintiff reasonably believed that confidentiality designations hindered his ability to prosecute his claims on this most critical issue, it was incumbent on him to raise that issue with the Court at the time, and certainly before dispositive motion practice. *Griffin v. TNT Int'l Express*, No. 05-cv-10475 (PKC), 2008 WL 697680, at \*5-6 (S.D.N.Y. Mar. 12, 2008) (rejecting plaintiff's discovery concerns raised for the first time in summary judgment briefing). Moreover, Plaintiff could have supplemented his claims of personal non-discriminatory animus when he amended his complaint in November 2019, after fact discovery had concluded, but failed to do so. In any case, Plaintiff has not placed any evidence before the Court that purports to refute his admission that Torre's dislike of him was ***not*** motivated by unlawful discrimination.

Plaintiff's reliance on the employment experiences of other minority umpires also fails as a matter of law to show that Torre's real reasons concerning Hernandez were discriminatory. (Pl. Br. at 35.) *See Bailey v. Synthes,* 295 F. Supp. 2d 344, 356–57 (S.D.N.Y. 2003); *Young v. Pitney Bowes, Inc.*, No. 03-cv-1161 (PCD), 2006 WL 726685, at \*20 n.20 (D. Conn. Mar. 21, 2006).

That attempt to suggest Torre had an anti-Hispanic animus is especially unavailing here because the undisputed record evidence is that Torre selected a Hispanic umpire on multiple occasions for the same position Plaintiff sought. (Counterstatement ¶¶ 203-204, 216.) The number of times Torre rejected Plaintiff's candidacy is equally insufficient. (Pl. Br. at 34.) *See Jimenez v. City of N.Y.*, 605 F. Supp. 2d 485, 523 (S.D.N.Y. 2009).[16] Plaintiff was rejected on each occasion because the issues that disqualified him in the first instance were never improved. (Torre Tr. 85:7-86:3, 130:22-131:11; Torre Decl. ¶¶ 19-28, 30-32, 36-37, 40-42.)

In a last-ditch effort to tag Torre with unlawful animus, Plaintiff blatantly mischaracterizes the record by suggesting that Torre is indifferent to diversity. (Pl. Br. at 38.) Torre said no such thing. To the contrary, Torre testified that he is aware of MLB's diversity policy and that it applies to him, (Torre Tr. 26:3-17), and it ensures that "it's a level playing field." (Torre Tr. 27:7-28:5.)[17]

### b. Plaintiff's Criticisms Of MLB's Evaluations Fail To Demonstrate That Discrimination Was The Real Reason.

Even if Hernandez's unsupported belief that the unimportant factors of seniority and Field Evaluation Forms was relevant, there is no evidence that MLB's consideration of these factors was a pretext for discrimination. To the contrary, the undisputed evidence is that Torre did not review Field Evaluation Forms **for any umpire** when making crew chief and World Series decisions because he did not believe those forms to be probative of the specific qualifications he deemed important for those positions. (Counterstatement ¶ 74; Torre Tr. 35:18-23, 191:18-25.) There is

---

[16] Plaintiff's reliance on *Shah v. MTA New York City Transit Authority*, No. 12-cv-4276 (ERK) (RLM), 2015 WL 4139293 (E.D.N.Y. July 9, 2015), is misplaced. There, a qualified employee had been rejected from "nearly 30 positions in total," and even that provided only "limited support" for plaintiff's claims. *Id.* at *21. Here, by sharp contrast, Plaintiff is not qualified, has well-documented performance issues and relies on only four rejections. (Pl. Br. at 34.)

[17] Torre did say that the diversity policy does not affect his job with respect to **hiring** Major League umpires specifically (a claim not at issue in this case that concerns promotion and World Series decisions) because those decisions are based on recommendations from supervisors responsible for observing minor league umpires, and Torre does not observe minor league umpires. (Torre Tr. 26:18-27:6.)

not a scintilla of evidence that this explanation is false, or that Torre's disregard of these forms was motivated by discrimination. In addition, there is no evidence that Torre weighed seniority differently for Hernandez or that he did so because of his protected status. In fact, Torre routinely promoted umpires to crew chief over white applicants with greater seniority, and appointed World Series umpires – including Marquez on multiple occasions – over several of the most senior white umpires.[18] (Dkt. 179 ("McKendry Decl.") ¶¶ 19-25.) Plaintiff is completely silent on all of these undisputed facts although they destroy the central assumption of his claim.

Hernandez's assertion that MLB "artificially deflat[es]" Plaintiff's performance by issuing year-end evaluations that encompass more than the comments in Field Evaluation Forms is equally devoid of merit. (Pl. Br. at 21, n.10.) While Hernandez's year-end evaluations are broader in scope than the fraction of games summarized in Field Evaluation Forms, the undisputed evidence is that this is true for all umpires – as the collectively-bargained year-end review procedures expressly contemplate. (*See* Pl. Ex. 12, Dkt. 142-13, at DEF1450; Counterstatement ¶¶ 29, 33, 41; Woodfork Tr. 85:14-87:17.) That year-end evaluations are not limited to Field Evaluation Forms are not "inaccuracies" as Plaintiff erroneously claims. (*See* Dkt. 161 ("Daubert Br."), at 18-20.) But even if Plaintiff's year-end evaluations are deemed to be inaccurate on the asserted ground that they considered more than information from Field Evaluation Forms, (Pl. Br. at 25), Plaintiff's suggestion that such inaccuracies are a pretext for discrimination is definitively foreclosed by the fact that neither Plaintiff nor his so-called "expert" compared the reviews of minority umpires to a control group to see whether the same alleged inaccuracies exist for non-

---

[18] Plaintiff's claims that he was "on track" to be selected for the 2015 World Series until Commissioner Manfred allegedly intervened (Pl. Br. at 26) is pure conjecture. There is no evidence that the Commissioner ever intervened in any decision affecting Hernandez, and the undisputed evidence actually negates that claim. (Woodfork Tr. 155:15-156:18; Manfred Tr. 55:4-20.) More importantly, however, even if the Commissioner did intervene, there is absolutely no evidence that he did so because of Hernandez's race or national origin.

minority umpires. (MLB Br. at 29; Daubert Br. at 15-17.) Plaintiff again fails to address this fatal

defect. *See Johnson*, 39 F. Supp. 3d at 324 n.10.

<blockquote>

c. *Plaintiff's Reliance On Marsh's Testimony And A 2013
PowerPoint Fail To Establish That Torre Was Motivated By
Discrimination.*

</blockquote>

Because there is no evidence whatsoever that Torre, the undisputed decision-maker, was

motivated by discrimination, Plaintiff instead relies on comments unrelated to Hernandez that

Marsh made during his deposition. Plaintiff completely ignores all of the legal authority cited in

MLB's opening brief that comments by non-decision-makers such as Marsh outside of the

decision-making process cannot form the basis of a discrimination claim. (MLB Br. at 38, n.21.)

Plaintiff still fails to draw *any* nexus, much less a "sufficiently strong nexus," between Marsh's

deposition comments and the employment decisions he challenges, rendering them irrelevant.

*Lively v. WAFRA Inv. Advisory Grp., Inc.*, No. 19-cv-3257 (JPO), 2020 WL 4038350, at *5

(S.D.N.Y. July 17, 2020). In any event, neither comment on which Plaintiff relies is evidence of

discrimination with respect to any decision at issue in this case. First, Marsh ████████

███████████████████████████████████████████████████████████

███████████████ And second, he simply observed that the demanding schedule and

low pay in the minor leagues was a disincentive to *all* students in umpiring schools – including the

African American students MLB pursued in an effort to improve diversity in hiring. His comments

are irrelevant for that additional reason. *See Shaw v. McHugh*, No. 12-cv-6834 (CS), 2015 WL

1400069, at *10 (S.D.N.Y. Mar. 26, 2015), *aff'd*, 641 F. App'x 95 (2d Cir. 2016).

Plaintiff's claim that Marsh encouraged Fieldin Culbreth to apply for crew chief in 2013

also does not raise a triable issue on pretext because (i) Marsh was not a decision-maker so he

could not have handpicked anyone for crew chief, (Counterstatement ¶¶ 50, 58); (ii) Plaintiff does

not even allege that Marsh encouraged Culbreth to apply because he is white; and (iii) even if

Culbreth was encouraged to apply, he joined an applicant pool that consisted of twelve other white applicants who were rejected.  (Pl. Ex. 105, Dkt. 142-107; McKendry Decl., Ex. E.)  *See Augustine v. Cornell Univ.*, No. 14-cv-7807 (JPO), 2018 WL 1474402, at *6 (S.D.N.Y. Mar. 26, 2018) (rejecting argument that promoted employee being "handpicked" established pretext), *aff'd sub nom*, *Brown v. Cornell Univ.*, 758 F. App'x 226 (2d Cir. 2019).

Plaintiff's reliance on a 2013 PowerPoint similarly is misplaced.  (Pl. Br. at 36-37.)  Far from the importance Plaintiff attributes to this document, it is simply a summary of demographics at that point in time that focuses on diversity in ***hiring*** – which is ironic because Plaintiff had already been hired.[19]  Plaintiff's claim that MLB did "next to nothing" (Pl. Br. at 37) in minority hiring is as flatly false as it is irrelevant.  MLB has been unwavering in its commitment to improve diversity in the umpiring ranks, and the undisputed record evidence confirms all of MLB's extensive efforts to meet that objective.  (Woodfork Tr. 209:23-211:7; Marsh Tr. 22:9-14, 67:22-68:10, 102:3-17; Manfred Tr. 14:8-16, 60:10-21.)  While Plaintiff may not be satisfied with the results of those efforts, his claim that MLB simply turned a blind-eye to diversity issues lacks any evidentiary support and should be rejected.

## II.  PLAINTIFF FAILED TO RAISE A TRIABLE ISSUE ON DISPARATE IMPACT.

Plaintiff's disparate impact claim fails as a matter of law for multiple independent reasons: (i) there is no statistically significant disparity; (ii) he failed to identify a specific employment policy or practice; (iii) even if he had, there is no evidence that the alleged policy caused any disparity; and (iv) he failed to proffer a reasonable alternative policy that would meet MLB's legitimate business needs.  Plaintiff completely ignores all of the authority cited in MLB's opening

---

[19] It is undisputed that MLB does not make hiring or other employment decisions for minor league umpires and that MLB's ability to hire diverse umpires is based on the umpire pool in the highest ranks in the minor leagues.  (Dkt. 175 ¶ 15.)  As noted in MLB's opening brief, MLB's hiring practices are irrelevant because he has failed to show any link between those practices and the challenged decisions here. (MLB Br. at 38-39, citing *Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 394–95 (S.D.N.Y. 2016).)  Plaintiff did not respond.

brief that these failures compel dismissal of his disparate impact claims, and continues to believe he can survive summary judgment based on bottom line numbers alone. He failed to offer any expert testimony of his own or rebut MLB's expert evidence establishing the complete ***absence*** of a statistically significant adverse impact – the *sine qua non* of a disparate impact claim.

### A. Plaintiff Failed To Present Evidence Of A Statically Significant Disparity.

As MLB demonstrated through unrefuted statistical evidence, there is no statistically significant disparity between the crew chief promotion and World Series selection rates for minority and non-minority umpires. (Martin Decl. ¶ 16; Martin Report ¶¶ 30-33.) That is fatal to Plaintiff's disparate impact claim. *Eatman v. United Parcel Serv.*, 194 F. Supp. 2d 256, 267 (S.D.N.Y. 2002); *Teasdale v. City of N.Y.*, No 08-cv-1684 (KAM), 2013 WL 5300699, at *9 (E.D.N.Y. Sept. 18, 2013), *aff'd*, 574 F. App'x 50 (2d Cir. 2014). Plaintiff fails to offer any statistical evidence of his own, expert or otherwise, in an attempt to salvage his claims. Instead, he suggests that he is relieved altogether from showing statistical significance because the sample size here is small. (Pl. Br. at 43-44.) Plaintiff offers no support for this specious proposition because there is none. To the contrary, courts routinely reject reliance on bottom line numbers drawn from small samples. *See Eatman*, 194 F. Supp. 2d at 267; *Jackson v. Univ. of New Haven*, 228 F. Supp. 2d 156, 165-66 (D. Conn. 2002).[20]

Plaintiff's suggestion that he is excused from showing statistical significance due to the small sample size is particularly wrong-headed given MLB performed statistical analyses using

---

[20] Plaintiff suggests that the Court can look to other evidence of ***intentional*** discrimination because of the small sample size at issue. (Pl. Br. at 46-47). Leaving aside there is no such evidence here, he misinterprets *Waisome v. Port Authority of New York & New Jersey*, 948 F.2d 1370 (2d Cir. 1991). There, the court held it was appropriate to for the plaintiff to supplement statistics drawn from small sample sizes ***with related statistics from larger samples***. *Id.* at 1379-80. *See Martinez v. Conn. Dep't of Corr.*, 125 F. Supp. 3d 397, 412 (D. Conn. 2015) (rejecting plaintiff's attempt to bolster his statistical sample with "anecdotal reports of past intentional discrimination" as inconsistent with *Waisome*). *United States v. City of Yonkers*, 609 F. Supp. 1281 (S.D.N.Y. 1984) is inapposite because the employer actually caused the small sample size by limiting the number of female applicants. *Id.* at 1289-90. There is no such allegation here.

the Fisher's Exact Test, the preferred test for small samples. (Martin Decl. ¶ 13; Martin Report ¶ 29; Martin Tr. 25:15-22, 39:7-15.) Plaintiff does not dispute the propriety of this test or the fact that courts have expressly relied on it in dismissing disparate impact claims. (MLB Br. at 43.)[21]

Rather, Plaintiff purports to satisfy his burden based solely on the so-called "inexorable zero," which he claims "establishes an inference of discrimination." (Pl. Br. at 46.) As discussed in greater detail above, it indisputably is impossible to draw any inference of discrimination based on the statistics here. *See supra* at 10. In any event, Plaintiff's assertion is a non-sequitur because an inference of discrimination is not an element of a disparate impact claim; he ***must*** show a statistically significant disparity based on the relevant labor pool. That is precisely why courts repeatedly have held that reliance on the "inexorable zero" is insufficient as a matter of law for disparate impact. *See Capruso v. Hartford Fin. Servs. Grp., Inc.*, No. 01-cv-4250 (RLC), 2003 WL 1872653, at *6 (S.D.N.Y. Apr. 10, 2003); *Deleon v. Putnam Valley Bd. of Educ.*, No. 03-cv-10274 (CM), 2006 WL 236744, at *9-10 (S.D.N.Y. Jan. 26, 2006).[22] Indeed, Plaintiff fails to cite a single case where a court held the inexorable zero sufficed for disparate impact. His failure to proffer any statistical evidence dooms his claims.

### B. Plaintiff Failed To Isolate A Specific Policy Or Practice.

Plaintiff has never isolated a specific policy or employment practice, as required. *Sweeney v. U.S. Postal Serv.*, No. 08-cv-4417 (ARL), 2013 WL 5744490, at *14 (E.D.N.Y. Oct. 23, 2013).

---

[21] Although Plaintiff purports to criticize MLB's statistical analysis for allegedly using an incorrect number of umpires eligible for the World Series, (Pl. Br. at 43-44), he fails to offer any evidence as to how this supposed error affected Dr. Martin's conclusions and he offers no alternative calculations of his own. In any case, Dr. Martin's tests accounted for the fact that not all umpires are eligible for the World Series in a given year. (*See* Martin Decl. ¶¶ 18-21; Martin Report ¶ 26 n. 23, ¶¶ 32-33.)

[22] *Victory v. Hewlett-Packard Co.*, 34 F. Supp. 2d 809 (E.D.N.Y. 1999), (*see* Pl. Br. at 45), is not to the contrary. The plaintiff there supplemented bottom line numbers with expert statistical evidence in the form of the Fisher's Exact test showing that the absence of female promotions in the employee population had only a five percent chance of occurring randomly, and even that expert evidence enabled her to survive summary judgment only by a "slim margin." *Id.* at 824. Here, by sharp contrast, the undisputed statistical evidence confirms the absence of a statistically significant disparity, and Plaintiff has done nothing to attempt to show otherwise or place his bottom line numbers in any context.

Instead, he has lodged a wholesale attack against MLB's promotion and selection processes generally, suggesting it is enough that those processes are "subjective." (Pl. Br. at 39-40.) But merely alleging that an employer's promotion process is "subjective" is insufficient. *See Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F. Supp. 2d 139, 147-48 (S.D.N.Y. 2001); *see also Arnold v. Sessions*, No. 18-cv-553 (KAW), 2018 WL 6728008, at *7 (N.D. Cal. Dec. 21, 2018).

Plaintiff relies extensively on *United States v. City of New York*, 713 F. Supp. 2d 300 (S.D.N.Y. 2010). (Pl. Br. at 40.) But *City of New York* did not even address disparate impact. *See id.* at 305-06. Plaintiff's reliance on *Banks v. City of Albany*, 953 F. Supp. 28 (N.D.N.Y. 1997) and *Martin v. Coinmach Corp.*, No. 15-cv-8137 (AJN) (SN), 2016 WL 6996182 (S.D.N.Y. Nov. 29, 2016) also do not help him. In *Banks*, the court found that the selection of candidates based on the decision-maker's relationship with their families was a sufficiently specific policy. *Banks*, 953 F. Supp. at 33-34. And *Martin* involved a "standardless merit increase policy." *Martin*, 2016 WL 6996182, at *5-6. Here there are standards, as Hernandez expressly admitted that leadership and situation management are "valid criteria for a crew chief." (Pl. Tr. Day 2 160:5-11.)

### C. Plaintiff Failed To Show A Causal Connection.

As noted in MLB's opening brief, Hernandez has not demonstrated any causal connection between MLB's consideration of leadership and other so-called subjective factors and a disparity in the promotion and selection rates of minority umpires. Hernandez's opposition brief remains silent on this essential element. While there is ample undisputed evidence in the record that Hernandez's deficient leadership ability and poor situation management skills have been the principal impediments to *his* career advancement, there is not a shred of evidence that these factors affected any other minority umpire. In fact, the undisputed record evidence is that MLB relied on

entirely different legitimate business considerations in connection with employment decisions of other minority umpires.  (Martin Report ¶¶ 56, 57, 61.)[23]

### D.  MLB Has Demonstrated Business Necessity.

Even if Hernandez has established a prima facie case, MLB has clearly demonstrated that skills such as leadership and situation management are essential for crew chiefs and World Series umpires, a judgment that is entitled to "considerable deference."  *Ogodor v. City of N.Y.*, No. 98-cv-5353 (LAK) (RLE), 2001 WL 210192, at *6 (S.D.N.Y. Feb. 26, 2001) (internal citation omitted), *report and recommendation adopted*, ECF No. 29 (S.D.N.Y. Mar. 14, 2001).

Hernandez's sole counterargument is that "MLB does not cite to any evidence in the record" to support its need.  (Pl. Br. at 48.)  That is demonstrably false.  Indeed, the Court need look no further than Plaintiff's own testimony, which MLB cited (MLB Br. at 47), where he admitted these are valid considerations.  (Pl. Tr. Day 2 160:5-11; *see also* Counterstatement ¶ 67.) And the record is replete with additional evidence regarding the importance of these attributes for crew chiefs and World Series games.  (*See*, *e.g.*, Torre Tr. 139:16-140:7, Torre Decl. ¶¶ 15-16, 20, 29, 34.)[24]

### E.  Plaintiff Failed To Show An Alternative Policy Or Practice.

The burden returns to the plaintiff "to show that a different test or selection mechanism would have served the employer's legitimate interests 'without a similarly undesirable racial effect.'"  *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 274 (2d Cir. 2012), *citing Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 998 (1988)).  Plaintiff proffers two so-called "alternative"

---

[23] Plaintiff also failed to respond to the undisputed fact that Torre's selection of Marquez for multiple World Series assignments precludes a causal connection between the selection criteria and its impact on minority umpires.  (MLB Br. at 44 n.24.)

[24] Contrary to Hernandez's suggestion, no expert is necessary to establish a business necessity.  *See E.E.O.C. v. Sephora USA, LLC*, 419 F. Supp. 2d 408, 416-17 (S.D.N.Y. 2005).

policies.  First, Plaintiff claims that MLB could "view the entire body of an umpire's work" instead of focusing on leadership.  (Pl. Br. at 49.)  Second, he states MLB could require its executives to "collaborate and reach a consensus."  (*Id.*)  Plaintiff completely fails to articulate exactly how either alternative would (i) serve MLB's stated need; or (ii) eliminate the alleged disparity.  *See Lopez v. City of Lawrence, Mass.*, 823 F.3d 102, 121 (1st Cir. 2016).  Plaintiff's insistence that this Court endorse any deviation from what MLB genuinely believes is the most effective way to select crew chiefs and World Series umpires is precisely the sort of second-guessing of an employer's business decisions courts steadfastly avoid.  *Watson*, 487 U.S. at 999; *see also O'Leary*, 2007 WL 2244483, at *7.[25]

## **CONCLUSION**

For the foregoing reasons, as well as the reasons stated in MLB's Cross-Motion For Summary Judgment, this Court should grant MLB's Cross-Motion For Summary Judgment on all claims and deny Plaintiff's Motion for Partial Summary Judgment in its entirety.

---

[25] In its moving brief, MLB described each separate and discrete employment decision that is untimely.  (MLB Br. at 16-17.)  Plaintiff's concession that the continuing violation theory does not salvage his untimely claims under federal and New York State law (Pl. Br. at 2-3) also compels dismissal of his time-barred New York City law claims.  *See, e.g., Doe v. Anonymous Inc.*, No. 18-cv-10924 (PAC), 2019 WL 2616904, at *4 (S.D.N.Y. June 25, 2019) (federal standard applies under the NYCHRL); *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (same).

Dated: New York, New York
August 14, 2020

PROSKAUER ROSE LLP

By:    /s/ *Neil H. Abramson*
Neil H. Abramson, Esq.
Adam M. Lupion, Esq.
Rachel S. Philion, Esq.
Rachel S. Fischer, Esq.

Eleven Times Square
New York, New York 10036-8299
Phone: 212.969.3000
Fax: 212.969.2900
nabramson@proskauer.com
alupion@proskauer.com
rphilion@proskauer.com
rfischer@proskauer.com

*Attorneys for Defendants*
THE OFFICE OF THE
COMMISSIONER
OF BASEBALL and MAJOR
LEAGUE BASEBALL BLUE, INC.