Kevin L. Murphy (*pro hac vice*)
J. Jeffrey Landen (*pro hac vice*)
Nicholas R. Gregg (*pro hac vice*)
MURPHY LANDEN JONES PLLC
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY  41017
(859) 360-1123

&

Nicholas J. Zaita
LEWIS DIBIASI ZAITA & HIGGINS
420 Lexington Avenue, Suite 300
New York, NY  10107
(212) 772-0943

*Attorneys for Plaintiff Angel Hernandez*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL HERNANDEZ<br><br>     PLAINTIFF,<br><br>V.<br><br>THE OFFICE OF THE COMMISSIONER OF BASEBALL AND MAJOR LEAGUE BASEBALL BLUE, INC.,<br><br>     DEFENDANTS. | CASE NO: 18-CV-09035-JPO-GWG |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO ALTER, AMEND OR
VACATE THE COURT'S MARCH 31, 2021 OPINION AND ORDER**

## TABLE OF CONTENTS

I.    **Background** ........................................................................................................1

II.   **Analysis** ...........................................................................................................2

      A.   *Fed. R. Civ. P. 59(e) Standard* ..................................................................2

      B.   *The Court's Ruling on Plaintiff's Disparate Impact Claim* .........................3

           i.    The Inexorable Zero ...................................................................3

           ii.    The Small Sample Sizes from 2011-2016 in the Case at Bar Render MLB's Traditional Statistical Analysis Unreliable, Especially in Light of the Inexorable Zero ...................................................................5

           iii.   The Court Must Consider the Legal Impact of Whether the Small Sample Size from 2011-2016 Was a Result of MLB's Own Conduct ..........................7

           iv.   The Court's Ruling Creates Improper Incentives That Are Inconsistent with the Law and Policy of the Second Circuit ..............................8

           v.    Applicable Second Circuit Case Law Does Not Support Granting MLB's Cross-Motion for Summary Judgment as to Plaintiff's Disparate Impact Claim ...................................................................9

           vi.   MLB Failed to Prove Job-Relatedness/Business Necessity ...........................13

           vii.  Plaintiff's Proposed Alternative Practices Were Sufficient to Create Genuine Disputes of Material Fact ..................................................15

      C.   *The Court's Improper Assumption of the Role of Factfinder* ....................16

III.  **Conclusion** .....................................................................................................18

# **TABLE OF AUTHORITIES**

**Cases**

*Banks v. City of Albany*, 953 F. Supp. 28, 36 (N.D.N.Y. 1997) ........................................13, 14, 15

*Brennan v. City of White Plains*, No. 97 CIV. 2709 (RWS), 1998 WL 75692, at *7 (S.D.N.Y. Feb. 20, 1998) ...........................................................................................................................8

*Caban v. City of New York*, No. 11 CIV. 3417 SAS, 2012 WL 5992088, at *2 (S.D.N.Y. Nov. 30, 2012) ...............................................................................................16

*Capaci v. Katz & Besthoff, Inc.*, 711 F.2d 647, 662 (5th Cir. 1983)........................................5, 6

*Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, No. 14 CIV. 1370 ER, 2015 WL 5439217, at *3 (S.D.N.Y. Sept. 14, 2015) ....................................................2

*E.E.O.C. v. Andrew Corp.*, No. 81 C 4359, 1989 WL 32884, at *13 (N.D. Ill. Apr. 3, 1989)..............5, 7

*Fisher v. Mermaid Manor Home for Adults, LLC*, 192 F. Supp. 3d 323, 327 (E.D.N.Y. 2016).................16

*Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1015 (2d Cir. 1980) ....................................4, 6, 13

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S. Ct. 1943, 2 L. Ed. 25 396 (1977)............................................................................................4, 6

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ................................................16

*MacLennan v. Am. Airlines, Inc.*, 440 F. Supp. 466, 472 (E.D. Va. 1977)...................................13

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 113 (2d Cir. 1992) .....................17

*Martin v. Coinmach Corp.*, No. 15-CV-8137 (AJN)(SN), 2016 WL 6996182, at *6 (S.D.N.Y. Nov. 29, 2016)..............................................................................15

*Oakes v. Astrue*, No. 5:06-CV-332 LEK/VEB, 2009 WL 10212506, at *1 (N.D.N.Y. June 30, 2009)..2

*United States v. City of New York*, 713 F. Supp. 2d 300, 318-319 (S.D.N.Y. 2010) .........4, 8, 9, 10, 11, 12

*United States v. City of Yonkers*, 609 F. Supp. 1281, 1289 (S.D.N.Y. 1984) ..................................6

*Victory v. Hewlett-Packard Co.*, 34 F. Supp. 2d 809, 823 (E.D.N.Y. 1999) ....................................4

*Waisome v. Port Auth. of New York & New Jersey*, 948 F.2d 1370, 1379 (2d Cir. 1991) ..............5, 6, 9, 10

*Woodson v. Pfizer, Inc.*, 34 F. App'x 490, 492 (7th Cir. 2002) ..................................10, 11

**Rules**

Fed. R. Civ. P. 59(e).................................................................................................... 1, 2

Plaintiff Angel Hernandez ("Plaintiff"), by and through counsel and pursuant to Fed. R. Civ. P. 59(e), hereby respectfully submits his Motion to Alter, Amend or Vacate the Court's March 31, 2021 Summary Judgment Order (the "Motion").  For the reasons set forth more fully below, Plaintiff's Motion should be granted, and the Court should alter, amend or vacate its March 31, 2021 Opinion and Order (the "Summary Judgment Order") as requested by the instant Motion, thereby permitting Plaintiff's discrimination claims to proceed to a jury.

I.    **Background**

Plaintiff first brought claims for disparate treatment discrimination against Defendants The Office of the Commissioner of Baseball and Major League Baseball Blue, Inc. (collectively, "MLB") on July 3, 2017.  Dkt. 1.  Following the transfer of the case to this Court, Plaintiff filed an amendment to his Complaint on November 27, 2019 to include claims for disparate impact discrimination against MLB.  Dkt. 123.  Ultimately, Plaintiff moved for partial summary judgment on his discrimination claims, requesting that the Court grant summary judgment for Plaintiff and find that he has established *prima facie* cases as to both his disparate treatment and disparate impact claims.  *See*, *e.g.*, Dkt. 138, 139.  MLB filed a cross-motion for summary judgment, seeking summary judgment in their favor on all claims.  *See*, *e.g.*, Dkt. 164, 165.  The parties then each filed additional briefs that were both in support of their original motions and in opposition to the opposing parties' motions.  *See*, *e.g.*, Dkt. 186, 193.

Following the completion of the parties' summary judgment briefing, the Court granted in full MLB's cross-motion for summary judgment and denied as moot Plaintiff's motion for summary judgment.  *See* Summary Judgment Order, Dkt. 197.  Plaintiff now files this Motion requesting that the Court alter, amend or vacate its Summary Judgment Order and allow Plaintiff's claims to proceed to trial.

## II.     Analysis

Plaintiff respectfully asserts that there are clear errors of law present in the Court's Summary Judgment Order.  For example, in its Summary Judgment Order, the Court relied on its interpretation of Seventh Circuit case law instead of relying on binding legal authority regarding the inexorable zero and discrimination cases involving small underlying sample sizes.  Additionally, while the Court acknowledged the existence of contradictory and/or unclear evidence on several material factual points raised in the parties' summary judgment briefing, the Court nevertheless substituted its own judgment for the judgment of the jury in finding that there were no genuine disputes of material fact and granting MLB summary judgment.  As the following analysis demonstrates, the clear errors of law present in the Court's Summary Judgment Order have resulted in manifest injustice to Plaintiff and require that the instant Motion be granted.

### A.      *Fed. R. Civ. P. 59(e) Standard*

Fed. R. Civ. P. 59(e) applies to motions to alter, amend or vacate a judgment, such as the instant Motion.  "A motion to alter or amend a judgment pursuant to Rule 59(e) may be based upon three possible grounds:  (1) an intervening change in the controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error of law or prevent manifest injustice." *Oakes v. Astrue*, No. 5:06-CV-332 LEK/VEB, 2009 WL 10212506, at *1 (N.D.N.Y. June 30, 2009) (citing *In re C-TC 9th Ave P'ship*, 182 B.R. 1, 3 (N.D.N.Y. 1995)); *see also Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, No. 14 CIV. 1370 ER, 2015 WL 5439217, at *3 (S.D.N.Y. Sept. 14, 2015). Plaintiff readily acknowledges that motions for reconsideration are not "vehicle[s] for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Dynamic Worldwide Logistics, Inc.*, 2015 WL 5439217 at *3.  Plaintiff's Motion does not seek to do any of those things, but instead addresses clear errors of law present in the Court's summary judgment order that need to be corrected to prevent manifest

2

injustice to Plaintiff.

       B.       *The Court's Ruling on Plaintiff's Disparate Impact Claim*

       In its Summary Judgment Order, the Court granted MLB summary judgment on Plaintiff's disparate impact claim on two primary bases.  First, the Court held that Plaintiff's reliance on the inexorable zero is misplaced due to the relatively small sample sizes at issue and the absence of traditional statistical significance as a result of those small sample sizes.  Second, the Court found that Plaintiff's proposed alternative practices are insufficient to "eliminate the disparity at issue."  But Plaintiff respectfully asserts that the Court's Summary Judgment Order contains clear errors of law, including that the Court failed to apply binding legal authority regarding the inexorable zero and/or disparate impact claims involving traditional statistical analyses of small sample sizes.  Were the Court's Summary Judgment Order a true depiction of the law, employers such as MLB with small applicant pools for particular types of job categories would be immune from any and all disparate impact discrimination claims.  Moreover, Plaintiff's proposed alternative practices *are* sufficient to "eliminate the disparity at issue" inasmuch as they remove the subjectivity inherent in MLB's current promotion policies and take that decision out of the hands of Joe Torre as the sole decisionmaker.  *See* § B(vii), *infra*.  For those reasons, and the reasons more fully stated below, Plaintiff's Motion must be granted and those clear errors of law must be remedied, lest Plaintiff suffer manifest injustice.

       i.       <u>The Inexorable Zero</u>

       Though the legal authority regarding the inexorable zero is discussed at length in Plaintiff's summary judgment briefing, the Court's failure to follow key, binding precedents requires that that legal authority briefly be reviewed here as background for the analysis set forth below.[1]

---

[1] The following legal authority was discussed at length specifically in Plaintiff's Memorandum in Support of his Motion for Partial Summary Judgment (Dkt. 139) and his Reply Memorandum in Support of his Motion for Partial Summary

The Supreme Court of the United States stated in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S. Ct. 1943, 52 L. Ed. 25 396 (1977), that "fine tuning of the statistics could not have obscured the glaring absence of minority line drivers.  As the Court of Appeals remarked, the company's inability to rebut the inference of discrimination came **not from a misuse of statistics** but from 'the inexorable zero.'"  *Id.* at n.1 (emphasis added).  Cases in this district have held that "zero is not just another number," and that "even in cases where there is a weak inference of an inexorable zero or scant evidence of other women who applied and were rejected, a court should consider that this lack of evidence may itself be attributable to the 'inexorable zero.'"  *United States v. City of New York*, 713 F. Supp. 2d 300, 318-319 (S.D.N.Y. 2010) (citing *Ortiz-Del Valle v. Nat'l Basketball Ass'n,* 42 F. Supp. 2d 334, 337-338 (S.D.N.Y. 1999)).  The United States District Court for the Eastern District of New York has similarly found that "evidence of the absence of a single minority employee being hired, labeled the 'inexorable zero,' would in and of itself support an inference of discrimination." *Victory v. Hewlett-Packard Co.*, 34 F. Supp. 2d 809, 823 (E.D.N.Y. 1999). The United States Court of Appeals for the Second Circuit (the "Second Circuit") has itself recognized that the inexorable zero supports an inference of discrimination, holding that "[d]espite evidence of some weaknesses in statistics, where they disclose a glaring absence of minority representation in the jobs at issue, the burden on the employer increases since 'fine tuning' of the statistics will not **rebut an inference of discrimination derived not from a misuse of statistics but from the inexorable zero**." *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1015 (2d Cir. 1980) (emphasis added).

In addition to these cases, most of which are binding legal authority on this Court, other courts across the country have acknowledged the legal impact of the inexorable zero in

---

Judgment and In Opposition to Defendants' Cross-Motion for Summary Judgment (Dkt. 186), which are incorporated herein by reference.

discrimination cases.  *See, e.g.*, *E.E.O.C. v. Andrew Corp.*, No. 81 C 4359, 1989 WL 32884, at *13

(N.D. Ill. Apr. 3, 1989); *Capaci v. Katz & Besthoff, Inc.*, 711 F.2d 647, 662 (5th Cir. 1983) (noting that

"courts have been particularly dubious of attempts by employers to explain away 'the inexorable

zero'").

ii.    The Small Sample Sizes from 2011-2016 in the Case at Bar Render MLB's Traditional Statistical Analysis Unreliable, Especially in Light of the Inexorable Zero

As the foregoing shows, courts have routinely recognized the inexorable zero, its legal

significance, and its relationship with traditional statistical analyses proffered by employers, including

(i) this district court, (ii) other district courts in the Second Circuit, (iii) the Second Circuit itself, and

(iv) the Supreme Court of the United States.  The Court acknowledged the existence of some of

these authorities in its Summary Judgment Order.  Yet the Court nevertheless chose not to apply

those legal authorities and principles to the case at bar when, in its Summary Judgment Order, the

Court determined that the significance of the inexorable zero was "less compelling" because "both

the pool of umpires and the number of available promotions are small." Summary Judgment Order,

Dkt. 197, Page 22 of 26.  Plaintiff respectfully submits that this conclusion was a clear error of law

by the Court.  Although reliance on statistically significant data is one way to establish an inference

of discrimination, that data is not reliable when the underlying sample sizes are small.  When that is

the case, the Court must look to other evidence, including the presence of the inexorable zero.

Plaintiff acknowledges that the sample sizes applicable to crew chief promotion decisions

from 2011-2016 (the time period relied on by MLB in its statistical analyses) are small.  But the fact

that the "pool of umpires" that forms the basis of MLB's statistical analysis is small is not something

that eliminates all genuine disputes of material fact such that granting summary judgment to MLB is

proper on Plaintiff's disparate impact claim.

As stated by the Second Circuit in *Waisome v. Port Auth. of New York & New Jersey*, 948 F.2d

1370, 1379 (2d Cir. 1991), and as the Court itself quoted in its Summary Judgment Order, "where statistics are based on a relatively small number of occurrences, the presence or absence of statistical significance is not a reliable indicator of disparate impact." *Id.* at 1379.  The *Waisome* court further stated that "[f]or smaller samples the value of the standard deviation rule drops off . . . and gives emphasis to Mark Twain's comment that there are 'lies, damned lies and statistics.'" *Id.  See also United States v. City of Yonkers*, 609 F. Supp. 1281, 1289 (S.D.N.Y. 1984) (citing *Bos. Chapter, N.A.A.C.P., Inc. v. Beecher*, 504 F.2d 1017, 1019–21 (1st Cir. 1974)).  As this binding legal authority demonstrates, in cases such as this where the traditional statistical analysis is premised on small sample sizes, the weight afforded to that statistical analysis should be minimal, if any.  Instead, in the circumstances such as those presented here, the Court must look to other evidence that may support the disparate impact claim.  *See, e.g., City of Yonkers*, 609 F. Supp. at 1289.  Moreover, statistical analyses such as those proffered by MLB and relied on by the Court should not be relied on when the inexorable zero is present, as it indisputably is here.  *See, e.g., International Brotherhood of Teamsters v. United States*, 431 U.S. at 324; *Grant v. Bethlehem Steel Corp.*, 635 F.2d at 1015. *See also Capaci*, 711 F.2d at 662.

As a result, the Court was required to find MLB's statistical analysis—premised on the "standard deviation" rule the Second Circuit determined in *Waisome* to be of little value in cases with small sample sizes—to "not be a reliable indicator of disparate impact." *Waisome*, 948 F.2d at 1379. The Court also is required to look to other evidence supporting Plaintiff's claims as a result of the unreliability of that statistical analysis.  For example, the Court needed to consider the historical presence of the inexorable zero—that is, that from 2000-2016, MLB did not promote a single minority umpire to crew chief, and that MLB has only promoted one minority umpire to crew chief

in its entire history.[2]  Additionally, the legal authority discussed herein mandates that the Court give

the inexorable zero *more* weight, not less, due to the unreliability of MLB's traditional statistical

analysis.  The Court's decision to rely on MLB's traditional statistical analysis despite (i) the small

sample size underlying that analysis, and (ii) the historical and then on-going presence of the

inexorable zero, was a clear legal error as a result of which this Motion should be granted.

iii.    The Court Must Consider the Legal Impact of Whether the Small Sample
        Size from 2011-2016 Was a Result of MLB's Own Conduct

Respectfully, the Court also failed to assign appropriate significance to the fact that the small

sample sizes relied on by MLB were themselves caused by MLB's own "diversity problem."  As the

Court correctly found in its Summary Judgment Order, "[a]s MLB recognized internally, during the

period at issue in this case it employed an **unfortunately low proportion** of minority umpires."

Summary Judgment Order, Dkt. 197, Page 22 of 26 (emphasis added).  The Court went on to

determine that "[i]ronically, the case for the 'inexorable zero' in this non-promotion case might be

stronger if MLB employed a greater number of minority umpires, or if the promotion pool were

large enough to lend the 'inexorable zero' theory more weight."  *Id.*  The Court even went so far as

to state that "the fact that MLB promoted few minority umpires **flows from MLB's 'diversity**

**problem'** . . ."  *Id.* at Pages 22-23 of 26 (emphasis added).  Despite these multiple

acknowledgements by the Court regarding the causal role MLB's "diversity problem" played in the

small sample sizes underlying MLB's statistical analysis, the Court ruled that Plaintiff's "'inexorable

zero' argument" was "inert" because of those small sample sizes.

In light of the binding legal authority recognizing the application of the inexorable zero

---

[2] Though the Court points to that single minority crew chief as "relevant" to its summary judgment decision, the
presence of a single minority being promoted in 150 years it not enough to eliminate genuine disputes of material fact as
to Plaintiff's disparate impact claim.  *See, e.g., Andrew Corp.*, 1989 WL 32884 at *13 ("courts, when confronted with Title
VII defendants who have employed or **promoted zero or near zero minorities** or women, have avoided permitting
labor market and statistical analyses to obscure the discrimination inherent in the 'inexorable zero'") (emphasis added).

7

arguments in the context of small sample sizes, it is clear legal error for the Court to nullify that principle by declaring it "inert."  The Second Circuit has stated that "even in cases where there is a weak inference of an inexorable zero or scant evidence of other women who applied and were rejected, **a court should consider that this lack of evidence may itself be attributable to the 'inexorable zero.'"** *City of New York*, 713 F. Supp. 2d at 318 (citing *Ortiz-Del Valle*, 42 F. Supp. 2d at 337-338) (emphasis added); *see also Brennan v. City of White Plains*, No. 97 CIV. 2709 (RWS), 1998 WL 75692, at *7 (S.D.N.Y. Feb. 20, 1998) ("It is conceivable that a workplace **might lack other protected class members precisely as a result of a discriminatory policy** followed by defendant") (emphasis added).  In addition, the Summary Judgment Order does not recognize that MLB's role in its "unfortunately low proportion of minority umpires"—the primary cause of the sample size issue present during the period 2011-2016—was itself evidence of a discriminatory MLB policy.  This was also a clear legal error that warrants granting the relief Plaintiff seeks.

    iv. <u>The Court's Ruling Creates Improper Incentives That Are Inconsistent with the Law and Policy of the Second Circuit</u>

   If the Court's Summary Judgment Order were a true reflection of Second Circuit law, the resulting reality would be that, so long as an employer keeps the relevant employee pools and the number of minority employees therein small enough, the employer could never be found liable for disparate impact discrimination regardless of the impact of its policies on minorities.  That is not the law in this Circuit, nor should it ever be.  As discussed herein and in Plaintiff's summary judgment briefing, courts in the Second Circuit and elsewhere across the country have repeatedly looked beyond traditional statistical analyses to the inexorable zero and other evidence to determine whether a disparate impact claim is viable, especially doing so when the relevant sample sizes are small.

MLB—an employer who (i) did not promote a single minority umpire to crew chief from 2000-2016, and (ii) has only promoted one minority umpire to crew chief in its entire history—must not be permitted to avoid the consequences of their discriminatory policies by relying upon traditional statistical analyses in this instance.  Both the factual circumstances before the Court and the applicable binding case law require that the Court look beyond the traditional statistical analyses that failed to provide a statistically significant result.  *Waisome*, 948 F.2d at 1379 ("where statistics are based on a relatively small number of occurrences, the presence or absence of statistical significance is not a reliable indicator of disparate impact").  Instead, the case law requires that the Court turn to other evidence, including the undeniable existence of the inexorable zero—after all, "zero is not just another number." *City of New York*, 713 F. Supp. 2d at 318.  Were the Court's Summary Judgment Order to stand, MLB's recognized "diversity problem" would be permitted to continue unabated. The Court committed clear legal error by departing from Second Circuit case law in the Summary Judgment Order.  That departure from Second Circuit principles is all the more improper because it rewards employers who employ fewer minorities with a *de facto* immunity from any disparate impact claims. Neither MLB nor any other employer should have an incentive to immunize itself from liability for discrimination by the simple expedient of hiring an "unfortunately low proportion of minorities" to begin with and then – paradoxically – placing reliance on the resulting small statistical percentage of minorities in its workforce as a legally effective excuse for failing to promote any of them to higher positions.

> v.    <u>Applicable Second Circuit Case Law Does Not Support Granting MLB's Cross-Motion for Summary Judgment as to Plaintiff's Disparate Impact Claim</u>

In its Summary Judgment Order, the Court cited to *Waisome*, 948 F.2d at 1370, for the proposition that "where statistics are based on a relatively small number of occurrences, the presence or absence of statistical significance is not a reliable indicator of disparate impact." *See*

Summary Judgment Order, Dkt. 197, Page 22 of 26.  Nevertheless, the Court stated—immediately after that quotation of *Waisome*—that "while the inexorable zero may be compelling in the case of a larger employer who has hired or promoted no minority candidates, it is less compelling in the present context, where both the pool of umpires and the number of available promotions are small." *Id.*  In so doing, the Court cited to *Woodson v. Pfizer, Inc.*, 34 F. App'x 490, 492 (7th Cir. 2002)*, and City of New York*, 713 F. Supp. 2d at 318.  But *Woodson* is a Seventh Circuit case and this Court's interpretation of *Woodson* is inconsistent with Second Circuit case law, including *Waisome*, and *City of New York*—properly applied—is consistent with *Waisome* and other Second Circuit case law.

Plaintiff respectfully asserts that the Court committed a clear error of law that resulted in manifest injustice to Plaintiff when it granted MLB's cross-motion for summary judgment and, in so doing, chose not to rely on the binding legal authority discussed by Plaintiff but instead relied on two cases, including dicta from a decision by the Seventh Circuit.  Neither of those cases are sufficient grounds for granting MLB summary judgment on Plaintiff's disparate impact claim.

First, the Court cites to *Woodson* in support of the proposition that the inexorable zero is "less compelling . . . where both the pool of umpires and the number of available promotions are small," and also in support of the proposition that, as explicitly stated in the Summary Judgment Order, the inexorable zero "require[es] a 'statistically large enough workforce'. . . to be relevant." Summary Judgment Order, Dkt. 197, Page 22 of 26 (citing *Woodson*, 34 F. App'x at 492).  But *Woodson*—in addition to being a Seventh Circuit case rather than a Second Circuit case—does not actually stand for either of those propositions.

In *Woodson*, the plaintiff argued the "flip side" of the "inexorable zero" by curiously asserting that because the employer hired all African-Americans, the employer somehow discriminated against African-Americans.  The *Woodson* court, in finding that the plaintiff's argument was "simply illogical," noted in dicta that "[u]nder the 'inexorable zero' test, [the Seventh Circuit] held that when

an employer with a statistically large enough workforce employs no African Americans, [the court] can infer that the employer intentionally discriminates against African Americans in its hiring decisions." *Id.* The *Woodson* court did not find that the inexorable zero is rendered irrelevant where small sample sizes are at issue, nor did the decision in *Woodson* turn on anything related to statistics. Additionally, the *Woodson* plaintiff's "illogical" argument regarding the "flip side" of the inexorable zero could not be more dissimilar from Plaintiff's claims here. In short, *Woodson*—which is not binding on this Court—is distinct from the instant case and does not provide a sufficient basis for finding that there are no genuine disputes of material fact as to Plaintiff's disparate impact claim.

The Court's reliance on *City of New York* would be proper if the Court were citing it in support of Plaintiff's position, but the Court's citation to that case as if it required a statistically significant pool of applicants is misplaced. The *City of New York* case actually contradicts this Court's conclusion. While the Court is correct that the *City of New York* court stated "a court cannot help but be circumspect where a municipal department in the country's largest city repeatedly selects only applicants of one sex for job vacancies . . .," the *City of New York* decision did not turn on the employer being from "the country's largest city." *City of New York*, 713 F. Supp. 2d at 317-318. Like MLB, the nation's largest municipality had numerous job vacancies relating to other types of positions – but a much smaller pool of applicants pertinent to the particular employment category at hand. Accordingly, the Court's analysis in the *City of New York* case was directed to the applicants for the specific employment category in question, rather than assessing the City's hiring patterns as a whole.

The actual analysis in *City of New York* unquestionably supports Plaintiff's claims in this case. The applicable numbers for each of the discrete hiring decisions that were the basis of the *City of New York* plaintiff's claims were not "the country's largest city" as a whole, but were instead applicant pools that were similar to the numbers MLB and the Court relied on at summary

11

judgment:

- From 1997-2002, the *City of New York* employer engaged in a provisional hiring scheme and ultimately hired thirteen men as Bridge Painters, while not hiring a single woman to that position.  *City of New York*, 713 F. Supp. 2d at 307.

- In 1997, the *City of New York* employer considered twenty-two male applicants and two female applicants for ten positions, interviewing seventeen of the male applicants and neither of the female applicants.  *Id.* at 311-312.

- In 1999, the *City of New York* employer received fourteen applications (twelve men and two women), interviewing twelve of the male applicants and only one female applicant for nine positions, and hiring only two.  *Id* at 312-313.

- In 2001, the *City of New York* employer received "resumes" from sixteen male applicants and one female applicant, interviewed eight male applicants and the one female applicant, and ultimately hired no one.  *Id.* at 314.

- In 2002, the *City of New York* employer "received approval to recruit five additional Bridge Painters," but did not interview or hire anyone due to budgetary constraints. *Id.*

Despite the relatively small samples sizes, the *City of New York* court went out of its way to state that the "case was litigated **without resort to statistical evidence** other than the elephant in the room—the incontrovertible fact that [the employer] has never hired a provisional female Bridge Painter."  *Id.* at 317 (emphasis added).  Just as Plaintiff has done in this case, the plaintiffs in *City of New York* did not attempt to provide statistical evidence in support of their claims when the applicant pools were too small to permit a statistically significant conclusion.  But, in *City of New York*, the court drew the proper conclusion that, even though the applicant pools were too small to permit any statistically significant conclusions, the "inexorable zero" was "still relevant."  *Id.* at 317-318.  The *City of New York* court therefore properly relied on the presence of the inexorable zero in finding for the plaintiff despite (i) the small sample sizes at issue, and (ii) the absence of traditional statistical analysis.

At least in the Second Circuit, and thus in the federal courts sitting in New York, a plaintiff

who litigates a disparate impact claim in the context of small applicant pools "without resort to statistical evidence" is not wasting his or her time. As a matter of law in this Circuit, small applicant pools that by their very nature do not permit statistically significant conclusions do not bar the plaintiff's claim. On the contrary, when that situation presents itself in the analytical decision tree, this Court – like the court in the *City of New York* case – must permit the plaintiff to rely on other evidence, including the inexorable zero, instead.

By determining that the absence of statistical evidence is fatal the Plaintiff's claim, and by refusing to permit Plaintiff to proceed to trial in reliance on the inexorable zero and other evidence in the record, the Court chose not to follow the binding legal authority from the Supreme Court of the United States, the Second Circuit, and the Southern District of New York itself. That determination is a clear legal error that has resulted in manifest injustice to Plaintiff, and this Motion should therefore be granted.

### vi.   MLB Failed to Prove Job-Relatedness/Business Necessity

MLB's cross-motion for summary judgment should likewise have been denied because MLB failed to meet its burden of "proving job-relatedness to rebut a claim of disparate impact." *Grant*, 635 F.2d at 1015. The case law cited by Plaintiff in his summary judgment briefing demonstrates that MLB's burden of proving job-relatedness/business necessity is high in this situation, where, as discussed above, the inexorable zero is present. Moreover, even if the inexorable zero was not present here and MLB's burden were not heightened, "merely asserting a business necessity rationale does not suffice to prove the defense." *Banks v. City of Albany*, 953 F. Supp. 28, 36 (N.D.N.Y. 1997); *see also MacLennan v. Am. Airlines, Inc.*, 440 F. Supp. 466, 472 (E.D. Va. 1977) ("[t]he incantation of a safety rationale is not an abracadabra to which this Court must defer judgment. The defendant must prove that the policy is reasonably necessary, not merely that it is 'reasonable,' as the defendant apparently contends"). "An employer's subject belief that a practice is necessary, **without any**

**supporting evidence**, is insufficient to justify a discriminatory practice." *Banks*, 953 F. Supp. at 36 (emphasis added). In some cases, "[i]n order to establish a business necessity defense, employers have been required to present convincing expert testimony demonstrating that a challenged practice is in fact required to achieve the desired goal." *Id.* (internal citations omitted).

In its summary judgment briefing, MLB wholly failed to meet its burden of proving the business necessity of the promotion policies identified by Plaintiff. MLB's business necessity defense amounted to nothing more than blanket assertions that its "consideration of leadership ability and situation management for umpires to serve in leadership positions and work the highest profile games is eminently reasonable and fully comports with business necessity." Dkt. 173, Page 57 of 61. In making such conclusory assertions, MLB does not cite to **any** evidence, let alone evidence that amounts to "convincing expert testimony," as is sometimes required in disparate impact discrimination cases. *Banks*, 953 F. Supp. at 36.

MLB's failure to do so should have resulted in the denial of its cross-motion for summary judgment on Plaintiff's disparate impact claim. Yet, not only did the Court grant MLB summary judgment on the issue of business necessity, it did so with little explanation—the only mention of that burden by the Court in its Summary Judgment Order is by stating "even assuming, *arguendo*, . . . that MLB demonstrated the business necessity of its promotion practices . . ." Dkt. 197, Page 23 of 26. An arguendo assumption cannot properly form the basis for a grant of summary judgment. The Court was required to engage in a detailed consideration of this prong of the analysis and, given the absence of actual proof of business necessity, should have denied MLB's request for summary judgment. The absence of such consideration and analysis was a clear legal error and requires that this Motion be granted.

vii.   <u>Plaintiff's Proposed Alternative Practices Were Sufficient to Create Genuine</u>
<u>Disputes of Material Fact</u>

The Court likewise erred in finding summary judgment for MLB was appropriate as to
Plaintiff's proposed alternative practices.  Though the Court stated that Plaintiff "understandably
critiques the promotion processes for being overly subjective," the "overly subjective" nature of the
promotion processes was not the sole basis of Plaintiff's disparate impact claim.  Instead, Plaintiff's
disparate impact claim was premised on the reality (i) that the promotion processes were based only
on a single individual's (Joe Torre) subjective judgment of subjective criteria, and (ii) that Joe Torre,
in singularly making those decisions, ignored the wealth of **objective** information MLB collects
regarding umpire performance.  The impermissible characteristics of the actual MLB policy that
underlies Plaintiff's disparate impact claim therefore go far beyond a mere complaint that MLB's
promotion policies were "subjective," and also include MLB's vesting of power to make those
subjective decisions in a single non-minority individual.  Courts in the Second Circuit have found
that entrusting power to make subjective promotion decisions solely to a non-minority individual (as
is the case here) is an employer policy upon which a disparate impact claim can be based.  *See, e.g.,*
*Banks*, 953 F. Supp. at 36; *Martin v. Coinmach Corp.*, No. 15-CV-8137 (AJN)(SN), 2016 WL 6996182,
at *6 (S.D.N.Y. Nov. 29, 2016).

Plaintiff's proposed alternative practices were (i) "view[ing] the entire body of an umpire's
work as opposed to focusing solely on the subjective criteria" identified by MLB, and (ii) requiring
the entire umpire department to collaborate for promotion decisions as opposed to leaving those
decisions to Joe Torre alone.  Each of those proposed alternative practices eliminates the problems
inherent in MLB's current policies by requiring MLB to focus on more objective data and by taking
full authority over promotion decisions out of the hands of a single non-minority individual (Torre)
and putting that authority instead into the hands of a larger group.

Rather than actually provide any evidence as to why such alternative practices would not work, MLB instead simply insists that the Court not "second-guess" their preferred (discriminatory) policy.  *See, e.g.*, Dkt. 193, page 32 of 33.  The complete lack of evidence to support any assertion on the part of MLB that Plaintiff's proposed alternative practices would not actually work highlights the genuine disputes of material fact that are present.  A jury, as the factfinder, should be permitted to make its own determination as to whether such alternative practices would be sufficient in this instance.  The Court's Summary Judgment Order precluded the jury from being able to make that determination.  That was a clear legal error, and this Motion should therefore be granted.

C.      *The Court's Improper Assumption of the Role of Factfinder*

In addition to the legal errors and related issues discussed above, Plaintiff respectfully contends that, throughout the Summary Judgment Order, the Court improperly assumed the role of factfinder.  At the summary judgment stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.  In determining whether summary judgment is appropriate, this [c]ourt will construe the facts in the light most favorable to the non-moving party and must resolves all ambiguities and draw all reasonable inferences against the movant."  *Fisher v. Mermaid Manor Home for Adults, LLC*, 192 F. Supp. 3d 323, 327 (E.D.N.Y. 2016); *see also Caban v. City of New York*, No. 11 CIV. 3417 SAS, 2012 WL 5992088, at *2 (S.D.N.Y. Nov. 30, 2012).  "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Caban*, 2012 WL 5992088 at *2 (internal citations and quotations omitted).  "Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit . . . for the court in considering such a motion *must disregard all evidence favorable to the moving party that the jury is not required to believe*."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (emphasis in original, internal quotations and citations omitted).  Moreover, the Second Circuit has found that "summary

16

judgment is proper only when, with all permissible inferences and credibility questions resolved in favor of the party against whom judgment is sought, 'there can be but one reasonable conclusion as to the verdict . . .' *i.e.*, 'it is quite clear what the truth is.'" *Id.* at 546.

Furthermore, special considerations apply to summary judgment motions in the context of employment discrimination cases such as the one at bar. As the Court itself identified in its Summary Judgment Order, "[t]he Second Circuit has 'repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent.'" Summary Judgment Order, Dkt. 197, Page 10 of 26; *see also Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 113 (2d Cir. 1992) (identifying "the familiar rule that summary judgment is 'ordinarily inappropriate where [as here] intent and state of mind are at issue'") (internal citations omitted).

Though the Court acknowledges many of the foregoing principles in its Summary Judgment Order, it nevertheless grants MLB's summary judgment motion in its entirety and, in so doing, improperly engages in "jury functions" such as making credibility determinations, weighing the evidence, and drawing inferences from the facts. Examples of the Court engaging in these functions include, but are not necessarily limited to:

- Despite noting that "[t]he record is not entirely clear regarding how MLB develops mid- and end-season evaluations," finding that there was no genuine dispute of material fact as to Plaintiff's claims and arguments based on those evaluations and MLB's treatment of same. *See, e.g.*, Summary Judgment Order, Dkt. 197, Page 3 of 26.

- Determining that, despite (i) the Court's acknowledgement of the lack of clarity in the record regarding (among other things) the factors considered by MLB in making crew chief promotion decisions and (ii) the differences in the proof offered by the respective parties regarding what factors actually apply to making crew chief promotion decisions, a juror could not have found Plaintiff was "significantly better qualified for the job" than the individuals promoted to crew chief over him. *See id.* at Pages 11-12 of 26.

- Holding that, despite the Court's own observation that "the record is not transparent

about the weight Torre affords the criteria he uses in promotion decisions," there is not a genuine dispute of material fact on pretext.  *Id.*

- ▪ Concluding that MLB's "slightly different explanations" for the factors they consider in making promotion decisions "are not genuinely inconsistent, but are a reflection of the subjective and multi-faceted nature of this determination."  *Id.* at Pages 12-13 of 26.

- ▪ Finding that, while there is evidence that Plaintiff's "FEFs" are not accurately reflected in his Year-End Evaluations and that "there is some uncertainty in the record as to the relationship between FEFs and umpire evaluations," a genuine dispute of material fact on the issue of pretext of discrimination is not present.  *Id.* at Pages 13-14 of 26.

- ▪ Making credibility determinations by accepting at face value MLB's proffered explanation for not promoting Plaintiff to the crew chief position or assigning him to the World Series, for which Plaintiff has presented evidence in the record that MLB's explanation is pretextual.  *See, e.g., id.* at Page 18 of 26 ("[t]he explicit reason MLB offers—that **according to Torre**, Hernandez 'has not demonstrated the leadership ability and situation-management skills in critical, high-pressure roles on a consistent basis . . . .'") (emphasis added); *id.* at Page 19 of 26 (giving substantial weight to Torre's selection of a single minority umpire to two World Series in a six-year period).

- ▪ Engaging in a step-by-step analysis of what the Court contends the jury must factually conclude regarding Plaintiff's disparate treatment claim before ultimately determining no reasonable juror could make those conclusions.  *Id.* at Pages 18-19 of 26.

- ▪ In the context of Plaintiff's disparate impact claim, assigning significant value to MLB's selection of a minority umpire to two World Series in a six-year period and MLB's single minority crew chief in its entire history, while assigning little value to the presence of the inexorable zero.  *See id.* at Pages 22-23 of 26; *see also* § B, *supra*.

Rather than leaving these functions to the jury, the Court improperly weighed the evidence itself, made credibility determinations as to MLB's asserted explanations, and drew inferences from facts despite simultaneously acknowledging the genuine disputes (and lack of clarity in the evidentiary record) surrounding those material facts.  To do so was a clear legal error that has resulted in manifest injustice to Plaintiff.  Thus, the instant Motion should be granted.

## III.   Conclusion

Plaintiff respectfully requests that the Court alter, amend or vacate its Summary Judgment

Order so as to deny MLB's cross-motion for summary judgment and permit Plaintiff's claims to proceed to a jury.  For the reasons stated herein, Plaintiff's Motion should be granted and the Court should provide Plaintiff with the relief he seeks.

Respectfully submitted,

MURPHY LANDEN JONES PLLC

By:_ *Kevin L. Murphy*_____
Kevin L. Murphy (*pro hac vice*)
J. Jeffrey Landen (*pro hac vice*)
Nicholas R. Gregg (*pro hac vice*)
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY 41017
Tel: 859-360-1123
KMurphy@MLJfirm.com
JLanden@MLJfirm.com
NGregg@MLJfirm.com

&

LEWIS DIBIASI ZAITA & HIGGINS
Nicholas J. Zaita
420 Lexington Avenue, Suite 300
New York, NY 10107
Tel: (212) 772-0943
nzaita@ldzhlaw.com
***Attorneys for Plaintiff Angel Hernandez***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 28, 2021, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to:  Neil H. Abramson,

Esq., Rachel S. Philion, Esq., Rachel S. Fischer, Esq., and Adam M. Lupion, Esq., PROSKAUER

ROSE LLP, Eleven Times Square, New York, New York 10036-8299.

Respectfully Submitted,

MURPHY LANDEN JONES PLLC

By:  *Kevin L. Murphy*
Kevin L. Murphy (*pro hac vice*)
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY 41017
Tel: 859-360-1123
*Attorney for Plaintiff Angel Hernandez*