**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of August, two thousand twenty-three.

PRESENT:    Susan L. Carney,
            Steven J. Menashi,
                    *Circuit Judges.*[*]

_____

ANGEL HERNANDEZ,

    *Plaintiff-Appellant*,

v.                                                                                          No. 22-343

THE OFFICE OF THE COMMISSIONER OF
BASEBALL, MAJOR LEAGUE BASEBALL
BLUE, INC.,

    *Defendants-Appellees.*

_____

---

[*] Judge Rosemary S. Pooler, originally a member of the panel, died on August 10, 2023. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b); *United States v. Desimone*, 140 F.3d 457, 458-59 (2d Cir. 1998).

| | |
|---|---|
| *For Plaintiff-Appellant*: | NICHOLAS R. GREGG, Murphy Landen Jones PLLC, Fort Mitchell, KY (Nicholas J. Zaita, Peckar & Abramson, P.C., River Edge, NJ, *on the brief*). |
| *For Defendants-Appellees*: | NEIL H. ABRAMSON (Adam M. Lupion, Rachel S. Philion, Rachel S. Fischer, *on the brief*), Proskauer Rose LLP, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Oetken, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Angel Hernandez is an umpire for Major League Baseball ("MLB" or the "league").[1] Between 2011 and 2017, Hernandez applied multiple times to be a crew chief—the leader of an umpiring crew.[2] MLB did not promote Hernandez to crew chief. Hernandez sued, alleging that the league's failure to promote him to that position amounted to racial discrimination under the employment discrimination laws. Hernandez pursued both a disparate impact and a disparate treatment theory, claiming that (1) MLB's promotion practices resulted in an unlawfully disparate impact on minority applicants for the crew chief positions and (2) MLB treated him worse than it treated similarly situated non-minority umpires because

---

[1] As the parties did in their briefs, we refer to the two defendants-appellees—the Office of the Commissioner of Baseball and Major League Baseball Blue, Inc.—collectively as "MLB."

[2] The district court stated in its decision that Hernandez also sought a promotion in 2018, but the latest allegations in the amended complaint date to 2017.

of his race and national origin.[3] The district court rejected these theories and granted summary judgment to MLB.

Hernandez appeals the district court's ruling and makes two arguments. First, he contends that because MLB promoted zero minority umpires to crew chief from 2011 to 2017, we should infer that its promotion practices have a disparate impact on minority applicants for the role. Second, he argues that the district court improperly played the role of factfinder with respect to his disparate treatment claim. We disagree. We assume the parties' familiarity with the underlying facts and procedural history.

I

Angel Hernandez has been an umpire for MLB since 1993. He alleges that after former New York Yankees manager Joe Torre became MLB's Executive Vice President of Baseball Operations in 2011, the league not only discriminated against Hernandez because he is a racial minority but also carried out a practice or policy of crew-chief promotion that resulted in a disparate impact on minority umpires.[4] Hernandez argues that MLB's decision not to select him—or any other minority umpire—for promotion to a crew-chief position during the period between 2011 (when Torre became the final decision-maker for umpire-related employment decisions) and 2017 (when Hernandez initiated this litigation) establishes that MLB had a prohibited discriminatory practice or policy.

---

[3] Hernandez also alleges that, because of his race, MLB did not select him to be a World Series umpire during the same time period, though the league selected a minority umpire for the World Series in both 2011 and 2015.

[4] In claiming that Torre has an antipathy toward him, Hernandez alleges that "[o]n May 4, 2001, after what Torre perceived to be an incorrect call by Hernandez, Torre took to the media to insult him and call into question his skill as a Major League umpire." J. App'x 30. Hernandez is referencing a call he made in a game on April 30, 2001, between the Yankees and the Minnesota Twins when Torre was the manager of the Yankees.

As MLB describes it, "[t]he crew chief is the leader of the [umpiring] crew, the final decision-maker for all on-field issues, and the person who ensures the crew's compliance with MLB's rules and policies." Appellees' Br. 2-3; *see also id.* at 3 ("The crew chief is responsible for, among other things, encouraging, initiating, and leading his crew's discussions of plays and rules; reporting any suspected non-compliance with MLB rules and regulations; and making crucial decisions on the field, such as whether a game will be delayed or forfeited."). In making the decision to promote an umpire to crew chief, MLB "takes into account a number of factors—some of which are somewhat subjective—and prioritizes an umpire's leadership and situation management." *Hernandez v. Off. of Comm'r of Baseball*, No. 18-CV-9035, 2021 WL 1226499, at *7 (S.D.N.Y. Mar. 31, 2021). Umpires are evaluated on their ballpark performance during each season through "Field Evaluation Forms." The record reflects that the league had twelve permanent crew chief openings between 2011 and 2017. MLB does not dispute that all of the umpires promoted to crew chief during this period were white.

MLB identifies non-discriminatory reasons why Hernandez was not promoted. The league points to an erroneous call that Hernandez made in the ninth inning of a game on May 8, 2013, between the Oakland Athletics and the Cleveland Indians. The league asserts that Hernandez not only missed the call but also failed to acknowledge his mistake. In addition, MLB points to an incident in which Hernandez—while serving as an interim crew chief—asked Cincinnati Reds pitcher Homer Bailey to autograph eleven baseballs for Hernandez and other members of the umpiring crew after a game in which Bailey pitched a no-hitter. In a declaration, Torre also described examples of Hernandez's "overly confrontational style," which he called "counterproductive." Supp. App'x 426.

Hernandez sued MLB in federal court and lost at the summary judgment stage. We affirm the judgment of the district court.

4

II

Hernandez makes two arguments on appeal. First, he argues that, because zero racial minority umpires were promoted to permanent crew chief positions during the years at issue, we should infer that MLB's promotion practices have had a discriminatory impact. Second, he contends that the district court improperly played the role of factfinder with respect to his disparate treatment claim. We address each argument in turn.

A

The disparate impact theory of liability rests on the contention that an employer's hiring or promotion "practices ... have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Proj., Inc.*, 576 U.S. 519, 524-25 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). "To make out a prima facie case of disparate impact, a plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." *Malave v. Potter*, 320 F.3d 321, 325 (2d Cir. 2003) (internal quotation marks omitted).

The Supreme Court has held that "subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 991 (1988). But "even if ... [a plaintiff] can show that [a protected class of employees is] underrepresented in the at-issue jobs ..., this alone will *not* suffice to make out a prima facie case of disparate impact." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989), *superseded by statute on other grounds by* 42 U.S.C. § 2000e-2(k). As the Court has explained, plaintiffs "will also have to demonstrate that the disparity they complain of is the result of one or more of the employment practices that they are attacking here, specifically showing that each challenged *practice* has a significantly disparate impact on employment opportunities for whites and nonwhites." *Id.* (emphasis

5

added).[5] To that end, "a Title VII plaintiff does not make out a case of disparate impact simply by showing that, at the bottom line, there is racial *imbalance* in the work force." *Wards Cove*, 490 U.S. at 657 (internal quotation marks omitted).

In *Malave*, our court emphasized that "a plaintiff must identify a specific employment practice, rather than rely on bottom line numbers in an employer's workforce." 320 F.3d at 326 (internal quotation marks omitted). We explained that "a plaintiff must present statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for promotions *because* of their membership in a protected group." *Id.* (internal quotation marks and alteration omitted and emphasis added).

In this case, although there was a bottom-line imbalance between white and minority crew chiefs, Hernandez has failed to establish a statistically significant disparity between the promotion rates of white and minority umpires. MLB has provided persuasive expert evidence demonstrating that, during the years at issue, the difference in crew chief promotion rates between white and minority umpires was not statistically significant.[6] Hernandez offers no explanation as to why MLB's statistical evidence is unreliable.

Hernandez emphasizes that, in making crew-chief promotion decisions, Torre applied criteria that may involve a subjective evaluation, including "[l]eadership skills," which encompassed "situation management." Supp. App'x

---

[5] The 1991 amendments to Title VII superseded portions of *Wards Cove*. Those amendments provide in part that, "if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice." 28 U.S.C. § 2000e-2(k)(1)(B)(i); Civil Rights Act of 1991, Pub. L. No. 102-166, § 105(a), 105 Stat. 1071, 1074 (1991).

[6] MLB's expert concluded that, from 2011 through 2017, the probability that no minorities would have been promoted to crew chief ranged between 59 percent and 79 percent, far beyond the 5 percent or 10 percent probabilities that would be necessary to establish a statistically significant disparity. Supp. App'x 492-95.

420. But Hernandez has failed to show that the criteria Torre used in making crew-chief promotion decisions caused the existing disparity between white and minority crew chiefs. Thus, Hernandez has not identified an employment practice that caused the exclusion of applicants "because of their membership in a protected group." *Malave*, 320 F.3d at 326.

A district court case from our circuit provides an example of subjective employment criteria that resulted in a disparate impact. In *Banks v. City of Albany*, a minority applicant to a firefighter job alleged that a fire chief's "wholly subjective criterion for appointing firefighters ... cause[d] a disparate impact." 953 F. Supp. 28, 33 (N.D.N.Y. 1997). There, "the critical qualifications for firefighter [were]: (1) know [the fire chief] personally, and (2) have close familial ties with the Albany Fire Department." *Id.* at 34. The district court explained that "[f]or minority candidates, these qualifications pose a significant obstacle" given that the firefighter population contained few minorities and that the nepotistic criteria would perpetuate the racial composition of the group for "generations." *Id.*; *cf. Wards Cove*, 490 U.S. at 665 n.9 ("This is not to say that a specific practice, such as nepotism, if it were proved to exist, could not itself be subject to challenge if it had a disparate impact on minorities."). By contrast, in this case, Hernandez has failed to show that Torre's use of the identified criteria created a statistically significant disparity between the promotion rates of white and minority umpires.

Hernandez claims that he does not need to make this showing because "disparate impact discrimination can be ... demonstrated by the presence of the 'inexorable zero.'" Appellant's Br. 24 (capitalization omitted). As noted above, Hernandez argues that because the league promoted zero minority umpires to crew chief during the relevant time period, we should infer that MLB's promotion practices had a disparate impact. The term "inexorable zero" comes from a footnote in a Supreme Court case from 1977 reviewing a disparate treatment claim brought by the government against a common carrier of motor freight and the union that represented a large group of the company's employees. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 342 n.23 (1977). The Court noted that the

7

employer's attacks on the government's statistical analysis were unpersuasive because of "the glaring absence of minority line drivers," which the Court called "the inexorable zero." *Id.* We later used the term "inexorable zero" to frame our inquiry in evaluating a disparate impact claim. *See Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1015 (2d Cir. 1980).

But in *Grant*, the hiring policy unquestionably served to perpetuate discrimination because the employer based its promotion decisions "solely on foreman experience" in the wake of "past discriminatory hiring practices" that had excluded minority employees from the population of foremen. *Id.* at 1018. Our decision in *Grant* is consistent with the Supreme Court's requirement from *Wards Cove* that a disparate impact plaintiff must "demonstrate that the disparity they complain of is the result of one or more of the employment practices that they are attacking." *Wards Cove*, 490 U.S. at 657. In other words, the plaintiff must show that the criteria the employer uses—even if facially neutral—create or perpetuate discrimination.

Citing *Wards Cove*, we have clarified that a plaintiff bears "the initial burden of demonstrating not only race … disparities but also a causal nexus between those disparities and" the challenged employment practice. *EEOC v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 895 F.2d 86, 91 (2d Cir. 1990). Hernandez has not demonstrated that MLB's use of the criteria here caused a disparate impact on the basis of race or national origin.

Contrary to the suggestion of Hernandez's counsel at oral argument, "vesting sole [hiring or promotion] authority in a non-minority individual and … not using any objective criteria [and] letting this non-minority exercise his subjective discretion alone" is not, in and of itself, an unlawful employment practice.[7] Aside from noting the "bottom line … racial imbalance" of crew chiefs, *Wards Cove*, 490 U.S. at 657 (internal quotation marks and emphasis omitted),

---

[7] Oral Argument Audio Recording at 4:23.

Hernandez has made no showing that Torre harbors a bias against racial minorities. But even if he had, that would not establish that MLB's promotion practices resulted in a disparate *impact* on minorities. Rather, such evidence would show that the hiring official himself was applying racially neutral criteria in a discriminatory manner—a disparate *treatment* claim. We therefore turn to Hernandez's argument on disparate treatment.

## B

Hernandez argues that—with respect to his disparate treatment claim—the district court improperly found facts at the summary judgment stage. To establish a prima facie case of disparate treatment, a plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) [he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004) (internal quotation marks omitted). If Hernandez were to make that showing, MLB would be "required to offer a legitimate, non-discriminatory rationale for its actions." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009).

At that point, "to defeat summary judgment ... [Hernandez's] admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Id.* "When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer," we have explained, "the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks omitted), *superseded in part on other grounds by* Fed. R. Civ. P. 37(e).

Hernandez argues that the district court improperly engaged in jury functions on at least seven occasions while proceeding through the burden-shifting inquiry—from "[d]etermining that ... a juror could not have found Mr. Hernandez was significantly better qualified for the job than the individuals promoted to crew chief over him" to "accepting at face value MLB's proffered explanation for not promoting Mr. Hernandez to the crew chief position." Appellant's Br. 44-45 (internal quotation marks omitted). We disagree.

In concluding that Hernandez had not demonstrated pretext at the final step of the burden-shifting inquiry, the district court was not finding facts. Rather, the district court was assessing whether Hernandez had met *his* burden at the demonstration-of-pretext stage of the analysis. Instead of finding facts, the district court acknowledged that "the parties dispute precisely what factors MLB considers in umpire promotions, ... how much weight MLB gave each of those factors," and "the relationship between [Field Evaluation Forms] and umpire evaluations." *Hernandez*, 2021 WL 1226499, at *6, *8. Yet the district court determined that despite the differences between the parties on these factual questions, the sum total of the evidence "fails to give rise to a genuine dispute of fact *on the issue of pretext for discrimination*." *Id.* at *8 (emphasis added); *accord id.* at *7 ("MLB's slightly different explanations [of the criteria it uses to make promotion decisions] are not genuinely inconsistent, but are a reflection of the subjective and multi-faceted nature of this determination. This evidence is insufficient to establish a genuine dispute of fact on pretext.").

The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact. *See McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022) ("Summary judgment is proper when 'the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law.'") (emphasis added) (quoting Fed. R. Civ. P. 56(a)).

10

The district court properly determined that the parties' different views on the facts set forth above were immaterial to the question of disparate treatment, given Hernandez's failure to identify sufficient evidence of pretext.

\* \* \*

We have considered Hernandez's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit